Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
Elijah M. Watkins, ISB No. 8977
*elijah.watkins@stoel.com*
Cory M. Carone, ISB No. 11422
*cory.carone@stoel.com*
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>        Plaintiff,<br><br>    v.<br><br>ASHLEY GUILLARD,<br><br>        Defendant. | Case No. 3:22-cv-00521-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |

After four students were tragically murdered near the University of Idaho, Defendant Ashley Guillard decided to trade on the community's pain to promote herself online. Guillard randomly targeted Plaintiff Rebecca Scofield and stated repeatedly to a broad audience that Professor Scofield had an inappropriate romantic affair with one of the victims and then ordered the murder of all four students. Rather than engage in an online feud with Guillard, bringing further attention to Guillard's specious assertions and distracting from the victims' memories, Professor Scofield took the responsible approach, sending two private cease and decease letters before asking the Court to intervene. In response, Guillard continued her self-promotion, this time while

disrespecting law enforcement and the judicial process. She has posted videos acknowledging this lawsuit, advancing conspiracy theories about corruption in the Moscow Police Department leading to the arrest of Bryan C. Kohberger instead of Professor Scofield, and asserting additional false statements about Professor Scofield working with Mr. Kohberger to order the murders—all while ignoring court deadlines and failing to file timely responsive pleadings. If the Court denies Guillard's motion to set aside the clerk's entry of default, it should enter default judgment.

## I.  BACKGROUND

In November 2022, four students at the University of Idaho were murdered at a home near the campus. ECF 1, ¶ 5. Plaintiff Rebecca Scofield, a professor at the University of Idaho, had never met the students and she was not involved with their murders. *Id.* at ¶¶ 7, 9. Without any regard for the truth, Defendant Ashley Guillard began posting sensational TikTok videos about the murders, including many videos stating that Professor Scofield had a romantic relationship with one of the victims and then ordered the murders. *Id.* at ¶¶ 15–26. Guillard's fame rose with each video, as her videos were widely reposted and viewed millions of times. *Id.* at ¶¶ 40–41.

Professor Scofield tried to resolve this matter without litigation to avoid drawing further attention to Guillard's specious statements at the expense of the victims' memories and their families' trauma—and her own reputation and family's safety. She sent cease and desist letters on November 29, 2022 and December 8, 2022. *Id.* at ¶¶ 25, 30. Guillard responded by posting more videos falsely stating that Professor Scofield had a romantic relationship with a student and then ordered the murders. *Id.* at ¶¶ 24–27, 31–33. Guillard also posted a video suggesting she would

use one of the cease and desist letters as toilet paper[1] and that Professor Scofield would need to "file actual legal documents in a federal court." *Id.* at ¶ 31.

Left with no other option to stop the posts, Professor Scofield filed her complaint. ECF 1. Guillard was served on December 27, 2022. ECF 3. That same day, Guillard posted a TikTok video acknowledging service[2] and the Moscow Police Department issued a press release stating that it did not believe Professor Scofield was involved with the murders.[3] Three days later, law enforcement arrested Bryan C. Kohberger for allegedly committing the murders.[4] The criminal court later published the probable cause affidavit supporting Mr. Kohberger's arrest, and it makes no mention of Professor Scofield.[5]

Despite this new evidence that Professor Scofield was not responsible for the murders (and despite clear facts showing Professor Scofield was not involved and that Guillard had made no effort to discover the facts), Guillard continued to prolifically post videos making false statements about Professor Scofield. She asserted that Professor Scofield worked with Mr. Kohberger and even questioned the integrity of the Moscow Police Department, stating that corruption led to the

---

[1] The video is available at https://www.tiktok.com/@ashleyisinthebookoflife/video/7177814622328704298?lang=en.

[2] The video is available at https://www.tiktok.com/@ashisgodintheflesh/video/7182014857145781547?lang=en.

[3] The press release is available at https://www.ci.moscow.id.us/DocumentCenter/View/24989/12-27-22-Moscow-Homicide-Update.

[4] A press release announcing the arrest is available at https://www.ci.moscow.id.us/DocumentCenter/View/24998/12-30-22-Arrest-Made-In-Moscow-Homicides.

[5] The probable cause affidavit is available at https://coi.isc.idaho.gov/docs/case/CR29-22-2805/122922%20Affidavit%20-%20Exhibit%20A%20-%20Statement%20of%20Brett-Payne.pdf.

arrest of Mr. Kohberger instead of Professor Scofield.[6] Guillard also posted videos explaining how she would win this case in court and accusing Professor Scofield's counsel of witness tampering.[7] Despite having plenty of time to post defamatory content online, Guillard failed to timely file responsive pleadings. The Clerk of the Court thus filed an entry of default of January 27, 2023. ECF 5. Guillard moved to set aside that entry of default, ECF 7, and that motion should be denied, ECF 9.

