UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No. 3:22-cv-00521-REP |
| Plaintiff, | **DEFENDANT-COUNTERCLAIMANT** |
| v. | **ASHLEY GUILLARD'S ANSWER,** |
| | **AFFIRMATIVE DEFENSES AND** |
| ASHLEY GUILLARD, | **COUNTERCLAIMS TO COMPLAINT** |
| Defendant. | |

| |
|---|
| ASHLEY GUILLARD, |
| Counterclaim-Plaintiff, |
| v. |
| REBECCA SCOFIELD, WENDY J. OLSON, ELIJAH M. WATKINS AND CORY M. CARONE; OF STOEL RIVES LLP., |
| Counterclaim-Defendants. |

**The Parties Filing This Answer to the Complaint**

Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Road
942
Houston, TX 77098
Telephone:  337.372.3181

Pro-Se

Defendant-Counterclaim-Plaintiff Ashley Guillard submits the following answer, affirmative defenses, and counterclaims to Plaintiff Rebecca Scofield and Counterclaim Defendants Rebecca Scofield, Wendy J. Olson, Elijah M. Watkins, and Cory M. Carone.

## INTRODUCTION

1.    Paragraph 1 of the introduction of the complaint contains a narrative for which no answer is required: In November 2022, four students at the University of Idaho were murdered at a home near the campus. The tragedy has garnered attention, and inflicted great sorrow, throughout the University, the State, and the country. To the extent that an answer is required Ashley Guillard denies all allegations in the introduction of the Complaint.

## PARTIES

1.    Ashley Guillard partially denies the allegations in the first sentence of paragraph 1 of the parties' portion of the Complaint pertaining to the allegation that Rebecca Scofield is an "individual". Ashley Guillard admits the allegations in the second sentence of paragraph 1 of the parties' portion of the Complaint.

2.    Ashley Guillard admits the first sentence in paragraph 2 of the Complaint, and denies the remaining allegations contained in the second sentence.

## JURISDICTION AND VENUE

3.    Ashley Guillard denies all allegations in paragraph 3 of the Complaint.

4.    Ashley Guillard denies all allegations in paragraph 4 of the Complaint.

## FACTUAL ALLEGATIONS

5.    Paragraph 5 of the Complaint is a narrative for which no answer is required. To the extent that an answer is required Ashley Guillard denies all allegations.

6.    Ashley Guillard lacks sufficient knowledge to admit or deny the allegations in paragraph 6 of the Complaint.

7.    Ashley Guillard denies all allegations in paragraph 7 of the Complaint.

8.    Ashley Guillard lacks sufficient knowledge to admit or deny the allegations in paragraph 8 of the Complaint.

9.    Ashley Guillard lacks sufficient knowledge to admit or deny the allegations in the first sentence of paragraph 9 of the Complaint. Ashley Guillard denies the remaining allegations contained in the second sentence of paragraph 9 of the Complaint.

10.    Ashley Guillard admits the allegation in paragraph 10 of the Complaint.

11.    Ashley Guillard admits the allegation in paragraph 11 of the Complaint.

12.    Paragraph 12 of the Complaint is a narrative of TikTok. To which a response is required Ashley Guillard admits the allegations.

13.    Ashley Guillard admits the allegation in paragraph 13 of the Complaint.

14.    Ashley Guillard admits to the allegation that she's never been to Moscow Idaho and denies all further allegations in paragraph 14 of the Complaint.

15.    Ashley Guillard denies the allegations in paragraph 15 of the Complaint as is.

16.    Ashley Guillard denies the allegations in paragraph 16 of the Complaint.

17.    Ashley Guillard denies the allegations in paragraph 17 of the Complaint.

18.    Ashley Guillard denies the allegations in paragraph 18 of the Complaint.

19.    Ashley Guillard denies the allegations in paragraph 19 of the Complaint.

20.    Ashley Guillard denies the allegations in paragraph 20 of the Complaint.

21.    Ashley Guillard denies the allegations in paragraph 21 of the Complaint.

22.    Ashley Guillard denies the allegations in paragraph 22 of the Complaint.

23.     Ashley Guillard lacks sufficient knowledge to admit or deny the allegations and otherwise denies the allegations in paragraph 23 of the Complaint.

24.     Ashley Guillard denies the allegations in paragraph 24 of the Complaint.

25.     Ashley Guillard denies the allegations in paragraph 25 of the Complaint.

26.     Ashley Guillard denies the allegations in paragraph 26 of the Complaint.

27.     Ashley Guillard denies the allegations in paragraph 27 of the Complaint.

28.     To the extent an answer is required, Ashley Guillard denies the allegations in paragraph 28 of the Complaint.

29.     Ashley Guillard lacks sufficient knowledge to admit or deny the allegations in paragraph 29 of the Complaint.

30.     Ashley Guillard admits the allegation in paragraph 30 of the Complaint.

31.     Ashley Guillard admits the allegation in paragraph 31 of the Complaint.

32.     Ashley Guillard denies the allegations in paragraph 32 of the Complaint.

33.     Ashley Guillard denies the allegations in paragraph 33 of the Complaint.

34.     Ashley Guillard denies the allegations in paragraph 34 of the Complaint except for the first two sentences which Ashley Guillard admits.

35.     Ashley Guillard denies the allegations in first sentence, second sentence, third sentence, and fifth sentence of paragraph 35 of the Complaint. Ashley Guillard lacks sufficient knowledge to admit or deny the allegation in the fourth sentence of paragraph 35 of the Complaint.

## FIRST CLAIM FOR RELIEF (DEFAMATION- FALSE STATEMENTS REGARDING MURDERS)

36.     Ashley Guillard incorporates by reference her responses to all prior paragraph of this Complaint as if set forth in full herein.

37.     Ashley Guillard denies the allegations in paragraph 37 of the Complaint.

38.     Ashley Guillard denies the allegations in paragraph 38 of the Complaint.

39.     Ashley Guillard denies the allegations in paragraph 39 of the Complaint.

40.     Ashley Guillard denies the allegations in paragraph 40 of the Complaint.

41.     Ashley Guillard denies the allegations in paragraph 41 of the Complaint.

42.     Ashley Guillard denies the allegations in paragraph 42 of the Complaint.

**SECOND CLAIM FOR RELIEF**
**(DEFAMATION – FALSE STATEMENTS REGARDING RELATIONSHIP)**

43.     Ashley Guillard incorporates by reference her responses to all prior paragraph of this Complaint as if set forth in full herein.

44.     Ashley Guillard denies the allegations in paragraph 44 of the Complaint.

45.     Ashley Guillard denies the allegations in paragraph 45 of the Complaint.

46.     Ashley Guillard denies the allegations in paragraph 46 of the Complaint.

47.     Ashley Guillard denies the allegations in paragraph 47 of the Complaint.

48.     Ashley Guillard denies the allegations in paragraph 48 of the Complaint.

**AFFIRMATIVE DEFENSES**

Ashley Guillard, for her affirmative defenses states as follows:

1.     The venue is improper for this case because it impedes upon the interest of justice under 28 U.S.C. § 1404. Ashley Guillard is a resident of Texas.

2.     The venue is improper for this case because the events giving rise to the claims of defamation are the publishing of TikTok videos that took place on Ashley Guillard's TikTok social media page. There is no Federal district in which this action may otherwise be brought

except United States District Court for the Southern District of Texas pursuant to U.S.C. § 1391 and 28 U.S.C. § 1404.

  3.  The complaint fails to state a claim upon which relief can be granted.

  4.  Plaintiff's claims are barred by the Substantial Truth Doctrine and the Incremental Harm Doctrine pursuant to Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991). The Substantial Truth and the Incremental Harm Doctrine hold that if the defamatory statement does no more harm than the true statements about the plaintiff, then there is no actionable claim for defamation. Rebecca Scofield planned, ordered, and executed the murder of the four University of Idaho Students. Since the accusations in Ashley Guillard's TikTok videos are substantially true there is no actionable claim for defamation.

  5.  Plaintiff's claims are barred by qualified privilege. The 4 University of Idaho Students were brutally murdered. Without the arrest of the murderers there's a presumption of danger to the public, University of Idaho constituents and Idaho residents. Discovering and revealing the murderers with the intent to get them investigated and arrested is an act to warn others about harm or danger and to bring resolution to the problem. The statements were made in the best interest of public safety. Ashley Guillard made the statements without actual malice. Therefore, qualified privilege permits Ashley Guillard to make the statements that in a different circumstance would typically be considered defamatory.

  6.  Plaintiff's claims are barred by the parameters of the broad freedom of expression guaranteed by the First Amendment of the Constitution of the United States of America. The First Amendment of the United States Constitution provides that Congress makes no law respecting an establishment of religion or prohibiting its free exercise. It protects freedom of speech, the press, assembly, and the right to petition the Government for a redress of grievances.

Ashley Guillard used her spiritual brain, intuition, spiritual practice, and investigative skills to uncover the truth regarding the murder of the four University of Idaho students; and published her findings on her TikTok social media platform. Ashley Guillard is protected as a United States Citizen to exercise her spiritual connection, abilities, and practices without being barred by the law pursuant to the First Amendment of the Constitution of the United States of America.

7.      Plaintiff's claims are barred by fraud because they're false, perjurious, frivolous, and claimed with malice; to get away unethical conduct, adultery, and murder.

