UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No. 3:22-cv-00521-REP |
| Plaintiff, | |
| v. | **COUNTERCLAIMANT ASHLEY GUILLARD'S REPONSE TO COUNTER DEFENDANT REBECCA SCOFIELD'S MOTION TO DISMISS COUNTERCLAIMS (DKT. 22)** |
| ASHLEY GUILLARD, | |
| Defendant. | |
| | |
| ASHLEY GUILLARD, | |
| Counterclaimant, | |
| v. | |
| REBECCA SCOFIELD, WENDY J. OLSON, ELIJAH M. WATKINS, CORY M. CARONE, | |
| Counter Defendants. | |

**The Parties Filing This Motion**

Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Rd.
942
Houston, TX 77098
Telephone:  337.372.3181

Pro-Se

## I.  INTRODUCTION

COMES NOW Counterclaimant Ashley Guillard in opposition to Counter Defendant Rebecca Scofield's Motion to Dismiss Counterclaims (Dkt. 22). Pursuant to Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986), cert. denied, 476 U.S. 1159 (1986) it is the standard that specifically, when deciding Federal Rule of Civil Procedure (FRCP) 12(b)(6) motions, the Court assumes all factual allegations contained in the complaint to be true, giving the claimant, to include counterclaimant Ashley Guillard, the full benefit of the doubt. Counterclaimant Ashley Guillard asserts that the statements she made in the factual allegations of the Countercomplaint, to include that Rebecca Scofield ordered, planned, initiated, and ensured the execution of the murder of four University of Idaho Students, are substantially true. Given the full benefit of the doubt that the factual allegations in the counterclaimant is true the 11 counterclaims Ashley Guillard filed are merited, states claim for relief and are worthy of judication.

## II.  BACKGROUND

Rebecca Scofield planned, initiated, ordered, and executed the murder of four University of Idaho Students who were killed in Moscow Idaho on November 13, 2022. Rebecca Scofield went undetected by the Moscow Police Department, Idaho State Police and FBI detectives who were assigned to the case. On November 24, 2022, Ashley Guillard used her psychic abilities, spiritual acuity, and investigative skills to uncover the motive and details that led to the murder of the students. She posted her findings on social media and reported it to the FBI tip-line. To stop Ashley Guillard's information from being taken seriously and to silence her Rebecca Scofield and her attorneys Wendy J. Olson, Elijah M. Watkins, and Cory M. Carone filed a lawsuit against Ashley Guillard with two frivolous claims for defamation. Rebecca Scofield

initiated the lawsuit with full knowledge that she was responsible for the death of the four students and with the intent to harass, embarrass, humiliate, and discredit Ashley Guillard and her spiritual practice. Attorney Wendy Olson, Attorney Elijah Watkins and Attorney Cory Carone worked concertedly on the lawsuit Scofield v. Guillard (Case No. 3:22-cv-00521-REP). Together they failed to exercise reasonable due diligence to ensure the truth of the claims against Ashley Guillard before filing under oath that the claims are true. Instead, they worked together with Rebecca Scofield to harass, embarrass, humiliate, and discredit Ashley Guillard; and to defraud her out of millions of dollars under the color of the law using and abusing attorney and judicial immunity.

In their legal filings in Scofield v. Guillard Case No. 3:22-cv-00521-REP the attorney's collectively defamed Ashley Guillard as a purported online sleuth who used the murder of the four students to gain money and followers. The truth is, Ashley Guillard did not make any money from TikTok or in any way from reporting her findings. Instead, she lost followers, lost revenue, and suffered financial, mental, and business repercussions due to the false statements Wendy Olson made about her in multi-national press releases and from the filing of the frivolous lawsuit against her. The truth is, Rebecca Scofield is a serial killer, who successfully evaded suspicion of her crimes for months with the help of Attorney Wendy Olson, Attorney Elijah Watkins, and Attorney Cory Carone. By defaming Ashley Guillard, by insulting spiritual practices like tarot readings, by mocking psychic intuition, denouncing spiritual connection and mediumship as inauthentic, Rebecca Scofield, Attorney Wendy Olson, Attorney Elijah Watkins, and Attorney Cory Carone deterred Rebecca Scofield from criminal investigation.

In addition to the frivolous lawsuit filed against her and being defamed on multi-national news media, Ashley Guillard was harassed. Hundreds of fake TikTok pages were created to

comment on all of Ashley Guillard's social media posts to call her crazy and to attack anyone who attempted to defend her. Ashley Guillard blocked those pages, and more were created. The intent was to cause Ashley Guillard's mental health to be questioned to prevent her statements about Rebecca Scofield from being taken seriously.

As a result of their tactical strategy to destroy Ashley Guillard to prevent Rebecca Scofield from suspicion and investigation of quadruple murder they collectively violated a multitude of Ashley Guillard's rights that resulted in at least 11 merited claims for relief. For these reasons as set forth more fully below Ashley Guillard respectfully requests the Court to deny Counter Defendant Rebecca Scofield's motion to dismiss.

### III.  LEGAL STANDARD

Counter defendant Rebecca Scofield and her attorney's asked the Court to dismiss Ashley Guillard's counterclaims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Their argument is that Ashley Guillard's counterclaims are implausible and that the Court should use common sense and dismiss the counterclaims. More specifically they're asking the Court to debunk spirituality, mediumship, psychic abilities, and intuitive acuity as implausible. Doing so puts the Court in the position to decide whether a spiritual practice is authentic. In the United States citizens have the free will to choose to participate in their religious and spiritual practices. It is guaranteed by the First Amendment of the United States Constitution. The First Amendment provides that Congress makes no law respecting an establishment of religion or prohibiting its free exercise. Rebecca Scofield and her attorneys have already compromised Ashley Guillard's reputation, time, mental health, social media, business, finances, income, and overall livelihood to prevent Rebecca Scofield from being properly investigated for the murder of the four University of Idaho Students. Now, they're asking the

Court to compromise a multi-billion-dollar industry (the metaphysical industry), and to compromise the parameters of the First Amendment of the United States Constitution to protect Rebecca Scofield, an accused serial killer, who was not properly investigated. Their motion to dismiss does not meet the legal requirements. It's also unethical, disrespectful, distasteful, and unprofessional. Counterclaimant Ashley Guillard requests denial of the motions to dismiss.

