## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No.: 3:22-cv-00521-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | |
| ASHLEY GUILLARD, | **PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS (Dkt. 22)** |
| Defendant. | |
| ———————————— | **PLAINTIFF'S MOTION TO QUASH SUMMONSES FOR WENDY J. OLSON, ELIJAH M. WATKINS, AND CORY M. CARONE (Dkt. 25)** |
| ASHLEY GUILLARD, | |
| Counterclaimant, | |
| v. | |
| REBECCA SCOFIELD, WENDY J. OLSON, ELIJAH M. WATKINS, CORY M. CARONE, | |
| Counterdefendants.[1] | |

Pending before the Court are (i) Plaintiff's Motion to Dismiss Defendant's Counterclaims ("Motion to Dismiss") (Dkt. 22), and (ii) Plaintiff's Motion to Quash Summonses for Wendy J. Olson, Elijah M. Watkins, and Cory M. Carone ("Motion to Quash") (Dkt. 25). Having carefully considered the record and participated in oral argument, the Court grants both motions: Defendant's counterclaims are dismissed against Plaintiff and Plaintiff's counsel, and the summonses issued for Plaintiff's counsel are quashed.

---

[1] The Court acknowledges that Ms. Olson, Mr. Watkins, and Mr. Carone contend that they are not actually proper parties to this lawsuit. *See* Pl.'s Mem. ISO MTD at 2, 6, n.1 & 3 (Dkt. 22-1). Their reference in the caption simply reflects Defendant's *claim* that these parties are properly before the Court. This Memorandum Decision and Order resolves that issue based upon the current arguments before the Court.

**MEMORANDUM DECISION AND ORDER - 1**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the tragic murder of four University of Idaho students in November 2022.  Plaintiff Rebecca Scofield is a professor at the University of Idaho.  She alleges that she never met the students and was not involved with their murders in any way.  Notwithstanding, Plaintiff alleges Defendant Ashley Guillard posted over 100 sensational TikTok videos falsely claiming that she had an inappropriate romantic affair with one of the victims and then ordered the murders to prevent the affair from coming to light.  In turn, Plaintiff initiated this action on December 21, 2022 (Dkt. 1), asserting two defamation claims against Defendant.   One is premised upon false statements regarding Plaintiff's involvement with the murders themselves.  The other premised upon false statements regarding Plaintiff's romantic relationship with one of the murdered students.

Defendant, representing herself, did not immediately respond to Plaintiff's Complaint by the January 17, 2023 deadline.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint . . . .").  As a result, pursuant to Rule 55(a), Plaintiff moved for an entry of default on January 19, 2023 (Dkt. 4).  A Clerk's Entry of Default was then entered and mailed to Defendant on January 27, 2023 (Dkt. 5).

On February 16, 2023, Defendant moved to set aside the entry of default (Dkt. 7).  Plaintiff responded the next day, opposing Defendant's efforts to set aside the entry of default (Dkt. 9) and filing a Motion for Default Judgment pursuant to Rule 55(b)(2) (Dkt. 10).  On April 24, 2023, the parties consented to the undersigned's jurisdiction (Dkt. 17).  Thereafter, on April 26, 2023, the Court granted Defendant's Motion to Set Aside Entry of Default, denied Plaintiff's Motion for Default Judgment as moot, and ordered Defendant to respond to Plaintiff's Complaint within 21 days (Dkt. 18).  On May 16, 2023, Defendant filed her Answer, Affirmative Defenses, and Counterclaims to Complaint ("Answer and Counterclaims") (Dkt. 20).

MEMORANDUM DECISION AND ORDER - 2

Within her Answer and Counterclaims, Defendant denies that she defamed Plaintiff because the accusations made against Plaintiff in Defendant's TikTok videos are "substantially true." *Id*. at 6, ¶ 4. Defendant maintains that she "used her spiritual brain, intuition, spiritual practice, and investigative skills to uncover the truth regarding the murder of the four University of Idaho students; and published her findings on her TikTok social media platform." *Id*. at 7, ¶ 6. Relevant here, Defendant also affirmatively asserts 11 counterclaims against both Plaintiff and her legal counsel. *Id*. at 7-59, ¶¶ 1-279.

Defendant's counterclaims rely on two premises: (i) Plaintiff "initiated, planned, and executed the murders" of the four University of Idaho students to cover up an affair she had with one of the victims (*id*. at 8, 10, ¶¶ 1, 13, 15); and (ii) Plaintiff sought to "evade suspicion" for these murders by conspiring with her counsel to file a "frivolous" Complaint with "falsified factual allegations" that (a) supported the defamation claims against Defendant (*id*. at 8, ¶ 2), and (b) deprived Defendant of her constitutional rights (*id*. at 8-9, ¶ 4). Defendant further asserts that the conspiracy between Plaintiff and her counsel extended beyond the mere filing of Plaintiff's Complaint. It also included Plaintiff's counsel's defamatory statements to the media about Plaintiff's underlying lawsuit against Defendant. *Id*. at 8, 16-18, ¶¶ 3, 48-62. Defendant alleges that, owing to Plaintiff's and her counsel's conduct in these interrelated respects, she has been presented in a false light, harassed (including death threats), deprived of her good reputation, and prevented from pursuing her livelihood. *Id*. at 8, 18, ¶¶ 3, 63-65. She therefore asserts the following counterclaims against Plaintiff and her counsel:

