Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
Elijah M. Watkins, ISB No. 8977
*elijah.watkins@stoel.com*
Cory M. Carone, ISB No. 11422
*cory.carone@stoel.com*
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>   Plaintiff,<br><br> v.<br><br>ASHLEY GUILLARD,<br><br>   Defendant. | Case No. 3:22-cv-00521-REP<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ....................................................................................................1

II.  BACKGROUND .......................................................................................................1

   A.  Factual History. ...............................................................................................1

   B.  Procedural History. ..........................................................................................2

III. LEGAL STANDARDS .............................................................................................4

IV.  ARGUMENT .............................................................................................................5

   A.  Ms. Guillard's Failure to Respond to Requests for Admission Conclusively Establishes the Material Facts. ........................................................................5

   B.  The Facts Conclusively Established by Ms. Guillard's Admissions Demonstrate Professor Scofield's Entitlement to Judgment as a Matter of Law. ...............7

      1.  Professor Scofield Is Entitled to Judgment as a Matter of Law on Count I. ..............9

         a.  Ms. Guillard Communicated Information Regarding Professor Scofield to Others. ..........................................................................9

         b.  Ms. Guillard's Communications Were Defamatory Per Se. ...........................11

      2.  Professor Scofield Is Entitled to Judgment as a Matter of Law on Count II...........12

         a.  Ms. Guillard Communicated Information Concerning Professor Scofield to Others. ..........................................................................12

         b.  Ms. Guillard's False Statements That Professor Scofield Maintained a Romantic Relationship with a Student Are Defamatory as a Matter of Law.................................................................................................12

            (i)  Ms. Guillard's Statements Ascribe Conduct to Professor Scofield That Is Incompatible with the Proper Conduct of a Professor. .....................13

            (ii) Ms. Guillard's Statements Impute Serious Sexual Misconduct to Professor Scofield. ..................................................................15

V.   CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

Page

**Cases**

*999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) ............................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................................................4

*Barlow v. Int'l Harvester Co.*,
    95 Idaho 881, 522 P.2d 1102 (Idaho 1974), *abrogated on other grounds by*
    *Siercke*, 167 Idaho, 476 P.3d ............................................................................................13, 14

*Clark v. Spokesman-Rev.*,
    144 Idaho 427, 163 P.3d 216 (Idaho 2007) ............................................................................7

*Elliott v. Murdock*,
    161 Idaho 281, 385 P.3d 459 (Idaho 2016) ............................................................................7

*Irish v. Hall*,
    163 Idaho 603, 416 P.3d 975 (Idaho 2018), *abrogated on other grounds by*
    *Siercke*, 167 Idaho, 476 P.3d ..............................................................................9, 10, 11, 12

*Oja v. U.S. Army Corps of Eng'rs*,
    440 F.3d 1122 (9th Cir. 2006) ................................................................................................9

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ..................................................................................................................4

*Siercke v. Siercke*,
    167 Idaho 709, 476 P.3d 376 (Idaho 2020) .................................................................. passim

*U.S. SEC v. Cutting*,
    No. 2:21-cv-00103-BLW, 2022 WL 4536816 (D. Idaho Sept. 28, 2022) ........................4, 12

*United States v. Kasuboski*,
    834 F.2d 1345 (7th Cir. 1987) ................................................................................................8

*Yoakum v. Hartford Fire Ins. Co.*,
    129 Idaho 171, 923 P.2d 416 (Idaho 1996) ...............................................................8, 13, 15

*Zetwick v. County of Yolo*,
    850 F.3d 436 (9th Cir. 2017) ..................................................................................................4

**Statutes**

Idaho Code Ann. §§ 18-4001 ......................................................................................................11

## TABLE OF CONTENTS
(continued)

Page

**Rules**

Fed. R. Civ. P. 6(a)(1) ................................................................................................5

Fed. R. Civ. P. Rule 26(b)(1) ......................................................................................5

Fed. R. Civ. P. Rule 36 ...........................................................................................5, 8

