Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
Elijah M. Watkins, ISB No. 8977
*elijah.watkins@stoel.com*
Cory M. Carone, ISB No. 11422
*cory.carone@stoel.com*
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No. 3:22-cv-00521-REP |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ASHLEY GUILLARD, | |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 1

    A.  Factual History. .................................................................................................. 1

    B.  Procedural History. ............................................................................................. 2

III. LEGAL STANDARDS ............................................................................................... 5

IV.  ARGUMENT ............................................................................................................... 6

    A.  Ms. Guillard's Responses to Requests for Admission Do Not Raise a Genuine Dispute of Material Facts; They Support an Award of Summary Judgment to Professor Scofield. ............................................................................................... 6

    B.  The Facts Conclusively Established by Ms. Guillard's Admissions, the TikToks she posted, and Professor Scofield's Declaration Demonstrate Professor Scofield's Entitlement to Judgment as a Matter of Law ..................................................... 9

        1.   Professor Scofield Is Entitled to Judgment as a Matter of Law on Count I. ........... 10

            a.   Ms. Guillard Communicated Information Regarding Professor Scofield to Others. .......................................................................................... 10

            b.   Ms. Guillard's Communications Were Defamatory Per Se. ............................. 13

        2.   Professor Scofield Is Entitled to Judgment as a Matter of Law on Count II. ........... 14

            a.   Ms. Guillard Communicated Information Concerning Professor Scofield to Others. ........................................................................................... 14

            b.   Ms. Guillard's False Statements That Professor Scofield Maintained a Romantic Relationship with a Student Are Defamatory as a Matter of Law. .......................................................................................................... 14

               (i)   Ms. Guillard's Statements Ascribe Conduct to Professor Scofield That Is Incompatible with the Proper Conduct of a Professor. ......................... 15

               (ii)  Ms. Guillard's Statements Impute Serious Sexual Misconduct to Professor Scofield. ................................................................................... 17

V.   CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page

**Cases**

*999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985)............................................................10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................5, 6

*Baker v. Burlington Northern, Inc.*,
   99 Idaho 688, 587 P.2d 829 (1978)........................................................................18

*Barlow v. Int'l Harvester Co.*,
   95 Idaho 881, 522 P.2d 1102 (Idaho 1974), *abrogated on other grounds by*
   *Siercke*, 167 Idaho, 476 P.3d .........................................................................15, 17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).......................................................................................6, 18

*Clark v. Spokesman-Rev.*,
   144 Idaho 427, 163 P.3d 216 (Idaho 2007) ...............................................................9

*Elliott v. Murdock*,
   161 Idaho 281, 385 P.3d 459 (Idaho 2016) ...............................................................9

*Irish v. Hall*,
   163 Idaho 603, 416 P.3d 975 (Idaho 2018), *abrogated on other grounds by*
   *Siercke*, 167 Idaho, 476 P.3d .......................................................................11, 13, 14

*Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec.*
   *Litig.)*,
   627 F.3d 376 (9th Cir . 2010) .............................................................................18

*Oja v. U.S. Army Corps of Eng'rs*,
   440 F.3d 1122 (9th Cir. 2006) ...........................................................................11

*Orr v. Bank of America, NT &SA*,
   285 F.3d 764 (9th Cir. 2002) ..............................................................................5

*Ricci v. DeStefano*,
   557 U.S. 557 (2009).........................................................................................5

*Siercke v. Siercke*,
   167 Idaho 709, 476 P.3d 376 (Idaho 2020) .................................................... passim

*U.S. SEC v. Cutting*,
   No. 2:21-cv-00103-BLW, 2022 WL 4536816 (D. Idaho Sept. 28, 2022)..........................5, 14

# TABLE OF CONTENTS
### (continued)

**Page**

*United States v. Kasuboski*,
    834 F.2d 1345 (7th Cir. 1987) .......................................................................10

*Yoakum v. Hartford Fire Ins. Co.*,
    129 Idaho 171, 923 P.2d 416 (Idaho 1996) ...............................................9, 15, 17

*Zetwick v. County of Yolo*,
    850 F.3d 436 (9th Cir. 2017) ...........................................................................5

**Statutes**

Idaho Code Ann. §§ 18-4001 ...........................................................................13

**Rules**

Fed. R. Civ. P. 6(a)(1) ......................................................................................4

Fed. R. Civ. P. Rule 36 ..............................................................................8, 10

Fed. R. Civ. P. 36(a)(3) ...............................................................................4, 11

Fed. R. Civ. P. 36(b) ........................................................................................8

Fed. R. Civ. P. Rule 55(a) ................................................................................2

Fed. R. Civ. P. 56 ..........................................................................................18

Fed. R. Civ. P. 56(a) ...................................................................................5, 14

Fed. R. Evid. 801(a) .......................................................................................19

**Other Authorities**

Amia Srinivasan, *What's Wrong with Sex Between Professors and Students? It's
    Not What You Think*, N.Y. Times (Sept. 3, 2021) ................................................16

Restatement (Second) of Torts §§ 570–74...........................................................10

Restatement (Second) of Torts § 571 (1977).........................................................9

Restatement (Second) of Torts § 573...............................................................9, 15

Restatement (Second) of Torts § 574............................................................9, 15, 17

## I.     INTRODUCTION

Plaintiff Rebecca Scofield ("Professor Scofield") respectfully requests that the Court enter summary judgment on both her claims against Defendant Ashley Guillard. As a matter of law, Ms. Guillard has admitted to defaming Professor Scofield. Ms. Guillard's admissions, the TikTok videos she posted online, and Professor Scofield's declaration establish beyond dispute that Ms. Guillard is liable for her defamation of Professor Scofield. Accordingly, all that remains is for a jury to determine the extent of Professor Scofield's damages.

