Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
Elijah M. Watkins, ISB No. 8977
*elijah.watkins@stoel.com*
Cory M. Carone, ISB No. 11422
*cory.carone@stoel.com*
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ASHLEY GUILLARD,<br><br>　　　　　Defendant. | Case No. 3:22-cv-00521-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES** |

　　　　Professor Scofield requests leave of Court to file her proposed Amended Complaint to add a prayer for punitive damages with supporting factual allegations. This Court's scheduling order set a January 12, 2024, deadline for filing such a motion for leave to amend. ECF 38, ¶ 1. Thus, this motion is timely. Defendant Ashley Guillard's responses to Professor Scofield's Requests for Admission show that she has no facts to support her extreme and outrageous assertions that Professor Scofield had an affair with a student and then planned, initiated, ordered, and executed the murder of four University of Idaho students. Ms. Guillard also has continued to make and participate in YouTube videos repeating these false statements. Punitive damages are appropriate.

## I.  FACTUAL BACKGROUND

In November 2022, four students at the University of Idaho were murdered at a home near campus.[1] ECF 1, ¶ 5. Ms. Guillard, a resident of Texas, took this tragedy as an opportunity to post sensationalist content online to attract clicks and make money. ECF 20, p. 13, ¶ 32; Declaration of Wendy J. Olson ("Olson Decl."), Ex. O. According to Ms. Guillard, she "used her spiritual practice, psychic abilities, [and] metaphysical tools [] including Tarot Cards," ECF 50-1, p. 2, to post "over one hundred TikTok videos" of her supposed "findings" concerning the murders near the university, ECF 20, p. 14, ¶ 38.

Ms. Guillard's purported "findings," which she posted on the social media website TikTok, went like this: Professor Scofield had a same-sex affair with one of the victims and then "planned, initiated, ordered, and executed the murder of [the] four University of Idaho Students."  ECF 50-1, p. 1; *see also* ECF 1, ¶¶ 15–26; ECF 20, p. 10, ¶¶ 13–15. Ms. Guillard has admitted that she made these sensational statements, although now she claims she was just relaying the results of a tarot card reading, and she has admitted that these statements were not based on any facts. Olson Decl., Ex. A (Defendant's Responses to Requests for Admission) at Responses 1, 2, 27-30. Ms. Guillard has also admitted that her false statements are based on her spiritual research, intuition, instincts, and investigative skills and that she currently has no physical evidence, written information or oral information from another human being that support her false statements. *Id.*, Ex. A at Responses 3,4, 9, 10, 15-20. She states that she hopes to find facts to support her position through discovery in this case, but she has none, and discovery is closed. *Id.*, Ex. A at Responses 9, 10, 15, 17, 19; ECF 38, ¶ 6. She made those same statements to this Court in a hearing on Professor Scofield's motion to dismiss her counterclaims. The University of Idaho has no records

---

[1] To respect the privacy of the victims and their families, this memorandum refers to the victims by their initials: K.G., M.M., X.K., and E.C.

that any of the four students—or the student Ms. Guillard alleged that Professor Scofield hired to commit the murders—took a class from Professor Scofield or communicated with her. Olson Decl., Ex. S.

Ms. Guillard continued to make false statements that Professor Scofield had a same-sex affair with one of the victims and planned, initiated, ordered, and executed the murders even after receiving cease-and-desist letters from Professor Scofield in December of 2022 (Olson Decl., Ex. A at Responses 25-28) and even after she knew that the Moscow Police Department had issued a press release stating that it did not believe Professor Scofield was involved in the murders. *Id.*, Ex. A at Responses 29-30.

