Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Rd. 942
Houston, TX 77098
Telephone:  337.372.3181

Pro Se

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY GUILLARD,<br><br>Defendant. | Case No. 3:22-cv-00521-REP<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 63)** |

## I.   INTRODUCTION

COMES NOW, Defendant Ashley Guillard (Guillard) in opposition to Plaintiff Rebecca Scofield's Amended Motion for Partial Summary Judgment (DKT. 63). For several reasons Plaintiff Rebecca Scofield's (Scofield) Motion must fail. First, the Plaintiff does not meet the criteria for a summary judgement under Rule 56; there is an issue of material fact and Scofield is not entitled to judgment as a matter of law. Second, Guillard has not defamed Scofield nor has she admitted to defaming Scofield. Third, the burden of proof in defamation cases rest on the Plaintiff. Scofield has not proven the statements Guillard made about her are false. Therefore, as it stands the statements are legally presumed to be true. For those reasons and more the Amended Motion for Partial Summary Judgment (DKT. 63) must be denied.

## II. BACKGROUND

**A.    The Murder of the Four University of Idaho Students.**

On November 13, 2022, four students at the University of Idaho: Kaylee Goncalves, Madison Mogen, Xana Kernodle and Ethan Chapin (referred to as the four students) were murdered at a home near campus in Moscow Idaho. The tragedy garnered the attention of a world-wide audience on social media and the news media. The attracted audience frantically sought answers as it pertains to who committed the murders and the details of what happened that night. The police received thousands of tips from good samaritans trying to help solve the crime. Online sleuths and crime networks began their own investigations in an attempt to get answers. The demand for answers from the public increased as time went by with no arrest. On December 30, 2022, Bryan Kohberger was arrested for the murder of the four students.

**B.    Guillard's Intuitive Tarot Readings.**

Guillard dedicated her life to spiritual development, growth, and mastery since 2016. She is motivated by purpose, not profit as she stated in her self-published book *The Personification of Beauty* (2018) pgs. 141-142 (see Exhibit A pgs. 87-88). During her spiritual journey she developed claircognizant also known as clairvoyant abilities. Clairvoyance is *the ability to perceive matters beyond the range of ordinary perception*[1]. The Department of Justice published clairvoyants *"can offer information for assessment by law enforcement officials"*[2]. Since 2019 Guillard used her claircognizant abilities to get answers regarding the details of mysterious deaths, high profile cases and personal questions as requested. See Exhibit B an excerpt from her unfinished yet self-published book T*he Power of I Am (2019)* – detailing her development of claircognizance. Guillard shared the details of her tarot findings on social media to include TikTok. Guillard routinely

---

[1] https://www.merriam-webster.com/dictionary/clairvoyance
[2] https://www.ojp.gov/ncjrs/virtual-library/abstracts/psychics-and-police-work

DEFENDANT'S RESPONSE TO …MOTION FOR SUMMARY JUDGMENT (DKT. 63)    2

received confirming feedback regarding the accuracy of her intuitive tarot readings. See Dkt. 57, Exhibit A, electronically stored information (ESI): https://youtu.be/qLq5YJ2LuYs -an intuitive tarot reading that accurately predicted the untimely death of SSG(p) Kenyon White. She naturally attracted an audience.

C.   **Guillard's Involvement with the Case of the Murder of the Four Students.**

Two weeks after the murders a concerned TikTok user asked Guillard to conduct a tarot reading to get details regarding the murder of the four students; she obliged. Guillard began the psychic investigation for no other reason than to find answers because she was asked. Her TikTok account was not monetized, nor did she receive payment for the videos posted on her TikTok. Guillard used her claircognizant abilities to gather all the pieces to the puzzle of what happened to the four students and why. She became very passionate and touched by their stories as told by the intuitive tarot readings and their social media footprint. An intuitive tarot reading revealed that Scofield would get away with murder if it wasn't for Guillard. At the time, Guillard did not know how that would happen, but she decided to continue to seek the truth regarding the murder of the four students and to advocate on their behalf.

