Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Rd. 942
Houston, TX 77098
Telephone: 337.372.3181

Pro Se

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, <br><br> Plaintiff, <br><br> v. <br><br> ASHLEY GUILLARD, <br><br> Defendant. | Case No. 3:22-cv-00521-REP <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES (DKT. 64)** |

## I.   INTRODUCTION

COMES NOW, Defendant Ashley Guillard in opposition to Plaintiff Rebecca Scofield's Motion for Leave to Amend Complaint to Add Punitive Damages. Idaho Code § 6-1604 requires that the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious, or outrageous conduct by the party against whom the claim for punitive damages is asserted. Plaintiff Rebecca Scofield (Scofield) has not proven that Defendant Ashley Guillard to be wrong. Nor has the Plaintiff proved by clear and convincing evidence that Guillard has behaved maliciously, fraudulently, outrageously, or oppressively. Additionally, Scofield's request does not meet the intent or requirements of Rule 15 of the Federal Rules of Civil Procedure. The Court must DENY Scofield's Motion for Leave to Amend Complaint to Add Punitive Damages.

## II.     BACKGROUND

A.     **The Murder of the Four University of Idaho Students.**

On November 13, 2022, four students at the University of Idaho: Kaylee Goncalves, Madison Mogen, Xana Kernodle and Ethan Chapin (referred to as the four students) were murdered at a home near campus in Moscow Idaho. The tragedy garnered the attention of a world-wide audience on social media and the news media. The attracted audience frantically sought answers as it pertains to who committed the murders and the details of what happened that night. The police received thousands of tips from good samaritans trying to help solve the crime. Online sleuths and crime networks began their own investigations in an attempt to get answers. The demand for answers from the public increased as time went by with no arrest. On December 30, 2022, Bryan Kohberger was arrested for the murder of the four students.

B.     **Guillard's Intuitive Tarot Readings.**

Guillard dedicated her life to spiritual development, growth, and mastery since 2016. She is motivated by purpose, not profit as she stated in her self-published book *The Personification of Beauty* (2018) pgs. 141-142 (see Dkt. 65 Exhibit A pgs. 87-88). During her spiritual journey she developed claircognizant also known as clairvoyant abilities. Clairvoyance is *the ability to perceive matters beyond the range of ordinary perception*[1]. The Department of Justice published clairvoyants *"can offer information for assessment by law enforcement officials"*[2]. Since 2019 Guillard used her claircognizant abilities to get answers regarding the details of mysterious deaths, high profile cases and personal questions as requested. See Dkt. 65 Exhibit B an excerpt from her unfinished yet self-published book T*he Power of I Am (2019)* – detailing her development of claircognizance. Guillard shared the details of her tarot findings on social media to include TikTok.

---

[1] https://www.merriam-webster.com/dictionary/clairvoyance
[2] https://www.ojp.gov/ncjrs/virtual-library/abstracts/psychics-and-police-work

Guillard routinely received confirming feedback regarding the accuracy of her intuitive tarot readings. See Dkt. 57, Exhibit A, ESI: https://youtu.be/qLq5YJ2LuYs -an intuitive tarot reading that accurately predicted the untimely death of SSG(p) Kenyon White. She naturally attracted an audience.

C.   **Guillard's Involvement with the Case of the Murder of the Four Students.**

Two weeks after the murders a concerned TikTok user asked Guillard to conduct a tarot reading to get details regarding the murder of the four students; she obliged. Guillard began the psychic investigation for no other reason than to find answers because she was asked. Her TikTok account was not monetized, nor did she receive payment for the videos posted on her TikTok. Guillard used her claircognizant abilities to gather all the pieces to the puzzle of what happened to the four students and why. She became very passionate and touched by their stories as told by the intuitive tarot readings and their social media footprint. An intuitive tarot reading revealed that Scofield would get away with murder if it wasn't for Guillard. At the time, Guillard did not know how that would happen, but she decided to continue to seek the truth regarding the murder of the four students and to advocate on their behalf.

