## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No.: 3:22-cv-00521-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>**(Dkt. 63)** |
| ASHLEY GUILLARD, | |
| Defendant. | **PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES**<br>**(Dkt. 64)** |

Pending before the Court are Plaintiff's (i) Amended Motion for Partial Summary Judgment (Dkt. 63), and (ii) Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64).  Having carefully considered the record and participated in oral argument, the Court grants both motions as more particularly explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the tragic murder of four University of Idaho students in November 2022.  Plaintiff Rebecca Scofield is a professor at the University of Idaho.  She alleges that, despite never meeting any of these students or being involved with their murders in any way, Defendant Ashley Guillard posted over 100 sensational TikTok (and later YouTube) videos falsely claiming that Plaintiff (i) had an extramarital, same-sex, romantic affair with one of the victims; and then (ii) ordered the four murders to prevent the affair from coming to light.  Plaintiff sent cease-and-desist letters to Defendant in the following days and weeks.  When

**MEMORANDUM DECISION AND ORDER - 1**

Defendant did not stop, Plaintiff initiated this action.  (Dkt. 1).  Plaintiff asserts two defamation claims against Defendant: one is premised upon the false statements regarding Plaintiff's involvement with the murders themselves, the other is premised upon the false statements regarding Plaintiff's romantic relationship with one of the murdered students.  *Id*.

Defendant, representing herself, did not immediately respond to Plaintiff's Complaint by the January 17, 2023 deadline.  As a result, pursuant to Rule 55(a), Plaintiff moved for an entry of default against Defendant on January 19, 2023.  (Dkt. 4).  A Clerk's Entry of Default was then entered and mailed to Defendant on January 27, 2023.  (Dkt. 5).

On February 16, 2023, Defendant moved to set aside the entry of default.  (Dkt. 7).  Plaintiff responded the next day, opposing Defendant's efforts to set aside the entry of default and filing a Motion for Default Judgment pursuant to Rule 55(b)(2).  (Dkts. 9 & 10).  On April 24, 2023, the parties consented to the undersigned's jurisdiction.  (Dkt. 17).  Thereafter, on April 26, 2023, the Court granted Defendant's Motion to Set Aside Entry of Default, denied Plaintiff's Motion for Default Judgment as moot, and ordered Defendant to respond to Plaintiff's Complaint within 21 days.  (Dkt. 18).

On May 16, 2023, Defendant filed her Answer, Affirmative Defenses, and Counterclaims to Complaint.  (Dkt. 20).  Within that pleading, Defendant denied that she defamed Plaintiff because the accusations made against Plaintiff in Defendant's TikTok videos are "substantially true."  *Id*. at 6, ¶ 4 ("Rebecca Scofield planned, ordered, and executed the murder of the four University of Idaho Students.  Since the accusations in Ashley Guillard's TikTok videos are substantially true there is no actionable claim for defamation.").  Defendant further maintained that she "used her spiritual brain, intuition, spiritual practice, and investigative skills to uncover the truth regarding the murder of the four University of Idaho students; and published her findings on her TikTok social media platform."  *Id*. at 7, ¶ 6; *see also id*. at 8, ¶ 1 (same); *id*. at

**MEMORANDUM DECISION AND ORDER - 2**

13-14, ¶¶ 33-37 (same); *id*. at 18, ¶ 61 (same).  Defendant also affirmatively asserted 11 counterclaims against both Plaintiff and her legal counsel.  *Id*. at 7-59, ¶¶ 1-279 (relying on two premises: (i) that Plaintiff "initiated, planned, and executed the murders" to cover up an affair she had with one of the murdered victims; and (ii) that Plaintiff sought to "evade suspicion" for these murders by conspiring with her counsel to file a "frivolous" Complaint with "falsified factual allegations" that (a) supported the defamation claims against Defendant, and (b) deprived Defendant of her constitutional rights).

On June 6, 2023, Plaintiff moved to dismiss Defendants' counterclaims against her. (Dkt. 22).  A week later, Plaintiff moved to quash the summonses for her counsel, arguing that their issuance was procedurally improper.  (Dkt. 25) (arguing counsel were not proper parties under either Rule 13 or 14).  Defendant opposed each of these motions.  (Dkts. 35 & 36).  In an August 8, 2023 Memorandum Decision and Order, the Court (i) granted Plaintiff's Motion to Dismiss (insofar as it dismissed Defendant's counterclaims against Plaintiff),[1] and (ii) granted Plaintiff's Motion to Quash. (Dkt. 49).

On August 21, 2023, Defendant requested that the Court's August 8, 2023 Memorandum Decision and Order be set aside under Rules 60(b)(4) & (6) because (i) this Court does not have subject matter jurisdiction over the action; (ii) this Court does not have personal jurisdiction over her; (iii) venue is improper in Idaho; (iv) the Court lacks judicial impartiality; and (v) the Court does not have subject matter jurisdiction over the "plausibility of spiritual practices."  (Dkt. 50). According to Defendant, these same reasons similarly warranted the dismissal of Plaintiff's Complaint under Rules 12(b)(1), (2), & (6).  *Id*.  The Court denied Defendant's Motion in its entirety on November 13, 2023.  (Dkt. 59).