## II.  LEGAL STANDARD

When a plaintiff's claim is not for a sum certain, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "In evaluating the propriety of default judgment, the court is guided by seven non-exclusive factors: '(1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.'" *BlackMountain Inv. Holdings, LLC v. NewChanvre Inc.*, No. 2:20-CV-00495-SM, 2021

---

[6] Guillard's videos are too prolific to list exhaustively, but some examples are available at
https://ashisgod.com/f/solving-the-mystery-of-the-murder-of-the-4-uofidaho-students-1;
https://www.tiktok.com/@ashisgodintheflesh/video/7183150289443261742?lang=en;
https://www.tiktok.com/@ashisgodintheflesh/video/7183138572847910186?lang=en;
https://www.tiktok.com/@ashisgodintheflesh/video/7185270061702204715?lang=en;
https://www.youtube.com/watch?v=uZ-fo4F-q9w.

[7] Some exemplary videos are available at
https://www.tiktok.com/@ashisgodintheflesh/video/7184279405689064746?lang=en;
https://www.tiktok.com/@ashleyisinthebookoflife/video/7180210785665240362?lang=en;
https://www.tiktok.com/@ashleyisinthebookoflife/video/7180879297211551022?lang=en.

WL 5331758, at *1 (D. Idaho Apr. 12, 2021) (brackets in original) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

### III.  ARGUMENT

The Court should first consider the *Eitel* factors and find that default judgment is appropriate. The Court should then decide what would be an appropriate amount of damages to award, which Professor Scofield asserts should be at least $1,863,304.

A. **The Court should enter default judgment.**

The seven *Eitel* factors strongly favor entering default judgment.

*First*, Professor Scofield will be prejudiced absent a default judgment. Guillard has had ample time to defend herself. She was served on December 27, 2022. Since then she has posted many videos and blog entries that acknowledge this litigation, further defame Professor Scofield, criticize the integrity of the Moscow Police Department for arresting Mr. Kohberger, and boast about how Guillard will win this matter in court. That time could have been spent preparing responsive pleadings. The Court should reject Guillard's untimely defenses, meaning "default judgment is the only way for [Professor Scofield] to receive compensation." *Id.* (citation omitted).

*Second* and *third*, Professor Scofield has sufficiently alleged a meritorious claim. When a defendant has defaulted, "[t]he Court assumes the facts alleged in the complaint are true." *Id.* The Court then considers whether those facts state a claim.

Professor Scofield has stated a claim for defamation. "In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016) (citation omitted). "A defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the

118517734.4 0079747-00001

person's business." *Siercke v. Siercke*, 167 Idaho 709, 718, 476 P.3d 376, 385 (2020) (citation omitted). "If criminal conduct is imputed, and that conduct amounts to either a crime punishable by imprisonment or a crime of moral turpitude, the allegedly defamatory remarks are actionable as defamation per se." *Id.* at 720, 476 P.3d at 387.

Here, Guillard has continuously communicated information about Professor Scofield to millions of individuals on TikTok. ECF 1, ¶¶ 15–26, 40–41. Guillard has repeatedly stated that Professor Scofield had an inappropriate romantic relationship with a student and ordered the murder of four students. Both categories of statements are false. *Id.* at ¶¶ 7, 24, 37, 44. Both categories of statements are also defamatory per se. Murder, of course, is a crime of moral turpitude and punishable by imprisonment, and in Idaho even by death. And to the extent Guillard states Professor Scofield used her position of power as a professor to engage in a sexual relationship with a student, that statement also is defamatory per se. Both statements harm Professor Scofield's reputation. Finally, Professor Scofield has been damaged by Guillard's false statements. She has suffered emotional distress, suffered harm to her personal and professional reputation, and incurred expenses to protect her and her family from individuals who may believe Guillard and seek vengeance. *Id.* at ¶¶ 35, 48.

*Fourth*, Professor Scofield seeks recovery "proportional to [Guillard's] alleged conduct," as described more fully in the next section. *BlackMountain*, 2021 WL 5331758, at *2.

*Fifth*, the possibility of a genuine factual dispute favors default judgment. The clear facts, of which this Court can take judicial notice, show that Professor Scofield was not involved with the University of Idaho murders. Mr. Kohberger has been charged with the crimes that Guillard falsely stated Professor Scofield ordered a different individual to commit. The Moscow Police Department stated that Professor Scofield was not a person they were investigating, and she was

not mentioned in the probable cause affidavit supporting Mr. Kohberger's arrest. There is no genuine factual dispute, nor the possibility of one.