8.      Plaintiff's claims are barred by comparative negligence. Plaintiff Rebecca Scofield committed the allegations that the defendant Ashley Guillard alleged. Plaintiff Rebecca Scofield is at least 51% at fault for being accused of the allegations. Therefore, the plaintiff Rebecca Scofield may not recover damages.

9.      Plaintiff's claims are barred by illegality because they are perjurious pursuant to 18 U.S.C. §1621.

10.     Plaintiff's claims are barred by illegality because they're claimed with the intent to obstruct civil justice in the United States District Court for the District of Idaho; and with the intent to obstruct criminal justice within the Latah County Court in Moscow Idaho.

COUNTERCLAIMS

Counterclaim-Plaintiff Ashley Guillard bring forth these counterclaims against Counterclaim-Defendant Rebecca Scofield, and Counterclaim-Defendant Wendy J. Olson, Counterclaim-Defendant Elijah M. Watkins, and Counterclaim-Defendant Cory M. Carone; Attorney's with Stoel Rives LLP in Boise Idaho and allege as follows:

I. NATURE OF THE COUNTERCLAIMS

1.      As set forth more fully below November 2022, Ethan Chapin, Kaylee Goncalves, Xana Kernodle and Madison Mogen (four University of Idaho students) were murdered. Using her spiritual acuity, Ashley Guillard uncovered hidden motives and hidden details of the murders. She discovered that Rebecca Scofield initiated, planned, and executed the murders; and hired men to help her plan and carry out the murders. Ashley Guillard published her findings on her TikTok social media webpage.

2.      To evade suspicion for the murder of the four students, on December 21, 2022, Rebecca Scofield, and Attorney's with Stoel Rives LLP in Boise Idaho: Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed frivolous Complaint, Scofield v Guillard case no. 3:22-cv-00521-REP, in United States District Court for the District of Idaho against Ashley Guillard. The Complaint falsified the factual allegations and claims for relief to create a cause of action for defamation against Ashley Guillard.

3.      After filing the Complaint, Rebecca Scofield and Wendy J. Olson published false statements of fact about Ashley Guillard in multi-national news media outlets to harass, degrade, humiliate, and discredit her; and to deprive her of an impartial tribunal. The false statements of fact published about Ashley Guillard portrayed her as someone who defamed esteemed Professor Scofield by falsely accusing her of murder. The truth is the statements Ashley Guillard made about Rebeca Scofield are substantially true.

4.      Collectively Attorney Wendy J. Olson, Attorney Elijah M. Watkins, Attorney Cory M. Carone and Rebecca Scofield conspired to deprive Ashley Guillard of her rights as an American Citizen to free speech guaranteed by the First Amendment of the United States Constitution, and of an impartial tribunal guaranteed by the Fourteenth Amendment of the

United States Constitution; under the color of the law. Ashley Guillard suffered damages due to the counterclaim defendants' malicious actions. Thus, making this counterclaim necessary.

## II. PARTIES

5.     Counterclaim Plaintiff: Ashley Guillard is an individual residing in Texas. She is an Author, Entrepreneur and United States Army Combat Veteran.

6.     Counterclaim Defendant: Rebecca Scofield is a public figure residing in Idaho. She is an Associate Professor and Chair of the History Department at the University of Idaho in Moscow, Idaho.

7.     Counterclaim Defendant: Wendy J. Olson (ISB No. 7634) is an Attorney, Former U.S. Attorney for the District of Idaho, and Partner of Stoel Rives LLP in Boise, ID; located at 101 S. Capitol Boulevard, Suite 1900 Boise, ID 83702.

8.     Counterclaim Defendant: Elijah M. Watkins (ISB No. 8977) is a Trial Attorney, and Partner of Stoel Rives LLP in Boise, ID; located at 101 S. Capitol Boulevard, Suite 1900 Boise, ID 83702.

9.     Counterclaim Defendant: Cory M. Carone (ISB No. 11422) is an Attorney, Former Deputy Attorney General for the State of Idaho, and Associate of Stoel Rives LLP in Boise, ID; located at 101 S. Capitol Boulevard, Suite 1900 Boise, ID 83702.

## III. JURISDICTION AND VENUE

10.    Jurisdiction is proper for the countercomplaint pursuant to 28 U.S.C. § 1331, § 1332, § 1343, and § 1367; the countercomplaint is a matter of federal questions due to violation of federal laws, there is diversity of citizenship and the amount in controversy exceeds $75,000.

11.    Venue is appropriate under 28 U.S.C. § 1391 for the counterclaim because Rebecca Scofield is a resident of Idaho and Attorney Wendy J. Olson, Attorney, Elijah M.

Watkins, and Attorney Cory M. Carone of Stoel Rives LLP operate in Boise, ID under 28 U.S.C. § 1391.

## IV. FACTUAL ALLEGATIONS

12.    Counterclaim Plaintiff Ashley Guillard incorporates by reference her responses to all paragraphs of this Complaint as if set forth in full herein.

13.    On November 13, 2022, four University of Idaho Students: Ethan Chapin, Kaylee Goncalves, Xana Kernodle and Madison Mogen were found brutally murdered in Moscow Idaho. Their tragic murders were the result of a plan, initiated and executed by Rebecca Scofield.

14.    To execute the plan Rebecca Scofield hired men to help her plan and carry out the murders. She promised them financial security and a better collegiate experience at The University of Idaho in exchange.

15.    Rebecca Scofield's motive for conspiring to murder the four University of Idaho Students was to keep her secret affair with Kaylee Goncalves, who was a student at the time, from being exposed.

16.    Rebecca Scofield has pervasive power and influence due to her prominence at the University of Idaho, Moscow Idaho, and surrounding areas. Her PhD from Harvard University and extreme level of ambition (as exhibited on her extensive twelve-page resume on the University of Idaho's website and her website RebeccaScofield.com), details some of the work she's done as a public figure and leader in Moscow Idaho[1].

17.    Rebecca Scofield valued her career and prominence at the University of Idaho, Moscow Idaho, and surrounding areas. She was also married.

---

[1]https://www.uidaho.edu/~/media/UIdaho-Responsive/Files/class/departments/history/faculty-staff-cvs/Rebecca-Scofield-CV.ashx

18.     Kaylee Goncalves was a popular student at the University of Idaho and Moscow Idaho area. Her popularity grew as her success grew. Before her untimely death, her new career and Range Rover added to her popularity.

19.     Rebecca Scofield feared that the attention Kaylee Goncalves got would cause their inappropriate relationship to be exposed. She feared she would lose the prominence she earned, the career that she built and the future she was creating. That hear led her to have Kaylee Goncalves killed.

20.     Kaylee Goncalves and Rebecca Scofield met at the University of Idaho when Kaylee Goncalves sought mentorship for personal and professional growth. During that time, they developed a personal relationship.

21.     Rebecca Scofield desired to be with a woman but never explored that desire for fear of ridicule. Rebecca Scofield convinced Kaylee Goncalves to experiment by being in a secret same-sex relationship with her.

22.     Rebecca Scofield convinced Kaylee Goncalves to keep their same sex relationship a secret due to fear of ridicule for dating a student. Only close friends of Kaylee Goncalves had knowledge of the relationship.

23.     Rebecca Scofield documented the same-sex relationship experience in her book previously titled, The Experience. Her previous publications were about other people's experience with being gay. The Experience was about her own.

24.     The experience lasted for at least a year. Kaylee Goncalves grew to have deep feelings for Rebecca Scofield. During the relationship Rebecca Scofield promised Kaylee Goncalves that at the end of the experiment she would garner the courage to live her life openly

as a lesbian and leave her husband. She never took that courageous step; choosing to break up and remain married instead.

25.    The relationship took a turn for the worse when Kaylee Goncalves was about to graduate college and move to Texas. She was no longer convinced to be in a secret love affair with married woman Rebecca Scofield. She threatened to expose their love affair to Rebecca Scofield's husband.

26.    After they broke up Rebecca Scofield began to stalk Kaylee Goncalves in person and on social media to keep an eye on her and to make sure her secret affair remained a secret. Kaylee Goncalves' social media content alarmed Rebecca Scofield. She began to have anxiety and paranoia about being outed by Kaylee Goncalves or her friends.

27.    Rebecca Scofield decided to relieve herself of the fear, worry and anxiety that Kaylee Goncalves was going to expose her secrets of being a lesbian, having an affair, and dating a female student. She decided killing Kaylee Goncalves would silence her for good.

28.    During the planning phase of the murder conspiracy Rebecca Scofield watched Kaylee Goncalves in person and on social media. She decided Kaylee Goncalves and her close friends were a threat to her livelihood and secrets being exposed. She added Madison Mogen and the students Kaylee Goncalves frequented with to the list of those to kill.

29.    Rebecca Scofield hired help to help her plan and execute the murders. She offered financial, collegiate and career incentives as a reward, using her prominence at the University of Idaho as a tool. Her offer was accepted.

30.    During November 2022, Kaylee Goncalves visited Moscow Idaho to visit her friends before moving to Texas. Rebecca Scofield and her hired help took this opportunity to execute their plan to murder Kaylee Goncalves and her friends.