## IV.  ARGUMENT

Counter Defendant Rebecca Scofield and her legal counsel suggests dismissing all of Ashley Guillard's counterclaims because they are implausible and legally deficient. Ashley Guillard disagrees; she argues that her claims are legally merited, pleaded with particularity, and meet the required legal intent and elements of each claim.

### A.  COUNTERCLAIMS

#### First & Second Counterclaim for Relief: Defamation

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 66-103 of the counterclaim. Counterclaimant Ashley Guillard alleges that Counter Defendants Rebecca Scofield and Attorney Wendy Olson, defamed her by publishing false statements of fact about her in the news media. Counterclaimant Ashley Guillard alleges that Counter Defendants Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone defamed her by publishing false statements of fact about her in the frivolous lawsuit Scofield v. Guillard Case No. 3:22-cv-00521-REP and by filing the frivolous lawsuit under oath. Counter defendants reject Guillard's defamation claims because 28 U.S.C. § 4101 does not apply and filing a lawsuit cannot give rise to a defamation claim. For the reasons above and below, Ashley Guillard disagrees.

#### Argument Against Legal Deficiency

Pursuant to Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; and Adair v. Freeman, 92 Idaho 773, 451 P.2d 519 the general elements of defamation are that "the claimant must prove that the defendant communicated information concerning the claimant to others; and the information impugned the honesty, integrity, virtue or reputation of the claimant or exposed the claimant to public hatred, contempt or ridicule; and the information was false; and the defendant knew it was false, or reasonably should have known that it was false; and the claimant suffered actual injury because of the defamation; and the amount of damages the claimant suffered." The first counterclaim for relief, Defamation in the News Media, meets all elements of defamation as required by Idaho law.

**The Counter Defendants Communicated Information Concerning Ashley Guillard to Others**

It is a fact that is backed by evidence that Rebecca Scofield and Attorney Wendy Olson issued a multi-national press release to news organizations that reach billions of people world-wide; and published or caused to be published false statements of fact about Ashley Guillard. Attorney Wendy Olson has been quoted stating that Ashley Guillard revictimized the families of the slain students, that Ashley Guillard damaged Rebecca Scofield's reputation, that Ms. Guillard has continued to make false statements, knowing they are false, that Ashley Guillard used the horrific tragedy of the murder of the four University of Idaho students for personal gain; and more. Rebecca Scofield also made direct false statements about Ashley Guillard in her interview with the Spokesman Review claiming that Ashley Guillard made false statements about her that has no grounding in truth.

The statements were taken as fact and massively disseminated to but not limited to ABC Universal News, New York Post, CBS News, Time Magazine, CNN, 20/20 Inside Edition, Good

Morning America, Baller Alert, Washington Post, TMZ, NBC News, MSN, FOX, Rolling Stone,

Black Enterprise, Yahoo News, Daily Nation Pakistan, ABC7 Chicago, ABC 7 News, ABC 8

News, Houston Chronicle, Inside Edition, The Daily Beast, Insider.com, The Argonaut

University of Idaho Student Newspaper, News Nation, The Independent UK, True Crime

Network, Law & Crime, multiple YouTube Channels, Apple Podcasts, multiple TikTok pages,

Twitter, Facebook user posts, Instagram user posts, Reddit User articles, and other social media

videos, MEA WorldWide, The Wenatchee World, Sportskeeda, Mamas Uncut, Find Law, Daily

Mail, King 5 News, 4 News Now, The Tab, Similar Worlds Website, FOX 5 San Diego, NBC

New York, 6ABC, Pedestrian TV, Techno Trenz, Perez Hilton Website, Oregon Live The

Associated Press, The Guardian, New York Daily News, Sandra Rose Website, E News, AOL,

Moscow-Pullman Daily News, The SPORTSGRAIL website, Blavity News, Newsweek,

247newsaroundtheworld, The Hill, The U.S. Sun, Reason website, PIX11 News, NBC Right

Now, WREG News Channel 3, WREG News Website, KTLA 5 NewsChannel, DC News Now,

Lawyer "Pegleg Finance" YouTube Channel, TikTok, and Instagram.

### The Information Impugned the Honesty, Integrity, Virtue, Or Reputation of The Counterclaimant or Exposed the Plaintiff to Public Hatred, Contempt, Or Ridicule

The false statements made about Ashley Guillard caused her spiritual practice, integrity,

intuition, mental health, honesty, and virtue to be unfairly judged, ridiculed, and denounced.

Many people, including the news media reporters, assumed the statements made about Ashley

Guillard were true. She was denounced as a psychic, person and as a business. She was subjected

to a massive amount of online public harassment, ridicule, judgement, contempt, and hate. She

received death threats on email and social media. She was continuously harassed online

receiving thousands of negative comments.

**The Counter Defendant Knew It Was False, Or Reasonably Should Have Known That It Was False**

Rebecca Scofield knows that she planned, initiated, and ordered the execution of the four University of Idaho students; because she did it. She also knows that she had a relationship with Kaylee Goncalves; because she did it.