- <u>First Counterclaim</u>: "Defamation 28 U.S. Code § 4101 – Press Releases and False Statements Alleging That Ashley Guillard Made False Statements Regarding Rebecca Scofield's Role in the Murder of the Four University of Idaho Students Knowing They Are False"

- <u>Second Counterclaim</u>: "Defamation 28 U.S. Code § 4101 – Defamatory Lawsuit Alleging That Ashley Guillard Made False Statements regarding Rebecca

**MEMORANDUM DECISION AND ORDER - 3**

Scofield's Role in the Murder of the Four University of Idaho Students Knowing They Are False"

- <u>Third Counterclaim</u>: "42 U.S. Code § 1985(2) Obstructing Justice – Conspiracy to Interfere With the Right to Due Process and the Freedom of Speech"

- <u>Fourth Counterclaim</u>: "42 U.S. Code § 1986 – Action for Neglect to Prevent 42 U.S. Code § 1985(2) – Conspiracy to Interfere With the Rights to Due Process and the Freedom of Speech"

- <u>Fifth Counterclaim</u>: "42 U.S.C. Sec 1983 Civil Action for Deprivation of Rights – Deprivation of the Right to Due Process That's Guaranteed by the Fourteenth Amendment of the U.S. Constitution"

- <u>Sixth Counterclaim</u>: "Malicious Prosecution Frivolous Claim"

- <u>Seventh Counterclaim</u>: "Malicious Prosecution Frivolous Claim"

- <u>Eighth Counterclaim</u>: "42 U.S. Code § 1985(2) Obstructing Justice – Conspiracy to Interfere With the Right to Due Process (Improper Venue)"

- <u>Ninth Counterclaim</u>: "42 U.S. Code § 1986 – Action for Neglect to Prevent 42 U.S. Code § 1985(2) – Conspiracy to Interfere With the Right to Due Process That's Guaranteed by the Fourteenth Amendment of the U.S. Constitution"

- <u>Tenth Counterclaim</u>: "Intentional Infliction of Emotional Distress – Frivolous Claim"

- <u>Eleventh Counterclaim</u>: "Intentional Infliction of Emotional Distress Multi-National Press Release and News Coverage Defaming Ashley Guillard"

*Id*. at 19-59, ¶¶ 66-279.

Plaintiff moves to dismiss each of these claims against her,[2] arguing that they are not only factually implausible but legally deficient.  Mem. ISO MTD at 3-11 (Dkt. 22-1).  Further, Plaintiff moves to quash the summonses for her counsel, arguing that their issuance is procedurally improper.  Mot. to Quash at 3-4 (Dkt. 25).  Each of these motions is ripe for the Court's consideration and resolved below.

---

[2] The Motion to Dismiss does not speak to Defendant's counterclaims against Plaintiff's counsel because Plaintiff's counsel contend they are not properly a part of this action.  *Supra*.

**MEMORANDUM DECISION AND ORDER - 4**

## II. <u>DISCUSSION</u>

**A.    Plaintiff's Motion to Dismiss (Dkt. 22)**

1.    <u>Motion to Dismiss Standard</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, that "state a claim to relief that is plausible on its face." *Id*. at 570.  A claim is facially plausible when a plaintiff pleads sufficient facts to allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that the defendant acted unlawfully.  *Id*. ("[I]t simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct].").  Where a complaint pleads facts that are "merely consistent with" the defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. at 557.

Two "working principles" underlie the pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions.  *Id*.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79.  Second, only a complaint stating a *plausible* claim for relief survives a motion to dismiss.  *Id*.

**MEMORANDUM DECISION AND ORDER - 5**

Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Courts generally construe pro se party filings liberally. *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008). Even so, a court may dismiss as frivolous, claims that are "clearly baseless" – "a category encompassing allegations that are fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible."); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (the "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation"). In this context, claims that are clearly baseless are likewise not facially plausible under *Twombly* and *Iqbal*. *Supra*.

When a court grants a Rule 12(b)(6) motion to dismiss, a plaintiff is ordinarily entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also* Fed. R. Civ. P. 15(a) ("the court should freely give leave [to amend] when justice so requires."). Rule 15's policy favoring amendment "should be given with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). This is especially true when a plaintiff is pro se. *Lopez*, 203 F.3d at 1130-31. Leave to amend should be withheld, however, if the "amendment: (i) prejudices the opposing party; (ii) is sought in bad faith; (iii) produces an undue delay in litigation; or (iv) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

2.    <u>Defendant's Counterclaims Against Plaintiff Are Factually Implausible</u>

Defendant responds to Plaintiff's defamation claims against her by going on the offensive, alleging that those claims (as well as statements made by Plaintiff's counsel to the media about those claims) are *themselves* defamatory and purposely brought by Plaintiff and her

**MEMORANDUM DECISION AND ORDER - 6**

counsel to systematically deprive Defendant of her constitutional rights to free speech and due process. *See, e.g.*, Ans. and Countercl. at 19-38, 45-52, ¶¶ 66-161, 202-243 (Dkt. 20). Certain of Defendant's counterclaims reflect these beliefs (First, Second, Third, Fourth, Fifth, Eighth, and Ninth Counterclaims), alongside related counterclaims for malicious prosecution and intentional infliction of emotional distress (Sixth, Seventh, Tenth, and Eleventh Counterclaims). *Id*. at 38-44, 52-59, ¶¶ 162-201, 244-279. Together, these counterclaims presume – and depend upon – an alternate version of events surrounding the murder of the four University of Idaho students: namely, that Plaintiff orchestrated the murders, and then colluded with her counsel to bring this action against Defendant to silence her clairvoyant insight into the true extent of Plaintiff's involvement. The problem with this theory, however, is that there is no objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did.