Fed. R. Civ. P. Rule 36(a) ...........................................................................................5

Fed. R. Civ. P. 36(a)(1) ...............................................................................................5

Fed. R. Civ. P. 36(a)(3) ...........................................................................................5, 9

Fed. R. Civ. P. 36(b) ...................................................................................................5

Fed. R. Civ. P. Rule 55(a) ...........................................................................................2

Fed. R. Civ. P. 56(a) ...............................................................................................4, 12

**Other Authorities**

Amia Srinivasan, *What's Wrong with Sex Between Professors and Students? It's
Not What You Think*, N.Y. Times (Sept. 3, 2021) ................................................14

Restatement (Second) of Torts §§ 570–74 ...............................................................8

Restatement (Second) of Torts § 571 (1977) ............................................................8

Restatement (Second) of Torts § 573 .................................................................8, 13

Restatement (Second) of Torts § 574 ............................................................8, 13, 15

Restatement (Second) of Torts § 574 cmt. b. Undoubtedly, Ms. Guillard's ...............15

## I.      INTRODUCTION

Plaintiff Rebecca Scofield ("Professor Scofield") respectfully requests that the Court enter summary judgment on both her claims against Defendant Ashley Guillard.  As a matter of law, and as a consequence of her failure to engage in this litigation as required by the Federal Rules of Civil Procedure, Ms. Guillard has admitted to defaming Professor Scofield.  Ms. Guillard's admissions establish beyond dispute that Ms. Guillard is liable for her defamation of Professor Scofield.  Accordingly, all that remains is for a jury to determine the extent of Professor Scofield's damages.

## II.      BACKGROUND

**A.      Factual History.**

In November 2022, four students at the University of Idaho were murdered at a home near campus.[1]  ECF 1, ¶ 5.  Ms. Guillard, a resident of Texas, took this tragedy as an opportunity to post sensationalist content online to attract clicks and make money.  ECF 20, p. 13, ¶ 32.  According to Ms. Guillard, she "used her spiritual practice, psychic abilities, [and] metaphysical tools [] including Tarot Cards," ECF 50-1, p. 2, to post "over one hundred TikTok videos" of her supposed "findings" concerning the murders near the university, ECF 20, p. 14, ¶ 38.

Ms. Guillard's purported "findings," which she posted on the social media website TikTok, went like this: Professor Scofield had a same-sex affair with one of the victims and then "planned, initiated, ordered, and executed the murder of [the] four University of Idaho Students."  ECF 50-1, p. 1; *see also* ECF 1, ¶¶ 15–26; ECF 20, p. 10, ¶¶ 13–15.  Ms. Guillard has admitted that she

---

[1] To respect the privacy of the victims and their families, this memorandum refers to the victims by their initials: K.G., M.M., X.K., and E.C.

made these sensational statements, and she has admitted that these statements are false.  *See generally* Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SOF"), ¶¶ 11–19, 24–30.  Ms. Guillard has also admitted that her false statements are based on nothing more than her "spiritual research, intuition, and instincts," and that she has no written information or oral information from another human being that support her false statements.  SOF at ¶¶ 20–22, 31–32.

In a good-faith attempt to resolve this matter without litigation and to avoid drawing further attention to Ms. Guillard's utterly baseless statements, Professor Scofield sent cease-and-desist letters to Ms. Guillard on November 28, 2022, SOF at ¶ 37, and December 8, 2022, SOF at ¶ 40.  Ms. Guillard received these letters and promptly disregarded them, instead choosing to continue spreading false information for her own pecuniary gain.  SOF at ¶¶ 38–39, 41–42.  Given Ms. Guillard's willful disregard of the cease-and-desist letters, Professor Scofield filed her complaint, ECF 1, asserting two defamation claims: one relating to Ms. Guillard's false statements that Professor Scofield was involved in the murders, *id.* at ¶¶ 36–42, another relating to Ms. Guillard's false statements that Professor Scofield was romantically involved with one of the victims, *id.* at ¶¶ 43–48.