## II.     BACKGROUND

### A.     Factual History.

In November 2022, four students at the University of Idaho were murdered at a home near campus.[1] ECF 1, ¶ 5. Ms. Guillard, a resident of Texas, took this tragedy as an opportunity to post sensationalist content online to attract clicks and make money. ECF 20, p. 13, ¶ 32. According to Ms. Guillard, she "used her spiritual practice, psychic abilities, [and] metaphysical tools [] including Tarot Cards," ECF 50-1, p. 2, to post "over one hundred TikTok videos" of her supposed "findings" concerning the murders near the university, ECF 20, p. 14, ¶ 38.

Ms. Guillard's purported "findings," which she posted on the social media website TikTok, went like this: Professor Scofield had a same-sex affair with one of the victims and then "planned, initiated, ordered, and executed the murder of [the] four University of Idaho Students." ECF 50-1, p. 1; *see also* ECF 1, ¶¶ 15–26; ECF 20, p. 10, ¶¶ 13–15. Ms. Guillard has admitted that she made these sensational statements, although now she claims she was just relaying the results of a tarot card reading, and she has admitted that these statements were not based on any facts. *See generally* Statement of Undisputed Material Facts in Support of Motion for Summary Judgment

---

[1] To respect the privacy of the victims and their families, this memorandum refers to the victims by their initials: K.G., M.M., X.K., and E.C.

("SOF"), ¶¶ 11–19, 24–30. Ms. Guillard has also admitted that her false statements are based on her "spiritual research, intuition, and instincts," and that she currently has no written information or oral information from another human being that support her false statements. SOF at ¶¶ 19–22, 31–32. She states that she hopes to find facts to support her position through discovery in this case, but so far she has none even though discovery is closed. SOF at ¶¶ 2, 20-21.

In a good-faith attempt to resolve this matter without litigation and to avoid drawing further attention to Ms. Guillard's utterly baseless statements, Professor Scofield sent cease-and-desist letters to Ms. Guillard on November 28, 2022, SOF at ¶ 37, and December 8, 2022, SOF at ¶ 38. Ms. Guillard received these letters and promptly disregarded them, instead choosing to continue spreading false information for her own pecuniary gain. SOF at ¶¶ 37-40. Given Ms. Guillard's willful disregard of the cease-and-desist letters, Professor Scofield filed her complaint, ECF 1, asserting two defamation claims: one relating to Ms. Guillard's false statements that Professor Scofield was involved in the murders, *id.* at ¶¶ 36–42, another relating to Ms. Guillard's false statements that Professor Scofield was romantically involved with one of the victims, *id.* at ¶¶ 43–48.

The factual history of this matter is set forth in more detail in the concurrently filed SOF, which is incorporated herein by reference as if set forth in full.

## B.    Procedural History.

Professor Scofield filed her two-count complaint on December 21, 2022. ECF 1. Ms. Guillard failed to answer or otherwise respond to the complaint within the time called for under the Federal Rules of Civil Procedure and, pursuant to Rule 55(a), Professor Scofield filed a motion for clerk's entry of default on January 19, 2023. ECF 4. A clerk's entry of default was filed on January 27, 2023. ECF 5. After failing to respond to the complaint and being found in default, Ms. Guillard filed a motion for relief from judgment and an answer, affirmative defenses, and

counterclaims on February 16, 2023. ECF 6–8. Professor Scofield responded by filing a motion for default judgment on February 17, 2023, ECF 10, and filed a motion to strike Ms. Guillard's answer, affirmative defenses, and counterclaims on February 27, 2023, ECF 12.