And Ms. Guillard has continued to make these same false statements over and over and over again in the thirteen months since Professor Scofield filed this lawsuit. For example, in a YouTube video posted on February 8, 2023, https://www.youtube.com/watch?v=uZ-fo4F-q9w, Ms. Guillard provides a detailed narrative of her sensational story about Professor Scofield and claims that Professor Scofield has photographs, videos, and messages from the night of the murder and during the murder on a collaborative book literature app she used to collaborate with the people she had help her plan and execute the murders. Olson Decl., Ex. P. In an interview for the online program "Nerd Report" posted on June 9, 2023, https://www.youtube.com/watch?v=X4V769td-DQ, Ms. Guillard states that she still asserts Professor Scofield was involved in the murders even after learning of Bryan Kohberger's arrest, and then went on to describe how on the day of the murder Professor Scofield connected with Kohberger on a whim and used him as a tool to see what was going on. Olson Decl., Ex. Q. In that same interview she explained how she gained traction for her claims about unsolved murders by posting about them on social media. *Id.* Most recently, on October 14, 2023, Ms. Guillard posted a YouTube video in which she discusses this litigation,

again states that Professor Scofield murdered four people, and states that Professor Scofield would get away with it if it wasn't for her. https://www.youtube.com/watch?v=z2lYBCoLTdo. Olson Decl., Ex. R.

## II. ARGUMENT

**A.      Legal Standard**

Punitive damages claims are governed by Idaho Code § 6-1604. Section 1604(1) provides that in order to *recover* punitive damages, plaintiffs must show "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). However, *amending* the pleadings to seek punitive damages requires a lesser showing. To amend the complaint to seek punitive damages, a party need only show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2). "The court *shall* allow the motion to amend the pleading if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  I.C. § 6-1604(2) (emphasis added). Since the plaintiff need only show a "reasonable likelihood" of establishing its entitlement to punitive damages, a court reviews the evidence "in the light most favorable to plaintiffs, with the benefit of all legitimate inferences without assessing credibility." *Est. of Kane v. Epley's Inc.*, No. 3:15-CV-00105-EJL-REB, 2017 WL 1158242, at *4 (D. Idaho Mar. 28, 2017).

The question is not whether a plaintiff will succeed at trial on its punitive damage claim or whether the evidence is uncontroverted. Rather, a claim for punitive damages should be permitted if the plaintiff has shown "a reasonable likelihood [he] could prove by a preponderance of the evidence that the defendant acted oppressively, fraudulently, wantonly, maliciously or outrageously." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 424, 95 P.3d 34, 42 (2004).

To recover punitive damages, a plaintiff must establish both a sufficiently "bad act," and a "bad state of mind." *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 319, 179 P.3d 276, 282(2008) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)). The "bad act" requirement is established by showing that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Seiniger Law Off., P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 249, 178 P.3d 606, 614 (2008) (citation omitted). The "bad state of mind" requirement is met by proof of "an extremely harmful state of mind" which can be characterized as "malice, oppression, fraud or gross negligence." *Id.* at 250, 178 P.3d at 615 (citation omitted). "In general, the primary purpose behind an award for punitive damages is to deter similar conduct from happening again in the future." *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 221, 923 P.2d 456, 466 (1996).

**B.      Professor Scofield has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.**

Here, Professor Scofield has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Professor Scofield can establish that Ms. Guillard acted oppressively, fraudulently, wantonly, maliciously, or outrageously. Professor Scofield can establish that Ms. Guillard committed a bad act with a bad state of mind.

Ms. Guillard's TikTok videos, her admissions to the Requests for Admission, and her even more recent YouTube videos show that Ms. Guillard has accused Professor Scofield of being involved in an extramarital affair with a student at the university at which she teaches and a serial killer. Despite repeatedly acknowledging that she has no evidence admissible in any Court—and now with fact discovery closed she will not get any—Ms. Guillard is unrepentant. She persists in making the very same false statements even after being told repeatedly that her statements are false

and even after the State of Idaho has charged someone else with the murders. Such repeated conduct is indisputably wanton, malicious, and outrageous.

Ms. Guillard's statements made on TikTok after the murders variously asserted, falsely, that Professor Scofield "killed [K.G., M.M., E.C., & X.K.]," "was the one to initiate the plan & hired" the supposed hitman, "ordered the murder of the 4 University of Idaho students," and broadly claimed that Professor Scofield was involved in the killings. Olson Decl., Exs. E, F. G, H, I, J. Ms. Guillard also made statements on TikTok after the murders asserting, falsely, that Professor Scofield was having an affair with K.G. and orchestrated the murders to cover that up. *Id.*, Ex. G, J, K, L.