D.   **A Synopsis of The Messages Received from the Tarot Readings.**

**The Romantic Relationship with Kaylee Goncalves.**

The tarot readings revealed that Professor Scofield hides that she is romantically interested in women because she is ashamed. However, her desire for Kaylee motivated her to take a risk and to tell her she is interested in her romantically. She initially had a mentor mentee type of relationship with Kaylee Goncalves. Scofield garnered the courage to tell Kaylee about her feelings. Kaylee was accepting of her and reciprocated the flirting. She then asked Kaylee to experiment with her in a same sex romantic relationship under the premise that she was gaining

the confidence to be her true self. Kaylee agreed. The relationship was a secret due to Scofield being married and a Professor for the University of Idaho.

Kaylee grew to love Scofield. They spent time together and were romantically involved. However, as time progressed, and Kaylee neared graduation she no longer accepted being in a secret relationship. She did not want to be second place to Scofield's husband. She honored her values and self-worth. Instead, she wanted their relationship to be known. Scofield misled Kaylee. She never intended for their relationship to be public. Due to this disagreement, they broke up. Scofield told Kaylee that she was feeling neglected by her husband and that is the real reason she initiated a relationship with Kaylee. She then told her that she would not leave her husband because of their family. Kaylee's heart was broken, and she threatened to tell Scofield's husband everything. It was an emotional breakup.

Although Kaylee was heartbroken, she got an amazing opportunity that diverted her attention. This is corroborated by Exhibit C- an article with Kaylee's parents, saying Kaylee had a job lined up in Texas and a new car. She looked forward to her new life. However, in the background Scofield was excessively watching Kaylee on social media and in person. She was extremely fearful that her secret relationship with Kaylee would be exposed and that she would be embarrassed, lose respect and possibly lose her job and marriage.

### The Murder Plot and Motives.

After self-torturing herself with the fear and anxiety of being exposed Scofield decided that she had to have Kaylee killed to keep her secret safe. She later recognized that Kaylee was surrounded by friends. See Exhibit D - the last photos Kaylee Goncalves posted to her Instagram social media account that is captioned *"one lucky girl to be surrounded by these ppl everyday"*. Scofield's fear of being exposed, anger, and jealousy increased. She decided to include all of those

around Kaylee in the murder plot as well; all six students to include Dylan Mortensen (DM) and Bethany Funke (BF). Scofield propositioned and manipulated Kaylee's ex Jack DuCoeur to commit the crimes. She promised him a better life experience, college life experience, and money in exchange for him to sacrifice his friend Kaylee. DuCoeur agreed. He helped Scofield plan the murders and he also monitored Kaylee and her friends. He informed Scofield that Kaylee was in town the weekend of November 11, 2022. Scofield insisted that the murders had to occur that weekend. The evening of November 12, 2022, DuCoeur initiated the plan.

The evening of the murders DuCoeur procrastinated. He took some time to think to make sure that he wanted to go through with the plan. He played with the dog he shared with Kaylee, and he ignored Scofield's attempts to contact him. Scofield panicked. She thought DuCoeur was deceiving her instead of Kaylee or that the task was too big for him. Therefore, she initiated another plan. She contacted Bryan Kohberger (Kohberger) on an impulse, recruited him for the job to kill Kaylee specifically and sent him to the victim's residence on King Road. She ordered him to check for activity and to see if DuCoeur was committing the crimes before doing anything. This is supported by (Exhibit E) – page 6 of the Probable Cause Affidavit used to arrest Kohberger which alleges that Kohberger drove by a few times before entering the home.

When Kohberger arrived to the residence DuCoeur was already there executing the plan to murder the students. He refused to have Kohberger involved. Sacrificing Kaylee was a big deal to him. He refused to split the money he was promised with Kohberger because if he received anything less from the deal it would no longer be worth the sacrifice. Scofield and DuCoeur communicated. They argued due to his lack of communication with her. Additionally, she wanted Kohberger to help DuCoeur and for them to share the profit. She thought it was more than enough money to go around. DuCoeur refused to accept the help. Kohberger decided to leave instead. This

is supported by DM's witness statements that she saw a masked man walk past her and towards the back sliding glass door. It is also supported by footage of Kohberger's alleged vehicle leaving the King Road neighborhood at 4:20am. See (Exhibit E) – page 4 and page 6 of the Probable Cause Affidavit. The original plan Scofield had with DuCoeur continued. She noted that Kohberger was now a problem that needed to be fixed in the future. DuCoeur increased his communication with Scofield showing her proof of the crimes being committed.