D.   **A Synopsis of The Messages Received from the Tarot Readings.**

**The Romantic Relationship with Kaylee Goncalves.**

The tarot readings revealed that Professor Scofield hides that she is romantically interested in women because she is ashamed. However, her desire for Kaylee motivated her to take a risk and to tell her she is interested in her romantically. She initially had a mentor mentee type of relationship with Kaylee Goncalves. Scofield garnered the courage to tell Kaylee about her feelings. Kaylee was accepting of her and reciprocated the flirting. She then asked Kaylee to experiment with her in a same sex romantic relationship under the premise that she was gaining

Defendant's Response to Plaintiff Scofield's Motion for Leave to Amend Complaint                    3

the confidence to be her true self. Kaylee agreed. The relationship was a secret due to Scofield being married and a Professor for the University of Idaho.

Kaylee grew to love Scofield. They spent time together and were romantically involved. However, as time progressed, and Kaylee neared graduation she no longer accepted being in a secret relationship. She did not want to be second place to Scofield's husband. She honored her values and self-worth. Instead, she wanted their relationship to be known. Scofield misled Kaylee. She never intended for their relationship to be public. Due to this disagreement, they broke up. Scofield told Kaylee that she was feeling neglected by her husband and that is the real reason she initiated a relationship with Kaylee. She then told her that she would not leave her husband because of their family. Kaylee's heart was broken, and she threatened to tell Scofield's husband everything. It was an emotional breakup.

Although Kaylee was heartbroken, she got an amazing opportunity that diverted her attention. This is corroborated by Dkt. 65 Exhibit C- an article with Kaylee's parents, saying Kaylee had a job lined up in Texas and a new car. She looked forward to her new life. However, in the background Scofield was excessively watching Kaylee on social media and in person. She was extremely fearful that her secret relationship with Kaylee would be exposed and that she would be embarrassed, lose respect and possibly lose her job and marriage.

### The Murder Plot and Motives.

After self-torturing herself with the fear and anxiety of being exposed Scofield decided that she had to have Kaylee killed to keep her secret safe. She later recognized that Kaylee was surrounded by friends. See Dkt. 65 Exhibit D - the last photos Kaylee Goncalves posted to her Instagram social media account that is captioned *"one lucky girl to be surrounded by these ppl everyday"*. Scofield's fear of being exposed, anger, and jealousy increased. She decided to include

all of those around Kaylee in the murder plot as well; all six students to include Dylan Mortensen (DM) and Bethany Funke (BF). Scofield propositioned and manipulated Kaylee's ex Jack DuCoeur to commit the crimes. She promised him a better life experience, college life experience, and money in exchange for him to sacrifice his friend Kaylee. DuCoeur agreed. He helped Scofield plan the murders and he also monitored Kaylee and her friends. He informed Scofield that Kaylee was in town the weekend of November 11, 2022. Scofield insisted that the murders had to occur that weekend. The evening of November 12, 2022, DuCoeur initiated the plan.

The evening of the murders DuCoeur procrastinated. He took some time to think to make sure that he wanted to go through with the plan. He played with the dog he shared with Kaylee, and he ignored Scofield's attempts to contact him. Scofield panicked. She thought DuCoeur was deceiving her instead of Kaylee or that the task was too big for him. Therefore, she initiated another plan. She contacted Bryan Kohberger (Kohberger) on an impulse, recruited him for the job to kill Kaylee specifically and sent him to the victim's residence on King Road. She ordered him to check for activity and to see if DuCoeur was committing the crimes before doing anything. This is supported by (Dkt. 65 Exhibit E) – page 6 of the Probable Cause Affidavit used to arrest Kohberger which alleges that Kohberger drove by a few times before entering the home.

When Kohberger arrived to the residence DuCoeur was already there executing the plan to murder the students. He refused to have Kohberger involved. Sacrificing Kaylee was a big deal to him. He refused to split the money he was promised with Kohberger because if he received anything less from the deal it would no longer be worth the sacrifice. Scofield and DuCoeur communicated. They argued due to his lack of communication with her. Additionally, she wanted Kohberger to help DuCoeur and for them to share the profit. She thought it was more than enough money to go around. DuCoeur refused to accept the help. Kohberger decided to leave instead. This

is supported by DM's witness statements that she saw a masked man walk past her and towards the back sliding glass door. It is also supported by footage of Kohberger's alleged vehicle leaving the King Road neighborhood at 4:20am. See (Dkt. 65 Exhibit E) – page 4 and page 6 of the Probable Cause Affidavit. The original plan Scofield had with DuCoeur continued. She noted that Kohberger was now a problem that needed to be fixed in the future. DuCoeur increased his communication with Scofield showing her proof of the crimes being committed.