---

[1] The Court did not award attorney's fees to Plaintiff.  In this limited respect, Plaintiff's Motion to Dismiss was denied.

**MEMORANDUM DECISION AND ORDER - 3**

In the interim, Plaintiff moved for partial summary judgment as to liability on each of her two defamation claims against Defendant.  (Dkt. 56).  Plaintiff's arguments in this respect were largely based on Defendant's complete failure to respond to Plaintiff's earlier-served requests for admission.  *Id.* (citing Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.")).  However, on December 7, 2023, the Court granted Defendant more time to respond to Plaintiff's requests for admission and, relatedly, extended Plaintiff's dispositive motion deadline to address Defendant's anticipated responses to Plaintiff's requests for admission.  (Dkts. 61 & 62) (citing Fed. R. Civ. P. 36(a)(3) ("A shorter or longer time for responding [to requests for admission] may be stipulated to under Rule 29 or be ordered by the court.")).

Defendant eventually responded to Plaintiff's requests for admission.  On January 12, 2024, Plaintiff filed the at-issue Amended Motion for Partial Summary Judgment, again moving the Court for partial summary judgment as to liability on each of her defamation claims against Defendant.  (Dkt. 63).[2]  Plaintiff contends that Defendant's admissions, the TikTok videos that Defendant posted online, and Plaintiff's own declaration "establish beyond dispute" that Defendant defamed her.  *Id.* at 1, 6-20.  Also on January 12, 2024, Plaintiff filed the at-issue Motion for Leave to Amend Complaint to Add Punitive Damages.  (Dkt. 64).  She contends that Defendant's repeated and ongoing defamatory statements about her – without any factual support whatsoever – are extreme, outrageous, and warrant a claim for punitive damages.  *Id.* at 1, 4-8.  Defendant opposes each of these motions, claiming again that her statements about Plaintiff are either true or have not been proven to be false by Plaintiff.  (Dkts. 63 & 64).  On April 16, 2024,

---

[2]  In light of Plaintiff's Amended Motion for Partial Summary Judgment, the Court denied as moot Plaintiff's original Motion for Partial Summary Judgment.  (Dkt. 70).

**MEMORANDUM DECISION AND ORDER - 4**

the Court heard oral argument on Plaintiff's pending motions.  (Dkt. 73).  For the reasons discussed below, those motions are granted.

## II.  <u>LEGAL STANDARDS</u>

### A.     **Motion for Summary Judgment**

Summary judgment is appropriate where a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual dispute is "genuine" if the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."  *Id*.  One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *Celotex*, 477 U.S. at 323.  To carry this burden, the moving party must identify portions of the record, together with affidavits, that it believes show the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.

If the moving party satisfies this initial burden, the burden then shifts to the non-moving party to demonstrate with specific facts, not mere conclusory allegations, the existence of a genuine issue of material fact.  *Anderson*, 477 U.S. at 248-50, 256.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  *Id*. at 252; *see also Scott*

**MEMORANDUM DECISION AND ORDER - 5**

*v. Harris*, 550 U.S. 372, 380 (2007) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The court likewise need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249; *see also Burchett v. Bromps*, 466 F. App'x 605, 606 (9th Cir. 2012) (conclusory evidentiary statements unsupported by factual data do not create triable issue of fact allowing non-moving party to survive summary judgment); Fed. R. Civ. P. 56(e).  Instead, the party opposing summary judgment must go beyond the pleadings to show "by . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324.  The court, however, is not required "to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).  In the end, the "party opposing summary judgment must direct [the court's] attention to specific triable facts." *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

**B.**     **Claim for Punitive Damages**

A punitive damages claim is substantive in nature and, accordingly, controlled by Idaho law in diversity cases.  *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005).  In Idaho, "no claim for damages shall be filed containing a prayer for relief seeking punitive damages."  I.C. § 6-1604(2).  Still, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a claim for punitive damages.  *Id*.  "The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that[ ] the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  *Id*.

To support an award of punitive damages at trial, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party

against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). This standard involves the "intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC*, 191 P.3d 196, 201 (Idaho 2008). The defendant must have (i) acted in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – the likely consequences, and (ii) acted with an extremely harmful state of mind, described variously as with malice, oppression, fraud, or outrageousness. *Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004). Simple negligence will not support an award of punitive damages. *Inland Grp. of Companies, Inc. v. Providence Wash. Ins. Co.*, 985 P.2d 674, 684 (Idaho 1999). Further, reckless, wanton, or grossly negligent conduct alone is insufficient under Idaho law. *See Cummings v. Stephens*, 336 P.3d 281, 296 n.5 (Idaho 2014).

Putting these standards together, a plaintiff may add a claim for punitive damages only if they establish a reasonable likelihood of proving, by clear and convincing evidence, that the defendant's conduct was oppressive, fraudulent, malicious, or outrageous. *Magee v. J.R. Simplot Co.*, 2021 WL 2917044, at *14 (D. Idaho 2021). In determining whether to permit a claim for punitive damages, "a court views all evidence in the movant's favor without assessing credibility or resolving factual disputes and asks whether a reasonable jury could award punitive damages." *Davis v. Blast Props., Inc.*, 2023 WL 1737311, at *3 (D. Idaho 2023). Known as the "Rule 50 approach," this assessment "finds support in the statutory language that the trial court is to determine whether the plaintiff can present evidence 'at trial sufficient to support an award of punitive damages.'" *Id.* (quoting I.C. § 6-1604(2)).