*Sixth*, there is no chance of excusable neglect because Guillard intentionally failed to assert timely defenses. Starting the day after the complaint was filed, Guillard has spent her time posting at least 100 videos on TikTok, writing three blog posts, talking to reporters, recording a 40-minute YouTube video, and interacting with viewers in the comments sections. ECF 9. Many of those publications talk about this lawsuit, particularly how excited Guillard is to win in court. If she had spent that time putting those defenses into an answer instead of boasting online to get more clicks, she could have filed a timely response. But she chose self-promotion over respect for the judicial process. That was her decision to make. Guillard intentionally chose not to file a timely answer. She should have to live with the consequences.

*Seventh*, while there is a strong preference for resolution of claims on the merits, this is the rare case where the Court should favor the finality of a default. Guillard's conduct is beyond egregious. She has made a spectacle of the tragic loss of four young lives, which insults their memories and compounds the trauma for those affected. She has also caused great harm to Professor Scofield. ECF 10-2. Instead of responsibly engaging in the judicial process when Professor Scofield filed suit, Guillard opted to spend her time prolifically posting about the murders and this lawsuit to get more clicks. Guillard's default was intentional, and given the extreme circumstances here, the Court should put an end to the circus.

B.  **The Court should award Professor Scofield at least $1,863,304.**

Once a court has determined that there should be liability, "it must then determine the amount and character of the relief that should be awarded." *BMO Harris Bank N.A. v. Jensen*, No. 1:17-CV-16-EJL, 2017 WL 7550680, at *3 (D. Idaho Oct. 11, 2017). "The complaint's factual allegations relating to the amount of damages are not taken as true." *Id.* Instead, the Court can hold

a hearing to determine the amount of damages, or it can consider written materials submitted in support of the plaintiff's claimed damages. *Id.*

Here, Professor Scofield seeks damages to compensate her for emotional distress, personal and professional reputational harm, and expenses incurred to protect her and her family. As explained more fully in the accompanying affidavit, Ms. Guillard's false statements have for example:

- Jeopardized Professor Scofield's employment at the University of Idaho, where she earns a $75,064.28 annual salary along with an administrative increment of $11,266.12 for serving as Chair of the History Department.

- Jeopardized Professor Scofield's advancement at the University of Idaho, including salary increases, promotion to full professorship, and selection for leadership positions.

- Jeopardized publication of book manuscripts, articles, and book chapters that are pending review.

- Jeopardized Professor Scofield's ability to collaborate with co-authors.

- Limited Professor Scofield's ability to perform new studies and produce new work that require speaking to or working with LGBTQ+ populations.

- Caused severe mental distress. Professor Scofield receives hate mail, cries often, cannot sleep, and must take sleep aids. She fears for her and her family's safety, as members of anti-education groups oppose her work on gender studies and LGBTQ+ issues at a public institution. Ms. Guillard's homophobic rhetoric and highlighting of Professor Scofield's research amplifies that opposition, and Professor Scofield worries that Ms. Guillard's false statements may prompt

somebody to take violent action—either in opposition to her work or to avenge the four students who were murdered.

To compensate Professor Scofield for these harms, she asks the Court to award her at least $863,304 for damages to her personal and professional reputation (the equivalent of 10 years of her current compensation at the University of Idaho). She also asks the Court to award her at least $1 million for pain and suffering related to her mental distress. Professor Scofield is unaware of a factual analogous case that has gone to verdict. But she is aware of *Almanzar v. Kebe*, a recent case where a jury awarded the plaintiff $1 million as compensation for pain and suffering (and $4,088,753 total) after the defendant posted YouTube videos and Facebook posts that made false statements that the plaintiff had a sexually transmitted disease, committed infidelity, was a prostitute, and took drugs. JVR No. 2204130016, 2022 WL 1102990. As here, the defamatory statements were made using a popular social media website and imputed crimes of moral turpitude. Frankly, Professor Scofield believes the false statements made about her are more severe, as murder is a particularly heinous crime and she has been made to fear for her and her family's personal safety. So while she seeks to be reasonable in her request to the Court, the Court could justifiably exercise its discretion to order a higher award.

## IV.  CONCLUSION

Professor Scofield requests that the Court enter default judgment in her favor that awards her at least $1,863,304.

DATED: February 17, 2023.

        STOEL RIVES LLP

        <u>/s/ Wendy J. Olson</u>
        Wendy J. Olson
        Elijah M. Watkins
        Cory Carone

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I served a copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** via overnight mail as follows:

Ashley Guillard
4100 Southwest Parkway, Apt. 368
Houston, TX  77207

/s/ Wendy J. Olson
Wendy J. Olson