31.     On approximately November 13, 2022, Kaylee Goncalves, Xana Kernodle, Madison Mogen, and Ethan Chapin were murdered as initiated, planned, and executed by Rebecca Scofield.

32.     Since the year of 2021 Ashley Guillard used her social media platform and books to answer questions related to a variety of unsolved murders; at random. She used her intuitive abilities and spiritual acuity to get insight on unsolved cases.

33.     During the month of November 2022, A TikTok user asked Ashley Guillard to get insight into the murders of the four University of Idaho students. Ashley Guillard agreed. She used her spiritual acuity and investigative skills to get insight into the murders.

34.     During Ashley Guillard's spiritual research, she was intuitively led to the University of Idaho History Department. Using logic, Ashley Guillard viewed the University of Idaho History Department's Webpage. History Department Professors and Associates were listed.

35.     During the spiritual investigation, Ashley Guillard spiritually inquired into each person listed on the History Department's webpage seeking their role in the murder of the four University of Idaho students. Nearly all the insight uncovered for each person was about their reaction to the murders, except for Rebecca Scofield.

36.     The insight for Rebecca Scofield was distinctly different from that of the other History Professors and Associates. The insight for Rebecca Scofield revealed that she was in a relationship with Kaylee Goncalves that broke up and that she initiated the murders, planned the murders, and hired help to carry the plan out.

37.     Ashley Guillard sought more information and spiritual insight to be sure of her findings. The answers didn't change. When she was one hundred percent sure of the message,

she revealed her findings on TikTok. She also sent the information she uncovered to the Moscow Police Department's tip line: email address: tipline@ci.moscow.id.us.

38.     Ashley Guillard posted over one hundred TikTok videos of her findings. Rebecca Scofield was informed about Ashley Guillard's social media content.

39.     Rebecca Scofield strategized with Attorney Wendy Olson to silence Ashley Guillard to evade suspicion, obstruct justice, and to avoid criminal investigation into her role in the murders of the four University of Idaho Students: Ethan Chapin, Kaylee Goncalves, Xana Kernodle and Madison Mogen.

40.     On December 8, 2022, Rebecca Scofield and Attorney Wendy Olson asked Ashley Guillard in a demand letter to stop posting her content about Rebecca Scofield's connection to the murder of the four University of Idaho Students. Falsely claiming the information to be false.

41.     Ashley Guillard published that she did not have to stop posting her content about Rebecca Scofield's connection to the murders because she is protected by the Substantial Truth Doctrine and the broad parameters of the First Amendment of the United States Constitution.

42.     On December 21, 2022, Rebecca Scofield with the help of Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous, perjurious claim alleging that Ashley Guillard defamed her with full knowledge that the statements Ashley Guillard made about her are substantially true. Despite being frivolous the claim sought approximately two million dollars in relief.

43.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed the perjurious claims to discredit Ashley Guillard statements about Rebecca Scofield's role in the murder of the of the four University of Idaho Students. The

claims against Ashley Guillard are in bad faith, lacking in fact and with the intent to harass, delay, embarrass and discredit Ashley Guillard.

44.     The claims against Ashley Guillard were filed with the intent to deprive her of the right to the freedom of speech.

45.     The claim was filed with the intent to obstruct criminal justice in the case of the murder of the four University of Idaho students by preventing suspicion of Rebecca Scofield's role in the murders.

46.     The claim has numerous perjurious statements. A perjurious statement that Rebecca Scofield didn't participate in the murders. A perjurious statement that Rebecca Scofield didn't know the students. A perjurious statement that Rebecca Scofield does not recall ever meeting any of the students. A perjurious statement that Rebecca Scofield didn't have a romantic relationship with Kaylee Goncalves. A perjurious statement that Rebecca Scofield didn't order the murder of the four students. A perjurious statement that Rebecca Scofield didn't hire a student to plan or carry out the murders. Several perjurious statement that Ashley Guillard made false accusations about Rebecca Scofield's role in the murder of the four students. A perjurious statement that Ashley Guillard decided to use the community's pain for her online self-promotion.  A perjurious statement that Ashley Guillard has continued to make false statements, knowing they are false.

47.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published false statements about Ashley Guillard with malice, without proof, without a reasonable inquiry into the legitimacy of the claims and without regard to the truth or falsity of the statements.

48.     Rebecca Scofield and Attorney Wendy J. Olson continued their plot to harass, delay, embarrass and discredit Ashley Guillard by publishing several false statements about Ashley Guillard in national and multi-national news media.

49.     Yahoo News quoted Wendy Olson statement, "Ms. Guillard has continued to make false statements, knowing they are false."

50.     Wendy J. Olson published a statement on Fox News Digital that was subsequently quoted on other media outlets stating, "The statements Ashley Guillard made about Professor Scofield are false, plain and simple."

51.     Attorney Wendy J. Olson made a statement on Fox News Digital that was subsequently quoted on other media outlets stating, "What's even worse is that these untrue statements create safety issues for the Professor and her family."

52.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard compounded the trauma that the families of the victims are experiencing.

53.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard revictimized the families of the slain students.

54.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard had no basis to make factual statements regarding any of the events that occurred in Idaho.

55.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard made false statements regarding Rebecca Scofield's involvement in the murder of the four University of Idaho students.

56.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard damaged Rebecca Scofield's reputation.

57.     Rebecca Scofield and Attorney Wendy J. Olson published a false statement in multi-national news media that Ashley Guillard undermined law enforcements efforts to solve the murder of the four University of Idaho Students.

58.     The statements were published with the purpose of defaming and embarrassing Ashley Guillard; and to evade suspicion and criminal investigation of Rebecca Scofield's role in the murder of the of the four University of Idaho Students.

59.      Wendy J. Olson and Rebecca Scofield published and disseminated the false statements about Ashley Guillard in a press release that was disseminated multi-nationally.

60.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone defamatory statements about Ashley Guillard were disseminated through media channels with multi-million viewers and readers to include ABC Universal News, New York Post, CBS News, Time Magazine, CNN, 20/20 Inside Edition, Good Morning America, Baller Alert, Washington Post, TMZ, NBC News, MSN, FOX, Rolling Stone, Black Enterprise, Yahoo News, Daily Nation Pakistan, ABC7 Chicago, ABC 7 News, ABC 8 News, Houston Chronicle, Inside Edition, The Daily Beast, Insider.com, The Argonaut University of Idaho Student Newspaper, News Nation, The Independent UK, True Crime Network, Law & Crime, multiple YouTube Channels, Apple Podcasts, multiple TikTok pages, Twitter, Facebook user posts, Instagram user posts, Reddit User articles, and other social media videos, MEA WorldWide, The Wenatchee World, Sportskeeda, Mamas Uncut, Find Law, Daily Mail, King 5 News, 4 News Now, The Tab, Similar Worlds Website, FOX 5 San Diego, NBC New York, 6ABC, Pedestrian TV, Techno Trenz, Perez Hilton Website, Oregon Live, The Associated Press,

The Guardian, New York Daily News, Sandra Rose Website, E News, AOL, Moscow-Pullman Daily News, The SPORTSGRAIL website, Blavity News, Newsweek, 247newsaroundtheworld, The Hill, The U.S. Sun, Reason website, PIX11 News, NBC Right Now, WREG News Channel 3, WREG News Website, KTLA 5 NewsChannel, DC News Now, Lawyer "Pegleg Finance" YouTube Channel, TikTok, Instagram and many more.

61.     Ashley Guillard was presented in a false light. Instead of being perceived as someone who used her spiritual acuity to make a positive difference in the world and to help solve the case of the murder of the four University of Idaho students, she was perceived as a liar who used the tragedy for personal gain.

62.     Ashley Guillard continues to be harassed, cyber-bullied and humiliated online by thousands of social media users because of the widespread defamatory statements Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published about her.

63.     Ashley Guillard's integrity, spiritual practice, reputation, and livelihood was compromised by Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone to meet their goal of evading suspicion of Rebecca Scofield's role in the murder of the four students.

64.     Ashley Guillard was deprived of a good reputation, business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory statements about her.

65.      Ashley Guillard received death threats to her email, website, and social media channels. She received unwanted negative calls and emails. She received tens of thousands of negative comments on her social media webpages and message inboxes.

## V.

## FIRST COUNTERCLAIM FOR RELIEF

## (DEFAMATION 28 U.S. CODE § 4101 - PRESS RELEASES AND FALSE STATEMENTS ALLEGING THAT ASHLEY GUILLARD MADE FALSE STATEMENTS REGARDING REBECCA SCOFIELD'S ROLE IN THE MURDER OF THE FOUR UNIVERSITY OF IDAHO STUDENTS KNOWING THEY ARE FALSE)

66.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

67.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

68.     Pursuant to 28 U.S.C. § 4101 (1) The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

69.     Rebecca Scofield initiated, planned, hired the murderer, and executed the murder of the four University of Idaho Students: Ethan Chapin, Kaylee Goncalves, Xana Kernodle and Madison Mogen.

70.     After the hidden details of her involvement in the murders were exposed by Ashley Guillard, Rebecca Scofield and Attorney Wendy Olson published defamatory statements in multi-national news media outlets about Ashley Guillard. Rebecca Scofield and Attorney Wendy Olson defamed Ashley Guillard as a strategy to destroy Ashley Guillard's reputation and prevent Rebecca Scofield from being suspected or investigated for the murder of the four University of Idaho students.