Attorney Wendy Olson did not conduct a reasonable inquiry into the truth or falsity of the allegations Rebecca Scofield made about Ashley Guillard; she accepted the statements as facts without reasonable due diligence as professionally required by The Model Rules of Professional Conduct and by Rule 11b of the Federal Rules of Civil Procedure (FRCP). It was her job to know if the statements she made about Ashley Guillard in the news media and in the legal documents were true before she filed the case and before she made the statements. Attorney Wendy Olson failed this duty. She issued false statements about Ashley Guillard to the news media as a strategy to attack Ashley Guillard's character, degrade her, embarrass her, discredit her and to humiliate her; as a strategy to evade suspicion of Rebecca Scofield; without regard to the truth or falsity of the statements. She published the false statements about Ashley Guillard as direct quotes from herself; not quotes from Rebecca Scofield.

**The Counterclaimant Suffered Actual Injury Because Of The Defamation; And the Amount of Damages Counterclaimant Ashley Guillard Suffered**

Counterclaimant Ashley Guillard's personal life was negatively impacted by the defamatory statements. She missed time with family and friends. She lost friendships due to the false statements being unfairly accepted as true without inquiry. Counterclaimant Ashley Guillard's spiritual practice was negatively impacted by the defamatory statements. Her first amendment rights were threatened; under the color of the law. She lost current and potential

customers. Her social media pages were unfairly targeted which led to her TikTok user account being temporarily banned multiple times and then permanently banned. She connected to her audience, followers and customers using her TikTok page for over six years. Counterclaimant Ashley Guillard's damaged reputation could potentially cause rejection of business and employment opportunities. Counterclaimant Ashley Guillard's suffered multi-millions in damages in current and potential damages.

**The First and Second Counterclaims for Relief Meet All Legal Elements of Defamation**

The first counterclaim for relief, defamation, meets all elements as required by Idaho state law. The counter defendant's allegation of implausibility is irrelevant. The authenticity or plausibility of metaphysical spiritual practices like tarot readings and psychic readings is not in question. Nor is it Constitutional to seek the Courts legal opinion on the accuracy of a religion or spiritual practice. The false statements the counter defendants made in the news media and in legal documents about Ashley Guillard are the subjects of the first and second counterclaims; not the plausibility of a spiritual practice. The false statements meet all elements of defamation, ergo, are plausible.

The counter defendant's allegation that counterclaimant Ashley Guillard's claims should be dismissed because they did not make a state law defamation claim is not grounded in law. Rule 9 of the FRCP does not require legal technical terminology. A general concise, direct allegation or claim for defamation that meets the elements is all that is legally required.

The counter defendant's allegation that counterclaimant Ashley Guillard's claims should be dismissed because they do not have direct or circumstantial evidence is not legally sufficient. Rule 11(b)(3) of the FRCP allows pleadings that will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. During the opportunity for

discovery Ashley Guillard plans to seek and provide evidence for all 11 counterclaims and defenses to the complaint.

### Argument Against Absolute Privilege

The counterclaim defendants claim that absolute privilege allowed them to file the frivolous claims and to publish false statements of fact about Ashley Guillard. They claim that pursuant to Berian v. Berberian, 168 Idaho 394, 483 P.3d 937, 946 (2020) "Idaho has long recognized that defamatory statements made in the course of a judicial proceeding are absolutely privileged, even if made with malicious intent or knowledge of their falsity.". The counterclaim defendants failed to mention that Berian v. Berberian's defamation claim was the result of a criminal arrest and police report; not a Federal civil lawsuit seeking damages under false pretense, false allegations, and a frivolous claim. There's an inherent difference in state criminal judicial proceedings and Federal civil judicial pleadings. Federal civil cases are governed by the FRCP. Rule 11(b) of the FRCP bars frivolous claims presented for an improper purpose and that are illegal.

Pursuant to The Supreme Court of Texas, NO. 19-0036, Landry's, Inc. et al. v. Animal Legal Defense Fund et al, argued (2021) the intent of judicial privilege is to "facilitate the administration of justice by promoting 'full and free disclosure of information . . . by participants in judicial proceedings'"; and it protects statements made in the due course of a judicial proceeding. As so, there are two elements required for judicial privilege to apply, due course of justice and the facilitation of the administration of justice. The due course of justice refers to the process of legal proceedings that follow established rules and principles to protect and enforce rights. Justice refers to the fair and proper administration of law. It is the quality of being just: in conformity to truth, impartiality, fair representation of facts, merit, and just treatment. In Federal

civil Court, the filing of a frivolous claim, falsifying factual allegations to meet the requirements of a cause of action, and presenting a claim for an improper purpose, is not within the intent of the due course of justice nor does it facilitate the administration of justice; it hinders it. Additionally, it is a violation of Rule 11 (b) of the FRCP punishable by sanctions.

A defamation lawsuit filed in Federal district Court by the representatives of a serial killer against Ashley Guillard for exposing their client as the initiator, planner, and co-conspirator responsible for quadruple murders, and for the purpose of evading suspicion, harassment and to steal property; is not a just action protected by law or judicial privilege. Said behavior warrants civil and criminal actions. Allowing alleged criminals to be protected by judicial privilege and to allow them to use it to file frivolous claims with malicious intent unfairly positions witnesses, people who send tips to investigators and people brave enough to confront and expose criminals in a position to be maliciously targeted, harassed, and frivolously sued under the color of the law. It is not in the best interest of justice, and it abuses the system that administers justice.

For these reasons counterclaimant Ashley Guillard to deny the counter defendant's motion to dismiss the first and second counterclaims for defamation.