Defendant insists that her "intuitive abilities," "spiritual acuity," and "investigative skills" into the murders led her to Plaintiff. *Id*. at 13, ¶¶ 32-33. Specifically, she claims that, during her "spiritual research," she was "intuitively led to the University of Idaho History Department" and "spiritually inquired into each person listed on the History Department's webpage seeking their role in the murder[s]." *Id*. at ¶¶ 34-35. As Defendant describes it, the insight into Plaintiff in particular "revealed that she was in a relationship with [one of the victims] that broke up and that she initiated the murders, planned the murders, and hired help to carry the plan out." *Id*. at ¶ 36. The results of Defendant's "spiritual investigation" represent the only support for Defendant's belief that Plaintiff masterminded the murders and, correspondingly, the only justification for Defendant's counterclaims against her.

Significantly, only Defendant has these opinions about Plaintiff; the Court is unaware of similar claims from any other sources or the existence of any independent evidence remotely suggesting the same. When pressed for corroboration during oral argument, Defendant merely

**MEMORANDUM DECISION AND ORDER - 7**

responded that she believed her allegations about Plaintiff were true and that, with discovery, she can find evidence that bears this out.  Defendant also claimed that Plaintiff, as a professor at the University of Idaho, *possibly* knew the deceased students and was involved in their murders.[3] Without more, these explanations do not support a plausible claim for relief under *Twombly* and *Iqbal*.

To begin, Defendant cannot use discovery as a fishing expedition to find facts that might validate her counterclaims.  This "ready, fire, aim" approach is not permitted under the Federal Rules of Civil Procedure.  Moreover, on a motion to dismiss, courts generally may not consider materials, including discovery, other than a complaint's allegations and documents made part of that complaint.  *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  In short, the pleading requirement does not provide a key to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"; again, a complaint must be plausible *on its face*.  *Iqbal*, 556 U.S. at 678-79; *see also Stephens v. St. Francis Med. Ctr.*, 2018WL 3655659, at *17 n.8 (C.D. Cal. 2018) ("To the extent plaintiffs contend that the action should not be dismissed until they can conduct discovery, they are incorrect.  Plaintiffs are not entitled to discovery based on a complaint that cannot survive a motion to dismiss.").

More to the point, Defendant does not present to the Court – in either her Answer and Counterclaims or her response to Plaintiff's Motion to Dismiss – a factual account that would allow the Court to infer the existence of a plausible claim against Plaintiff.  Instead, based solely on her claimed ability to psychically divine the truth, Defendant makes extraordinary allegations about how Plaintiff orchestrated the murder of four people to cover up a secret, romantic

---

[3]  Defendant further stated that Plaintiff could have been involved in the murders because similar murders had taken place at the University of Idaho in the past.  But Defendant was unable to recall the particulars of this claim, before ultimately agreeing that it was not relevant to the instant action.

**MEMORANDUM DECISION AND ORDER - 8**

relationship with one of the victims.  These claims are not only conclusory and unverifiable, but arguably so outrageous as to be clearly baseless and, thus, implausible.  Because the predicate components to Defendant's counterclaims against Plaintiff lack any basis in fact, those counterclaims should not proceed.

Additionally, Defendant attributes the conduct of Plaintiff's counsel to Plaintiff based upon a perceived conspiracy between them.  But she offers no basis for concerted action.  She simply assumes its existence throughout her Answer and Counterclaims when alleging that, together, Plaintiff and her counsel conspired to harm her.  *See, e.g.*, Ans. and Countercl. at 8-9, 14-21, 23-27, 29-41, 43-59, ¶¶ 2-4, 42-43, 47-48, 52-57, 59-60, 62-64, 70, 73-74, 80-81, 89, 92-93, 96, 98, 100, 102, 103, 107-109, 113, 118, 120, 124, 128, 132-137, 139, 143, 148-150, 153-155, 158, 161, 165, 167-170, 174-183, 194, 201, 205-206, 214, 220-221, 224, 228-229, 237, 239-240, 243, 247-250, 253-255, 258-259, 263-265, 274-276, 278-279 (Dkt. 20).  Reflexively lumping Plaintiff and her counsel together, without distinguishing their conduct in any way, fails to satisfy Rule 8.  *Dana v. Tewalt*, 2022 WL 3598311, at *6 (D. Idaho 2022) ("[I]t is 'particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her.'") (*quoting Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008)).  This is particularly problematic when, under Idaho law, claims of conspiracy must be pled with specificity.  *Kerr v. ReconTrust Co. N.A.*, 2014 WL 6674273, at *4 (Idaho Ct. App. 2014) ("[T]here must be specific evidence of a plan or agreement to demonstrate the existence of a conspiracy at the time the allegedly unlawful objective was accomplished.").