The factual history of this matter is set forth in more detail in the concurrently filed SOF, which is incorporated herein by reference as if set forth in full.

**B.     Procedural History.**

Professor Scofield filed her two-count complaint on December 21, 2022.  ECF 1.  Ms. Guillard failed to answer or otherwise respond to the complaint within the time called for under the Federal Rules of Civil Procedure and, pursuant to Rule 55(a), Professor Scofield filed a motion for clerk's entry of default on January 19, 2023.  ECF 4.  A clerk's entry of default was filed on January 27, 2023.  ECF 5.  After failing to respond to the complaint and being found in default,

Ms. Guillard filed a motion for relief from judgment and an answer, affirmative defenses, and counterclaims on February 16, 2023.  ECF 6–8.  Professor Scofield responded by filing a motion for default judgment on February 17, 2023, ECF 10, and filed a motion to strike Ms. Guillard's answer, affirmative defenses, and counterclaims on February 27, 2023, ECF 12.

On April 26, 2023, the Court issued a memorandum decision and order granting Ms. Guillard's motion to set aside entry of default, granting Professor Scofield's motion to strike, and denying as moot Professor Scofield's motion for default judgment.  ECF 18.  In granting Ms. Guillard's motion, the Court reasoned that her "failure to timely respond to Plaintiff's Complaint was most likely an unintentional oversite [sic] caused by self-serving carelessness" and that, "[a]lthough the Court [did] not condone" it, such failure did "not amount to bad faith with an intention to take advantage of the opposing party, interfere with the judicial decision making, or otherwise manipulate the legal process."  *Id.* at 6–7 (internal quotation marks, footnotes, and citation omitted).  The Court also found that Ms. Guillard satisfied the low "meritorious defense" hurdle, and that setting aside the entry of default would not prejudice Professor Scofield.  *Id.* at 8–9.[2]

Ms. Guillard re-filed her answer, affirmative defenses, and counterclaims on May 16, 2023, ECF 20, and on June 6, 2023, Professor Scofield filed a motion to dismiss Ms. Guillard's counterclaims, ECF 23.  The Court heard argument on Professor Scofield's motion to dismiss on July 21, 2023, ECF 47, and issued a memorandum decision and order dismissing Ms. Guillard's counterclaims on August 8, 2023, ECF 49.  On August 22, 2023, Ms. Guillard filed a motion to

---

[2] When the Court set aside Ms. Guillard's default, it also wrote: "Defendant represents that, going forward, she 'will prioritize court rules, orders and actions, and file timely actions.'  The Court intends to keep Defendant to her word."  ECF 18, p. 7 n.3 (citation omitted).  Ms. Guillard has not kept her word.  She represented to the Court on February 16, 2023, that she would prioritize submitting filings timely, but since then she failed to file timely responses to: (1) Plaintiff's Motion for Default Judgment, ECF 10; (2) Plaintiff's Motion to Strike Answer, ECF 12; (3) Plaintiff's Motion for Sanctions, ECF 45; and (4) Plaintiff's Motion to Quash, ECF 48.  And here, she has completely failed to respond to Plaintiff's discovery requests.

set aside the Court's memorandum decision and order concerning the dismissal of her counterclaims, which remains pending.  ECF 50.

### III.    LEGAL STANDARDS

Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added).  The emphasized portion of Rule 56(a) permits parties, like Professor Scofield here, to move for summary judgment on liability, while leaving the amount of damages for trial.  *See, e.g.*, *U.S. SEC v. Cutting*, No. 2:21-cv-00103-BLW, 2022 WL 4536816, at *14 (D. Idaho Sept. 28, 2022) (granting a "Motion for Summary Judgment on Liability").  "The standard for summary judgment is familiar: Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact."  *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (internal quotation marks and citation omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate."  *Zetwick*, 850 F.3d at 441 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "The district court must not only properly consider the record on summary judgment, but must consider that record in light of the 'governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV.    ARGUMENT