On April 26, 2023, the Court issued an order granting Ms. Guillard's motion to set aside entry of default, granting Professor Scofield's motion to strike, and denying as moot Professor Scofield's motion for default judgment. ECF 18. In granting Ms. Guillard's motion, the Court reasoned that her "failure to timely respond to Plaintiff's Complaint was most likely an unintentional [oversight] caused by self-serving carelessness" and that, "[a]lthough the Court [did] not condone" it, such failure did "not amount to bad faith with an intention to take advantage of the opposing party, interfere with the judicial decision making, or otherwise manipulate the legal process." *Id.* at 6–7 (internal quotation marks, footnotes, and citation omitted). The Court also found that Ms. Guillard satisfied the low "meritorious defense" hurdle, and that setting aside the entry of default would not prejudice Professor Scofield. *Id.* at 8–9.[2]

Ms. Guillard re-filed her answer, affirmative defenses, and counterclaims on May 16, 2023, ECF 20, and on June 6, 2023, Professor Scofield filed a motion to dismiss Ms. Guillard's counterclaims, ECF 23. The Court heard argument on Professor Scofield's motion to dismiss on July 21, 2023, ECF 47, and issued an order dismissing Ms. Guillard's counterclaims on August 8, 2023, ECF 49. As this Court noted in its Order dismissing Ms. Guillard's counterclaims,

---

[2] When the Court set aside Ms. Guillard's default, it also wrote: "Defendant represents that, going forward, she 'will prioritize court rules, orders and actions, and file timely actions.'  The Court intends to keep Defendant to her word."  ECF 18, p. 7 n.3 (citation omitted). Ms. Guillard has not kept her word. She represented to the Court on February 16, 2023, that she would prioritize submitting filings timely, but since then she failed to file timely responses to: (1) Plaintiff's Motion for Default Judgment, ECF 10; (2) Plaintiff's Motion to Strike Answer, ECF 12; (3) Plaintiff's Motion for Sanctions, ECF 45; (4) Plaintiff's Motion to Quash, ECF 48; and (5) Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admission.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

"Defendant merely responded that she believed her allegations about Plaintiff were true and that, with discovery, can find evidence that bears this out. . . . To begin, Defendant cannot use discovery as a fishing expedition to find facts that might validate her counterclaims. This 'ready, fire, aim' approach is not permitted under the Federal Rules of Civil Procedure." *Id.* at 7-8.

On August 22, 2023, Ms. Guillard filed a motion to set aside the Court's order concerning the dismissal of her counterclaims, which this Court also denied. ECF 50, 59.

Professor Scofield served Ms. Guillard with discovery requests, including requests for admission, interrogatories, and requests for production, pursuant to Rule 36, on June 20, 2023. SOF at ¶ 3. Ms. Guillard's responses to those requests for admission were due no later than July 20, 2023. Fed. R. Civ. P. 36(a)(3); Fed. R. Civ. P. 6(a)(1). SOF at ¶ 4. Ms. Guillard did not respond to those discovery requests, including the requests for admission, by July 20, 2023. SOF at ¶ 3-5. Professor Scofield then filed her original motion for partial summary judgment on October 6, 2023, ECF 56, based on Ms. Guillard having, as a matter of law, admitted to all required elements of a defamation per se claim through her failure to respond to any requests for admission. SOF at ¶ 3-5; ECF 56 at 5-7. Ms. Guillard did not respond to any of those discovery requests until December 15, 2023, after the Court, *sua sponte*, allowed her to do so during a December 7 status conference. ECF 61; SOF at ¶ 5. The Court also allowed Professor Scofield to file an amended motion for summary judgment after Ms. Guillard served any late answers to Professor Scofield's requests for admission. ECF 61.

Although Ms. Guillard served responses to Professor Scofield's requests for admission on December 15, 2023, she did not ever respond to Professor Scofield's interrogatories or requests for production. Professor Scofield sent a deficiency letter on December 20, 2023, requesting responses by December 29, 2023. SOF at ¶ 5. Ms. Guillard sent an email on January 1, 2024,

stating that she was on vacation when the deficiency letter was sent and that she would get back to Professor Scofield's counsel by "the end of the week." SOF at ¶ 5. Ms. Guillard has still not responded. SOF at ¶ 5.

## III.   LEGAL STANDARDS

Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The emphasized portion of Rule 56(a) permits parties, like Professor Scofield here, to move for summary judgment on liability, while leaving the amount of damages for trial. *See, e.g.*, *U.S. SEC v. Cutting*, No. 2:21-cv-00103-BLW, 2022 WL 4536816, at *14 (D. Idaho Sept. 28, 2022) (granting a "Motion for Summary Judgment on Liability"). "The standard for summary judgment is familiar: Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (internal quotation marks and citation omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick*, 850 F.3d at 441 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "The district court must not only properly consider the record on summary judgment, but must consider that record in light of the 'governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT &SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson,* 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*, at 252.

## IV.    ARGUMENT

**A.    Ms. Guillard's Responses to Requests for Admission Do Not Raise a Genuine Dispute of Material Facts; They Support an Award of Summary Judgment to Professor Scofield.**

Ms. Guillard's untimely responses to Professor Scofield's requests for admission further establish that Ms. Guillard published defamatory statements about Professor Scofield and that Ms. Guillard has no facts or admissible evidence showing that Professor Scofield was involved in the murders or that Professor Scofield had an affair with one of the murdered students.

Through her Request for Admission ("RFAs"), Professor Scofield sought admissions regarding: (1) Ms. Guillard making public statements that Professor Scofield was involved with the murders of the four students and that Professor Scofield had an affair with one of the students (RFAs 1, 2); (2) the falsity of those statements (RFAs 3, 4); (3) that the bases for Ms. Guillard's statements was her spiritual research, intuition and instincts (RFAs 5, 6); (4) that she was not aware of any physical evidence or written information linking Professor Scofield to the murders (RFAs 9, 10, 15, 17, 19), or to having an affair with K.G. (RFAs  5, 10). SOF at ¶ 3.