Ms. Guillard's statements in the YouTube videos posted after Professor Scofield filed her lawsuit are equally outrageous. In a February 8, 2023, YouTube video, Ms. Guillard alleged that Professor Scofield has photographs, videos, and messages from the night of the murder and during the murder on a collaborative book literature app she used to collaborate with the people she had help her plan and execute the murders. Olson Decl., Ex. P. Ms. Guillard claims in the video that anyone can get the photographs, videos, and messages from Professor Scofield by issuing a subpoena to her, *id.*, but Ms. Guillard did not even do so in this case. She purports to describe in detail how Professor Scofield first mentored, then began an affair with one of the students, often meeting up with the student when Professor Scofield's husband was out of town. *Id.* In a June 9, 2023, interview posted on YouTube, Ms. Guillard said that the arrest of Bryan Kohberger did not change her mind about Professor Scofield's involvement in the murders. *Id.*, Ex. Q. Instead, she claimed that Professor Scofield contacted Kohberger on a whim on the day of the murders. *Id.* Unsurprisingly, however, the indictment charging Bryan Kohberger does not give any suggestion that any other person was involved. *Id.*, Ex. T.

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES - 6
122047145.1 0079747-00001

Finally, on October 14, 2023, Ms. Guillard posted another YouTube video focusing on this litigation and again stating that Rebecca was responsible for the murders. *Id.*, Ex. R.

The statements themselves are bad acts. They show an extreme deviation from reasonable standards of conduct because they were not based on any facts to begin with and because Ms. Guillard continued to make them even after she was aware of clear facts showing they were false. *See Seiniger Law Off., P.A.* 145 Idaho at 249, 178 P.3d at 614. They were also made by the defendant with disregard for their likely consequences on Professor Scofield. *Id.* That the statements were made without any factual basis and continued to be made after Ms. Guillard received the cease-and-desist letters, knew the Moscow Police Department did not believe Professor Scofield was responsible for the murders, and knew that someone else had been arrested with no evidence of connection to Professor Scofield also proves Ms. Guillard's bad state of mind. Her ongoing statements were made at least with gross negligence. *Id.*, 145 Idaho at 250, 178 P.3d at 615. That Ms. Guillard has posted internet videos, or participated in YouTube interviews, in the thirteen months after the lawsuit was filed further spreading her false statements all while not obtaining a single fact in discovery that supports her allegations only underscores that she engaged in bad acts with a bad state of mind.

## CONCLUSION

The "primary purpose" of a punitive damages award is to "deter similar conduct from happening again in the future." *Walston*, 129 Idaho at 221, 923 P.2d at 466. Ms. Guillard's false statements on TikTok about the University of Idaho murders and Professor Scofield's role in them were designed to gain notoriety and attention for Ms. Guillard. Olson Decl., Ex. O. She admitted as much in the June 9, 2023, "Nerd Report" interview when she explained how she got traction for her posts on unsolved crimes. *Id.*, Ex. Q. Ms. Guillard's conduct is precisely that which punitive

damages were designed to address. Professor Scofield has set forth more than sufficient evidence for the Court at this stage to find that she has a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. I.C. § 6-1604(2). Accordingly, Professor Scofield respectfully requests that this Court grant her motion for leave to amend her Complaint to add a prayer for relief for punitive damages and additional facts in support thereof.

DATED: January 12, 2024.

          STOEL RIVES LLP

          /s/ Wendy J. Olson
          Wendy J. Olson
          Elijah M. Watkins
          Cory M. Carone

          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, I served a copy of the foregoing via CM/ECF on the Registered Participant as follows:

Ashley Guillard
msashleyjt@gmail.com

/s/ Wendy J. Olson
Wendy J. Olson