### The Murders.

The murders were not done quickly. It was what seemed to be a night filled with chaos and drama. Jack DuCoeur came to the residence. Together they all consumed drugs and alcohol that DuCoeur paid for. The students had no idea that he was there to murder them. DuCoeur supplied the libations with the expectation to be paid with sex from Kaylee. After Kaylee refused to have sex with him DuCoeur became very angry and belligerent pretending to be lonely, cheated on, deceived, and used for his drugs; but it was all a ploy.

After this went on for a while a couple of the girls began to have sex with him to calm him down and to pay the debt. Ethan was very uncomfortable with the situation. He attempted to stop the girls from being forced into sex. Xana joined Ethan. There was a physical altercation and Ethan got the best of DuCoeur. The situation calmed for a while as DuCoeur pretended to be emotional and heartbroken over Kaylee. Ethan was not buying the act. DuCoeurs story did not make sense to Ethan; but the women showed him empathy. They believed him.

Sometime later the Kohberger incident happened after which DuCoeur was motivated to finish the crime. He began acting belligerent again. Ethan confronted DuCoeur again to protect the girls, but he was brutally attacked instead. Ethan was the first to be stabbed. Xana stayed with Ethan attempting to help him. She feared she was being watched. She hoped to be rescued. She

thought the surviving roommates were going to get help. This is supported by the Probable Cause Affidavit (Exhibit E pg. 4) -DM stated she heard crying from Kernodle's room, and she heard someone tell Xana they would get help. No one helped.

DM and BF hid to protect themselves. Xana did not want to call the police unless she had no other choice. She decided to face her fears and to help herself, Kaylee, and Madison but she did not know her footing nor the magnitude of the danger she was facing. She went to the room Kaylee and Madison were in and found them brutally murdered. The killer was there… grieving. According to the reading that killer is Jack DuCoeur. He brought Xana back to her room. She pleaded with him for her life. He vented to her before she was killed. Exhausted, he looked quickly for the other roommates and then left. Xana was the last to be killed. The surviving roommates heard everything but did nothing to stop it. They remained hidden as a self-preservation tactic. None of them called the police because of a youthful lack of judgment, misplaced trust, paralysis due to fear of being watched, to avoid being judged, and to avoid trouble for breaking the rules. They wanted to solve the problems themselves. The victims did not know the magnitude of danger they were in.

**E.     Procedural History and Harassment.**

To discredit Guillard, her reputation, character, account of events, and legitimacy, on December 21, 2022, Scofield fraudulently filed a two-count defamation complaint, Civil Action No. 3:22-cv-00521-REP, against Ashley Guillard. The Complaint was completely fabricated and filed with the intent to harass and take revenge against Guillard for exposing Scofield's affair with Goncalves and her role in the murder of the four students. In nearly all their dockets within the Complaint Scofield and her attorneys made false statements of fact about Guillard's character,

mocked and degraded Guillard's spiritual practice, and misled the Court regarding the nature of the Complaint.

Within a week of the filing of the Complaint Scofield and her attorney Wendy Olson started a smear campaign against Guillard using the news media to embarrass Guillard, to spread lies about her, and to annihilate her character. They told the news media that Guillard intentionally fabricated lies about Scofield's involvement in the murder of the four students for self-promotion and to profit from the tragedy; that was a lie. The truth is Guillard used her keen claircognizant abilities to get truthful answers on what caused the murder of the four students. She posted TikTok videos to promulgate the truth and to seek justice. Her TikTok account was not monetized. She did not profit from the videos about the four students or any other video on her TikTok account. They told the news media that Guillard revictimized the families of the victims; that was a lie. The truth is she was attempting to help get justice for the victims.