### The Murders.

The murders were not done quickly. It was what seemed to be a night filled with chaos and drama. Jack DuCoeur came to the residence. Together they all consumed drugs and alcohol that DuCoeur paid for. The students had no idea that he was there to murder them. DuCoeur supplied the libations with the expectation to be paid with sex from Kaylee. After Kaylee refused to have sex with him DuCoeur became very angry and belligerent pretending to be lonely, cheated on, deceived, and used for his drugs; but it was all a ploy.

After this went on for a while a couple of the girls began to have sex with him to calm him down and to pay the debt. Ethan was very uncomfortable with the situation. He attempted to stop the girls from being forced into sex. Xana joined Ethan. There was a physical altercation and Ethan got the best of DuCoeur. The situation calmed for a while as DuCoeur pretended to be emotional and heartbroken over Kaylee. Ethan was not buying the act. DuCoeurs story did not make sense to Ethan; but the women showed him empathy. They believed him.

Sometime later the Kohberger incident happened after which DuCoeur was motivated to finish the crime. He began acting belligerent again. Ethan confronted DuCoeur again to protect the girls, but he was brutally attacked instead. Ethan was the first to be stabbed. Xana stayed with Ethan attempting to help him. She feared she was being watched. She hoped to be rescued. She

thought the surviving roommates were going to get help. This is supported by the Probable Cause Affidavit (Dkt. 65 Exhibit E pg. 4) -DM stated she heard crying from Kernodle's room, and she heard someone tell Xana they would get help. No one helped.

DM and BF hid to protect themselves. Xana did not want to call the police unless she had no other choice. She decided to face her fears and to help herself, Kaylee, and Madison but she did not know her footing nor the magnitude of the danger she was facing. She went to the room Kaylee and Madison were in and found them brutally murdered. The killer was there… grieving. According to the reading that killer is Jack DuCoeur. He brought Xana back to her room. She pleaded with him for her life. He vented to her before she was killed. Exhausted, he looked quickly for the other roommates and then left. Xana was the last to be killed. The surviving roommates heard everything but did nothing to stop it. They remained hidden as a self-preservation tactic. None of them called the police because of a youthful lack of judgment, misplaced trust, paralysis due to fear of being watched, to avoid being judged, and to avoid trouble for breaking the rules. They wanted to solve the problems themselves. The victims did not know the magnitude of danger they were in.

**E.     Procedural History and Harassment.**

To discredit Guillard, her reputation, character, account of events, and legitimacy, on December 21, 2022, Scofield fraudulently filed a two-count defamation complaint, Civil Action No. 3:22-cv-00521-REP, against Ashley Guillard. The Complaint was completely fabricated and filed with the intent to harass and take revenge against Guillard for exposing Scofield's affair with Goncalves and her role in the murder of the four students. In nearly all their dockets within the Complaint Scofield and her attorneys made false statements of fact about Guillard's character,

Defendant's Response to Plaintiff Scofield's Motion for Leave to Amend Complaint                    7

mocked and degraded Guillard's spiritual practice, and misled the Court regarding the nature of the Complaint.

Within a week of the filing of the Complaint Scofield and her attorney Wendy Olson started a smear campaign against Guillard using the news media to embarrass Guillard, to spread lies about her, and to annihilate her character. They told the news media that Guillard intentionally fabricated lies about Scofield's involvement in the murder of the four students for self-promotion and to profit from the tragedy; that was a lie. The truth is Guillard used her keen claircognizant abilities to get truthful answers on what caused the murder of the four students. She posted TikTok videos to promulgate the truth and to seek justice. Her TikTok account was not monetized. She did not profit from the videos about the four students or any other video on her TikTok account. They told the news media that Guillard revictimized the families of the victims; that was a lie. The truth is she was attempting to help get justice for the victims.