"In general, the primary purpose behind an award for punitive damages is to deter similar conduct from happening again in the future." *Watson v. Monumental Life Ins. Co.*, 923 P.2d 456, 466 (Idaho 1996). That said, it is well-established in Idaho that punitive damages are not favored, should be awarded only in the most unusual and compelling circumstances, and are to

**MEMORANDUM DECISION AND ORDER - 7**

be awarded cautiously and within narrow limits.  *Manning v. Twin Falls Clinic & Hosp., Inc.*,
830 P.2d 1185, 1190 (Idaho 1992).  The decision whether to submit the punitive damages
question to a jury rests within the sound discretion of the trial court.  *Id*.

## III.   <u>ANALYSIS</u>

### A.      **Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. 63)**

Plaintiff asserts two defamation claims against Defendant.  The first claim concerns
Defendant's statements that Plaintiff orchestrated the murders of four University of Idaho
students.  Compl. at ¶¶ 36-42 (Dkt. 1).  The second claim concerns Defendant's statements that
Plaintiff had been involved in an inappropriate same-sex romantic relationship with one of the
murdered students.  *Id*. at ¶¶ 43-48.  Plaintiff argues that she is entitled to summary judgment on
the issue of liability because the evidence establishes that both sets of statements are defamatory
as a matter of law.  Mem. ISO Am. MPSJ at 6-20 (Dkt. 63-1).

In Idaho, a plaintiff claiming defamation "must prove that the defendant: (i)
communicated information concerning the plaintiff to others; (ii) that the information was
defamatory; and (iii) that the plaintiff was damaged because of the communication."  *Clark v.
The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007).  The parties mostly agree that this is
the standard applicable to Plaintiff's defamation claims against Defendant.  *Compare* Mem. ISO
Am. MPSJ at 9 (Dkt. 63-1) (citing *Clark*), *with* Opp. to Am. MPSJ at 12 (Dkt. 65) (same); *but
see infra* (discussing Idaho Jury Instruction 4.82 – "Elements of defamation – general case").
Plaintiff contends that, for each of her two defamation claims against Defendant, the record
establishes the first two liability-specific elements.  Mem. ISO Am. MPSJ at 9-18 (Dkt. 63-1).
The Court agrees.

First, "'[i]n both print and Internet publishing, information is generally considered
'published' when it is made available to the public.  Once information has been published on a

website or print media, there is no further act required by the publisher to make the information available to the public.'"  *Irish v. Hall*, 416 P.3d 975, 980 (Idaho 2018) (quoting *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006)), *abrogated on other grounds by Siercke v. Siercke*, 476 P.3d 376, 385-87 (Idaho 2020).  Here, it is undisputed that Defendant communicated information concerning Plaintiff to others via Defendant's repeated social media postings.  Pl.'s Am. SOF at ¶¶ 12-17, 19, 25-29, 30, 31, 33 (Dkt. 63-2) (citing RFA Nos. 1-2 (Dkt. 63-4) (Defendant admitting that she "stated publicly" that Plaintiff murdered four students, and that Plaintiff had an affair with one of those students); *see also* Ex. O to Am. Olson Decl. (Dkt. 63-18) (noting how certain of Defendant's social media posting received thousands of "likes"); Def.'s Ans. at 13-14, ¶¶ 37-38 (Dkt. 20) (Defendant alleging that, "when she was one hundred percent sure of the message" [(that Plaintiff "was in a relationship with [K.G.] that broke up and that she initiated the murders, planned the murders, and hired help to carry the plan out")], "she revealed her findings on Tik Tok," estimating that she "posted over 100 Tik Tok videos of her findings"); Def.'s Resp. to MTD at 2 (Dkt. 35) (Defendant stating: "She posted her findings on social media . . . .")).  These social media postings continued even after Defendant received Plaintiff's cease-and-desist letters, after Defendant knew that the Moscow Police Department issued a press release confirming that Plaintiff was not involved in the murders, and after another individual – Bryan Kohberger – was arrested and charged with the murders.  Pl.'s Am. SOF at ¶¶ 37-42 (Dkt. 63-2) (citing RFA Nos. 27-30 (Dkt. 63-4)).

Second, "[a] defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business."  *Irish*, 416 P.3d at 979 (quotation marks and citation omitted); *see also* IDJI 4.80 ("Defamation is the communication of false information which tends to impugn the honesty, integrity, virtue or reputation of the person about whom the statement is made, or

exposes that person to public hatred, contempt or ridicule.") (bracketed content omitted).  Here, the information communicated about Plaintiff within Defendant's social media postings are unquestionably defamatory: it accuses Plaintiff of having an inappropriate same-sex romantic affair with a student, and then masterminding that student's murder, along with three other students, to cover up the relationship.  For example:

- On November 25, 2022, Defendant posted a Tik Tok video, highlighting a University of Idaho policy that "Rebecca Scofield was so worried about being caught violating if anyone found out about her potential relationship with [K.G.].  However, considering they were broken up, there was really nothing to worry about.  That's why she was worried about just losing the respect."  Pl.'s Am. SOF at ¶¶ 25, 28 (Dkt. 63-2) (citing Ex. L to Am. Olson Decl. (Dkt. 63-15)).