71.     The defamatory statements falsely portrayed Ashley Guillard as a TikTok user who falsely accused Professor Scofield of the murder of the four University of Idaho students to use the tragedy and the community's pain to gain a following. The defamatory statements falsely portrayed Ashley Guillard as a liar who selfishly makes false statements about horrific tragedies knowing they are false. The defamatory statements falsely portrayed Ashley Guillard as ruining Professor Scofield's reputation.

72.     The defamatory statements about Ashley Guillard were published to over one hundred news media outlets, printed on online newspapers and television broadcasted across multiple news media channels to include Time Magazine, Good Morning America, CNN, Inside Edition, Fox News, E-TV and much more.

73.     Rebecca Scofield and Attorney Wendy Olson published the defamatory statements about Ashley Guillard as statements of fact, knowing they are false, and without any regard to the negative impact to her life.

74.     Rebecca Scofield knows the statements she published about Ashley Guillard are false because she knows that Ashley Guillard was telling the truth about her role in the murder of the four University of Idaho Students.

75.     Attorney Wendy Olson made no reasonable inquiry to determine the truth of the matter. She intentionally defamed Ashley Guillard as a tactic to degrade, discredit, humiliate, and silence Ashley Guillard; and to prevent Rebecca Scofield from being suspected or investigated for the murder of the four University of Idaho students.

76.     Defamation to a defendant's character in the news media is not a legal remedy for alleged defamation to a plaintiff. Attorney Wendy Olson, with over sixteen years of experience

as a United States Attorney, has the knowledge and experience to make a public statement without defaming Ashley Guillard.

77.     Attorney Wendy Olson published defamatory statements to the news media about Ashley Guillard with malice; to destroy Ashley Guillard in the court of public opinion.

78.     Attorney Wendy Olson's defamatory statements about Ashley Guillard are not protected by Attorney Immunity. Making public defamatory statements about a defendant and spreading false information on news media about a defendant is not an attorney duty prescribed by law or that is protected by immunity or absolute privilege.

79.     Attorney Wendy Olson made those statements with malice, outside the setting of litigation, with the sole purpose of defaming, harassing, discrediting, and intimidating Ashley Guillard out of her right to the freedom of speech guaranteed by the First Amendment of the United States Constitution.

80.     Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the defamatory statements the counterclaim defendants published about her.

81.     Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory statements about her.

82.     Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

83.     The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

84.     Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## SECOND COUNTERCLAIM FOR RELIEF

## (DEFAMATION 28 U.S. CODE § 4101 – DEFAMATORY LAWSUIT ALLEGING THAT ASHLEY GUILLARD MADE FALSE STATEMENTS REGARDING REBECCA SCOFIELD'S ROLE IN THE MURDER OF THE FOUR UNIVERSITY OF IDAHO STUDENTS KNOWING THEY ARE FALSE)

85.      Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

86.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

87.     Rule 11(b)  of the Federal Rules of Civil Procedure requires that an attorney presenting to the court a pleading, written motion, or other paper, whether by signing, filing, submitting, or later advocating it, certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity

for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

88.     Pursuant to 28 U.S.C. § 4101 (1) The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person.

89.     On December 21, 2021, Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone violated Rule 11(b) of the Federal Rules of Civil Procedure in its entirety. The counterclaim defendants filed a frivolous lawsuit against Ashley Guillard.

90.     The mere existence of the claim is defamatory by nature because it violates Rule 11(b)(1) of the Federal Rules of Civil Procedure. The claim includes factual allegations and claims for relief that were false; published with the intent to silence, harass, delay, embarrass and discredit Ashley Guillard.

91.     The claim is defamatory by nature because it violates Rule 11(b)(2) of the Federal Rules of Civil Procedure. The claim is frivolous and unconstitutional. Rebecca Scofield caused the murder of the four University of Idaho Students by initiating their murders, planning their murders, hiring the murderer, and ensuring the execution of the murders. There is no legal claim that allows for a person to commit murder and then sue for being accused of murder. The claim is against the law: frivolous, perjurious, an obstruction of justice and an attempted violation of the First Amendment of the United States Constitution.

92.     The claim is defamatory by nature because it violates Rule 11(b)(3) of the Federal Rules of Civil Procedure. The contentions are not factual and have no evidentiary support. With an opportunity for discovery, the defendant, Ashley Guillard, will have an opportunity to gather evidentiary support for her accusations about Rebecca Scofield's role in the murders. To prevent the opportunity for discovery, the counterclaim defendants relentlessly sought a default judgment for approximately two million dollars against Ashley Guillard.

93.     The claim is defamatory by nature because it violates Rule 11(b)(4) of the Federal Rules of Civil Procedure. The counterclaim defendants made false statements of fact about Rebecca Scofield's relationship with the students and involvement in their murders. The statements were published as facts, not beliefs or opinions.

94.     The claim is defamatory by nature because it publishes false statements as statements of fact. It defames Ashley Guillard's integrity, reputation, and spiritual acuity; and falsely portrays Rebecca Scofield as an innocent victim.

95.     The claim portrays Ashley Guillard as someone who decided to use the community's pain for her online self-promotion. That statement is false and defamatory. The truth is Ashley Guillard used her spiritual acuity to help solve the case of the murder of the four University of Idaho students.

96.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone portrays Ashley Guillard as someone who has continued to make false statements, knowing they are false. That statement is false and defamatory. Ashley Guillard did not make any statements about Rebecca Scofield that weren't substantially true.

97.     The claim has numerous perjurious statements. A perjurious statement that Rebecca Scofield didn't participate in the murders. A perjurious statement that Rebecca Scofield

didn't know the students. A perjurious statement that Rebecca Scofield does not recall ever meeting any of the students. A perjurious statement that Rebecca Scofield didn't have a romantic relationship with Kaylee Goncalves. A perjurious statement that Rebecca Scofield didn't order the murder of the four students. A perjurious statement that Rebecca Scofield didn't hire a student to plan or carry out the murders. Several perjurious statement that Ashley Guillard made false accusations about Rebecca Scofield's role in the murder of the four students.

98.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published those false statements with malice, without proof and without regard to the truth or falsity of the statements; to evade suspicion of Rebecca Scofield in the murder of the four University of Idaho Students.

99.     As a result of the frivolous claim Ashley Guillard is forced to fight for her rights, the right to free speech, and the right to an impartial tribunal; that are inalienable to her as a United States Citizen.

100.     Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the defamatory and false statement's spread by Rebecca Scofield and Attorney Wendy Olson.

101.     Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

102.     Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory

statements about her. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

103.     Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements, dismissal of the frivolous claim and punitive damages due to the egregiousness of the counter-claim defendants' actions.

### THIRD COUNTERCLAIM FOR RELIEF

### 42 U.S. CODE § 1985 (2) OBSTRUCTING JUSTICE- CONSPIRACY TO INTERFERE WITH THE RIGHT TO DUE PROCESS AND THE FREEDOM OF SPEECH

104.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

105.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

106.     The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

107.     During the month of December 2021 Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone conspired to deprive Ashley Guillard of her Constitutional right to free speech guaranteed by the First Amendment of the United States Constitution.

108.    The counterclaim defendants conspired to deprive Ashley Guillard of the freedom to speak freely about Rebecca Scofield's role in the murder of the four University of Idaho students to prevent the truth from being exposed.

109.    The defendants executed their conspiracy to deprive Ashley Guillard of her first amendment right to free speech on December 21, 2021. Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous perjurious lawsuit (Scofield v Guillard case no. 3:22-cv-00521-REP) in United States District Court for the District of Idaho, against Ashley Guillard, publishing false statements as facts to conjure up a claim of defamation.

110.    Pursuant to 28 U.S.C. § 4101(1) defamation means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false.

111.    The statements Ashley Guillard made about Rebecca Scofield, that she initiated, planned, implemented, and hired help to execute the murder of the four University of Idaho students to conceal her secret desire for women and affair with Kaylee Goncalves; are substantially true.

112.    It is not lawful to deprive Ashley Guillard of the constitutional right to free speech guaranteed by the First Amendment of the United States Constitution for publishing substantially true statements.

113.    Filing perjurious claims are against the law. Pursuant to 18 USC §1622 whoever procures another to commit any perjury is guilty of subornation of perjury and shall be fined under this title or imprisoned not more than five years, or both. Rebecca Scofield procured Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone to commit perjury and to submit a frivolous claim to United States District Court for the District of Idaho.

114.     Pursuant to 18 USC §1621 Whoever (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

115.     Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone were required by law, Rule 11 of the FRCP, to conduct a reasonable inquiry of the legitimacy of their claims before filing it with the court to avoid frivolous claims and perjury. Taking the word of an alleged murderer is not a reasonable inquiry.

116.     Taking the word of an alleged murderer is also not a belief. It is ignorance. It is a fundamental legal principle in the United States that ignorance of the law is no defense. If ignorance were accepted as an excuse, any person charged with a criminal offense could claim ignorance to avoid the consequences.

117.     Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone did not conduct a reasonable inquiry as required by Rule 11 of the FRCP into the truth or falsity of the statements Ashley Guillard made about Rebecca Scofield. They collectively accepted Rebecca Scofield's word as fact without investigation or reasonable inquiry.