### THIRD COUNTERCLAIM FOR RELIEF: 42 U.S. CODE § 1985

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 104-124 of the counter complaint. Counterclaimant Ashley Guillard alleges that Counter Defendants Rebecca Scofield, Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone conspired to interfere with Ashley Guillard's Constitutional rights to due process and the freedom of speech resulting in a cause of action under 42 U.S. Code § 1985. Counter Defendants argue against

Ashley Guillard's counterclaim alleging that it is implausible because it isn't race motivated, rely on group pleadings, their conduct is immune by attorney client privilege, states Ashley Guillard is not a party to Mr. Kohberger's case and alleges Ashley Guillard hasn't stated the right type of harm. Counterclaimant Ashley Guillard disagrees with the counter defendant's arguments for the reasons set forth below.

**Argument Against 42 U.S. Code 1985 Implausibility Due to A Lack of Race Based Motives**

The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; ...in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

As the statute states in plain language the main premise and intent of 42 U.S. Code § 1985 is to allow for a cause of action against conspirators conspiring to interfere with civil rights. The statute does not include race as a required element. Civil rights are personal rights guaranteed and protected by the United States Constitution and Federal laws; to all United States Citizens. 42 U.S. Code § 1985 is not limited to race-based intentions; it protects all United States Citizens who meets the elements of its plain language.

**Response To Motion to Dismiss Counterclaims** - 12

Counter Defendants quote *Jones v. Norton*, 809 F.3d 564, 578–79 (10th Cir. 2015), a civil rights case arising from Ute Tribe member Todd R. Murray being killed by police for not following an order, in which a 42 U.S.C. § 1985 claim was denied because the Court decided that an action under 42 U.S.C. § 1985(2) requires "a showing of some racial, or perhaps otherwise class based invidiously discriminatory animus behind the conspirators' action." That decision was not based on the plain language in the 42 U.S.C. § 1985 statute and reflects the ideology of the United States Court of Appeals Tenth Circuit. Ashley Guillard disagrees with the counter defendant's references as unpersuasive because the Constitution clearly and plainly states the intent behind 42 U.S.C. § 1985 claims is *to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws*. The statute clearly states any person or class of persons. Race is a class of persons that is included in the population of any person governed by the United States Constitution.

The counter defendant's argument that U.S. District Court for the District of Idaho should adopt an advantageous rule from the Tenth Circuit because they think the decision, to add race as an element to 42 U.S.C. § 1985 claims, is more beneficial to the counter defendants' motion to dismiss. However, it is not. The case decision also includes, "otherwise class based invidiously discriminatory animus" as an alternative to the element of race. Ashley Guillard spiritual practice was denounced and targeted by the defendants and improperly shamed as "implausible", "fantasy based" and dishonest. The counter defendants vehemently asked the Court to decide that spiritual practices as in tarot readings, and spiritual connections as in mediumship and psychic intuition, is implausible; seeking that the Court discriminate against Ashley Guillard based on their denunciation of her spiritual practices. Title VII of the Civil Rights Act of 1964 includes

not only traditional, organized religions, such as Christianity, Judaism, Islam, Hinduism, and Buddhism; but also, religious beliefs that are modern, like the broad parameters of spirituality; uncommon, not part of a formal church or sect, like Paganism; only subscribed to by a small number of people, or that seem illogical or unreasonable to others. Title VII of the Civil Rights Act of 1964 protects all aspects of religious observance, practices as well as beliefs. The counter defendants discriminated against Ashley Guillard based on her spiritual beliefs and practices. Therefore, this 42 U.S.C. § 1985 counterclaim meet the element of "showing of some racial, or perhaps otherwise class based invidiously discriminatory animus behind the conspirators" as required by the Tenth Circuit.

The U.S. District Court for the District of Idaho is one of 15 districts within the Federal judiciary of the Ninth Circuit. Decision of law made in other jurisdictions are generally not legally binding. It is the Courts discretion to adopt ideological based case decisions made in other jurisdictions. Counterclaimant Ashley Guillard respectfully request that the Court decline the invitation to adopt the Tenth Circuit's added element of race to 42 U.S.C. § 1985 claims simply because it is not based on the Statute as plainly stated in the United States Constitution.

The Supreme Court used a Ninth Circuit decision in part as a decision-making reference in a 42 U.S.C. § 1985 claim. The Supreme Court, in Haddle V. Garrison 132 F. 3d 46, reversed and remanded; No. 97–1472 (argued November 10, 1998, and decided December 14, 1998), conferred to the 42 U.S.C. § 1985 Statute to decide on the requirements of 42 U.S.C. § 1985 claims; stating that the language, or purpose of the proscriptions and its attendant remedial provisions are what establishes the requirements of the cause of action. Race is not an element as written in the Statutes plain language. The purpose of its proscriptions is to protect United States

Citizens from the deprivation of Federal rights. Counterclaimant Ashley Guillard respectfully request that the Court align with the decision of the Supreme Court in Haddle v. Garrison.

### Argument against the allegation of a lack of specificity and group pleadings

Counterclaimant Ashley Guillard claims joint and several liability for all counter-defendants for each counterclaim. Joint and several liability is supported by Rule 11(c)(1): In general, if after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee. Like Rule 11(c)(1), co-conspirators to a civil offense may be held jointly liable.

Joint and several liability is supported by 42 U.S. Code § 1985 (3):...if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Joint and several liability is supported by the Joint Action Test: A plaintiff can show joint action either "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012).

Ashley Guillard pleaded the counterclaim with particularity. As stated in her answer and countercomplaint: The goal of the co-conspirators was to prevent Rebecca Scofield from

suspicion of the murder of the four University of Idaho Students. To accomplish that goal, the

co-conspirators conspired to discredit, harass, embarrass, and humiliate Ashley Guillard; and

conspired to deprive Ashley Guillard of the Fourteenth Amendment right to due process and the

First Amendment right to the freedom of speech. Rebecca Scofield in joint action with Attorney

Wendy J. Olson, Attorney Elijah Watkins, and Cory M. Carone filed a frivolous defamation

claim Scofield v Guillard case no. 3:22-cv-00521-REP against Ashley Guillard with the intent to

illegally deprive Ashley Guillard of the freedom of speech, the freedom to freely engage in

spiritual practices, of an impartial tribunal and of nearly 2 million dollars in falsified damages.