At bottom, the court struggles to accept Defendant's allegations as creating factually plausible counterclaims against Plaintiff.  This alone would justify granting Plaintiff's Motion to

Dismiss.  But Defendant's counterclaims are also legally deficient and therefore separately subject to dismissal for failing to state a claim upon which relief can be granted.  *Infra*.

    3.    <u>Each of Defendant's Counterclaims Against Plaintiff Is Also Legally Deficient</u>

        *a.*    *Defendant's Defamation Claims (First and Second Counterclaims)*

Defendant asserts two defamation counterclaims against Plaintiff – both cite to 28 U.S.C. § 4101.  Ans. and Countercl. at 19-26, ¶¶ 66-103 (Dkt. 20).  Except § 4101 does not create a private right of action.  It instead is the "definitions" section of the Securing the Protection of our Enduring and Established Constitutional Heritage ("SPEECH") Act, which protects a citizen from foreign defamation judgments.  *See* 28 U.S.C. § 4102.  Defendant is not trying to enforce a foreign defamation judgment here.  Therefore, the SPEECH Act does not apply, and Defendant's misguided First and Second Counterclaims based on § 4101 are without merit.  *See Gonsalves v. Withy*, 2022 WL 10650259, at *2 (D. Hawaii 2022).

Even if the Court liberally interpreted Defendant's Answer and Counterclaims to allege defamation counterclaims against Plaintiff under Idaho state law, those counterclaims would still fail.  As a threshold matter, Plaintiff never made the statements to the media about which Defendant complains in her First Counterclaim – only Plaintiff's counsel did.  There is no basis to hold Plaintiff responsible for statements she never made.  *See Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007) ("In a defamation action, a plaintiff must prove *that the defendant . . . communicated information* concerning the plaintiff to others . . . .") (emphasis added); *see also supra* (no evidence of conspiracy between Plaintiff and her counsel).

Further, Idaho's judicial privilege forecloses Defendant's Second Counterclaim.  The judicial privilege immunizes a party from civil liability for statements made in the course of judicial proceedings.  *See Berian v. Berberian*, 483 P.3d 937, 946 (Idaho 2020) ("Idaho has long recognized that defamatory statements made in the course of a judicial proceeding are absolutely

**MEMORANDUM DECISION AND ORDER - 10**

privileged, even if made with malicious intent or knowledge of their falsity.  The purpose of the judicial privilege is to keep the paths leading to the ascertainment of truth as free and unobstructed as possible.") (internal quotation marks and citations omitted).  This privilege sets a low bar, requiring only that the defamatory statement (i) be made in the course of a proceeding, and (ii) have "a reasonable relation to the cause of action of that proceeding."  *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 434 P.3d 1275, 1284 (Idaho 2019).  Plaintiff's Complaint, and the allegedly defamatory statements made therein, easily meet this standard.[4]

      As such, Defendant's First and Second Counterclaims fail to state a defamation claim against Plaintiff.

      b.     *Defendant's 42 U.S.C. § 1985(2) Obstructing Justice-Conspiracy Claims (Third and Eighth Counterclaims)*

      Defendant alleges two counterclaims under 42 U.S.C. § 1985(2).  She asserts that Plaintiff conspired with her counsel to interfere with Defendant's right to due process and freedom of speech by suing Defendant for defamation in what she believes is the wrong venue.  Ans. and Countercl. at 26-30, 45-49, ¶¶ 104-124, 202-224 (Dkt. 20).  Section 1985(2) proscribes conspiracies that interfere with civil rights, permitting a civil action for damages based on the following circumstances:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the

---

[4]  The Court takes no position here as to whether Plaintiff's counsel's statements to the media after Plaintiff initiated this action are similarly privileged.  Regardless, again, Plaintiff did not make these statements and there is no basis to hold Plaintiff responsible for statements made by her counsel.  *Supra.*

**MEMORANDUM DECISION AND ORDER - 11**

> purpose of impeding, hindering, obstructing, or defeating, in any manner, the
> due course of justice in any State or Territory, with intent to deny to any
> citizen the equal protection of the laws, or to injure him or his property for
> lawfully enforcing, or attempting to enforce, the right of any person, or class
> of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).  Read in its entirety, § 1985(2) consists of two distinct parts that give rise to

separate causes of action.  *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991).

The first part protects parties and witnesses from conspiracies to deter them from attending, or

testifying in, court proceedings.  *Id.*  The second part protects parties from conspiracies which

obstruct the due course of justice with intent to deny equal protection.  *Id.*  Defendant's

§ 1985(2)-related counterclaims against Plaintiff satisfy neither of these parts.

First, and most obviously problematic, there is no plausible claim of any conspiracy

involving Plaintiff that would implicate § 1985(2)'s twin protections.  "To be actionable, the

conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause

in fact and proximate cause of [a] plaintiff's injuries.  A mere allegation of conspiracy without

factual specificity is insufficient to support a claim."  *Sanchez v. City of Santa Ana*, 936 F.2d

1027, 1039 (9th Cir. 1990) (internal citations omitted).  Here, Plaintiff's only connection to a

possible conspiracy to interfere with Defendant's civil rights is through her relationship with

counsel.  That is not enough to support a § 1985(2) conspiracy claim under either of its parts.