**A.    Ms. Guillard's Failure to Respond to Requests for Admission Conclusively Establishes the Material Facts.**

Federal Rule of Civil Procedure 36(a)(1) provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Following service of requests for admission under Rule 36(a), the responding party has 30 days to admit, deny, or object to such requests. Fed. R. Civ. P. 36(a)(3). If the responding party fails to timely respond, the matter is deemed admitted. *Id.* "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Professor Scofield served Ms. Guillard with discovery requests, including requests for admission pursuant to Rule 36, on June 20, 2023. SOF at ¶ 3. Accordingly, Ms. Guillard's responses to those requests for admission were due no later than July 20, 2023. Fed. R. Civ. P. 36(a)(3); Fed. R. Civ. P. 6(a)(1). SOF at ¶ 4. To date, Ms. Guillard has not responded to Professor Scofield's requests (SOF at ¶ 5); therefore, she is deemed to have admitted the truth of each fact identified in Professor Scofield's requests for admission, Fed. R. Civ. P. 36(a)(3). Professor Scofield has waited patiently for Ms. Guillard to respond, but two and a half months after her responses to Professor Scofield's requests for admission were due, Ms. Guillard has not responded. SOF at ¶ 5.

The effect of an admission under Rule 36—whether an affirmative admission or a deemed admission due to a failure to respond—is clear: "A matter admitted under this rule is **conclusively established**. . . . " Fed. R. Civ. P. 36(b) (emphasis added). Accordingly, concerning Professor Scofield's first claim for relief relating to Ms. Guillard's false statements regarding the murders of

K.G., M.M., X.K., and E.C., the following facts have been conclusively established by Ms. Guillard's admissions and other evidence:

- Ms. Guillard stated publicly that Professor Scofield was involved with the murders of K.G., M.M., X.K., and E.C.  SOF at ¶¶ 12–17.

- Professor Scofield was not involved with the murders of K.G., M.M., X.K., and E.C.  SOF at ¶¶ 10, 18, 33.

- The only basis for Ms. Guillard's public statements that Professor Scofield was involved in the murders is Ms. Guillard's "spiritual research, intuition, and instincts."  SOF at ¶ 20.

- Ms. Guillard is not aware of any physical evidence linking Professor Scofield to the murders.  SOF at ¶ 21.

- Ms. Guillard has no written information, and has not received any information orally from another human being, showing that Professor Scofield ever met X.K. SOF at ¶ 22.

- Ms. Guillard has no written information, and has not received any information orally from another human being, showing that Professor Scofield ever met M.M. *Id.*

- Ms. Guillard has no written information, and has not received any information orally from another human being, showing that Professor Scofield ever met E.C. *Id.*

- Ms. Guillard knew that the Moscow Police Department issued a press release on December 27, 2022, stating that it did not believe that "the female associate

professor and chair of the history department who is suing a TiktTok user for defamation is involved in this crime."  SOF at ¶ 43.

And, concerning Professor Scofield's second claim for relief, the following material facts have been conclusively established:

- Ms. Guillard publicly stated that Professor Scofield had an affair with K.G.  SOF at ¶¶ 24–28.

- Professor Scofield did not have an affair with K.G.  SOF at ¶¶ 29–30.

- The only basis for Ms. Guillard's statement that Professor Scofield had an affair with K.G. was Ms. Guillard's "spiritual research, intuition, and instincts."  SOF at ¶ 31.

- Ms. Guillard is not aware of any physical evidence showing that Professor Scofield had an affair with K.G.  SOF at ¶ 32.

**B.    The Facts Conclusively Established by Ms. Guillard's Admissions Demonstrate Professor Scofield's Entitlement to Judgment as a Matter of Law.**

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication."  *Clark v. Spokesman-Rev.*, 144 Idaho 427, 430, 163 P.3d 216, 219 (Idaho 2007).  "A defamatory statement is one that 'tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.'"  *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (Idaho 2016) (brackets and citation omitted).