Through her responses to Professor Scofield's requests for admission, Ms. Guillard now claims that she was just announcing the results of a tarot card reading when she made her TikToks and posted them on the internet stating that Professor Scofield was involved with the murders and that Professor Scofield had an affair with one of the students – but she admits posting them. SOF ¶ 19, 31. She also admitted that she continued to state publicly that Professor Scofield was involved

with the murders and had an affair with one of the students even after she received a cease-and-desist letter from Professor Scofield's counsel and after she knew the Moscow, Idaho, Police Department had issued a press release saying that Professor Scofield was not involved in the murders. SOF ¶¶ 41-42. She also admits she has never received any information communicated to her orally that Professor Scofield ever met the victims. SOF ¶¶ 21-24.

In responses to requests for admission asking her to admit she had no written information or physical evidence showing that Professor Scofield ever met the murdered students, Ms. Guillard stated that she could not admit or deny because "Discovery is still pending. Public information from the victims' social media may show that the Plaintiff met" the murdered students. SOF ¶¶ 20-21, 32 (RFA Responses 15, 17, 19). Ms. Guillard responded similarly when asked to admit she knew of no physical evidence linking Professor Scofield to the murders or that she was not aware of any physical evidence showing Professor Scofield had an affair with K.G. She stated "I DENY this matter. There's plenty of evidence to be discovered during the civil discovery process or criminal trial." SOF ¶¶ 20-21, 32 (RFA Responses 9, 10). In response to requests for admission asking Ms. Guillard to admit she had never communicated with J.D. or Bryan Kohberger, she responded, "I cannot admit or deny this matter. Many people have anonymously contacted me by way of electronic communication." SOF ¶¶ 51 (RFA Responses 13, 14).

In response to Requests for Admission asking Ms. Guillard to admit her statements were false, Ms. Guillard denied the Request for Admission and stated that Professor Scofield "has not proven" that she did not have an affair with K.G. or that she was not involved in the murders. SOF ¶ 53 (RFA Response 3, 4). Finally, Ms. Guillard admitted that she did not have any written information showing that Professor Scofield ever met J.D., the University of Idaho student that Ms. Guillard publicly stated Professor Scofield hired to commit the murders. She stated, "As of

today, December 15, 2023, this matter is admitted. However, discovery is still pending." SOF ¶ 52 (RFA Response 21).

In short, Ms. Guillard has admitted that she has no affirmative facts that indicate in any way that Professor Scofield had an affair with K.G. or was involved in the murders. Nor will she develop any. The discovery deadline was December 15, 2023, ECF 38 at ¶ 6, the same date that Ms. Guillard served her responses to Professor Scofield's requests for admission. Thus, fact discovery is closed.

The effect of an admission under Rule 36 is clear: "A matter admitted under this rule is **conclusively established**. . . . " Fed. R. Civ. P. 36(b) (emphasis added). Taken together, Ms. Guillard's December 15, 2023, responses to Professor Scofield's requests for admission conclusively establish the following facts:

- Ms. Guillard stated publicly that Professor Scofield was involved with the murders of K.G., M.M., X.K., and E.C. SOF at ¶¶ 12–17.

- Ms. Guillard publicly stated that Professor Scofield had an affair with K.G. SOF at ¶¶ 25–28, 40.

- Ms. Guillard continued to make such public statements after receiving a cease-and-desist letter from Professor Scofield's counsel and after becoming aware that the Moscow Police Department had issued a press release stating they did not believe Professor Scofield was involved in the murders. SOF at ¶¶ 37-42.

- Ms. Guillard has no evidence or facts showing that Professor Scofield was involved in the murders. SOF at ¶¶ 20, 32.

- Ms. Guillard has no evidence or facts showing that Professor Scofield had an affair with K.G. SOF at ¶¶ 31-32.

**B.**     **The Facts Conclusively Established by Ms. Guillard's Admissions, the TikToks she posted, and Professor Scofield's Declaration Demonstrate Professor Scofield's Entitlement to Judgment as a Matter of Law.**

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. Spokesman-Rev.*, 144 Idaho 427, 430, 163 P.3d 216, 219 (Idaho 2007). "A defamatory statement is one that 'tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.'" *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (Idaho 2016) (brackets and citation omitted).

Moreover, the Idaho Supreme Court has recently held that a statement is defamatory per se if it "imputes to another conduct constituting a criminal offense . . . if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Siercke v. Siercke*, 167 Idaho 709, 719–20, 476 P.3d 376, 386–87 (Idaho 2020) (quoting Restatement (Second) of Torts § 571 (1977)). "Under this test, the proper focus of a defamation per se inquiry is the nature of the conduct imputed," and "[i]f criminal conduct is imputed, and that conduct amounts to either a crime punishable by imprisonment or a crime of moral turpitude, the allegedly defamatory remarks are actionable as defamation per se." *Id.* at 720, 476 P.3d at 387.