Scofield and Attorney Wendy Olson's egregious false statements of fact about Guillard were massively published in multi-national news media outlets and multi-national social media channels to multi-millions of viewers. The lies were accepted as true and caused Guillard to be harassed on social media, her website, on book reviews, telephonically and by email. Guillard's spiritual practice and personal reputation was ruined. Her TikTok page was continuously targeted by fake social media accounts and Scofield supporters. Guillard TikTok page was ultimately banned from TikTok due to Scofield and her attorneys' false allegations against her, and due to the near continuous false reporting of community guideline violations on her posts.

Knowing the Complaint and their subsequent dockets were completely fabricated, and that Scofield did not suffer any damages from Guillard's tarot reading, Scofield and her attorneys abused the judicial system by seeking multi-million-dollar judgements against Guillard. They

continued to use the judicial system to harass Guillard from December 21, 2022, to the date of this filing, February 2, 2024. Outside of court, Scofield, and her supporters continuously harassed Guillard on social media through the creation of newly created fake TikTok and YouTube accounts used to threaten her life, make false statements about her mental health, and to threaten a "hate crime" against her. Scofield supporters also routinely called Guillard's personal cell phone several times referring to Scofield as an "innocent professor" asking Guillard "who is the killer"; even calling on Christmas day. The calls increase when Guillard faces litigation deadlines. In fact, as Guillard wrote this response, she received several harassing phone calls to her personal cell phone number from a Scofield supporter with a made-up phone number asking, "are you the killer" (see Exhibit F: ESI https://youtu.be/YGMme0cWz4w -a few incidents of telephonic harassment). See also Exhibit H- ESI https://youtu.be/EjHjTB3shgc.

### III.   LEGAL STANDARDS & ARGUMENT

Notwithstanding the fact that the Plaintiff's entire Complaint is completely fabricated and fraudulently filed it does not meet the criteria for a summary judgment favorable to the Plaintiff under Rule 56. There are several genuine issues of material fact. Additionally, the Plaintiff is not entitled to judgment as a matter of law because she does not have a valid defamation claim.

**A.   There Are Several Genuine Disputes Regarding Material Facts; Scofield Fails to Meet the Criteria Established by Rule 56(a).**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure in order to succeed in a motion for summary judgment, the movant must show *1) that there is no genuine dispute as to any material fact...* Guillard has consistently persisted that the statements she made regarding Scofield's role in the murder of the four University of Idaho Students are substantially true. In this civil defamation case Scofield has the burden of proving that she did not have an affair with Kaylee

Goncalves and that she did not order the murder of the four students. See Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). *"Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred." The First Amendment requires that we protect some falsehood in order to protect speech that matters*. Therefore, the legal assumption as required by First Amendment, is that Guillard's ideas are not false unless otherwise proven. *We begin with the common ground. Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas. Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)*. The falsity of Guillard's statements have not been proven. Therefore, the default position is that Guillard's ideas about Scofield's affair with Goncalves and Scofield's role in the murder of the four students are presumably true.

Pursuant to Rule 56 (c) (1) (B) A party asserting that a fact … is genuinely disputed must support the assertion by showing that the materials cited do not establish the absence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Scofield's argument for a summary judgment is frivolously supported by Guillard's admissions, the TikTok videos Guillard published, and a false Declaration from Scofield. First, Guillard's admissions establish that she used her claircognizant abilities to get information regarding the murder of the four students and Scofield's role in the murders. Guillard's admissions do not support Scofield's burden to prove that Guillard's ideas are false. Second, Guillard's TikTok videos establish that she promulgated her ideas regarding Scofield's affair with Kaylee Goncalves and Scofield's role in the murder of the four students. Guillard's TikTok videos do not support Scofield's burden to prove that Guillard's ideas are false.