Scofield and Attorney Wendy Olson's egregious false statements of fact about Guillard were massively published in multi-national news media outlets and multi-national social media channels to multi-millions of viewers. The lies were accepted as true and caused Guillard to be harassed on social media, her website, on book reviews, telephonically and by email. Guillard's spiritual practice and personal reputation was ruined. Her TikTok page was continuously targeted by fake social media accounts and Scofield supporters. Guillard TikTok page was ultimately banned from TikTok due to Scofield and her attorneys' false allegations against her, and due to the near continuous false reporting of community guideline violations on her posts.

Knowing the Complaint and their subsequent dockets were completely fabricated, and that Scofield did not suffer any damages from Guillard's tarot reading, Scofield and her attorneys abused the judicial system by seeking multi-million-dollar judgements against Guillard. They

continued to use the judicial system to harass Guillard from December 21, 2022, to the date of this filing, February 2, 2024. They have now filed Dkt. 64, a motion seeking the Courts leave to amend the complaint to add punitive damages against Guillard; making egregious false statements about Guillard to manipulate the Court in their favor.

Outside of court, Scofield, and her supporters continuously harassed Guillard on social media through the creation of newly created fake TikTok and YouTube accounts used to threaten her life, make false statements about her mental health, and to threaten a "hate crime" against her. Scofield supporters also routinely called Guillard's personal cell phone several times referring to Scofield as an "innocent professor" asking Guillard "who is the killer"; even calling on Christmas day. The calls increase when Guillard faces litigation deadlines. In fact, as Guillard wrote this response, she received several harassing phone calls to her personal cell phone number from a Scofield supporter with a made-up phone number asking, "are you the killer" (see Dkt. 65 Exhibit F: ESI https://youtu.be/YGMme0cWz4w -a few incidents of telephonic harassment). See also Dkt. 65 Exhibit H- ESI https://youtu.be/EjHjTB3shgc.

### III.   LEGAL STANDARDS & ARGUMENT

**A.   The Plaintiff's Complaint Does Not Meet the Standard for Punitive Damages.**

The Plaintiff's entire Complaint is completely fabricated and fraudulently filed. It does not meet the criteria for punitive damages as established by Idaho Code § 6-1604. Pursuant to Idaho Code § 6-1604 (1) *In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious, or outrageous conduct by the party against whom the claim for punitive damages is asserted.* The Defendant admits to communicating on social media that Professor Scofield ordered the murder of the four University of Idaho students to prevent from being exposed for having an affair with Kaylee Goncalves.

However, Guillard did so in a noble attempt to help law enforcement solve the crime and for justice. This is exemplified by Exhibit A - Guillard's tip she sent to the FBI tip-line. Murder is a public safety issue. She wanted to help solve the crime as so did other members of the public who sent thousands of tips to law enforcement and reported their findings on social media, news media and television. Additionally, Guillard believes that the statements she made regarding the murders and the affair between Scofield and Goncalves are substantially true. Malice requires *that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false.* See New York Times Co. v. Sullivan, 376 U.S. 254 (1964). The Plaintiff has failed to provide clear and convincing evidence that Guillard's conduct was malicious, outrageous, or ill intended. The Motion to Amend the Complaint to add punitive damages must fail.

**B.      The Plaintiff's Complaint is Fabricated, promulgates a False Narrative and is Misleading to the Court.**

The Plaintiff intentionally mislead the Court and the public with the false narrative that Guillard intentionally made-up false stories and published false statements about Scofield to TikTok to use the tragedy as an opportunity for pecuniary gain. The Plaintiff and her attorney's chose to lie to the Court about Guillard's intent and character because they intended to abuse the judicial system to embarrass Guillard, humiliate her, destroy her spiritual practice and character; and to prevent Scofield from being investigated for murder. Guillard has proven that her character and behavior is not so outrageous. She did not lie, she did not make up stories about the tragedy for pecuniary gain, she did not post false statements about Scofield knowing they were false. Instead, she used her highly developed and highly studied claircognizance (see Dkt. 65 Exhibit B) to help solve a quadruple murder. She was motivated by purpose, not profit (see Dkt. 65 Exhibit A). The Plaintiff's dishonesty with the Court and the public does not warrant an opportunity to