- On November 26, 2022, Defendant posted a Tik Tok video, stating that Plaintiff and [J.D.] "partnered to kill the four University of Idaho college students."  Pl.'s Am. SOF at ¶¶ 12-13 (Dkt. 63-2) (citing Ex. E to Am. Olson Decl. (Dkt. 63-8)).

- On November 28, 2022, Defendant posted a Tik Tok video, stating that "I don't care what y'all say . . . [J.D.] and Rebecca Scofield killed [K.G.], [M.M.], [E.C.], & [X.K.] . . . REBECCA WAS THE ONE TO INITIATE THE PLAN & HIRED [J.D.]."  Pl.'s Am. SOF at ¶¶ 12, 14 (Dkt. 63-2) (citing Ex. F to Am. Olson Decl. (Dkt. 63-9) (emphasis in original)).

- On November 28, 2022, Defendant posted a Tik Tok video, rhetorically asking what [K.G.] did "that [Plaintiff] felt was so bad that she had to order [K.G.'s] murder and the murder of the three other University of Idaho college students," before taking "[a] look into Rebecca Scofield & [K.G.'s] connection" and stating that "they partied together," that Plaintiff paid for [K.G.'s] automobile and travel expenses, and that Plaintiff "makes this quick impulsive decision to have them killed which ultimately ended up being all four University of Idaho students."  Pl.'s Am. SOF at ¶¶ 12, 15, 26 (Dkt. 63-2) (citing Ex. G to Am. Olson Decl. (Dkt. 63-10)).

- On December 1, 2022, Defendant posted a Tik Tok video, stating that "Rebecca Scofield isn't remorseful for ordering the murder of the four University of Idaho students," but is instead "worried about her name, her accomplishments, worried about her possessions, . . . worried about people finding out who she really is, her real character, worried about her loss of accomplishments, worried about going to jail, losing everything that she worked so hard for, . . . worried about corruption and treason, not worried

**MEMORANDUM DECISION AND ORDER - 10**

about the lives that were taken." Pl.'s Am. SOF at ¶¶ 12, 16 (Dkt. 63-2) (citing Ex. H to Am. Olson Decl. (Dkt. 63-11)).

- On December 2, 2022, Defendant posted a Tik Tok video, stating that "Rebecca Scofield is going to prison for the murder of the four University of Idaho Students whether you like it or not." Pl.'s Am. SOF at ¶¶ 12, 17 (Dkt. 63-2) (citing Ex. I to Am. Olson Decl. (Dkt. 63-12)).

- On December 5, 2022, Defendant posted a Tik Tok video, stating that "Rebecca Scofield was being a sugar momma to [K.G.], giving her money. [K.G.] saw this as an opportunity to get ahead. She had limited resources and this was an opportunity. And also, it was like an experience. Rebecca liked [K.G.]. She made her feel young and vibrant and also it was an opportunity for her to balance her needs for a woman. But she may have been pushing too hard because [K.G.] needed a break and some time to herself. She just needed to clear her mind. Rebecca Scofield just needed to take this time to slow down and appreciate what she has. During this time, [K.G.] looked like she was shining – successful, other people are noticing. She may have even been shopping. But during the break, Rebecca Scofield was nervous, had anxiety, was worried about being caught, thought [K.G.] was going to back-stab her. And that's when she decided to plan her murder. And [M.M.'s] murder. Then she started to look for a team." Pl.'s Am. SOF at ¶¶ 25, 27 (Dkt. 63-2) (citing Ex. J to Am. Olson Decl. (Dkt. 63-13)).

- On December 5, 2022, Defendant posted a Tik Tok video, stating that Plaintiff and [K.G.'s] relationship "would have been something like a sugar momma. [K.G.] made her feel like a kid again. Very youthful energy. She did something for her. She helped her balance her needs. Because otherwise, that specific need that she had for a woman wasn't being taken care of. [K.G.] had limited resources. She wanted to help her friends but she felt like I have to help myself first before I can help anyone else. So she made a decision that she felt was right for her. So Rebecca Scofield was giving her money and offering her money. And [K.G.] was really close to [M.M.] so she opened up to her and told her about the money that she was getting from Rebecca. But the relationship didn't get a chance to start. The money came first. [K.G.] looked at it like an experiment. But it became too much." Pl.'s Am. SOF at ¶¶ 25, 28 (Dkt. 63-2) (citing Ex. K to Am. Olson Decl. (Dkt. 63-14)).