118.    Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone were negligent and failed to exercise due diligence before submitting a frivolous claim against Ashley Guillard. Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone were legally required to attest to the truthfulness of the claims they collectively published under oath against Ashley Guillard. They attested to the truthfulness of their claims without regard to due diligence and collectively committed perjury with Rebecca Scofield; and collectively conspired against Ashley Guillard's First and Fourteenth Amendment rights guaranteed by the United States Constitution.

119.    The perjurious claims against Ashley Guillard not only defamed her and caused injury but also impeded upon her right to an impartial tribunal guaranteed by the Fourteenth Amendment of the United States Constitution. The tribunal, case no. 3:22-cv-00521-REP filed in United States District Court for The District of Idaho, is unfair by nature due to the perjurious statements that make the claim possible when presented as facts. Without the false statements, the counterclaim defendants have no cause of action against Ashley Guillard.

120.    If the conspiracy against Ashley Guillard's right to free speech is successful as the defendants intends (demonstrated by docket no. 10 plaintiff's motion for default judgement against Ashley Guillard), Ashley Guillard would be deprived of the right to an impartial tribunal pursuant to the Fourteenth Amendment of the U.S. Constitution and the right to the freedom speech pursuant to the First Amendment of the United States Constitution.

121.    Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the conspiracy to deprive her of her constitutional right to the freedom of speech and due process.

122.     Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

123.     Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

124.     Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## FOURTH COUNTERCLAIM FOR RELIEF

## 42 U.S. CODE § 1986 - ACTION FOR NEGLECT TO PREVENT 42 U.S. CODE § 1985 (2)- CONSPIRACY TO INTERFERE WITH THE RIGHT TO DUE PROCESS AND THE FREEDOM OF SPEECH

125.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

126.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

127.     Pursuant to 42 U.S. Code § 1986: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party

injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

128.    The defendants conspired to prevent Ashley Guillard of the right to free speech and the right to due process as explained in all prior paragraphs of this counterclaim.

129.    At any time before the commission of the conspiracy to deprive Ashley Guillard of the right to free speech and an impartial tribunal, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone could've prevented the perjurious claims from being filed. They were legally required by Rule 11 of FRCP to conduct a reasonable inquiry into the allegations that Ashley Guillard made false statements about Rebecca Scofield's role in the murder of the four University of Idaho Students knowing they were false before filing a legal claim under oath.

130.    A reasonable inquiry would've revealed the fact that the statements Ashley Guillard made were not false or at the very least were not proven to be false. The counterclaim defendants used Rebecca Scofield's alibi that she was not in Moscow Idaho when the four University of Idaho students were being murdered and that she was driving home from Portland Oregon after law enforcement officers discovered the murders. With over forty years of collective experience practicing law. It is reasonable to believe that the attorney's know that Rebecca Scofield did not have to be in Moscow Idaho for someone that she hired to carry out the murder of the four students. The alibi is also incomplete with key information missing like the date and time Scofield booked the hotel, the date and time she checked into the hotel, how and

when she traveled to Oregon, and who she was with. The attorney's either intentionally or

negligently published an irrelevant alibi. Altogether they did not abide by Rule 11 of the FRCP.

131.    Being psychic and receiving information by intuitive means does not equate to

falsity. A reasonable inquiry in the form of a Google search, would've revealed the fact that

psychics have been used in police investigations as published by the United States Department of

Justice[2]. Pursuant to the United States Department of Justice Psychics includes clairvoyants,

prophesiers, telepaths, palmists, numerologists, graphologists, and metaphysicians. Both

psychics and detectives base their work on intuition to some extent. Dorothy Allison of Nutley,

N.J. (a known psychic) has assisted police in more than 4,000 investigations and has received

many letters from law enforcement agencies describing how she helped them using only the

victims date, place of birth and location last seen[3]. The article was written thirty years ago. Ergo,

psychics have been used in police work for decades. The counterclaim defendant's belief or

religious connotations about psychic abilities are irrelevant. A reasonable inquiry reveals that the

history of the usefulness of psychics goes beyond their religion or beliefs and has been used in

police work for decades.

132.    It was disingenuous for the counterclaim defendants to act as if they don't know

how a psychic receives information. A reasonable inquiry in the form of a basic search engine

inquiry reveals the definition of psychic intuition, tarot cards and its multi-century history. A

reasonable inquiry into the basic definition of a psychic negates the statement that Ashley

Guillard has never been to Idaho and had no basis to make truthful statements about the events

---

[2] https://www.ojp.gov/ncjrs/virtual-library/abstracts/psychics-and-police-work
[3] https://www.ojp.gov/ncjrs/virtual-library/abstracts/psychics-and-police-work

that occurred there. It is basic information that psychics do not have to be at a place or event to receive truthful information about said place or event.

133.    It was disingenuous for the counterclaim defendants to allege that Ashley Guillard should believe a random comment from a social media user over her own mental and spiritual faculties.

134.    It was disingenuous for the counterclaim defendants to allege that Ashley Guillard should believe alleged murderer Rebecca Scofield (whom had not yet been properly investigated or caught) over her own mental and spiritual faculties.

135.    A reasonable inquiry, in the form of asking Ashley Guillard by email or phone call, would've revealed the fact that the statements Ashley Guillard made were not made with malice or ill intent. An email or phone call to Ashley Guillard would've revealed the fact that Ashley Guillard believed the statements she published about Rebecca Scofield. Additionally, if the counterclaim defendants watched the videos that Ashley Guillard posted regarding Rebecca Scofield's role and reason for initiating, planning, and executing the murder of the four University of Idaho students it would be apparent that Ashley Guillard believes everything she posted. None of the counterclaim defendants made any attempts to call or email Ashley Guillard to inquire into the reason for the allegations she made about Rebecca Scofield. They only made demands for Ashley Guillard to cease her freedom of speech to prevent Rebecca Scofield from being properly investigated.

136.    Each counterclaim defendant had the wherewithal to cease the action from being filed and to prevent the perjurious statements about Ashley Guillard from being made. None of them conducted bare minimum due diligence. None of them prevented the perjurious claims from being made. All of them conspired to deprive Ashley Guillard of the right to free speech,

equal protection of the laws and the right to fair judicial proceedings which includes protection from frivolous claims.

137.    Rebecca Scofield initiated, planned, and hired men to murder the four University of Idaho students. To have a legal claim against Ashley Guillard she had to lie about her involvement. Otherwise, she would have no cause of action. A claim that is only lawfully allowed due to the perjurious statements impedes upon judicial fairness. Yet the counterclaim defendants negligently filed the claim without due care or regard to judicial fairness for Ashley Guillard.

138.    The mere acceptance and existence of the legal claims against Ashley Guillard is already a deprivation of her right to due process which includes an impartial tribunal. The right to an impartial tribunal is guaranteed by Section 1 of The Fourteenth Amendment of the United States Constitution. It requires that no State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. A fair and just proceeding in this case would be a prompt dismissal or rejection of the claims made against Ashley Guillard due to no cause of action.

139.    The unlawful careless and negligent actions of the counterclaim defendants impeded upon the right of Ashley Guillard to be treated just and fair. The perjurious statements the counterclaim defendants filed prevented the court from rejecting the claims made against Ashley Guillard.

140.    Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the conspiracy to deprive her of her constitutional right to the freedom of speech and due process.

141.    Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

142.    Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

143.    Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## FIFTH COUNTERCLAIM FOR RELIEF

## 42 U.S.C. SEC 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS- DEPRIVATION OF THE RIGHT TO DUE PROCESS THAT'S GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

144.    Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

145.    Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

146.    The pertinent aspect of 42 U.S. Code § 1983 requires that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

147.    The right to an impartial tribunal is guaranteed by Section 1 of The Fourteenth Amendment of the United States Constitution. It requires that no State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

148.    The counterclaim defendants committed perjury to conjure up defamation claims against Ashley Guillard. They then filed the frivolous claim Scofield v Guillard case no. 3:22-cv-00521-REP in the United States District Court in the District of Idaho.

149.    The frivolous complaints the counterclaim defendants filed against Ashley Guillard were initiated with malicious intent to use and abuse the formal complaint process to deprive Ashley Guillard of the right to free speech and the right to due process.

150.    Factual allegations in a legal document are taken as fact. The claim was not rejected by the United States District Court in the District of Idaho due to the perjurious statements filed and published by the counterclaim defendants.

151.    Due to the frivolous perjurious claims against her Ashley Guillard is forced to defend her right to free speech to prevent its deprivation.

152.    Due to the frivolous perjurious claims against her Ashley Guillard is forced to participate in legal proceedings that are in bad faith and illegal.

153.    Ashley Guillard was deprived of equal protection of the laws and an impartial tribunal because the counterclaim defendants perjured legal claims against her were taken as fact and accepted. Had the counterclaim defendants not made false statements in the factual

allegations and legal claims against Ashley Guillard there would be no cause of action and no legal claims against her.

154.    The counterclaim defendants caused Ashley Guillard to be subjected to the deprivation of her right to free speech guaranteed to her by the First Amendment of the United States Constitution.

155.    The counterclaim defendants caused Ashley Guillard to be deprived of her right to an impartial tribunal because without the perjurious claims the lawsuit wouldn't exist due to no cause of action.