The frivolous claim was filed and signed by Attorney Wendy Olson listing Rebecca Scofield as

the plaintiff and Attorney Wendy J. Olson, Attorney Elijah Watkins, and Cory M. Carone as

joint legal counsel responsible for the lawsuit. Therefore, in this counterclaim, joint liability is

appropriate pursuant to 42 U.S. Code § 1985 (3) and is particular because they all engaged,

acting as one unit, in the conspiracy to deprive Ashley Guillard of her Constitutional rights; and

Rebecca Scofield and Attorney Wendy Olson caused acts in furtherance of the object of such

conspiracy to include pushing out press releases regarding the lawsuit, publishing the false

statements about Ashley Guillard and filing further motions and pleadings including the motion

seeking 2 million dollars in fake damages (Dkt. 10).

<b>Argument Against Attorney Immunity</b>

The counter defendants allege that a claim under 42 U.S.C § 1985(2) arises "if two or

more persons conspire" to obstruct justice. Quoting Farese v. Scherer, 342 F.3d 1223, 1232 (11th

Cir. 2003) "[A]s long as an attorney's conduct falls within the scope of the representation of his

client, such conduct is immune from an allegation of a § 1985 conspiracy."; to elude

accountability for their fraudulent actions.

Defending Rebecca Scofield in a criminal case or investigation falls within the scope of legal representation and attorney immunity. Filing a frivolous Federal civil complaint against a United States Citizen that is exercising a Federal right guaranteed by the United States Constitution; fabricating the allegations to conjure up a cause of action; conspiring to harass, demean, embarrass, publicly humiliate, and discredit a United States Citizen that is exercising a Federal right guaranteed by the United States Constitution; filing a frivolous civil complaint against a whistleblower in Federal Court to prevent your client from criminal investigations from law enforcement agencies; filing a frivolous complaint in Federal civil Court against a whistleblower to prevent your client from overall suspicion of murder; is illegal, unethical, not within the legal scope of the representation of the client and not protected by an extreme remedy like absolute immunity. Absolute immunity "is an extreme remedy, and it is justified only where 'any lesser degree of immunity could impair the judicial process itself.'" Lacey v. Maricopa Cty., 693 F.3d 896, 912 (9th Cir. 2012) (en banc) (quoting Kalina, 522 U.S. at 127). The "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991) (citing Forrester, 484 U.S. at 224).

It is not within the mission and functions of an attorney to commit criminal offenses, like perjury, by filing Federal claims in Federal Court under false pretense and false allegations for the purpose of harassment and of depriving a United States Citizen of a Constitutional right and property. Allowing immunity for illegal, perjurious filings allows for attorneys to commit fraud on behalf of their clients under the color of legal immunity. It also compromises the integrity of the judicial system.

### Response to the Kohberger argument

Counterclaimant Ashley Guillard has not claimed to be a party to Mr. Kohberger's case. The counter defendant's argument is moot.

**Argument against the allegation that Ashley Guillard did not specify the right kind of harm**

The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory. The counter defendant's actions meet this requirement. The counter defendants conspired for the purpose of impeding, hindering, obstructing, and defeating investigative efforts in the case of the murder of the four University of Idaho students, to avoid Rebecca Scofield from being investigated and charged with quadruple murder. Proper investigation of information and tips is a part of the due course of justice in criminal proceedings. Counterclaimant Ashley Guillard emailed tips to the FBI tip line about Rebecca Scofield's motive and role in the murders. She also posted her findings about the details of the murder online. Rebecca Scofield, Attorney Wendy Olson, Attorney Elijah Watkins, and Attorney Cory Carone conspired to hinder and impede upon the investigation of the information Ashley Guillard gave to Moscow Police, State Police and Federal Detectives by discrediting the legitimacy of Ashley Guillard and her information. That is not the behavior of an "innocent professor who didn't know the students." It is the aggressive behavior of an overzealous serial killer who desires to get away with murder. If Rebecca Scofield was truly an "innocent professor who didn't know the students", Ashley Guillard's tips and a criminal investigation wouldn't be a threat.

The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if ...two or more persons conspire with intent to deny to any citizen the equal protection of the laws. To

discredit Ashley Guillard and her information about the murder of the four University of Idaho students, the counter defendants conspired to deprive Ashley Guillard of the right to free speech and the free exercise of her spiritual practice that's guaranteed by the First Amendment of the United States Constitution. The entire claim, Scofield v. Guillard case no. 3:22-cv-00521-REP, is a falsehood. Ashley Guillard did not defame Rebecca Scofield. Her statements are substantially true and protected by the Substantial Truth Doctrine. However, since the false allegations in the complaint was taken as true, as legally required, Ashley Guillard's right to free speech, an impartial tribunal, and her freedom to exercise her spiritual practice were threatened.

The fabrications in the claim taken as true presented the claims in a false light. If the truth was told, the state law defamation claims would be dismissed due to no cause of action. Because the state tort claims in the original complaint meet the elements of Idaho defamation law under false pretense, it positions the Federal judicial system to allow for a cause of action in error; positioning Ashley Guillard to be deprived of Rule 12(b)(6) of the FRCP protection. Fairness, due course of justice and equal protection of the laws permits a dismissal of claims for failure of the complaint to state a claim on which relief can be granted.