*Supra*; *see also Farese v. Scherer*, 342 F.2d 1223, 1232 (11th Cir. 2003) ("[A]s long as an

attorney's conduct falls within the scope of the representation of his client, such conduct is

immune from an allegation of a § 1985 conspiracy."); *Petricevic v. Shin*, 2021 WL 2700382, at

*7 (D. Hawaii 2021) ("[I]t is not possible for the Motion Defendants, as attorneys, to have

conspired with their clients for purposes of § 1985(2), because their alleged conduct occurred

within the scope of representing their clients.").

**MEMORANDUM DECISION AND ORDER - 12**

Second, Defendant does not allege that she is (or was) a party, witness, or juror in any underlying action impacted by Plaintiff's alleged conduct. *See Head v. Wilkie*, 936 F.3d 1007 (9th Cir. 2019) (explaining that parties and witnesses to an action where they claim to have been intimidated or retaliated against have standing to bring a claim under § 1985(2)). The only conceivable legal proceeding Defendant could invoke is the criminal prosecution of Bryan Kohberger in Latah County, Idaho. Aside from her claimed psychic abilities into the events surrounding Mr. Kohberger's upcoming trial, Defendant is not involved in that case. Nor can she demonstrate any obstruction of justice in that case due to Plaintiff's alleged conduct. Owing to this separate omission, Defendant fails to state a claim under the first part of § 1985(2).[5]

Third, the second part of § 1985(2) "requires an allegation of a class-based, invidiously discriminatory animus" behind the conspirators' actions. *Phillips v. Int'l Ass'n of Bridge Workers, Local 118*, 556 F.2d 939, 941 (9th Cir. 1977); *see also Bretz v. Kelman*, 773 F.2d 1026, 1029-30 (9th Cir. 1985) ("[W]e read the 'equal protection' language of the second clause of § 1985(2) to require an allegation of class-based animus for the statement of a claim under that clause."). Defendant fails to allege any facts supporting the conclusion that Plaintiff's Complaint was motivated by invidiously discriminatory class-based animus. Indeed, there is no allegation of such motivation at all.[6] Plaintiff's defamation claims against Defendant follow Plaintiff's

---

[5] Defendant concedes that she is not involved in any separate action which undermines a claim based on the first part of § 1985(2). Opp. to MTD at 13 (Dkt. 35) ("[Defendant] has not claimed to be a party to Mr. Kohberger's case. [Plaintiff's] argument is moot.").

[6] Though not a part of Defendant's allegations against Plaintiff, Defendant's briefing on the subject attempts to equate her spirituality with a protected religious class. Opp. to MTD at 9 (Dkt. 35) ("[Plaintiff] vehemently asked the Court to decide that spiritual practices as in tarot readings, and spiritual connections as in mediumship and psychic intuition, are implausible. Ergo seeking that the Court discriminate against [Defendant] based on her spiritual practices."). But this misstates Plaintiff's claims against Defendant. Plaintiff's Complaint cannot be read as an attack on Defendant's spirituality, but on Defendant's false claim that Plaintiff murdered four people. Defendant's spirituality is immaterial to this claim. In any event, while it is possible

**MEMORANDUM DECISION AND ORDER - 13**

straightforward contention that Defendant purposely communicated false statements about her to the public – nothing more, nothing less.  Absent a class-based, invidiously discriminatory animus for Plaintiff's Complaint, Defendant fails to state a claim under the second part of § 1985(2).

Fourth, the "due course of justice" contemplated by the second part of § 1985(2) does not include First Amendment protection for false statements of fact.  In Idaho, only statements of opinion enjoy constitutional protection; false statements of fact are actionable.  *Elliott v. Murdock*, 385 P.3d 459, 465 (Idaho 2016).  Plaintiff's defamation claims against Defendant implicate this distinction, but they do not give rise to an affirmative § 1985(2) counterclaim.  Nor does Defendant's belief that Plaintiff brought her claims in the wrong venue.  Rather than bring a § 1985(2) claim, Defendant could have challenged Plaintiff's Complaint for improper venue in accordance with Rule 12(b)(3).[7]

In sum, each of Defendant's § 1985(2) claims fails because she has not plausibly alleged the existence of a conspiracy involving Plaintiff to violate her civil rights.  Defendant also fails

---

that Defendant's psychic abilities relate to an unknown religious practice for the purposes of the second part of § 1985(2), it is also possible that it relates to a purely secular pursuit untethered to a protected class (e.g., a type of philosophy).  *See El-Shaddai v. Stainer*, 2016 WL 7261230, at *21 (C.D. Cal. 2016).  Thus, it can be argued that Defendant may not rely on such allegations to plausibly show that her spirituality *ipso facto* amounts to protected religious practices vis à vis her § 1985(a) claim.  *Id*. (citing *In re Century Alum. Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (when allegations in a complaint are consistent with "two possible," but contradictory inferences, – "only one of which can be true and only one of which results in liability" – plaintiffs may not rely on allegations that are "'merely consistent with' their favored explanation but are also consistent with the alternative [inference]" to render their allegations "plausible within the meaning of *Iqbal* and *Twombly*," but instead must allege "[s]omething more," such as "facts tending to exclude the possibility that the alternative explanation is true") (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 554, 557, 567))).