Moreover, the Idaho Supreme Court has recently held that a statement is defamatory per se if it "imputes to another conduct constituting a criminal offense . . . if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment

in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Siercke v. Siercke*, 167 Idaho 709, 719–20, 476 P.3d 376, 386–87 (Idaho 2020) (quoting Restatement (Second) of Torts § 571 (1977)). "Under this test, the proper focus of a defamation per se inquiry is the nature of the conduct imputed," and "[i]f criminal conduct is imputed, and that conduct amounts to either a crime punishable by imprisonment or a crime of moral turpitude, the allegedly defamatory remarks are actionable as defamation per se." *Id.* at 720, 476 P.3d at 387.

Similarly, a statement is defamatory per se if it "ascribes to another conduct, characteristics or a condition that would adversely affect [her] fitness for the proper conduct of [her] lawful business, trade or profession," Restatement (Second) of Torts § 573, or "imputes serious sexual misconduct to another," *id.* § 574. *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 180, 923 P.2d 416, 425 (Idaho 1996) (recognizing that statements are defamatory per se if they "impute to the plaintiff either a criminal offense, a loathsome disease, a matter incompatible with his trade, business, profession, or office, or serious sexual misconduct" (citing Restatement (Second) of Torts §§ 570–74)). "Statements that rise to the level of defamation per se do not require proving special damages." *Siercke*, 167 Idaho at 718, 476 P.3d at 385. Whether a statement is defamatory per se is a question of law for the court. *Id.*

"Admissions made under [Federal Rule of Civil Procedure] 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Indeed, because "[e]vidence inconsistent with a Rule 36 admission is properly excluded," summary judgment may be granted solely based on Rule 36 admissions even where other evidence might contradict those admissions. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir. 1985).[3]

---

[3] To be clear, there is *no* evidence contradicting Ms. Guillard's admissions here.

1.      **Professor Scofield Is Entitled to Judgment as a Matter of Law on Count I.**

Count I concerns Ms. Guillard's false and defamatory statements that Professor Scofield was involved in the murders of K.G., M.M., X.K, and E.C.  ECF 1 at ¶¶ 36–42.  In particular, beginning on or about November 24, 2022, Ms. Guillard posted videos on TikTok in which she falsely stated that Professor Scofield was responsible for, ordered, or was otherwise involved in the four students' deaths.  SOF at ¶¶ 11–17.  Ms. Guillard's publishing of these videos on TikTok constitutes a communication as a matter of law, and because Ms. Guillard's statements impute criminal conduct for which the punishment is greater than one year imprisonment, the statements are defamatory per se.  Accordingly, Professor Scofield is entitled to summary judgment on Count I.

a.      **Ms. Guillard Communicated Information Regarding Professor Scofield to Others.**

Ms. Guillard has admitted that she publicly stated that Professor Scofield was involved with the murders of the four students.  SOF at ¶ 12.  This admission conclusively establishes that Ms. Guillard "communicated information concerning the plaintiff to others."  *Siercke*, 167 Idaho at 718, 476 P.3d at 385; Fed. R. Civ. P. 36(a)(3).  While few cases dwell on what it means to "communicate[] information concerning the plaintiff to others," *Siercke*, 167 Idaho at 718, 476 P.3d at 385, there is no doubt that Ms. Guillard's posting of videos on TikTok satisfies this element.  "The element of publication [or communication] requires the defamatory statement be communicated to a person other than the person defamed."  *Irish v. Hall*, 163 Idaho 603, 608, 416 P.3d 975, 980 (Idaho 2018), *abrogated on other grounds by Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–87.  "In both print and Internet publishing, information is generally considered 'published' when it is made available to the public."  *Id.* (quoting *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006)).  Thus, "[o]nce information has been published on a website

or print media, there is no further act required by the publisher to make the information available to the public." *Id.* (citation omitted).