Similarly, a statement is defamatory per se if it "ascribes to another conduct, characteristics or a condition that would adversely affect [her] fitness for the proper conduct of [her] lawful business, trade or profession," Restatement (Second) of Torts § 573, or "imputes serious sexual misconduct to another," *id.* § 574. *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 180, 923 P.2d 416, 425 (Idaho 1996) (recognizing that statements are defamatory per se if they "impute to the plaintiff either a criminal offense, a loathsome disease, a matter incompatible with his trade,

business, profession, or office, or serious sexual misconduct" (citing Restatement (Second) of Torts §§ 570–74)).  "Statements that rise to the level of defamation per se do not require proving special damages." *Siercke*, 167 Idaho at 718, 476 P.3d at 385. Whether a statement is defamatory per se is a question of law for the court. *Id.*

Admissions made under Federal Rule of Civil Procedure 36 "can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Indeed, because "[e]vidence inconsistent with a Rule 36 admission is properly excluded," summary judgment may be granted solely based on Rule 36 admissions even where other evidence might contradict those admissions. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir. 1985).[3]

## 1.   Professor Scofield Is Entitled to Judgment as a Matter of Law on Count I.

Count I concerns Ms. Guillard's false and defamatory statements that Professor Scofield was involved in the murders of K.G., M.M., X.K, and E.C.  ECF 1 at ¶¶ 36–42. Beginning on or about November 24, 2022, Ms. Guillard posted videos on TikTok in which she falsely stated that Professor Scofield was responsible for, ordered, or was otherwise involved in the four students' deaths. SOF at ¶¶ 11–17. Ms. Guillard's publishing of these videos on TikTok constitutes a communication as a matter of law, and because Ms. Guillard's statements impute criminal conduct for which the punishment is greater than one year imprisonment, the statements are defamatory per se. Accordingly, Professor Scofield is entitled to summary judgment on Count I.

### a.   Ms. Guillard Communicated Information Regarding Professor Scofield to Others.

Ms. Guillard has admitted that she publicly stated that Professor Scofield was involved with the murders of the four students.  SOF at ¶¶ 19, 40-42. This admission conclusively establishes that Ms. Guillard "communicated information concerning the plaintiff to others."

---

[3] To be clear, there is *no* evidence contradicting Ms. Guillard's admissions here.

*Siercke*, 167 Idaho at 718, 476 P.3d at 385; Fed. R. Civ. P. 36(a)(3). While few cases dwell on what it means to "communicate[] information concerning the plaintiff to others," *Siercke*, 167 Idaho at 718, 476 P.3d at 385, there is no doubt that Ms. Guillard's posting of videos on TikTok satisfies this element. "The element of publication [or communication] requires the defamatory statement be communicated to a person other than the person defamed." *Irish v. Hall*, 163 Idaho 603, 608, 416 P.3d 975, 980 (Idaho 2018), *abrogated on other grounds by Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–87. "In both print and Internet publishing, information is generally considered 'published' when it is made available to the public." *Id.* (quoting *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006)). Thus, "[o]nce information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public." *Id.* (citation omitted).

Even absent Ms. Guillard's admissions, there can be no dispute that she communicated information concerning Professor Scofield to others. Beginning on or about November 24, 2022, Ms. Guillard posted TikTok videos to her account, in which she falsely stated, both directly and indirectly, that Professor Scofield was responsible for, involved in, and ordered the murder of the four students. SOF at ¶¶ 12–17, 26, 27. Over the following four days, Ms. Guillard posted additional TikToks in which she continued to falsely assert that Professor Scofield ordered and planned the murders of the four students. SOF at ¶¶ 13–15, 26. These TikToks put more details to Ms. Guillard's false theory, as Ms. Guillard claimed that Professor Scofield and a different student at the University of Idaho, J.D.,[4] together planned the murders. SOF at ¶¶ 13, 14. In one of her November 28 TikToks, Ms. Guillard included text stating "I don't care what y'all

---

[4] As with Plaintiff's complaint, this memorandum uses the initials J.D. to protect the individual's privacy and not perpetuate Ms. Guillard's false and defamatory statements.

say . . . [J.D.] & Rebecca Scofield killed [K.G., M.M., E.C., & X.K.] . . . REBECCA WAS THE ONE TO INITIATE THE PLAN & HIRED [J.D.]." SOF at ¶ 14. In all, Ms. Guillard herself estimates that she posted "over one hundred TikTok videos of her [supposed] findings," in which she communicated her baseless theory that Professor Scofield "was in a relationship with [K.G.] that broke up and that she initiated the murders, planned the murders, and hired [J.D.] to help to carry the plan out." ECF 20, p. 13, ¶ 36, p. 14, ¶ 38.