Lastly, Scofield's Declaration establishes that she denies having an affair with Kaylee Goncalves and denies that she was involved in the murder of the four students. Scofield's Declaration do not support the Plaintiff's burden to prove that Guillard's ideas are false by a preponderance of the evidence or with convincing clarity. *In a civil case, the plaintiff must convince the jury by a "preponderance of the evidence" (i.e., that it is more likely than not) that the defendant is responsible for the harm the plaintiff has suffered*[3]. Scofield's word does not amount to a preponderance of the evidence. It is illogical to expect someone who is willing to kill to keep her secrets safe to in turn admit to quadruple murder and an affair with a female student. Additionally, during the entire litigation and in every docket, Scofield and her attorneys have continuously misled the Court and the public by spreading the false narrative that Guillard intentionally lied to gain a profit from the tragedy. They also fabricated nearly 2 million dollars in damages despite Scofield having no actual damages (See Dkt.10). They made those false statements under oath with the intent to mislead the court and the public. Guillard is the only party that has consistently upheld her ideas and integrity the entire litigation. Therefore, Scofield's word does not prove anything except that she is willing to lie and perjure the Court to get her way. Truth is a valid defense for defamation and is still being disputed. Ergo, Scofield fails to meet the criteria for a summary judgement under Rule 56(a). Thus, the Plaintiff's motion for a Summary Judgment must fail.

**B.     Scofield is Not Entitled to Judgment as a Matter of Law; Scofield Fails to Meet the Criteria of Rule 50(a) and Rule 56(a).**

The Plaintiff erroneously claims that Guillard *"has admitted to defamation as a matter of law"* (see Dkt. 63). Pursuant to Rule 56a of the Federal Rules of Civil Procedure in order to succeed

---

[3] https://www.uscourts.gov/about-federal-courts/types-cases/civil-cases#:~:text=In%20a%20civil%20case%2C%20the,harm%20the%20plaintiff%20has%20suffered.

DEFENDANT'S RESPONSE TO …MOTION FOR SUMMARY JUDGMENT (DKT. 63)     11

in a motion for summary judgment, the movant must show … 2) that the movant is entitled to judgment as a matter of law. Rule 50(a)(1)(B) requires that the court may grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. For a defamation claim to be valid, to include defamation per se, the statements made must be false.

The elements of a defamation claim applicable here are as follows: …the Plaintiff must prove that the Defendant (*1) communicated information about her to others; (2) the information was defamatory; and (3) she was damaged because of the communication* see *Clark v. The Spokesman–Review,144 Idaho 427, 163 P.3d 216 (2007) citing Gough v. Tribune–Journal Co.,73 Idaho 173, 249 P.2d 192, 194 (1952). See also Sadid v. Vailas, 943 F. Supp. 2d 1125, 1132 (D. Idaho 2013)*. Guillard adamantly states that the statements she made about the Plaintiff are substantially true. Scofield has the burden of proof and has not submitted convincing evidence that the statements Guillard made are false. Guillard's ideas are presumably and legally true. *Truth is an absolute defense against defamation. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and Time Inc. v. Hill, 385 U.S. 411 (1967)*. True ideas and statements cannot be defamatory. The Plaintiffs Complaint does not meet the elements of a defamation claim. Therefore, Scofield is not entitled to judgment as a matter of law.

C.     **The Plaintiff Has the Burden to Prove Guillard's Ideas Are False.**

The Plaintiff erroneously places the burden of proof on Guillard in her motion for summary judgment (see Dkt. 63 pages 18-20). The Plaintiff bears the burden of persuasion at trial and bears the initial burden of production in summary judgment. The plaintiff in a civil lawsuit has the burden of proof of "preponderance of the evidence." The burden of proof for a defamation case also rests on the plaintiff. See *Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)*. Additionally, the

Plaintiff must prove that the alleged defamatory statements are false. See *New York Times Co. v. Sullivan, 376 U.S. 254 (1964)*, and *Time Inc. v. Hill, 385 U.S. 411 (1967)*. Scofield has not produced clear and convincing evidence that Guillard's ideas are false. Instead, her evidence supports that Guillard's allegations about Scofield were not investigated by Moscow Police Department nor the University of Idaho (see Dkt. 63 Exhibit D and Dkt. 63 Exhibit N). Therefore, because Guillard's promulgated ideas about Scofield's role in the murder of the four students and affair with Goncalves have not been investigated, and there is no evidence to prove their falsity, the legal disposition remains that Guillard's promulgated ideas are true. In other words, it is legally true that Scofield hired an unexperienced hit man to commit the murders of the four University of Idaho students and it is legally true that Scofield had an affair with Kaylee Goncalves.