amend the Complaint to add punitive damages. The Plaintiff does not have and will not get clear and convincing evidence that Guillard acted with malice, ill intent, fraud, or oppression because just like her false narrative the evidence does not exist. On the contrary, Guillard has evidence that she has not acted with malice, ill intent, fraud, or oppression. The Motion to Amend the Complaint to add punitive damages must fail.

C.   **Amending The Complaint to Add Punitive Damages Is Not in the Best Interest of Justice.**

Pursuant to Rule 15 (a)(2) *a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires*. First, Defendant Ashley Guillard does not consent to the Plaintiff amending her Complaint to add punitive damages. Secondly, adding punitive damages to a frivolous Complaint that was perjuriously filed with a false narrative is not in the best interest of justice. In fact, the Plaintiff's entire Complaint is an impediment to justice. The plaintiff in a civil lawsuit has the burden of proof by a "preponderance of the evidence." The burden of proof for a defamation case also rests on the plaintiff. See *Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)*. The Plaintiff must prove that the alleged defamatory statements are false. See *New York Times Co. v. Sullivan, 376 U.S. 254 (1964)*, and *Time Inc. v. Hill, 385 U.S. 411 (1967)*. After one year of litigation and end of Discovery the Plaintiff has not proven with clear and convincing evidence that she did not order the murder of the four University of Idaho Students; and that she did not have an affair with Kaylee Goncalves. She has failed the burden of proof. Therefore, it is still legally presumed that the statements Guillard made are substantially true: Scofield had an affair with student Kaylee Goncalves and ordered the murder of the four University of Idaho students to prevent from being exposed. Without any convincing evidence after the close of discovery it is not in the best interest of justice

to allow the Plaintiff, a presumed murderer who has not been arrested, damaged, or punished in any way, to amend the Complaint to add punitive damages. The Plaintiff's Motion to Amend to add Punitive Damages (Dkt. 64) must be denied.

### D. Guillard Has Not Acted in A Bad State of Mind.

The Plaintiff errs in arguing that Guillard has acted negligently or in a bad state of mind by posting videos about her beliefs regarding the litigation since the beginning of the Complaint. Unless proven to be defamatory Guillard's statements regarding the murders and subsequent discussions about the Complaint are protected by the First Amendment of the United States Constitution. Guillard's right to the freedom of speech is not suddenly revoked due to the filing of a Complaint. The Plaintiff's argument that she can prove Ms. Guillard acted oppressively, fraudulently, wantonly, maliciously, or outrageously, and can establish that Ms. Guillard committed a bad act with a bad state of mind, because Guillard relied on her intuitive abilities instead of evidence is weak. Guillard is again protected by the First Amendment of the United States Constitution to believe in faith-based practices.

The Plaintiff again errs in her argument that Guillard acted maliciously by posting her ideas about Scofield's role in the murders after Bryan Kohberger (Kohberger) was arrested for the murder of the four students. Unlike Scofield in this civil case, Kohberger is fighting criminal charges, he is presumed to be innocent until proven guilty. Notwithstanding the fact that Guillard used claircognizance to discern the truth of Kohberger's role and lack thereof in the murders; the evidence Moscow Police Department (MPD) detailed in the Probable Cause Affidavit (see Dkt. 65 Exhibit E) is weak. Guillard is not required to believe MPD's account of events: that Kohberger with no apparent motive brutally stabbed the four students multiple times within 16 minutes minus the time it takes to get in and out of his vehicle; somehow left with an exposed murder weapon

(due to the sheath being left behind) with blood and DNA on it yet left no trace of blood in his vehicle or on his person; walked directly past a witness without doing anything to her despite being there just to kill for alleged research; left without any harm to himself, and somehow murdered Xana and Ethan first but left while she or "someone" was heard crying in Xana's room. As stated by the Plaintiff Moscow Police Department did not believe my ideas regarding Scofield's role in the murders. Just the same I do not believe in their illogical account of events. The 5th Amendment of the U.S. Constitution guarantees citizens that no one shall *be "deprived of life, property or liberty without following the due process of law."* The 14th Amendment applies this principle to states in the U.S. In the case of criminal arrests and charges, the civil thing to do is to presume the citizen charged is innocent until proven guilty. Civility does not amount to malice or negligence.