- On December 13, 2022, Defendant posted a Tik Tok video, including Plaintiff's cease-and-desist letter and stating "Rebecca Scofield's Attorney, Wendy J. Olson, sent me a demand letter to remove TikToks with false statements. I made NO FALSE STATEMENTS . . . [KISS MY ASS]." And "I don't have to listen to this demand letter because it's claiming that I'm making false statements and I'm not making false statements. What I'm saying is true. If they really think I'm making false statements, they

would need to file actual legal documents in a federal court or in a court in my county, asking me to remove it.  A judge would then determine if I need to remove it.  That way an investigation could be had determining the truth or falsity of these statements. Pl.'s Am. SOF at ¶ 39 (Dkt. 63-2) (citing Ex. M to Am. Olson Decl. (Dkt. 63-16) (emphasis in original)).

- On February 8, 2023, Defendant posted a YouTube video detailing, "from the beginning," her narrative of Plaintiff's intimate relationship with [K.G.] and eventual involvement in the murders of four University of Idaho students, including how Plaintiff "has pictures, videos, messages, during the night of the murders."  Ex. P to Olson Decl. (Dkt. 64-4).

- On June 8, 2023, a YouTube video of Defendant's interview with the online program "Nerd Report" was posted.  There, Defendant described how she uses her psychic "gifts" to solve mysteries and, to that end, how Plaintiff orchestrated the murder of the four University of Idaho students, including how Plaintiff "connected with Kohberger on the day of the murders on a whim."  Ex. Q to Olson Decl. (Dkt. 64-4).

- On October 14, 2023, Defendant posted a YouTube video criticizing Plaintiff's counsel (as well as the Court) for wanting to conceal the truth about Plaintiff and the four students' murders.  There, and in the context of this action, Plaintiff stated that she "is dealing with criminals, dealing with a murderer who ordered the execution of four students, so quadruple homicide murderer" and that "I am in court because I told the truth and that person, Scofield, is threatened by me and the things that I say.  So anyway, I tell the truth. . . .  Yes, I can say what I said because I was telling the truth."  Ex. R to Olson Decl. (Dkt. 64-4).

By repeatedly accusing Plaintiff of an affair with a student and then ordering the murder of four students to cover up the affair, Defendant communicated information to others that was defamatory.

Indeed, these statements are defamatory per se, meaning they are actionable without proof of special damages.  *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1134-35 (D. Idaho 2013).

Statements are per se defamatory if they impute to the plaintiff (i) a criminal offense; (2) a loathsome disease; (iii) a matter incompatible with her trade, business, profession, or office, or (iv) serious sexual misconduct.  *Id*. (citing *Yoakum v. Hartford Fire Ins. Co.*, 923 P.2d 416, 425 (Idaho 1996)).  "If an alleged defamatory statement does not fall within one of these categories, a

plaintiff must allege and prove that some special harm resulted from the utterance." *Yoakum*, 923 P.2d at 425.  Defendant's statements about how Plaintiff murdered four students – and had a secret relationship with one of the victims in violation of school policy – clearly meet this criteria.  They impute not only conduct constituting a criminal offense that would be punishable by imprisonment (murder and related criminal offenses), but also ascribe conduct that is incompatible with the proper conduct of a university professor (an inappropriate relationship with a student).

Critically, in response, Defendant does not dispute that she communicated statements about Plaintiff to others or that these statements, if false, are defamatory.  Rather, she argues – as she always has – that her statements about Plaintiff's involvement with [K.G.] and the murders themselves are true.  Opp. to Am. MPSJ at 9, 12-13 (Dkt. 65) ("Guillard has consistently persisted that the statements she made regarding Scofield's role in the murder of four University of Idaho students are substantially true. . . .  Guillard adamantly states that the statements she made about Plaintiff are substantially true. . . .  In other words, it is legally true that Scofield hired an unexperienced hit man to commit the murders of the four University of Idaho students and it is legally true that Scofield had an affair with [K.G.].").  Defendant therefore asserts that it is Plaintiff's burden to prove that her statements about Plaintiff on her social media postings are false, and that Plaintiff has not satisfied this burden on summary judgment.  *Id*. at 1, 12-13 ("Scofield has not proven the statements Guillard made about her are false. . . .  Scofield has the burden of proof and has not submitted convincing evidence that the statement Guillard made are false. . . .  Plaintiff must prove that the alleged defamatory statements are false.").

Plaintiff disagrees that it is her burden to prove falsity, countering that it is Defendant's burden to prove that her statements are true.  Mem. ISO Am. MPSJ at 18-20 (Dkt. 63-1) (citing *Baker v. Burlington Northern, Inc.*, 587 P.2d 829, 831 (Idaho 1978)); *see also* Reply ISO Am.

**MEMORANDUM DECISION AND ORDER - 13**

MPSJ at 5 (Dkt. 67) (same).  In turn, Plaintiff argues that, because truth is a defense to her two

defamation claims, and because Defendant cannot satisfy her burden to prove that defense at

trial, summary judgment is appropriate.  *Id*.  Regardless, Plaintiff submits that she has proven

that Defendant's statements about her are false, pointing to the complete absence of any evidence

linking Plaintiff to either the murders or any relationship with one of the murdered students.

Repy ISO Am. MPSJ at 5 (Dkt. 67).