156.    Ashley Guillard suffered extreme emotional distress due to the added responsibilities the frivolous claim caused her.

157.    Ashley Guillard suffered extreme emotional distress due to the backlash from social media users, family, friends, associates, and strangers that believed the false allegations made about her in the frivolous claim Scofield v Guillard case no. 3:22-cv-00521-REP.

158.    Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the conspiracy to deprive her of her constitutional right to the freedom of speech and due process. She was multi-nationally humiliated.

159.    Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

160.    Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

161.     Ashley Guillard seeks recovery of financial damages due to loss of income and potential income, financial relief for emotional distress, financial relief for multi-national humiliation, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## SIXTH COUNTERCLAIM FOR RELIEF

## MALICIOUS PROSECUTION FRIVOLOUS CLAIM

162.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

163.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

164.     A claim is frivolous when the claim lacks any arguable basis either in law or in fact Neitze v. Williams, 490 U.S. 319, 325 (1989). It can be in the form of a lawsuit, motion or appeal that is intended to harass, delay, or embarrass the opposition.

165.     On December 21, 2022, Rebecca Scofield with the help of Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous claim, Scofield v Guillard case no. 3:22-cv-00521-REP, alleging that Ashley Guillard defamed Rebecca Scofield with full knowledge that the statements Ashley Guillard made about her are substantially true. The counterclaim defendants perjured the factual allegations and legal claims to develop a cause of action.

166.     The claim has numerous perjurious statements. A perjurious statement that Rebecca Scofield didn't participate in the murder of the four University of Idaho students. A perjurious statement that Rebecca Scofield didn't know the students. A perjurious statement that Rebecca Scofield does not recall ever meeting any of the students. A perjurious statement that

Rebecca Scofield didn't have a romantic relationship with Kaylee Goncalves. A perjurious statement that Rebecca Scofield didn't order the murder of the four students. A perjurious statement that Rebecca Scofield didn't hire a student to plan or carry out the murders. Several perjurious statement that Ashley Guillard made false accusations about Rebecca Scofield's role in the murder of the four students.

167.    Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published in a legal document under oath that Ashley Guillard decided to use the community's pain for her online self-promotion. That statement is false. Ashley Guillard used her spiritual acuity to get details regarding the murder of the four students.

168.    Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published in the legal document under oath that Ashley Guillard has continued to make false statements, knowing they are false. That allegation is frivolous. The statements Ashley Guillard published about Rebecca Scofield are substantially true.

169.    Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published those false statements with malice, without proof and without regard to the truth or falsity of the statements.

170.    After publishing false statements as fact under oath and filing the frivolous claim Scofield v Guillard case no. 3:22-cv-00521-REP the counterclaim defendants pushed out a multi-national press release to sensationalize the defamatory frivolous complaint.

171.    The claims against Ashley Guillard are in bad faith, lacking in fact and with the intent to harass, delay, embarrass and discredit Ashley Guillard; and to retaliate against her for speaking up for the four University of Idaho students.

172.    The claims against Ashley Guillard were filed with the intent to obstruct criminal justice in the case of the murder of the four University of Idaho students by preventing suspicion of Rebecca Scofield and avoiding criminal investigation into her role in the murders.

173.    The claims against Ashley Guillard were filed with the intent to deprive Ashley Guillard of her First Amendment Constitutional Right to the Freedom of Speech; under the color of the law.

174.    As intended by the counterclaim defendants the frivolous claim generated multi-national media attention promulgating the false narrative that Rebecca Scofield is a victim of slander. The truth is Rebecca Scofield is not a victim of slander; she is the initiator, planner, and executor of the murder of the four University of Idaho students.

175.    As intended by the counterclaim defendants, Ashley Guillard was harassed and cyber bullied because of the frivolous claims the counterclaim defendants filed against her.

176.    As intended by the counterclaim defendants, Ashley Guillard was humiliated, embarrassed, misrepresented and overall defamed multi-nationally.

177.    As intended by the counterclaim defendants, Ashley Guillard's reputation to include her spiritual acuity, integrity, character, humanitarian efforts and spiritual practice was ruined due to the frivolous claim filed against her being assumed as legitimate by multi-national audiences.

178.    As intended by the counterclaim defendants, Ashley Guillard was frustrated due to being defamed, harassed, and forced to expend time, energy, and financial resources to have to fight the false claims for her inalienable constitutional rights.

179.    As intended by the counterclaim defendants the frivolous claim generated multi-national media attention promulgating the false narrative that Ashley Guillard falsely accused

Rebecca Scofield of being responsible for the murder of the four University of Idaho students. The truth is Ashley Guillard used her spiritual acuity to make a positive difference in the world and to help solve the murder of the four students. The allegations Ashley Guillard made about Rebecca Scofield's motive and involvement are substantially true.

180.    Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the defamatory and false statement's spread by Rebecca Scofield and Attorney Wendy Olson.

181.    Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

182.    Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory statements about her. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

183.    Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## SEVENTH COUNTERCLAIM FOR RELIEF

## MALICIOUS PROSECUTION FRIVOLOUS CLAIM

184.    Counterclaim Plaintiff Ashley Guillard incorporates by reference her responses to all paragraphs of this Complaint as if set forth in full herein.

185.    Counterclaim Plaintiff Ashley Guillard incorporates by reference all relevant rights defined by the Constitution, federal statutes, and interpretive case law.

186.    A claim is frivolous when the claim lacks any arguable basis either in law or in fact Neitze v. Williams, 490 U.S. 319, 325 (1989). It can be in the form of a lawsuit, motion or appeal that is intended to harass, delay, embarrass or impede upon justice for the opposition.

187.    Pursuant to 28 U.S. Code § 1391 (1-3) A civil action may be brought in a judicial district in which any defendant resides; or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

188.    A substantial part of the events giving rise to the false claims of defamation happened in Houston Texas where defendant Ashley Guillard resides. Ashley Guillard posted the videos about Rebecca Scofield's involvement in the murders on TikTok social media platform from the privacy of her home in Houston Texas.

189.    The murder of the four University of Idaho Students is not the cause of the civil action; alleged defamation of character that took place online in Houston Texas is.

190.    If the allegations in the claim Scofield v Guillard case no. 3:22-cv-00521-REP were factual, which they are not because the entire claim is fabricated, disingenuous, perjurious, and false, the proper venue would have been United States District Court for the Southern District of Texas where Ashley Guillard resides and where the videos were posted.

191.    Filing the claim Scofield v Guillard case no. 3:22-cv-00521-REP in United States District Court for the District of Idaho due to the tragic event of the murder of the four

University of Idaho students occurring in Moscow Idaho renders the lawsuit frivolous due to the improper venue, because the murder of the students is not the cause of action.

192.    Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone has over forty years of combined experience as United States Attorneys. Choosing the proper venue is rudimentary for them. Choosing the improper venue was not a matter of ignorance but a matter of strategy.

193.    Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed Scofield v Guillard case no. 3:22-cv-00521-REP in United States District Court for the District of Idaho erroneously for the sole purpose of impeding upon fair judicial proceedings for Ashley Guillard by creating judicial conditions favorable for Rebecca Scofield and prejudiced for Ashley Guillard.

194.    After filing the claims in the improper venue and demanding a trial by jury the counterclaim defendants issued a press release to penetrate the minds of the citizens of the state of Idaho and nationally with the false narrative that Ashley Guillard falsely accused Professor Scofield of murder to gain social media followers. The counterclaim defendants also used the multi-city news coverage in the state of Idaho and multi-national news coverage to promulgate the false narrative that Rebecca Scofield didn't know the students and had nothing to do with their murders.

195.    The false allegations published about Ashley Guillard in the claims and on multi-national news coverage is defamatory and perjurious. Even if the allegations were merited hearing the case in Idaho courts impedes upon judicial fairness for Ashley Guillard.

196.    To be legally qualified for jury service, an individual must reside primarily in the judicial district for one year. With the jury members being Idaho residents as well as Rebecca

Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone it unfairly creates a comradery amongst the plaintiff Rebecca Scofield and the jurors. If the false narrative was presented upon a jury of Idaho residents Ashley Guillard would be presented as an outsider Texas resident who unjustly accused their esteemed professor, Rebecca Scofield, of the murder of the four University of Idaho students.

197.    Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone have enough knowledge and experience to properly interpret 28 U.S.C. § 1391 to choose the proper venue. They choose to file the case Scofield v Guillard case no. 3:22-cv-00521-REP in the United States District Court for the District of Idaho in bad faith with the intent to impede upon judicial fairness for Ashley Guillard.

198.    Ashley Guillard seeks the dismissal of the plaintiff's claims in Scofield v Guillard case no. 3:22-cv-00521-REP.

199.    Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

200.    Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

201.    Ashley Guillard seeks recovery of financial damages due to loss of income and potential income, financial relief for emotional distress, financial relief for multi-national humiliation, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## EIGHTH COUNTERCLAIM FOR RELIEF

## 42 U.S. CODE § 1985 (2) OBSTRUCTING JUSTICE- CONSPIRACY TO INTERFERE

## WITH THE RIGHT TO DUE PROCESS (IMPROPER VENUE)

202.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

203.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

204.     The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

205.     Rebecca Scofield, Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone conspired to impede upon the due course of justice in the criminal case of the murder of the four University of Idaho students and the civil case of Scofield v Guillard case no. 3:22-cv-00521-REP to prevent Rebecca Scofield from being properly investigated and held liable for the murder of the four University of Idaho students.