The pertinent aspect of 42 U.S. Code § 1985 (2) allows for a cause of action if ...the party so injured or deprived is damaged and seeks the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. Ashley Guillard's reputation was ruined. She lost business income. The integrity of her spiritual practices was debunked. Her social media page on the TikTok application was permanently banned. She was routinely harassed. She's forced, by law, to spend time and resources to fight for her right to the freedom of speech. Under the pressure of meeting deadlines, filing answers and responses to frivolous pleadings; she was forced to spend less time with family to include her cousin, Julius Marshall,

who was in intensive care and subsequently died at Memorial Hermann-Greater Heights medical rehabilitation center in Houston Texas on February 19, 2023. Additionally, she's forced to use her own time, energy, and resources to prove she's telling the truth. Ergo, positioning her to do the job of Moscow Idaho law enforcement without the resources.

For all the reasons above, Ashley Guillard disagrees with the counter-defendants allegation that Ashley Guillard did not specify the right kind of harm.

## FOURTH COUNTERCLAIM FOR RELIEF 42 U.S. CODE 1986

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 125-143 of the counter complaint.

As quoted by the counter defendants, pursuant to 15 Am. Jur. 2d Civil Rights § 183 to bring a claim under 42 U.S.C § 1986, it is necessary to show that an actionable claim existed under 42 U.S.C § 1985. The third counter claim for relief meets the elements of 42 U.S.C § 1985. Therefore, the counter defendant's argument for dismissal of the 42 U.S.C § 1986 counterclaim, for failure to state a claim under 42 U.S.C § 1985, is moot.

## FIFTH COUNTERCLAIM FOR RELIEF 42 U.S.C § 1983

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 144-161 of the counter complaint. Counter defendants argue that Ashley Guillard's 42 U.S.C. § 1983 claim (counterclaim 5) fails because she has not alleged any state action. Ashley Guillard disagrees. The counter defendants quoted Scott v. Thompson, No. 1:20-CV-00346-BLW, 2020 WL 6047754, at *2 (D. Idaho Oct. 13, 2020) in support of their assertion: "Section 1983 actions can be asserted only against state actors, or, in very particular circumstances, against private actors acting under color of law."

The first pertinent aspect of 42 U.S. Code § 1983 applies to every person under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. The plaintiff and counter defendant, Rebecca Scofield, filed a frivolous Idaho State Law civil defamation claim against Ashley Guillard; in Federal district Court due to diversity of citizenship. She also claims to have filed a police report for defamation against Ashley Guillard. Pursuant to ID Code § 18-4802 (2022) Every person who willfully, and with a malicious intent to injure another, publishes, or procures to be published, any libel, is punishable by fine not exceeding $5000, or imprisonment in the county jail not exceeding six (6) months. Pursuant to Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Adair v. Freeman, 92 Idaho 773, 451 P.2d 519, to prove a claim of defamation, the plaintiff has the burden of proving each of the following elements; the defendant communicated information concerning the plaintiff to others; the information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; the information was false; the defendant knew it was false, or reasonably should have known that it was false; the plaintiff suffered actual injury because of the defamation; and the amount of damages suffered by the plaintiff.

By filing a police report in the State of Idaho, under false pretense and false allegations, Rebecca Scofield subjected Ashley Guillard to "the color of" ID Code § 18-4802 (2022). By filing a frivolous civil complaint for libel through legal representation, Rebecca Scofield subjected Ashley Guillard to the color of case laws in the state of Idaho regarding libel.

The second pertinent aspect of 42 U.S. Code § 1983, is subjects, or causes to be subjected, any citizen of the United States the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. The counterclaim defendants subjected Ashley Guillard to

the deprivation of the right to free speech, guaranteed by the First Amendment of the United

States Constitution. The counterclaim defendants subjected Ashley Guillard to the deprivation of

the right to free religious exercise guaranteed by the First Amendment of the United States

Constitution. By filing a frivolous claim in the United State District Courts knowing it was false

and that it would by law be taken as true, the counter defendants subjected Ashley Guillard to the

deprivation of the right to a fair and impartial tribunal.

The third pertinent aspect of 42 U.S. Code § 1983 requires injury. Being unlawfully

subjected for State laws or officials to deprive a Constitutional right is injury enough. Ashley

Guillard also suffered other injuries: loss of income, damage to her reputation, a loss of current

and potential customers and revenue, loss of time with family and friends, mental anguish due to

harassment, and a loss of resources.

Meeting all three fundamentals of 42 U.S. Code § 1983 makes Rebecca Scofield and co-

conspirators, Attorney Wendy Olson, Attorney Elijah Watkins, and Attorney Cory Carone liable

to the party injured, Ashley Guillard, in an action at law, suit in equity, or other proper

proceeding for redress. For that reason, counterclaimant Ashley Guillard asks the Court to deny

the counter defendants motion to dismiss the fifth counterclaim for relief.

### SIXTH COUNTERCLAIM FOR RELIEF MALICIOUS PROSECUTION & FRIVOLOUS CLAIM

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v.

Guillard Case No. 3:22-cv-00521-REP, paragraphs 162-183 of the counter complaint.

The counter defendants confer with Howard v. Felton, 85 Idaho 286, 379 P.2d 414, 416

(1963) that an action for malicious prosecution: "requires proof (1) that there was a prosecution,

(2) that it terminated in favor of plaintiff, (3) that the defendant was the prosecutor, (4) that the

defendant was actuated by malice, (5) that there was want of probable cause, and (6) that damages were sustained. " The counter defendants seek dismissal of the sixth counterclaim because Professor Scofield's defamation claims against Guillard have not been terminated in Guillard's favor. Ashley Guillard disagrees.

Rule 18(a) of the FRCP "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Rule 18(b) of the FRCP "A party may join two claims even though one of them is contingent on the disposition of the other; but the Court may grant relief only in accordance with the parties' relative substantive rights. A plaintiff may state a claim for money and a claim to set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment for the money." Rule 18 of the FRCP allows for counter defendant Ashley Guillard's seventh counterclaim for malicious prosecution on the grounds of disposition of Rebecca Scofield's defamation claim.