[7]  When venue is improper, "the case must be dismissed or transferred under 28 U.S.C. § 1406(a).  *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013); *but see* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

**MEMORANDUM DECISION AND ORDER - 14**

to state a claim under the first part of § 1985(2) because she has not alleged a proceeding from which Plaintiff's conduct deterred her participation.  Finally, Defendant's claim under the second part of § 1985(2) fails because she has not alleged invidiously discriminatory class-based animus.  Accordingly, Defendant's Third And Eighth Counterclaims fail to state a claim against Plaintiff for conspiring to interfere with Defendant's civil rights in violation of § 1985(2).

> c. *Defendant's 42 U.S.C. § 1986 Action for Neglect to Prevent Claims (Fourth and Ninth Counterclaims)*

Defendant brings counterclaims for failure to act or protect in violation of 42 U.S.C. § 1986.  Ans. and Countercl. at 30-35, 49-52, ¶¶ 125-143, 225-243 (Dkt. 20).  "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir. 1997) (quoting 42 U.S.C. § 1986). "Section 1986 claims are therefore derivative of § 1985 violations" because "[t]he text of § 1986 requires the existence of a § 1985 conspiracy."  *Id*. at 1160; *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990).

Here, because there are insufficient facts to establish a predicate § 1985(2) violation (*supra*), it necessarily follows that there are insufficient facts to establish a § 1986 violation as well.  Therefore, Defendant's Fourth and Ninth Counterclaims fail to state a claim against Plaintiff for not preventing a conspiracy to interfere with Defendant's civil rights in violation of § 1986.

> d. *Defendant's 42 U.S.C. § 1983 Deprivation of Rights Claim (Fifth Counterclaim)*

Consistent with the other counterclaims already discussed, Defendant alleges a counterclaim under 42 U.S.C. § 1983.  Ans. and Countercl. at 35-38, ¶¶ 144-161 (Dkt. 20).

**MEMORANDUM DECISION AND ORDER - 15**

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 362 (2017). Its purpose is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000). "To establish § 1983 liability, a plaintiff must show both (i) deprivation of a right secured by the Constitution and laws of the United States, and (ii) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). "[A] defendant acts under color of state law when [s]he abuses the position given to h[er] by the State. Thus, generally, a public employee acts under color of state law while acting in h[er] official capacity or while exercising h[er] responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("[A]nyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983.") (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

While Plaintiff is a professor at the University of Idaho, her defamation claims against Defendant exist independent of that status. Plaintiff raises those claims not as a state actor or while acting under color of state law. Instead, she raises them as a private citizen acting in a private capacity, completely unrelated to her duties as a college professor.[8] Therefore, Defendant's Fifth Counterclaim fails to state a § 1983 claim against Plaintiff.

> e.     *Defendant's Malicious Prosecution (Frivolous Claim) Claims (Sixth and Seventh Counterclaims)*

---

[8]  Alleging that Plaintiff raises her defamation claims pursuant to state law and filed a police report for defamation against Defendant pursuant to Idaho Code, Defendant argues that Plaintiff is in fact acting as a state actor and/or under color of state law. Opp. to MTD at 15-16 (Dkt. 35). Case law, however, does not support such a legal "reach," otherwise any claim for defamation would automatically support a § 1983 counterclaim – an absurd result.

**MEMORANDUM DECISION AND ORDER - 16**

Defendant considers Plaintiff's defamation claims against her frivolous and *de facto* evidence of an improper malicious prosecution under Idaho law.  Ans. and Countercl. at 38-44, ¶¶ 162-201 (Dkt. 20).  Malicious prosecution actions and actions for the tort of wrongful civil proceedings are disfavored and are limited by requiring a plaintiff to establish several elements. *Badell v. Beeks*, 765 P.2d 126, 127 (Idaho 1988).  A plaintiff must prove (i) that there was a prosecution; (ii) that it terminated in favor of the plaintiff; (iii) that the defendant was the prosecutor; (iv) malice; (v) lack of probable cause; and (vi) damages.  *Rincover v. State*, 917 P.2d 1293, 1299 (Idaho 1996).  Defendant cannot plausibly allege these elements.

Critically, there has been no prior "prosecution" to this point – only *this* standalone action, still in its very beginning stages.  A malicious prosecution claim depends on an *earlier* action from which the claim can be rooted and reviewed.  *See, e.g.*, *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 222 Cal. Rptr. 276, 281 n.4 (Cal. Ct. App. 1986) (recognizing in coverage context that malicious prosecution claim under California law requires prior termination of an earlier proceeding).  Without the requisite earlier action, a malicious prosecution claim collapses because its elements cannot exist as a matter of law (e.g., it would be impossible to allege that a non-existent earlier action was ever terminated in Defendant's favor).[9]  Therefore, Defendant's Sixth and Seventh Counterclaims fail to state a claim for malicious prosecution against Plaintiff.

      f.    *Defendant's Intentional Infliction of Emotional Distress Claims (Tenth*

---

[9]  Defendant responds that, while Plaintiff's defamation claims have not yet been terminated in Defendant's favor, Rule 18 still permits her malicious prosecution counterclaim because it is contingent on the favorable resolution of Plaintiff's defamation claims.  Opp. to MTD at 16 (Dkt. 35).  Defendant misunderstands Rule 18.  Rule 18(b) allows a party to "join two claims even though one of them is contingent on the disposition of the other."  Fed. R. Civ. P. 18(b) (as an example, Rule 18(b) provides: "[A] plaintiff may state a claim for money and a claim to set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment for the money.').  Defendant is not asserting contingent counterclaims under Rule 18(b).  Her malicious prosecution counterclaim depends on the resolution of Plaintiff's underlying defamation claims which have not been adjudicated yet.  In other words, there has been no prosecution that can even be labeled as legally malicious.