Even absent Ms. Guillard's admissions, there can be no dispute that she communicated information concerning Professor Scofield to others. Beginning on or about November 24, 2022, Ms. Guillard posted TikTok videos to her account, in which she falsely stated, both directly and indirectly, that Professor Scofield was responsible for, involved in, and ordered the murder of the four students. SOF at ¶¶ 12–19. Over the following four days, Ms. Guillard posted additional TikToks in which she continued to falsely assert that Professor Scofield ordered and planned the murders of the four students. SOF at ¶¶ 13–15, 28. These TikToks put more details to Ms. Guillard's false theory, as Ms. Guillard claimed that Professor Scofield and a different student at the University of Idaho, J.D.,[4] together planned the murders. SOF at ¶¶ 13, 14. In one of her November 28 TikToks, Ms. Guillard included text stating "I don't care what y'all say . . . [J.D.] & Rebecca Scofield killed [K.G., M.M., E.C., & X.K.] . . . REBECCA WAS THE ONE TO INITIATE THE PLAN & HIRED [J.D.]." SOF at ¶ 14. In all, Ms. Guillard herself estimates that she posted "over one hundred TikTok videos of her [supposed] findings," in which she communicated her baseless theory that Professor Scofield "was in a relationship with [K.G.] that broke up and that she initiated the murders, planned the murders, and hired [J.D.] to help to carry the plan out." ECF 20, p. 13, ¶ 36, p. 14, ¶ 38.

And Ms. Guillard has continued to make defamatory statements even after Professor Scofield's November 28, and December 8, 2022, cease-and-desist letters. Olson Decl., Exs. B, C, M. Since December 1, 2022, Ms. Guillard has posted additional TikToks stating, among other things, that "Rebecca Scofield is going to prison for the murder of the 4 University of Idaho

---

[4] As with Plaintiff's complaint, this memorandum uses the initials J.D. to protect the individual's privacy and not perpetuate Ms. Guillard's false and defamatory statements.

Students whether you like it or not" (SOF at ¶ 17) and "I'm not worried about Rebecca Scofield suing me because she will be using her resources to fight four murder cases" and "[s]he ordered the execution, the murders of [K.G.], [M.M.], [X.K.], and [E.C.]."  SOF at ¶ 16.

Moreover, Ms. Guillard's TikToks were, in fact, viewed by thousands, if not millions, of people.  Some of her TikToks defaming Professor Scofield had thousands of "likes," indicating that a third party had viewed the video and "liked" it.  SOF at ¶ 33.  Ms. Guillard's admissions and this evidence establishes beyond dispute that she communicated information about Professor Scofield to others.  *Irish*, 163 Idaho at 608, 416 P.3d at 980 ("In both print and Internet publishing, information is generally considered 'published' when it is made available to the public." (citation omitted)).

### b.    Ms. Guillard's Communications Were Defamatory Per Se.

Ms. Guillard's statements unambiguously impute to Professor Scofield "conduct constituting a criminal offense" that "would be . . . punishable by imprisonment in a state or federal institution."  *Siercke*, 167 Idaho at 719–20, 476 P.3d at 386–87.  Ms. Guillard variously asserted, falsely, that Professor Scofield "killed [K.G., M.M., E.C., & X.K.]," "was the one to initiate the plan & hired" the supposed hitman, "ordered the murder of the 4 University of Idaho students," and broadly claimed that Professor Scofield was involved in the killings.  SOF at ¶¶ 13–17; *see generally* ECF 20, pp. 10–14.  Indeed, Ms. Guillard has admitted that she "stated publicly that Rebecca Scofield was involved with the murders."  SOF at ¶ 12.  Ms. Guillard's admissions and the uncontroverted evidence in this case conclusively establish that Ms. Guillard's statements impute to Professor Scofield "conduct constituting a criminal offense" that would be "punishable by imprisonment in a state or federal institution."[5]  *Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–

---

[5] *See, e.g.*, Idaho Code Ann. §§ 18-4001 (murder defined), 18-4004 (punishment for murder), 18-4006 (manslaughter defined), 18-4007 (punishment for manslaughter), 18-1701 (criminal

87.   Accordingly, Ms. Guillard's false statements concerning Professor Scofield's purported involvement are defamatory per se as a matter of law, and this Court should determine as a matter of law that Ms. Guillard is liable to Professor Scofield on Count I.  *Id.*; Fed. R. Civ. P. 56(a) (permitting summary judgment on a "part of" a claim, like liability); *Cutting*, 2022 WL 4536816, at *14 (granting a "Motion for Summary Judgment on Liability").