And Ms. Guillard has continued to make defamatory statements even after Professor Scofield's November 28, and December 8, 2022, cease-and-desist letters. SOF ¶¶ 26, 27, 39, 40. Since December 1, 2022, Ms. Guillard has posted additional TikToks stating, among other things, that "Rebecca Scofield is going to prison for the murder of the 4 University of Idaho Students whether you like it or not" (SOF at ¶ 17) and "I'm not worried about Rebecca Scofield suing me because she will be using her resources to fight four murder cases" and "[s]he ordered the execution, the murders of [K.G.], [M.M.], [X.K.], and [E.C.]." SOF at ¶ 16.

Moreover, Ms. Guillard's TikToks were, in fact, viewed by thousands, if not millions, of people. Some of her TikToks defaming Professor Scofield had thousands of "likes," indicating that a third party had viewed the video and "liked" it. SOF at ¶ 33.

Finally, Ms. Guillard, who is representing herself and signing all pleadings in this case, has repeatedly admitted that she has publicly stated that Professor Scofield was responsible for, involved in, and ordered the murder of the four students. *See, e.g.*, ECF 32 at 3 ("The truth is, Rebecca Scofield is a serial killer, who successfully evaded suspicion of her crimes for months . . . On November 24, 2022, Ashley Guillard used her psychic abilities, spiritual acuity, and investigative skills to uncover the motive and details that led to the murder of the students. She posted her findings on social media . . "); ECF 35 at 2 (same); ECF 36 at 2-3 ("On December 12, 2022, Ashley Guillard responded to the demand letter (by posting another TikTok video) that she believed that she did not

make any false statements about Rebecca Scofield and did not have to follow their demands."). Thus, Ms. Guillard's admissions and the TikToks themselves establish beyond dispute that she communicated information about Professor Scofield to others. *Irish*, 163 Idaho at 608, 416 P.3d at 980 ("In both print and Internet publishing, information is generally considered 'published' when it is made available to the public." (citation omitted)).

      **b.**     **Ms. Guillard's Communications Were Defamatory Per Se.**

      Ms. Guillard's statements unambiguously impute to Professor Scofield "conduct constituting a criminal offense" that "would be . . . punishable by imprisonment in a state or federal institution." *Siercke*, 167 Idaho at 719–20, 476 P.3d at 386–87. Ms. Guillard variously asserted, falsely, that Professor Scofield "killed [K.G., M.M., E.C., & X.K.]," "was the one to initiate the plan & hired" the supposed hitman, "ordered the murder of the 4 University of Idaho students," and broadly claimed that Professor Scofield was involved in the killings. SOF at ¶¶ 13–17, 26, 27; *see generally* ECF 20, pp. 10–14. Indeed, Ms. Guillard has admitted that she stated publicly that Rebecca Scofield was involved with the murders. SOF at ¶¶ 19, 40-42. Ms. Guillard's admissions and the uncontroverted evidence in this case conclusively establish that Ms. Guillard's statements impute to Professor Scofield "conduct constituting a criminal offense" that would be "punishable by imprisonment in a state or federal institution."[5] *Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–87. Accordingly, Ms. Guillard's false statements concerning Professor Scofield's purported involvement are defamatory per se as a matter of law, and this Court should determine as a matter of law that Ms. Guillard is liable to Professor Scofield on Count I. *Id.*; Fed. R. Civ. P. 56(a)

---

[5] *See, e.g.*, Idaho Code Ann. §§ 18-4001 (murder defined), 18-4004 (punishment for murder), 18-4006 (manslaughter defined), 18-4007 (punishment for manslaughter), 18-1701 (criminal conspiracy defined), 18-204 (principals defined), 18-205 (accessories defined), 18-206 (punishment of accessories), 18-2001 (solicitation defined), 18-2004 (punishment for solicitation).

(permitting summary judgment on a "part of" a claim, like liability); *Cutting*, 2022 WL 4536816, at *14 (granting a "Motion for Summary Judgment on Liability").

### 2.    Professor Scofield Is Entitled to Judgment as a Matter of Law on Count II.

As with Count I, Ms. Guillard's admissions establish as a matter of law that Professor Scofield is entitled to judgment on Count II.  Ms. Guillard admitted to posting TikToks containing assertions that Professor Scofield was in a romantic relationship with one of the victims, K.G., although she now states that she was just announcing the results of a tarot card reading. SOF at ¶¶ 31, 40. She also has now admitted she currently has no evidence to support her false assertions. SOF at ¶¶  31, 32. In her December 15, 2023, responses to Professor Scofield's requests for admission, she acknowledged that she does not currently have any facts showing that Professor Scofield even knew K.G. SOF at ¶ 31. The subpoena responses from the University of Idaho confirm the absence of any communication or interaction between Professor Scofield and K.G. SOF  at ¶¶ 23, 24.

### a.    Ms. Guillard Communicated Information Concerning Professor Scofield to Others.

For the same reasons as discussed above in reference to Count I, Ms. Guillard's TikToks that contained false assertions that Professor Scofield had a romantic relationship with K.G. constitute communications concerning Professor Scofield. *See supra* § IV.B.1.a.  As a matter of law, therefore, Ms. Guillard has admitted to the first element of the defamation claim asserted in Count II.  *Irish*, 163 Idaho at 608, 416 P.3d at 980.