### D. Guillard's Ideas Are Not False Statements of Fact.

The term "misrepresentation of fact" is defined as *a false statement of substantive fact or conduct that leads to a belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead see 41 USC § 7101(9). A false or fictitious statement or representation is an assertion that is untrue when made or when used, and that is known by the person making it to be untrue.* See *United States v. Worthington, 822 F.2d 315, 319 (2d Cir.), cert. denied, 484 U.S. 944 (1987)*. Guillard's statements were made in the best interest of public safety and with the intent to help solve a horrific crime. Four students were brutally murdered. She believes that her ideas can help solve the crimes and get the right people arrested.

Guillard's tarot readings have a track record of being accurate as exemplified by her intuitive tarot reading that accurately predicted the untimely death of SSG(p) Kenyon White (see Dkt. 57 exhibit A: ESI: https://youtu.be/qLq5YJ2LuYs). Therefore, the promulgation of her ideas is not reckless, careless nor an intentional lie. The potential benefit and value derived from her

ideas (the arrest of quadruple murderers) far outweighs potential damages; especially considering Scofield did not suffer any damages. Guillard's ideas do not meet the intent of a false statement of fact and are deserving of exploration, exposition, and protection.

E.  **Claircognizance and The Use of Clairvoyants in Law Enforcement Is Not Implausible.**

In previous Dockets the Court erred in deeming claircognizance and derived ideas as "*arguably so outrageous as to be clearly baseless and, thus, implausible*" (see Dkt. 49 pg. 9). However, the Central Intelligence Agency (CIA) recognizes that "*psychics have been helpful in providing law enforcement with unknown information which was helpful to their case.*" Recognizing that *"the investigator might develop a theory about the case and ignore important clues that could be highlighted by a psychic. In cases with a large number of suspects, the psychic could help the investigator concentrate on more likely suspects early in the investigation*[4] (see Exhibit G)*."* Guillard's claircognizant abilities and spiritual connection is authentic and elite. It is unlawful to deem the information she provided as false simply because she was not physically present. As stated by the CIA it is not required for clairvoyants to be physically present to gather and provide information; yet the information can be helpful to law enforcement cases.

IV.  **CONCLUSION**

For the reasons stated herein, Guillard's intuitive ideas that Professor Rebecca Scofield hired men to murder and ensure the murder of the four University of Idaho students is presumed to be legally true. Guillard's intuitive idea that Professor Rebecca Scofield had an affair with one of the victims is also presumed to be legally true. The Plaintiff has not been proven the statements to be false. Unless the Plaintiff agrees that the statements Guillard made are true, the truth or falsity

---

[4] https://www.cia.gov/readingroom/docs/CIA-RDP96-00788R000100280009-3.pdf

DEFENDANT'S RESPONSE TO …MOTION FOR SUMMARY JUDGMENT (DKT. 63)   14

of the statements are still in dispute. Therefore, the Plaintiff does not meet the criteria for a summary judgment as required by Rule 56. Additionally, the Plaintiff has failed to claim a valid defamation claim because the truth cannot be defamatory. The Plaintiff's Motion for Summary Judgment must be denied.

## V. PRAYER FOR RELIEF

1) Deny the Plaintiff's Motion for a Summary Judgment (Dkt. 63).

2) Award Defendant Ashley Guillard all court related fees and sanctions pursuant to Rule 11(c) in the amount of $1,000,000 pursuant to B. Chambers v. NASCO, 501 U.S. 32 (1991)[5].

DATED: February 2, 2024

/s/ Ashley J. Guillard

Defendant

Ashley J. Guillard

Pro-Se Litigant

---

[5] Sanctions totaling nearly one million were upheld by the Supreme Court for the petitioner's (1) attempt to manipulate the court of jurisdiction by acts of fraud, (2) filing false and frivolous pleadings, and (3) attempting, by other tactics of delay, oppression, harassment, and massive expense to reduce the respondent to exhausted compliance.

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I served a copy of the foregoing via CM/ECF on the Registered Participant as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Elijah M. Watkins: elijah.watkins@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

/s/ Ashley J. Guillard

Ashley J. Guillard

Pro-Se Litigant