Lastly, In Dkt. 64 the Plaintiff argues:

*Ms. Guillard alleged that Professor Scofield has photographs, videos, and messages from the night of the murder and during the murder on a collaborative book literature app she used to collaborate with the people she had help her plan and execute the murders. Olson Decl., Ex. P. Ms. Guillard claims in the video that anyone can get the photographs, videos, and messages from Professor Scofield by issuing a subpoena to her, id., but Ms. Guillard did not even do so in this case.*

The Plaintiff errs yet again. Intuitive tarot readings require logical discernment to understand the applicability of the message. Guillard discerned from the intuitive tarot readings that evidence could be found in a "collaborative book literature app" that has photos, videos, messages, and is collaborative. Guillard then attributed that message to be either a literal collaborative book application or Facebook, a collaborative app that people use to send messages, videos, and photographs. To test that idea, Guillard served a subpoena to MetaPlatforms. The Plaintiff filed a

Motion to Quash the subpoena to Meta Platforms (Dkt. 48). The Court granted the Motion to Quash the subpoena to Meta Platforms (see Dkt. 55). The Plaintiff fails to present a valid bad act argument against the Defendant. The Motion for Leave to Amend the Complaint to add Punitive damages must fail.

## IV. CONCLUSION

For the reasons stated herein, Guillard's intuitive ideas that Professor Rebecca Scofield hired men to murder and ensure the murder of the four University of Idaho students is presumed to be legally true. Guillard's intuitive idea that Professor Rebecca Scofield had an affair with one of the victims is also presumed to be legally true. *We begin with the common ground. Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas. Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). Truth is an absolute defense against defamation. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and Time Inc. v. Hill, 385 U.S. 411 (1967).* Past the end of Discovery, the Plaintiff has not provided clear and convincing evidence that the statements Guillard made are false. Considering the Plaintiff does not intend or desire to go to trial for the merits of the Complaint (see Dkt. 56 and Dkt. 63 Plaintiff's Motions for Partial Summary Judgment); it is logical to conclude that she put her best case together. Her evidence includes a Declaration from Scofield, Admissions from Guillard that does not add value to her case and Tik-Tok videos of Guillard posting content that has not proven to be false. It simply isn't enough evidence to prove her defamation case *by a preponderance of the evidence*. The Plaintiff has not proven her case. Therefore, a legally presumed murderer does not get to sue a whistleblower for punitive damages. The Plaintiff's Motion to Amend the Complaint to Add Punitive Damages must be denied.

## V. PRAYER FOR RELIEF

1) Deny the Plaintiff's Motion for Leave to Amend the Complaint to Add Punitive Damages (Dkt. 64).

2) Award Defendant Ashley Guillard all court related fees and sanctions pursuant to Rule 11(c) in the amount of $1,000,000 pursuant to B. Chambers v. NASCO, 501 U.S. 32 (1991)[3].

DATED: February 2, 2024

/s/ Ashley J. Guillard

Defendant

Ashley J. Guillard

Pro-Se Litigant

---

[3] Sanctions totaling nearly one million were upheld by the Supreme Court for the petitioner's (1) attempt to manipulate the court of jurisdiction by acts of fraud, (2) filing false and frivolous pleadings, and (3) attempting, by other tactics of delay, oppression, harassment, and massive expense to reduce the respondent to exhausted compliance.

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 2, 2024, I served a copy of the foregoing via CM/ECF on the Registered Participant as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Elijah M. Watkins: elijah.watkins@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

/s/ Ashley J. Guillard

Ashley J. Guillard

Pro-Se Litigant

Defendant's Response to Plaintiff Scofield's Motion for Leave to Amend Complaint     16