Idaho caselaw does not clearly resolve which party has the burden of proving

falsity/truth.  Is truth a defense that must be pleaded and proved by Defendant, or is falsity an

element of Plaintiff's prima facie case that must be pleaded and proved by Plaintiff?  There is

support for both positions in the caselaw.  For instance, as Plaintiff notes in her briefing, the

Idaho Supreme Court in *Baker* endorsed a defendant's burden in this regard, stating:

> It is axiomatic that truth is a complete defense to a civil action for libel.
> In a slander or libel suit it is not necessary *for the defendant* to prove the
> literal truth of his statement in every detail, rather it is sufficient for a
> complete defense if the substance or gist of the slanderous or libelous
> statement is true.

*Baker*, 587 P.2d at 831 (citations omitted, emphasis added).  Subsequent cases generally align

with this same default reasoning.  *See, e.g., Wiemer v. Rankin*, 790 P.2d 347, 351 (Idaho 1990)

("Ordinarily, the truth of a defamatory statement is a defense that must be proved by the

defendant.").

Yet, an exception to the purported "truth is a defense" rule emerges where the alleged

defamation involves a public official, public figure, or a matter of public concern.  In such cases,

courts have required plaintiffs to plead and prove falsity.  *See Wiemer,* 790 P.2d at 351

("However, even when the person alleging defamation is a private figure, where a newspaper

article containing the alleged defamation discusses a matter of public concern, 'the common

law's rule on falsity – that the defendant must bear the burden of proving truth – must fall to a

**MEMORANDUM DECISION AND ORDER - 14**

constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.'") (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986)); *Clark*, 163 P.3d at 219 (after listing the above-referenced three elements to a defamation claim (*supra*), stating: "As a fourth element, when a publication concerns a public official, public figure, or matters of public concern and there is a media defendant, the plaintiff must also show the falsity of the statements at issue in order to prevail in a defamation suit.") (citing *Philadelphia Newspapers*, 475 U.S. at 775-76).[3]

Further muddying the waters, Idaho Jury Instruction 4.82 requires a plaintiff to prove falsity, even where plaintiff is not a public official or public figure, or the matter is not one of public concern:

> In order to prove a claim of defamation, *the plaintiff has the burden of proving each of the following elements*:
>
> 1.    The defendant communicated information concerning the plaintiff to others; and
>
> 2.    The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and
>
> 3.    *The information was false*; and
>
> 4.    The defendant knew it was false, or reasonably should have known that it was false; and
>
> 5.    The plaintiff suffered actual injury because of the defamation; and
>
> 6.    The amount of damages suffered by the plaintiff.

---

[3] Here, Plaintiff implicitly argues that Defendant has the burden to prove that her statements are true since Plaintiff is not a public figure, Defendant's statements do not concern a matter of public concern, and/or there is no media defendant involved in this action. *Cf.* IDJI 4.82.5 (noting a "public figure" plaintiff's burden to prove "the information was false"); IDJI 4.84.5 (suggesting a plaintiff's burden to prove falsity in cases involving media defendants).

**MEMORANDUM DECISION AND ORDER - 15**

IDJI 4.82 (emphasis added).[4]  Courts in this district have at times adopted this alternate

framework (noting Idaho Jury Instruction 4.82 and a plaintiff's burden to prove falsity) for the

purposes of alleging and proving defamation claims.  *See, e.g.*, *Wisdom v. Centerville Fire*

*District*, 2008 WL 4372009, at *2 (D. Idaho 2008); *Cerda v. Saint Alphonsus Regional Med.*

*Ctr.*, 2007 WL 2384381, at *3 (D. Idaho 2007) (though also acknowledging that "truth is a

complete defense to a claim of defamation"); *see also Paolini v. Albertson's, Inc.*, 2003 WL

27386675, at *10 (D. Idaho 2003) (without referencing Idaho Jury Instruction 4.82, nonetheless

indicating that it is the plaintiff's burden to prove, among other elements, falsity).[5]

The parties stake out their competing positions, but do not grapple with this tension.

Likewise, legal commentary largely comes up short in resolving the issue in any helpful way.

Even so, there is evolving support for the view that it is a private-figure plaintiff's burden to

prove falsity in a defamation action, even in cases – like this one – dealing with a non-media

defendant and a matter that does not involve an issue of public concern:

> The wisest choice in those cases left open by [*Philadelphia*
> *Newspapers, Inc.*] is to place the burden of proof on the plaintiff,
> creating one uniform rule for all defamation cases. . . .
>
> . . . .
>
> More significantly, the "innocent until proven guilty" aphorism should
> actually operate to put the burden on the plaintiff, not the defendant, if
> we intend to operate defamation rules to be at all consistent with the

---

[4]  Practically speaking too, Idaho Jury Instruction 4.80 defines defamation as "the communication of *false* information . . .," such that, if it is a plaintiff's burden to prove that information communicated to the public was defamatory under *Clark* (*supra*), this would logically presume a concurrent burden to show falsity (otherwise the communicated information would not be defamatory).  *See* IDJI 4.80.