206.     Rebecca Scofield, Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous claim Scofield v Guillard case no. 3:22-cv-00521-REP in the improper venue, United States District Court for the District of Idaho, with the intent

to deny Ashley Guillard due process which includes equal protection of the laws and an impartial
tribunal.

207.    Due to the perjurious claims being taken as fact, the United States District Court
for the District of Idaho accepted the complaint Scofield v Guillard case no. 3:22-cv-00521-REP.

208.    Pursuant to 28 U.S. Code § 1391 (1-3) A civil action may be brought in a judicial
district in which any defendant resides; or a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred; or if there is no district in which an action
may otherwise be brought as provided in this section, any judicial district in which any defendant
is subject to the court's personal jurisdiction with respect to such action.

209.    A substantial part of the events giving rise to the false claims of defamation
happened in Houston Texas where defendant Ashley Guillard resides. Ashley Guillard posted the
videos about Rebecca Scofield's involvement in the murders on TikTok social media platform
from the privacy of her home in Houston Texas.

210.    The murder of the four University of Idaho Students is not the cause of the civil
action; alleged defamation of character that took place online in Houston Texas is.

211.    If the allegations in the claim Scofield v Guillard case no. 3:22-cv-00521-REP
were factual, which they are not because the entire claim is fabricated, disingenuous, perjurious,
and false, the proper venue would have been United States District Court for the Southern
District of Texas where Ashley Guillard resides and where the videos were posted.

212.    Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M.
Carone has over forty years of combined experience as United States Attorneys. Choosing the
proper venue is rudimentary for them. Choosing the improper venue was not a matter of
ignorance but a matter of strategy.

213.     Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed Scofield v Guillard case no. 3:22-cv-00521-REP in United States District Court for the District of Idaho erroneously for the sole purpose of impeding upon fair judicial proceedings for Ashley Guillard by creating judicial conditions favorable for Rebecca Scofield and prejudiced for Ashley Guillard.

214.     After filing the claims in the improper venue and demanding a trial by jury the counterclaim defendants issued a press release to penetrate the minds of the citizens of the state of Idaho and nationally with the false narrative that Ashley Guillard falsely accused Professor Scofield of murder to gain social media followers. The counterclaim defendants also used the multi-city news coverage in the state of Idaho and multi-national news coverage to promulgate the false narrative that Rebecca Scofield didn't know the students and had nothing to do with their murders.

215.     The false allegations published about Ashley Guillard in the claims and on multi-national news coverage is defamatory and perjurious. Even if the allegations were merited hearing the case in Idaho courts impedes upon judicial fairness for Ashley Guillard.

216.     To be legally qualified for jury service, an individual must reside primarily in the judicial district for one year. With the jury members being Idaho residents as well as Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone it unfairly creates a comradery amongst the plaintiff Rebecca Scofield and the jurors. If the false narrative was presented upon a jury of Idaho residents Ashley Guillard would be presented as an outsider Texas resident who unjustly accused their esteemed professor, Rebecca Scofield, of the murder of the four University of Idaho students.

217.     Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone have enough knowledge and experience to properly interpret 28 U.S.C. § 1391 to choose the proper venue. They choose to file the case Scofield v Guillard case no. 3:22-cv-00521-REP in the United States District Court for the District of Idaho in bad faith with the intent to impede upon judicial fairness for Ashley Guillard.

218.     Ashley Guillard did not file a motion to dismiss the complaint because A motion to dismiss the complaint for improper venue prevents and prolongs Ashley Guillard from being able to file countercomplaints for the illegal deformities conducted by the counterclaim defendants. Additionally, a dismissal due to improper venue does not provide Ashley Guillard with the opportunity to defend herself against the perjurious and false allegations in the complaint.

219.     Ashley Guillard was forced to expend time, energy, mental and monetary resources to legally defend the false allegations in the claim in the improper venue; ergo subjecting her to defend rights that are typically inalienable (due process and the freedom of speech).

220.     Ashley Guillard experienced extreme mental and emotional anguish due to the egregiousness, multitude, and timing of the counterclaim defendant's behavior. The multi-national news coverage defaming Ashley Guillard's character, the defamatory complaint, massive cyber-bullying across Ashley Guillard's social media because of the defamatory complaint, death threats, and the frivolous claims occurred simultaneously.

221.     Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the conspiracy to deprive her of her constitutional right to the freedom of speech and due process.

222.     Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

223.     Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

224.     Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## NINTH COUNTERCLAIM FOR RELIEF

## 42 U.S. CODE § 1986 - ACTION FOR NEGLECT TO PREVENT 42 U.S. CODE § 1985 (2)- CONSPIRACY TO INTERFERE WITH THE RIGHT TO DUE PROCESS THAT'S GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

225.     Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

226.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

227.     42 U.S. Code § 1986: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same,

neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

228.    Rebecca Scofield, Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous claim Scofield v Guillard case no. 3:22-cv-00521-REP in the improper venue, United States District Court for the District of Idaho, with the intent to deny Ashley Guillard due process which includes equal protection of the laws and an impartial tribunal.

229.    The counterclaim defendants were bound by law to prevent the conspiracy to deprive Ashley Guillard of due process, an impartial tribunal, as United States Citizens and as United States Attorneys for the District of Idaho.

230.    Pursuant to Preamble [1] of the Idaho Rules of Professional Conduct: A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.

231.    Pursuant to Preamble [2] of the Idaho Rules of Professional Conduct: As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others.

232.    Pursuant to Preamble [4] of the Idaho Rules of Professional Conduct: In all professional functions a lawyer should be competent, prompt, and diligent.

233.    Pursuant to Preamble [5] of the Idaho Rules of Professional Conduct: A lawyer's conduct should conform to the requirements of the law, both in professional service to clients

and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.

234.    Pursuant to Preamble [9] of the Idaho Rules of Professional Conduct: it is a lawyer's obligation to preserve the integrity of the legal system's search for the truth while maintaining a professional, courteous, and civil attitude toward all persons involved in the process.

235.    Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone violated several facets of the Idaho Rules of Professional Conduct by intentionally filing Scofield v Guillard case no. 3:22-cv-00521-REP, a frivolous claim, in the improper venue and by conspiring to deprive Ashley Guillard of the constitutional right to due process to include an impartial tribunal.

236.    Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone were legally required to report the misconduct by Rule 8.3 (a) of the Idaho Rules of Professional Conduct: (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority.

237.    All the counterclaim defendants had the wherewithal to prevent the action, report the unethical conduct and cease participation. Yet all the counterclaim defendants failed to do so.

238.    Ashley Guillard suffered damages due to the intentional wrongful neglect of the counterclaim defendants.

239.   Ashley Guillard experienced extreme mental and emotional anguish due to the egregiousness, multitude, and timing of the counterclaim defendant's behavior. The multi-national news coverage defaming Ashley Guillard's character, the defamatory complaint, massive cyber-bullying across Ashley Guillard's social media because of the defamatory complaint, death threats, and the frivolous claims occurred simultaneously.

240.   Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the conspiracy to deprive her of her constitutional right to the freedom of speech and due process.

241.   Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

242.   Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

243.   Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements, dismissal of the frivolous claims against her and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## TENTH COUNTERCLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - FRIVOLOUS CLAIM

244.   Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

245.     Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

246.     The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. Hyatt, 943 S.W. 2d at 297.

247.     On December 21, 2022, Rebecca Scofield with the help of Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous claim, Scofield v Guillard case no. 3:22-cv-00521-REP, alleging that Ashley Guillard defamed Rebecca Scofield with full knowledge that the statements Ashley Guillard made about her are substantially true. The counterclaim defendants perjured the factual allegations and legal claims to develop a cause of action.

248.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published in the legal document under oath that Ashley Guillard decided to use the community's pain for her online self-promotion by falsely accusing Rebecca Scofield of causing the murder of the four University of Idaho students.

249.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published in the legal document under oath that Ashley Guillard has continued to make false statements, knowing they are false; to increase social media followers and to make a profit.

250.     Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published those false statements with malice, without proof and without regard to the truth or falsity of the statements.

251.     The claim Scofield v Guillard case no. 3:22-cv-00521-REP has numerous perjurious statements. A perjurious statement that Rebecca Scofield didn't participate in the murder of the four University of Idaho students. A perjurious statement that Rebecca Scofield didn't know the students. A perjurious statement that Rebecca Scofield does not recall ever meeting any of the students. A perjurious statement that Rebecca Scofield didn't have a romantic relationship with Kaylee Goncalves. A perjurious statement that Rebecca Scofield didn't order the murder of the four students. A perjurious statement that Rebecca Scofield didn't hire a student to plan or carry out the murders. Several perjurious statement that Ashley Guillard made false accusations about Rebecca Scofield's role in the murder of the four students

252.     The truth is the inverse, Rebecca Scofield initiated, planned, and executed the murder of the four students. She also hired the murderer to carry out the murders.

253.     The defamatory statements the counterclaim defendants published in the claim Scofield v Guillard case no. 3:22-cv-00521-REP were assumed as factual.