The plaintiff's claims for defamation are likely to fail on the grounds that it fails to meet the elements of libel as required by Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; and Adair v. Freeman, 92 Idaho 773, 451 P.2d 519. The plaintiff must prove that the alleged defamatory information was false; and the defendant knew it was false, or reasonably should have known that it was false. Defendant Ashley Guillard has an unbreakable faith in her spirit, spiritual acuity, and spiritual practice. She has strongly held that she believes that everything she said about Rebecca Scofield is substantially true; not once faltering despite circumstances. For that reason, even if Rebecca Scofield is not criminally investigated or found guilty of the murder of the four University of Idaho students, her defamation claims does not meet the elements of defamation. The counter defendant's tactic so

**Response To Motion to Dismiss Counterclaims** - 23

far is to disprove spiritual practices, metaphysical practices, spiritual connection, the existence of a spirit in the human body, mediumship, psychic abilities as authentic or plausible. To meet the "or reasonably should have known that it was false" element required for a libel claim. Their tactic is unconstitutional as it requires that an entire spiritual practice, that is protected by Title VII of the Civil Rights Act of 1964, be determined as unreasonably by the Court. They will not win this argument.

For those reasons counterclaimant Ashley Guillard's sixth counterclaim for relief for malicious prosecution should not be dismissed.

## SEVENTH COUNTERCLAIM FOR RELIEF MALICIOUS PROSECUTION & FRIVOLOUS CLAIM

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 184-201 of the counter complaint. Counterclaimant Ashley Guillard realleges and incorporates by reference the response to the motion to dismiss the sixth counterclaim for relief on this document pages 22-24. The counter defendants seek the dismissal of the seventh counterclaim for relief for the same reason as the sixth counterclaim for relief. For the reasons as stated above Ashley Guillard disagrees. Counterclaimant Ashley Guillard's seventh counterclaim for relief for malicious prosecution should not be dismissed.

## EIGHTH COUNTERCLAIM FOR RELIEF 42 U.S. CODE § 1985

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 202-224 of the counter complaint. The counter defendants used the same reasoning to request a motion to dismiss the third and eighth

counterclaims. Counterclaimant Ashley Guillard realleges and incorporates by reference the response to the motion to dismiss the third counterclaim for relief on this document pages 11-20.

Additionally, the counter defendants add that Guillard has potential remedies: "a motion to change venue, probing voir dire, a delay of trial, etc.—which she has either opted not to pursue or could try to pursue in the future. Sitting on potential remedies does not give rise to a cause of action under 42 U.S.C § 1985(2)." Ashley Guillard disagrees. 42 U.S.C § 1985 does not require the party injured to self-remedy (outside of the filing of a civil action) the damages or injuries caused by the co-conspirators. Instead, 42 U.S.C § 1985(3) places the liability of damage remedy on any one or more of the conspirators that conspired against the person that was injured or deprived.

### NINTH COUNTERCLAIM FOR RELIEF 42 U.S. CODE § 1986

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 225-243 of the counter complaint. As quoted by the counter defendants pursuant to 15 Am. Jur. 2d Civil Rights § 183 to bring a claim under 42 U.S.C § 1986, it is necessary to show that an actionable claim existed under 42 U.S.C § 1985. The eighth counter claim for relief meets the elements of 42 U.S.C § 1985. Therefore, the counter defendant's argument for dismissal of the 42 U.S.C § 1986 counterclaim, for failure to state a claim under 42 U.S.C § 1985, is moot.

### TENTH COUNTERCLAIM FOR RELIEF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP paragraphs 244-259 of the counter complaint. The counter defendants argue for the dismissal of the tenth counterclaim Intentional Infliction of

Emotional Distress because they claim the defamation action is not extreme or outrageous. Counterclaimant Ashley Guillard disagrees. The counter defendants confer to Est. of Becker v. Callahan, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004) for the four elements of intention infliction of emotional distress. "Four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."

The tenth counterclaim, for intentional infliction of emotional distress, meets the extreme element. To understand this, it is vital to include every fact that could in any way be relevant to give the Court as complete a picture as possible. Rebecca Scofield had an inappropriate affair, that Professor Scofield initiated, with University of Idaho student Kaylee Goncalves. The lesbian relationship was hidden due to Rebecca Scofield being married, perceived to be heterosexual, and a professor at the college Kaylee Goncalves attended, University of Idaho. When the relationship faltered and broke up Rebecca Scofield feared that her secret affair with a woman and student would cause damage to her marriage, reputation in Moscow Idaho and the University of Idaho and career at the University of Idaho. She also feared Kaylee Goncalves moved on to be with another woman, one of her friends. For those reasons Rebecca Scofield planned, initiated, and hired men to murder Kaylee Goncalves and her friends. On November 13-14, 2022, the plan was executed. As a result, the four students were brutally murdered.

Rebecca Scofield was getting away with murder. The investigators initially had no known suspects. The push to solve the case heightened. Ashley Guillard was asked by a TikTok user to use her spiritual practice to get details about the murder of the four students and the murderer. Using her spiritual practice Ashley Guillard discovered the motive, murderer and two

male co-conspirators. She discovered that Rebecca Scofield ordered the murder of four students. She posted her findings on TikTok as requested and sent the information to the FBI tip line.

To evade suspicion, obstruct justice, and to avoid criminal investigation Rebecca Scofield with the help of Attorney Wendy J. Olson, Attorney Elijah M. Watkins, and Attorney Cory M. Carone executed a strategy to discredit, embarrass, defame, humiliate, harass, silence, and destroy Ashley Guillard and her spiritual practice. To accomplish this, they conspired to deprive Ashley Guillard of the first amendment right to the freedom of speech, of the right to an impartial tribunal, of the first amendment right to the free exercise of her spiritual practice and of approximately two million dollars; by filing a frivolous defamation claim with malicious intent and falsified allegations; under the color of the law.