**MEMORANDUM DECISION AND ORDER - 17**

*and Eleventh Counterclaims)*

Defendant alleges that Plaintiff's defamation claims against her justify counterclaims for intentional infliction of emotional distress.  Ans. and Countercl. at 52-59, ¶¶ 244-279 (Dkt. 20). To prevail on an intentional infliction of emotional distress claim, a plaintiff must show: (i) that the defendant acted intentionally or recklessly; (ii) that the defendant's conduct was extreme and outrageous; (iii) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (iv) that the plaintiff's emotional distress was severe.  *Spence v. Howell*, 890 P.2d 714, 725 (Idaho 1995).

Importantly, merely exercising a legal right does not satisfy the outrageousness element. "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.'"  *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 397 (Idaho 2010) (quoting 86 C.J.S. *Torts* § 74 (2009)).  However, "[t]he actor is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  Restatement (Second) of Torts § 46 cmt. g (1965); *see also Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 741 (Idaho 2003) (finding no outrageous conduct where an employer was exercising a legal right to terminate an employee).  "Courts generally agree that merely exercising a legal right cannot itself constitute a tort, but that the defendant may nevertheless engage in extreme and outrageous behavior in the context of exercising a legal right."  Restatement (Third) of Torts § 45 cmt. d (2007).

Defendant's disagreement with Plaintiff's defamation claims – and the backlash and resulting distress Defendant alleges they caused – does not give rise to a counterclaim for intentional infliction of emotional distress.  Plaintiff is merely asserting her legal rights to redress what she believes were false public statements made by Defendant about her.  There is nothing

**MEMORANDUM DECISION AND ORDER - 18**

objectively extreme or outrageous in doing so.  Therefore, Defendant's Tenth and Eleventh Counterclaims fail to state a claim for intentional infliction of emotional distress against Plaintiff.

### 4.      Leave to Amend Would Be Futile

Defendant's counterclaims against Plaintiff are dismissed because they are both factually implausible and legally deficient.  *Supra*.  And though Rule 15(a)(2) instructs that courts should freely give leave to amend when justice so requires, leave may be withheld if the amendment is futile.  *Id*. (citing *AmerisourceBergen Corp.*, 465 F.3d at 951).  Defendant's counterclaims against Plaintiff cannot be saved by an amendment.  They are neither based in fact nor supported by the law.  Given these serious deficiencies, allowing Defendant leave to amend based upon the same legal theories and supported only by spiritual intuition would be futile.  Defendant's counterclaims against Plaintiff are therefore dismissed with prejudice.[10]

### 5.      An Attorney's Fees Award Against Defendant is Not Warranted

Plaintiff requests that the Court "exercise its inherent power to send a clear message to [Defendant] for the rest of this litigation and award [Plaintiff] her attorney's fees spent combatting these frivolous counterclaims."  Mem. ISO MTD at 11 (Dkt. 22-1).  A district court may award sanctions in the form of attorney's fees against a party who acts in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).  "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith."  *Id*.  "A party

---

[10]  The Court's position in this respect applies only to Defendant's affirmatively-stated counterclaims against Plaintiff.  It should not be understood as a reflection of the Court's position on either Plaintiff's underlying claims or Defendant's defenses thereto.  Nor does it operate to preclude discovery relevant to these same claims and defenses, to the extent permitted by the Federal Rules of Civil Procedure.  In the event such discovery reveals an *evidentiary basis* for *legally-supportable* counterclaims against Plaintiff that would render amendment not futile, Defendant may move the Court for leave to amend her Answer to assert new counterclaims pursuant to Rule 15.

**MEMORANDUM DECISION AND ORDER - 19**

demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id*.  "The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id*.

The Court has previously remarked that certain of Defendant's conduct after being served with Plaintiff's Complaint was "off-putting" and "ill-advised."  4/26/23 MDO at 6 n.1 (Dkt. 18). Without commenting here on the merits of Plaintiff's Complaint, Defendant's Answer and Counterclaims unfortunately do nothing to allay these concerns.  But it must be recognized that Defendant is not an attorney and, with that, cannot be held to the same standards as an attorney when assessing whether she has acted in bad faith before this Court.  For this primary reason, the Court declines to levy sanctions against Defendant at this time.  Additionally, the Court cannot conclude with any confidence that Defendant has purposely delayed or disrupted the litigation. Meritless counterclaims, asserted by a non-attorney, do not automatically rise to that level.

But due to the very sensitive nature of this case and its impact to both litigants and non-litigants alike, the parties are on notice that the Court's tolerance for any disregard for court procedure or basic human decency is limited.  With this in mind, the Court's current refusal to assess sanctions against Defendant does not foreclose the possibility that sanctions may be appropriate later.  Until then, an attorney's fees award against Defendant is not warranted.

**B.     Plaintiff's Motion to Quash (Dkt. 25)**

Defendant's Answer and Counterclaims assert the same above-discussed counterclaims against Plaintiff's counsel.  *See generally* Ans. and Countercl. (Dkt. 20).  To that end, the Court issued summonses for Plaintiff's counsel on June 8, 2023 (Dkt. 24).  Through her Motion to Quash, Plaintiff requests that the Court quash these summonses as procedurally deficient because

**MEMORANDUM DECISION AND ORDER - 20**

they are not properly parties to the action under either Rule 13 or 14.  Mot. to Quash at 3-7 (Dkt. 25).  The Court agrees.