### 2.   Professor Scofield Is Entitled to Judgment as a Matter of Law on Count II.

As with Count I, Ms. Guillard's admissions establish as a matter of law that Professor Scofield is entitled to judgment on Count II.  Ms. Guillard admitted to posting TikToks containing assertions that Professor Scofield was in a romantic relationship with one of the victims, K.G.; admitted that those assertions were false; and admitted she had no evidence to support her false assertions.  SOF at ¶¶ 24–30.

### a.   Ms. Guillard Communicated Information Concerning Professor Scofield to Others.

For the same reasons as discussed above in reference to Count I, Ms. Guillard's TikToks that contained false assertions that Professor Scofield had a romantic relationship with K.G. constitute communications concerning Professor Scofield.  *See supra* § IV.B.1.a.  As a matter of law, therefore, Ms. Guillard has admitted to the first element of the defamation claim asserted in Count II.  *Irish*, 163 Idaho at 608, 416 P.3d at 980.

### b.   Ms. Guillard's False Statements That Professor Scofield Maintained a Romantic Relationship with a Student Are Defamatory as a Matter of Law.

"A defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the

conspiracy defined), 18-204 (principals defined), 18-205 (accessories defined), 18-206 (punishment of accessories), 18-2001 (solicitation defined), 18-2004 (punishment for solicitation).

person's business." *Siercke*, 167 Idaho at 718, 476 P.3d at 385.  In addition to statements imputing criminal conduct, the Idaho Supreme Court has recognized three other categories of statement that are defamatory per se and therefore do not require proof of special damages.  *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 890, 522 P.2d 1102, 1111 (Idaho 1974) ("Defamatory utterances regarding an individual are slanderous per se . . . if they fall into one of four categories."), *abrogated on other grounds by Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–87.  Two of these other categories are relevant here: (1) "utterances which 'ascribe to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession,'" *id.* (quoting Restatement of Torts § 573 (1938)); *see also* Restatement (Second) of Torts § 573; and (2) statements that "impute[] serious sexual misconduct to another," Restatement (Second) of Torts § 574; *Yoakum*, 129 Idaho at 180, 923 P.2d at 425 (recognizing that "statements which impute to the plaintiff . . . serious sexual misconduct" are defamatory per se).  Ms. Guillard's false statements underlying Count II are defamatory per se under both these categories.

> ### (i)   Ms. Guillard's Statements Ascribe Conduct to Professor Scofield That Is Incompatible with the Proper Conduct of a Professor.

First, it cannot be genuinely disputed that a romantic or sexual relationship between a professor and student at that professor's university is "conduct . . . incompatible with the proper conduct of [the professor's] lawful business, trade, or profession."  *Barlow*, 95 Idaho at 890, 522 P.2d at 1111 (citation omitted).  Indeed, the incompatibility of a professor-student romantic relationship is enshrined in the University of Idaho's policy concerning Consensual Romantic or Sexual Relationships.  SOF at ¶¶ 45, 47.  That policy states in no uncertain terms that "it is the policy of the University of Idaho that no employee shall enter into or continue a romantic or sexual relationship with a student or employee over whom she or he exercises academic, administrative, supervisory, evaluative, counseling or other authority."  SOF at ¶ 45. Moreover, the University of

Idaho maintains a policy "condemn[ing] sexual harassment," which explicitly includes within the definition of sexual harassment "behavior that overtly or covertly uses the power inherent in the status of a professor, teacher, or other officer to affect a student's educational experience or career opportunities." SOF at ¶ 46. Should a professor at the University of Idaho be found to have violated either of these policies, the professor is subject to discipline, including dismissal. SOF at ¶¶ 47, 49.