### b.    Ms. Guillard's False Statements That Professor Scofield Maintained a Romantic Relationship with a Student Are Defamatory as a Matter of Law.

"A defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the

person's business." *Siercke*, 167 Idaho at 718, 476 P.3d at 385. In addition to statements imputing criminal conduct, the Idaho Supreme Court has recognized three other categories of statement that are defamatory per se and therefore do not require proof of special damages. *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 890, 522 P.2d 1102, 1111 (Idaho 1974) ("Defamatory utterances regarding an individual are slanderous per se . . . if they fall into one of four categories."), *abrogated on other grounds by Siercke*, 167 Idaho at 718–20, 476 P.3d at 385–87. Two of these other categories are relevant here: (1) "utterances which 'ascribe to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession,'" *id.* (quoting Restatement of Torts § 573 (1938)); *see also* Restatement (Second) of Torts § 573; and (2) statements that "impute[] serious sexual misconduct to another," Restatement (Second) of Torts § 574; *Yoakum*, 129 Idaho at 180, 923 P.2d at 425 (recognizing that "statements which impute to the plaintiff . . . serious sexual misconduct" are defamatory per se).  Ms. Guillard's false statements underlying Count II are defamatory per se under both these categories.

> **(i)** **Ms. Guillard's Statements Ascribe Conduct to Professor Scofield That Is Incompatible with the Proper Conduct of a Professor.**

First, it cannot be genuinely disputed that a romantic or sexual relationship between a professor and student at that professor's university is "conduct . . . incompatible with the proper conduct of [the professor's] lawful business, trade, or profession." *Barlow*, 95 Idaho at 890, 522 P.2d at 1111 (citation omitted). Indeed, the incompatibility of a professor-student romantic relationship is enshrined in the University of Idaho's policy concerning Consensual Romantic or Sexual Relationships. SOF at ¶¶ 43, 44.  That policy states in no uncertain terms that "it is the policy of the University of Idaho that no employee shall enter into or continue a romantic or sexual relationship with a student or employee over whom she or he exercises academic, administrative, supervisory, evaluative, counseling or other authority."  SOF at ¶ 44. Moreover, the University of

Idaho maintains a policy "condemn[ing] sexual harassment," which explicitly includes within the definition of sexual harassment "behavior that overtly or covertly uses the power inherent in the status of a professor, teacher, or other officer to affect a student's educational experience or career opportunities."  SOF at ¶ 45. Should a professor at the University of Idaho be found to have violated either of these policies, the professor is subject to discipline, including dismissal. SOF at ¶¶ 46, 48.

The University of Idaho has implemented these policies for good reason: "A romantic or sexual relationship" of the kind forbidden by the policy "inevitably raises concerns for objectivity, fairness and exploitation" because they "have the potential for abuse and damaging consequences; the imbalance of power creates unacceptable risks of exploitation, favoritism, harassment, and bias, both actual and perceived, and thereby impairs the integrity of the professional relationship and the trust on which it depends."  SOF at ¶ 47.

And the University of Idaho is not alone in adopting such policies prohibiting romantic relationships between professors and students. "A 2014 study found that 84 percent of the American universities surveyed had some prohibitions on professor-student relationships."  Amia Srinivasan, *What's Wrong with Sex Between Professors and Students? It's Not What You Think*, N.Y. Times (Sept. 3, 2021),  https://www.nytimes.com/2021/09/03/opinion/metoo-teachers-students-consent.html.  These policies, including the University of Idaho's, indisputably demonstrate that romantic or sexual relationships between professors and students at the same university are "incompatible with the proper conduct of [the professor's] lawful business, trade, or profession."  *Barlow*, 95 Idaho at 890, 522 P.2d at 1111 (citation omitted). Accordingly, because Ms. Guillard has admitted to making such statements and admitted that they were false, Ms. Guillard has admitted that these statements, too, were defamatory per se.

> **(ii)    Ms. Guillard's Statements Impute Serious Sexual Misconduct to Professor Scofield.**

Ms. Guillard's false assertions that Professor Scofield was involved in an inappropriate romantic relationship with K.G. are also defamatory per se because they impute serious sexual misconduct to Professor Scofield. Restatement (Second) of Torts § 574; *Yoakum*, 129 Idaho at 180, 923 P.2d at 425. This category of defamation per se "applies to a statement charging a woman with . . . general charges of unchaste conduct." Restatement (Second) of Torts § 574 cmt. b. Undoubtedly, Ms. Guillard's admittedly false statements that Professor Scofield was romantically involved with a student constitute "charges of unchaste conduct." *Id.*

Moreover, Ms. Guillard's false statements are particularly serious here, where Professor Scofield is subject to the University of Idaho's policies concerning sexual harassment and romantic relationships between professors and students. SOF at ¶¶ 43–48. As noted above, these policies would subject Professor Scofield to discipline, including termination of her employment, had she been engaged in such misconduct. Indeed, Ms. Guillard well knew that she was asserting Professor Scofield had engaged in serious misconduct in violation of university policy—she showed one of the policies in one of her TikToks. SOF at ¶ 29. The evidence is undisputed, however, that Professor Scofield was not involved in any misconduct and that Ms. Guillard's statements to the contrary in her TikToks were false.