[5]  Relevant here, Idaho Jury Instruction 4.88.3 discusses "truth as a defense."  The "NOTE" section to that Instruction states that "[t]he form of the instruction set out above *also presumes that Idaho law requires the plaintiff to bear the burden of proving falsity even in cases involving non-media defendants*."  IDJI 4.88.3 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 16**

> rest of the law of torts.  For the traditional tort rule in every area but
> defamation is that because the plaintiff is invoking the heavy machinery
> of state power against a fellow citizen, the plaintiff bears the burden –
> it is the defendant who is deemed innocent of tortious activity until
> proven guilty.  The only reason defamation has survived in some
> jurisdictions as an exception to this rule is the psychological
> transposition of roles that defamation suits invite: the plaintiff is
> thought of as the person "really on trial," for it is the plaintiff's
> reputation at stake.  But once again, the law of torts routinely puts the
> burden of proof on plaintiffs when interests every bit as precious as
> reputation are being litigated – the common law exception for
> defamation simply cannot stand up to logical scrutiny.

Rodney A. Smolla, *Law of Defamation* § 5.13, "Burden of Proof in Private Figure Cases" (2024) (stating further that "[t]he notion that the burden is on the plaintiff in all cases appears to have gained acceptance, though the matter still has not been much litigated.").  This view highlights the disconnect between the parties' arguments: it aligns with Defendant's position and Idaho Jury Instruction 4.82, while cutting against Plaintiff's position and *Clark*.

Ultimately, however, the Court need not resolve the issue given the record before it.  That is, even if it is Plaintiff's burden to prove falsity, she has demonstrated that there is no genuine issue of material fact that Defendant's statements about her are false.  Under the summary judgment standard, this would shift the burden to Defendant to show otherwise.  *Supra* (citing *Anderson*, 477 U.S. at 248-50, 256).  Thus, under either burden of proof scenario, Defendant must demonstrate the existence of factual disputes pertaining to Plaintiff's defamation claims.  Defendant has no such evidence.

To begin, Plaintiff states in no uncertain terms that (i) Defendant's statements are false; (ii) she was never in a romantic relationship with [K.G.]; (iii) she was not involved in the murders of the four University of Idaho students; (iv) she never met any of the murdered students; (v) she never taught any of the murdered students; (vi) she did not personally know any of the murdered students; and (vii) she was in Portland, Oregon at the time of the murders.

**MEMORANDUM DECISION AND ORDER - 17**

Scofield Decl. at ¶¶ 4-12 (Dkt. 63-24).  Moreover, in response to Plaintiff's subpoena, the University of Idaho confirmed that it has no records of the murdered students ever being enrolled in a class taught by Plaintiff, any investigation into Plaintiff having an inappropriate relationship with [K.G.], or any investigation into Plaintiff's involvement with the murders.  Ex. N to Am. Olson Decl. (Dkt. 63-17); *compare with* Ex. S to Am. Olson Decl. (Dkt. 63-22) (the University of Idaho responding to Defendant's subpoena and stating that it has no records of any existing or deleted communications between Plaintiff and the murdered students, including [K.G.], or Mr. Kohberger).  Finally, there is no indication that Plaintiff is – or has ever been – even remotely considered a suspect in the murders.  Pl.'s Am. SOF at ¶¶ 41-42 (Dkt. 63-2) (citing Ex. D to Am. Olson Decl. (Dkt. 63-7) (December 27, 2022 statement from Moscow Police Department: "At this time in the investigation, detectives do not believe the female associate professor and chair of the history department at the University of Idaho suing a TikTok user for defamation is involved in this crime.")).  To be sure, Mr. Kohberger was arrested and has been charged with the murders.  Pl.'s Am. SOF at ¶ 49 (Dkt. 63-2) (citing Ex. T to Am. Olson Decl. (Dkt. 63-23) (the Indictment against Mr. Kohberger)).

This is powerful evidence at the summary judgment stage.  It not only substantiates Plaintiff's argument that Defendant's statements about her are false, it also highlights the complete lack of any corroborating support for Defendant's statements.  In this way, Plaintiff has sufficiently demonstrated the absence of any genuine issue of material fact relating to the falsity of Defendant's statements about her.  This shifts the burden to Defendant to dispute that claim by setting forth facts showing that there is a genuine issue for trial relating to whether her statements about Plaintiff are actually true.

In that regard, Defendant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute

exists." *Barboza v. New Form, Inc.*, 545 F.3d 702, 709 (9th Cir. 2008).  Except the *only* support

for Defendant's statements about Plaintiff is that Defendant's "spiritual investigation" into the

murders using "intuitive tarot readings" led her to Plaintiff.  Opp. to Am. MPSJ at 3 (Dkt. 65)

("Guillard used her claircognizant abilities to gather all the pieces to the puzzle of what

happened to the four students and why.  She became very passionate and touched by their stories

as told by the intuitive tarot readings and their social media footprint.  An intuitive tarot reading

revealed that Scofield would get away with murder if it wasn't for Guillard.  At the time,

Guillard did not know how that would happen, but she decided to continue to seek the truth

regarding the murder of the four students and to advocate on their behalf.")*; see also* Pl.'s Am.

SOF at ¶¶ 19-22, 31-32 (Dkt. 63-2) (citing RFA Nos. 5, 6, 9-10, 15-22 (Dkt. 63-4) (confirming

that, with discovery closed, Defendant has no other evidence of Plaintiff's involvement in the

murders or any relationship with [K.G.] besides her tarot reading)).  This is not enough to create

a genuine dispute of material fact.