254.     As intended by the counterclaim defendants, Ashley Guillard was frustrated due to being defamed, harassed, and forced to expend time, energy, and financial resources to have to fight the false claims against her inalienable constitutional rights.

255.     As intended by the counterclaim defendants the frivolous claim generated multi-national media attention promulgating the false narrative that Ashley Guillard falsely accused Rebecca Scofield of being responsible for the murder of the four University of Idaho students.

256.     Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the defamatory and false statements in the frivolous Complaint.

257.    Ashley Guillard was harassed on social media, her website, email and by telephonic means nearly every day. She received tens of thousands of negative comments calling her crazy, issuing death threats, wishing that she'd get arrested, and more. She received unwanted negative calls and emails from strangers wishing her ill will.

258.    Ashley Guillard suffered loss of business, clients, income a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory statements about her. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

259.    Ashley Guillard seeks recovery of financial damages, financial relief for intentional infliction of emotional distress, retraction of all defamatory statements and punitive damages due to the egregiousness of the counter-claim defendants' actions.

## ELEVENTH COUNTERCLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## MULTI-NATIONAL PRESS RELEASE AND NEWS COVERAGE DEFAMING

## ASHLEY GUILLARD

260.    Counterclaim Plaintiff Ashley Guillard re-alleges and incorporates by reference all paragraphs of this entire Complaint as if set forth in full herein.

261.    Counterclaim Plaintiff Ashley Guillard incorporates by reference rights defined by the Constitution, federal statutes, and interpretive case law.

262.    The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. Hyatt, 943 S.W. 2d at 297.

263.    On December 21, 2022, Rebecca Scofield with the help of Attorney Wendy Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone filed a frivolous claim, Scofield v Guillard case no. 3:22-cv-00521-REP, alleging that Ashley Guillard defamed Rebecca Scofield with full knowledge that the statements Ashley Guillard made, that Rebecca Scofield initiated, planned, executed the murder of the four University of Idaho Students and hired the murderer, are substantially true. The counterclaim defendants perjured the factual allegations and legal claims to develop a cause of action.

264.    Rebecca Scofield and Attorney Wendy J. Olson submitted a press release to multi-national news outlets to sensationalize the frivolous complaint Scofield v Guillard case no. 3:22-cv-00521-REP and to spread the false statements about Ashley Guillard.

265.    Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone's defamatory statements about Ashley Guillard were disseminated through media channels with multi-million viewers and readers; to include: ABC Universal News, New York Post, CBS News, Time Magazine, CNN, 20/20 Inside Edition, Good Morning America, Baller Alert, Washington Post, TMZ, NBC News, MSN, FOX, Rolling Stone, Black Enterprise, Yahoo News, Daily Nation Pakistan, ABC7 Chicago, ABC 7 News, ABC 8 News, Houston Chronicle, Inside Edition, The Daily Beast, Insider.com, The Argonaut University of Idaho Student Newspaper, News Nation, The Independent UK, True Crime Network, Law & Crime Network, multiple YouTube Channels, Apple Podcasts, multiple TikTok pages, Twitter, Facebook user posts, Instagram user posts, Reddit User articles, and other social media videos, MEA Worldwide, The Wenatchee World, Sportskeeda, Mamas Uncut, Find Law, Daily Mail, King 5 News, 4 News Now, The Tab, Similar Worlds Website, FOX 5 San Diego, NBC New York, 6ABC, Pedestrian TV, Techno Trenz, Perez Hilton Website, Oregon Live, The Associated

Press, The Guardian, New York Daily News, Sandra Rose Website, E News, AOL, Moscow-Pullman Daily News, The SPORTSGRAIL website, Blavity News, Newsweek, 247newsaroundtheworld, The Hill, The U.S. Sun, Reason website, PIX11 News, NBC Right Now, WREG News Channel 3, WREG News Website, KTLA 5 NewsChannel, DC News Now, TikTok, Lawyer "Pegleg Finance" YouTube Channel, Instagram and many more.

266.     The filing of the frivolous claims against Ashley Guillard and the mass disseminated press release caused Ashley Guillard extreme emotional distress, mental distress, mental suffering, mental anguish, depression, shame, humiliation, shock, embarrassment, grief, anxiety, and fear.

267.     Ashley Guillard suffered a loss of enjoyment of life. Ashley Guillard typically travels on New Year's Eve (NYE) as she did NYE 2021. Instead, NYE 2022, she chose to stay inside for fear of her life, arguments, and embarrassment.

268.     Ashley Guillard suffered mental anguish due to the potential harm caused by the continuous threats to kill her or hopes that she'd die.

269.     Ashley Guillard suffered mental anguish, depression, shame, humiliation, shock, embarrassment grief, anxiety, and fear due to the false narrative about her being assumed as true by multi-national audiences; causing her to stay home and isolate herself more than usual.

270.     The filing of the frivolous claims against Ashley Guillard and the mass disseminated press release influenced a massive amount of news media, social media content, articles, and videos, that further disseminated the false statements causing Ashley Guillard to be publicly ridiculed, humiliated, shamed and threatened.

271.     The filing of the frivolous claims against Ashley Guillard and the mass disseminated press release with false statements about Ashley Guillard encouraged mass

harassment against her. Ashley Guillard received harassing phone calls, emails, text messages, comments and messages on Instagram, messages and comments on Facebook,  messages and comments on TikTok, messages and comments on YouTube, and messages on Ashley Guillard's website www.ashisgod.com; threatening to inflict harm against her, signing her up for pornography websites, expressing wishes that she'd kill herself, maliciously misdiagnosing her as insane, maliciously misdiagnosing  her as crazy, maliciously misdiagnosing her with schizophrenia, maliciously misdiagnosing her with psychosis, expressing the desire to have her arrested for her allegations about Rebecca Scofield, and sending her indecent videos of body parts to include male genitals.

272.    The filing of the frivolous claims against Ashley Guillard and the mass disseminated press release caused harassment against Ashley Guillard by the initiation of a petition to have Ashley Guillard arrested that was signed by over 10,000 people on change.org.

273.    The filing of the frivolous claims against Ashley Guillard and the mass disseminated press release instigated harassment against Ashley Guillard. A multitude of random people sent messages to her family and friends seeking to have her committed and held in a psychiatric facility and to get her personal address to allegedly have her arrested by Idaho law enforcement.

274.    Ashley Guillard continues to be harassed, cyber-bullied and humiliated online by thousands of social media users because of the widespread defamatory statements Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone published and caused to be published about her.

275.    Ashley Guillard's integrity, spiritual practice, reputation, and livelihood was compromised by Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and

Attorney Cory M. Carone to meet their goal of evading suspicion of Rebecca Scofield's role in the murder of the four students.

276.     Ashley Guillard was deprived of business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and defamatory statements about her.

277.     Ashley Guillard's reputation was severely damaged across the United States, internationally and on social media due to the defamatory and false statements in the frivolous claim.

278.     Ashley Guillard suffered loss of business, clients, income, a peaceful social media presence, family, and friends due to the counterclaim defendants frivolous claim and the widespread defamatory statements about her. The damage to her reputation and subsequent social media harassment caused Ashley Guillard emotional distress and a loss of enjoyment of life.

279.     Ashley Guillard seeks recovery of financial damages, financial relief for emotional distress, retraction of all defamatory statements and punitive damages due to the egregiousness of the counterclaim defendants' actions.

## VI. PRAYER FOR RELIEF

1.     Mass press release with a statement, that Ashley Guillard approves, to every news outlet that Scofield v Guillard case no. 3:22-cv-00521-REP was covered and to social media outlets Facebook, Twitter, TikTok, Instagram, Reddit, and all others that it was covered on, correcting the false claims made against Ashley Guillard.

2.     Mass press release in every news outlet that this lawsuit was covered and to social media outlets Facebook, Twitter, TikTok, Instagram, Reddit, and all others that Scofield v

Guillard case no. 3:22-cv-00521-REP was covered on with an apology to Ashley Guillard, that she approves, for all the accusations made against her.

3.      Past, present, and future compensatory damages, punitive damages, financial relief for non-pecuniary damages, and financial relief for aggravated damages for each merited counterclaim.

4.      Attorney and court fees that may arise now or in the future for any action related to this case.

5.      For judgement dismissing the plaintiff's claims for improper venue pursuant to FRCP Rule 12 (b)(3) and frivolousness pursuant to FRCP Rule 11 with prejudice.

6.      For an order imposing sanctions on Attorney Wendy J. Olson, Attorney Elijah M. Watkins, Attorney Cory M. Carone and Stoel Rives LLP pursuant to FRCP Rule 11(c)(3).

7.      For summary judgement for the counterclaim.

8.      Pre-judgement and post-judgement interest; and

9.      All such other relief as the court deems just and equitable.

**VII. REQUEST FOR SUMMARY JUDGEMENT PURSUANT TO F.R.C.P. RULE 56**

10.      Ashley Guillard requests a summary judgement for the counterclaim.


<u>/s/ Ashley J. Guillard</u>
Defendant/Counterclaim Plaintiff
Date of signing: May 16, 2023

Ashley J. Guillard
Pro-Se Litigant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May 2023, I served the plaintiff, plaintiff's attorneys and

counterclaim defendants electronically using the CM/ECF system pursuant to F.R.C.P. Rule 5. e-

file procedures.