The counter defendants do not argue against the other three elements of an intentional infliction of emotional distress claim. They refute that the counter defendants conduct does not amount to extreme and outrageous. However, that's exactly what the counter defendants conduct is, illegal, extreme, outrageous, and unnecessary. If counter defendant Rebecca Scofield was innocent and had no connection to the students, the criminal investigation process would not be a threat; nor would Ashley Guillard's statements. She feared an investigation and was angry about being minimally exposed by Ashley Guillard. She caused four students to be murdered to protect her own self-interests. She then sought to destroy Ashley Guillard under the color of the law and by harassment to protect her own self interests.

For these reasons the tenth counterclaim for relief for Intentional Infliction of Emotional Distress, should not be dismissed.

## ELEVENTH COUNTERCLAIM FOR RELIEF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS -PRESS RELEASES & STATEMENTS

Counterclaimant Ashley Guillard incorporates by reference Docket 20 in case Scofield v. Guillard Case No. 3:22-cv-00521-REP, paragraphs 244-259 of the counter complaint. The counter defendants used the same reason to motion to dismiss both claims for intentional infliction of emotional distress (tenth and eleventh counterclaim). Counterclaimant Ashley Guillard realleges and incorporates by reference the response to the motion to dismiss the tenth counterclaim for relief on this document pages 25-27.

## B.  ARGUMENT AGAINST THE REQUEST FOR THE COURT TO EXERCISE ITS INHERENT POWER TO AWARD PROFESSOR SCOFIELD HER ATTORNEY'S FEES.

The counter defendants request for the Court to exercise its inherent power to award Professor Scofield her attorney's fees because they allege "Guillard's conduct throughout this case shows a clear desire to delay the proceedings, to ignore reasonable requests from Professor Scofield's attorneys to cease and desist defaming Professor Scofield, and to increase the litigation costs for Professor Scofield." The allegations about Ashley Guillard are false.

The counter defendants confer to Mark Indus., Ltd. v. Sea Captain's Choice, Inc., 50 F.3d 730, 732 (9th Cir. 1995): "The Court has the inherent power to correct such bad faith misconduct. ("The district Court had discretion to discipline Bertram pursuant to its inherent powers for willful abuse of the judicial process or bad faith conduct.")." Ashley Guillard has not operated in bad faith or misconduct. Defending herself against a frivolous complaint and asserting countercomplaints is within her rights as a United States Citizen. Exercising Federal rights is not misconduct or bad faith.

Defendant and Counterclaimant Ashley Guillard has not desired to, nor does she intend to delay the proceedings. The issue of the 30-day late answer has been resolved by the Court,

(Docket 18 Memorandum Decision and Order). Ashley Guillard has not knowingly or intentionally filed any late pleadings, responses, or motions since then. She is doing the best she can as a pro-se litigant to stand her ground against the frivolous, malicious, and fraudulent claims.

Defendant Ashley Guillard did not ignore Attorney Wendy Olson's cease and desist letters. She denied ceasing communication about Rebecca Scofield because she believes Scofield to be a serial killer. Ashley Guillard is telling the truth ergo is protected by the Substantial Truth Doctrine and the broad parameters of the First Amendment of the United States Constitution.

Defendant Ashley Guillard does not know if and how much Rebecca Scofield has paid for a group of three attorneys. It was Rebecca Scofield's decision to hire three attorneys. The plaintiff and her attorneys decided to file a frivolous complaint against Ashley Guillard that does not meet the elements for libel as required by Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Adair v. Freeman, 92 Idaho 773, 451 P.2d 519. It is only the initial phases of the litigation process. Perhaps costs should've been discussed before filing the fraudulent claim. If the plaintiff and counter defendant cannot afford legal fees there are remedies, like dropping the case. Rule 41(2) of the FRCP permits a dismissal of a case by court order: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the Court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

Ashley Guillard decided to litigate her own defense and counterclaims. She has not intended to increase the cost of litigation for Rebecca Scofield nor for herself. She is simply standing her ground within the parameters of the law. For these reasons, and for the reasons stated in this entire response, Ashley Guillard requests the Court to deny the counter defendants request for attorney's fees.

## V.  CONCLUSION

Counterclaimant Ashley Guillard requests that the Court deny the counter-defendants entire motion to dismiss and deny the request to award Rebecca Scofield her attorney's fees.

Date: June 27, 2023

<u>/s/ Ashley J. Guillard</u>

Defendant/Counterclaim Plaintiff
Date of signing: June 27, 2023
Ashley J. Guillard

Pro-Se Litigant

**Response To Motion to Dismiss Counterclaims** - 30

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2023, I served a copy of the foregoing via CM/ECF on the Registered Participant as follows:

Cory Michael Carone: cory.carone@stoel.com, docketclerk@stoel.com, emina.hasanovic@stoel.com, hillary.bibb@stoel.com, kelly.tonkin@stoel.com, tracy.horan@stoel.com

Elijah Martin Watkins: elijah.watkins@stoel.com, docketclerk@stoel.com, emina.hasanovic@stoel.com, hillary.bibb@stoel.com, karissa.armbrust@stoel.com, kelly.tonkin@stoel.com, tracy.horan@stoel.com

Wendy Olson: wendy.olson@stoel.com, docketclerk@stoel.com, emina.hasanovic@stoel.com, hillary.bibb@stoel.com, karissa.armbrust@stoel.com, kelly.tonkin@stoel.com, tracy.horan@stoel.com