Rule 13 addresses counterclaims.  Defendant's counterclaims cannot be brought against Plaintiff's counsel under Rules 13(a) or (b) because, unlike Plaintiff herself, Plaintiff's counsel is not already a party to the action.  *See* Fed. R. Civ. P. 13(a) & (b) (discussing compulsory and permissive counterclaims "against an opposing party").  Still, Rule 13(h) permits the joining of *additional* parties to counterclaims if warranted under Rules 19 and 20.  *See* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim . . . .'); *see also* Rutter Grp. Prac. Guide: Fed. Civ. Proc. Before Trial ¶ 8:1107 ("Although a counterclaim lies only against an 'opposing party,' the court may order joinder of additional parties whose presence would facilitate determination of the counterclaim ('necessary' or 'proper' parties under Rules 19 and 20).").[11]  Except Rule 13(h) applies only when counterclaims already exist against an opposing party – counterclaims cannot be asserted entirely against third parties.  *See* Rutter Grp. Prac Guide: Fed. Civ. Proc. Before Trial ¶ 8:1217 ("At least one of the parties to the counterclaim must be an opposing party.  Even if there is subject matter relationship, a 'counterclaim' cannot be asserted *solely* against new parties.") (emphasis in original); *see also* 6 Wright and Miller, Federal Practice and Procedure, Civil (3d ed.) § 1435 ("[A] counterclaim . . . may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party.").

Here, with Defendant's counterclaims against Plaintiff now dismissed (*supra*), there are no counterclaims against an existing party to anchor Defendant's same counterclaims against Plaintiff's counsel under Rule 13(h).  Therefore, any attempt to shoehorn Defendant's

---

[11]  Rules 19 addresses the "required joinder of parties" while Rule 20 addresses the "permissive joinder of parties."  *See* Fed. R. Civ. P. 19 & 20.

**MEMORANDUM DECISION AND ORDER - 21**

counterclaims against Plaintiff's counsel by following Rule 13(h)'s direction and joining

Plaintiff's counsel under Rules 19 and/or 20 is premature if not outright improper.

Defendant does not appear to disagree, stating that she "mistakenly" referred to

Plaintiff's counsel as counterdefendants, but nonetheless followed the correct procedure to add

them as third-party defendants under Rule 14.  Opp. to Mot. to Quash at 4 (Dkt. 36).[12]  But Rule

14 similarly does not permit Defendant to add claims against Plaintiff's counsel's under the

existing circumstances.

Rule 14 speaks to third-party practice.  Under Rule 14(a), "[a] defending party may, as

third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it

for all or part of the claims against it."  Fed. R. Civ. P. 14(a).  "The objective of Rule 14 is to

avoid the situation that arises when a defendant has been held liable to plaintiff and then finds it

necessary to bring a separate action against a third individual who may be liable to defendant for

all or part of plaintiff's original claim."  6 Wright and Miller, Federal Practice and Procedure,

Civil (3d ed.) § 1442.

Even a cursory review of Rule 14 reveals its inapplicability here.  Plaintiff's counsel

cannot conceivably be liable for the defamation claims Plaintiff (their client) asserts against

Defendant.  Said another way, for Rule 14 to theoretically apply, Plaintiff's counsel would have

to be responsible for Defendant's allegedly defamatory TikTok videos about their own client.

Such events are factually and temporally inconceivable.  Defendant's counterclaims do not seek

to re-direct liability to Plaintiff's counsel for Plaintiff's defamation claims against Defendant.

Defendant's counterclaims prove this point: they allege separate and distinct defamatory conduct

---

[12]  Elsewhere in her briefing, Defendant claims to assert joint and several liability between Plaintiff and her counsel.  Opp. to Mot. to Quash at 5 (Dkt. 36).  To the extent this implicates Rule 20(a)(2)(B), it is immaterial because Plaintiff is no longer a counterdefendant. *Supra*.

**MEMORANDUM DECISION AND ORDER - 22**

(albeit from Plaintiff and her counsel) arising from Plaintiff's Complaint and Plaintiff's counsel's comments to the media.  Rule 14 does not apply to bring Plaintiff's counsel into the case.

Because Plaintiff's counsel is not properly before the Court as a party, the summonses issued for Plaintiff's counsel will be quashed.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. 22) is GRANTED, in part, and DENIED, in part, as follows:

      a.      Defendant's counterclaims against Plaintiff are dismissed with prejudice. In this respect, Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. 22) is GRANTED.

      b.      An attorney's fees award against Defendant is not warranted at this time. In this respect, Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. 22) is DENIED.

2.      Plaintiff's Motion to Quash Summonses for Wendy J. Olson, Elijah M. Watkins, and Cory M. Carone (Dkt. 25) is GRANTED.  Because Plaintiff's counsel is not a party to the action, any consent deadline directed at Plaintiff's counsel is inapplicable and hereby vacated.

3.      Consistent with paragraph 4 of the Court's Scheduling Order, Plaintiff's Proposed Discovery Plan (Dkt. 30) controls, unless otherwise ordered.

DATED:  August 8, 2023

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**