The University of Idaho has implemented these policies for good reason: "A romantic or sexual relationship" of the kind forbidden by the policy "inevitably raises concerns for objectivity, fairness and exploitation" because they "have the potential for abuse and damaging consequences; the imbalance of power creates unacceptable risks of exploitation, favoritism, harassment, and bias, both actual and perceived, and thereby impairs the integrity of the professional relationship and the trust on which it depends." SOF at ¶ 48.

And the University of Idaho is not alone in adopting such policies prohibiting romantic relationships between professors and students. "A 2014 study found that 84 percent of the American universities surveyed had some prohibitions on professor-student relationships." Amia Srinivasan, *What's Wrong with Sex Between Professors and Students? It's Not What You Think*, N.Y. Times (Sept. 3, 2021), https://www.nytimes.com/2021/09/03/opinion/metoo-teachers-students-consent.html. These policies, including the University of Idaho's, indisputably demonstrate that romantic or sexual relationships between professors and students at the same university are "incompatible with the proper conduct of [the professor's] lawful business, trade, or profession." *Barlow*, 95 Idaho at 890, 522 P.2d at 1111 (citation omitted). Accordingly, because Ms. Guillard has admitted to making such statements and admitted that they were false, Ms. Guillard has admitted that these statements, too, were defamatory per se.

        **(ii)**    **Ms. Guillard's Statements Impute Serious Sexual Misconduct to Professor Scofield.**

Ms. Guillard's false assertions that Professor Scofield was involved in an inappropriate romantic relationship with K.G. are also defamatory per se because they impute serious sexual misconduct to Professor Scofield.  Restatement (Second) of Torts § 574; *Yoakum*, 129 Idaho at 180, 923 P.2d at 425.  This category of defamation per se "applies to a statement charging a woman with . . . general charges of unchaste conduct."  Restatement (Second) of Torts § 574 cmt. b.  Undoubtedly, Ms. Guillard's admittedly false statements that Professor Scofield was romantically involved with a student constitute "charges of unchaste conduct." *Id.*

Moreover, Ms. Guillard's false statements are particularly serious here, where Professor Scofield is subject to the University of Idaho's policies concerning sexual harassment and romantic relationships between professors and students.  SOF at ¶¶ 44–49.  As noted above, these policies would subject Professor Scofield to discipline, including termination of her employment, had she been engaged in such misconduct.  Indeed, Ms. Guillard well knew that she was asserting Professor Scofield had engaged in serious misconduct in violation of university policy—she showed one of the policies in one of her TikToks.  SOF at ¶ 28.  The evidence is undisputed, however, that Professor Scofield was not involved in any misconduct and that Ms. Guillard's statements to the contrary in her TikToks were false.

At bottom, Ms. Guillard has admitted to falsely stating that Professor Scofield was romantically involved with a student at the University of Idaho.  These false statements ascribe to Professor Scofield conduct incompatible with the proper conduct of a professor and impute serious sexual misconduct to Professor Scofield, as expressly noted in the University of Idaho's policies governing romantic or sexual relationships between professors and students.  Accordingly, Ms.

Guillard's false statements on this front are defamatory per se as a matter of law, and the Court should determine as a matter of law that Ms. Guillard is liable to Professor Scofield on Count II.

## V.   CONCLUSION

For the reasons stated herein, Professor Scofield respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment and hold Ms. Guillard liable for her defamatory statements as a matter of law.   The evidence conclusively establishes that Ms. Guillard's statements defamed Professor Scofield; all that remains is for a jury to determine the amount of Professor Scofield's damages.


DATED:  October 10, 2023.

STOEL RIVES LLP


/s/ Wendy J. Olson
Wendy J. Olson
Elijah M. Watkins
Cory M. Carone

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023, I served a copy of the foregoing via CM/ECF on

the Registered Participant as follows:

Ashley Guillard
msashleyjt@gmail.com

/s/ Wendy J. Olson
Wendy J. Olson