At bottom, Ms. Guillard has admitted to stating that Professor Scofield was romantically involved with a student at the University of Idaho. These statements ascribe to Professor Scofield conduct incompatible with the proper conduct of a professor and impute serious sexual misconduct to Professor Scofield, as expressly noted in the University of Idaho's policies governing romantic or sexual relationships between professors and students. Accordingly, Ms. Guillard's statements

are defamatory per se as a matter of law, and the Court should determine as a matter of law that Ms. Guillard is liable to Professor Scofield on Count II.

### 3.    No Facts Support Any Defense that Ms. Guillard's Statements Were True.

Truth is a defense to a defamation claim that ordinarily must be proved by the defendant. *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 690, 587 P.2d 829, 831 (1978). On summary judgment, "[w]here the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir . 2010) (citing *Celotex Corp.*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

No facts support Ms. Guillard's statements that Professor Scofield had any role in the murders of the four students or that Professor Scofield was involved in any personal relationship with K.G. In her responses to Professor Scofield's requests for admission, Ms. Guillard purported to deny the requests asking her to admit she had no factual support for her statements about Professor Scofield. SOF ¶¶ 19-22, 31, 32. However, the detail of her responses demonstrate that she has no such facts. She repeatedly stated that "Discovery is still pending. Public information from the victims' social media may show that the Plaintiff met" the murdered students. SOF  ¶¶ 20-21, 32 (RFA responses 15, 17, 19). Ms. Guillard responded similarly when asked to admit she

knew of no physical evidence linking Professor Scofield to the murders or that she was not aware of any physical evidence showing Professor Scofield had an affair with K.G. She stated "I DENY this matter. There's plenty of evidence to be discovered during the civil discovery process or criminal trial." SOF ¶¶ 20, 32 (RFA responses 9, 10).

Discovery is now closed. ECF 38, at ¶ 6. Ms. Guillard has no evidence that proves any aspect of her statements about Professor Scofield. They are false. Even Ms. Guillard's subpoena duces tecum to the University of Idaho uncovered no evidence supporting her statements. The University of Idaho responded that it had no communications between Professor Scofield and any of the murdered students. SOF ¶24. The University of Idaho also had no record of K.G., X.K., M.M. or E.C. ever being enrolled in a class taught by Professor Scofield. SOF ¶23. Professor Scofield's statements in her declaration are undisputed. Professor Scofield did not know any of the murdered students, did not have an affair with K.G., was not in Moscow when the murders occurred and was not involved in the murders. Scofield Decl., ¶¶ 4-12. Professor Scofield's undisputed declaration proves that Ms. Guillard's defamatory statements that Professor Scofield was involved in or orchestrated the students' murders or had an affair with one of the victims were false.

Ms. Guillard's responses to Professor Scofield's Requests for Admission that her statements were based on a tarot card reading, which she believes (SOF ¶¶ 19, 31, 32), also do not give rise to a genuine dispute of material fact. At best, the tarot card readings are inadmissible hearsay—an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(a). Moreover, Ms. Guillard has no personal knowledge of the "facts" she divined from the tarot card reading; she states only that she believes the reading. This is not sufficient evidence to create a

genuine dispute of material fact on the affirmative defense of truth, for which she carries the burden of proof.

As this Court has stated when it dismissed Ms. Guillard's counterclaims on August 8, 2023: "based solely on her claimed ability to psychically divine the truth, Defendant makes extraordinary allegations about how Plaintiff orchestrated the murder of four people to cover up a secret, romantic relationship with one of the victims. These claims are not only conclusory and unverifiable, but arguably so outrageous as to be clearly baseless and, thus, implausible." ECF 49 at 8-9. Ms. Guillard still has no verifiable or admissible facts to support her extraordinary (and false) allegations that Professor Scofield orchestrated the murder of four people to cover up a secret, romantic relationship with one of the victims. There is no genuine dispute of material facts, and summary judgment as to liability is proper.

## V.   CONCLUSION

For the reasons stated herein, Professor Scofield respectfully requests that the Court grant Plaintiff's Motion for Partial Summary Judgment and hold Ms. Guillard liable for her defamatory statements as a matter of law. The evidence conclusively establishes that Ms. Guillard's statements defamed Professor Scofield; all that remains is for a jury to determine the amount of Professor Scofield's damages.

DATED:  January 12, 2024.

STOEL RIVES LLP


/s/ Wendy J. Olson
Wendy J. Olson
Elijah M. Watkins
Cory M. Carone

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, I served a copy of the foregoing via CM/ECF on

the Registered Participant as follows:

Ashley Guillard
msashleyjt@gmail.com


/s/ Wendy J. Olson
Wendy J. Olson