To be admissible, Defendant's lay witness testimony concerning Plaintiff's alleged

conduct surrounding the four students' murders must be rationally based on Defendant's

perception and helpful to the factfinder.  *See* Fed. R. Evid. 701(a) & (b).  An opinion is rationally

based on a witness's perception "where it is based upon personal observation and recollection of

concrete facts."  *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2015); *see also United

States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014) ("Rule 701(a) contains a personal knowledge

requirement . . . .  [W]e have held that the personal knowledge requirement under Rule 602 is the

same as that under Rule 701(a) . . . .  In presenting lay opinions, the personal knowledge

requirement may be met if the witness can demonstrate firsthand knowledge or observation.").

But crucially, there is no legal support for the proposition that tarot card readings are grounded in

any objectively verifiable facts from which Defendant's testimony can ever be said to be

**MEMORANDUM DECISION AND ORDER - 19**

rationally based.  As a result, Defendant's psychic intuition, without more, cannot establish a genuine dispute of material fact to oppose Plaintiff's summary judgment efforts.  *See Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982) (speculative lay witness testimony is insufficient to establish a genuine dispute of material fact); *see also, e.g.*, *Gertsch v. Johnson & Johnson, Fin. Corp.*, 237 B.R. 160, 165 (9th Cir. BAP 1999) ("'[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'") (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).[6]

At bottom, the totality of the evidence reveals that there is no genuine dispute as to any material fact that Defendant defamed Plaintiff.  Therefore, on the issue of liability only, Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. 63) is granted.

## B. Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64)

Filed on the same day, Plaintiff's Amended Motion for Partial Summary Judgment overlaps with her Motion for Leave to Amend Complaint to Add Punitive Damages.  She argues that a punitive damages claim is appropriate here because (i) Defendant's defamatory social media postings represent the bad acts anchoring a punitive damages claim; and (ii) Defendant acted with a bad state of mind given that the social media postings were made without any factual support and continued even after receiving cease-and-desist letters, knowing the Moscow Police Department did not believe Plaintiff was responsible for the murders, and knowing that

---

[6]  Assuming Idaho Jury Instruction 4.82's application, an additional element to Plaintiff's defamation claims exists that the parties do not focus on: whether Defendant knew or reasonably should have known her statements were false.  IDJI 4.82.  That Defendant continued to post videos about Plaintiff even after Mr. Kohberger's arrest, coupled with the complete absence of any evidence validating Defendant's statements about Plaintiff, indicates that, at the very least, Defendant reasonably should have known that those statements were false.  *See infra*.

someone else had been arrested with no evidence of connection to Plaintiff.  Mem. ISO Mot. to Am. at 7 (Dkt. 64-3).  The Court agrees.

Plaintiff has established a reasonable likelihood of proving, by clear and convincing evidence, that Defendant's conduct in accusing Plaintiff of an affair with a student before ordering that student's and three other students' murders was oppressive, fraudulent, malicious, and/or outrageous.  As discussed above, those statements are defamatory as a matter of law and therefore represent a foundational set of bad acts.  *Supra*.  Further, those statements were based only on Defendant's spiritual intuition about the murders; there was never any objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did.  *Id*. And while Defendant eventually took her theory about Plaintiff's involvement in the murders to law enforcement, she did so *only after* ignoring Plaintiff's cease-and-desist letters and going public with her claims on social media.  Ex. Q to Olson Decl. (Dkt. 64-4) (Defendant admitting that she "went to TikTok first"); *see also* Pl.'s Am. SOF at ¶¶ 37-39 (Dkt. 63-2) (citing RFA No. 23-28 (Dkt. 63-4) (Defendant admitting she received and read Plaintiff's cease-and-desist letters and continued posting statements about Plaintiff)).  Critically, Defendant's social media postings continued even after she learned from the Moscow Police Department that Plaintiff was not a suspect in the murders and after Mr. Kohberger had been arrested for and charged with the same. Pl.'s Am. SOF at ¶¶ 41-42 (Dkt. 63-2) (citing RFA Nos. 27-30 (Dkt. 63-4) (Defendant admitting she received and read the Moscow Police Department's press release and continued posting statements about Plaintiff); *see also id*. at ¶¶ 49-50 (citing Ex. T to Am. Olson Decl. (Dkt. 63-23) (the Indictment against Mr. Kohberger which does not name Plaintiff or provide any suggestion that any person other than Mr. Kohberger was involved in or orchestrated the murders)).  These circumstances combine to demonstrate that Defendant's social media postings were primarily

**MEMORANDUM DECISION AND ORDER - 21**

self-serving, motivated by online viral attention, and made with an extremely harmful state of mind given the nature of the statements about Plaintiff.

Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64) is granted.  Whether Defendant actually acted with such a harmful state of mind to support an award of punitive damages is therefore a question for the jury, and not the subject of this Memorandum Decision and Order.

## IV.  <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. 63) is GRANTED on the issue of liability only; and

2.     Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages (Dkt. 64) is GRANTED.

DATED: June 06, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge