UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ASHLEY GUILLARD,<br><br>　　　　Defendant. | Case No. 3:22-cv-00521-REP |

**The Party Filing This Motion**

　　Ashley Guillard,
　　msashleyjt@gmail.com
　　3262 Westheimer Rd. 942
　　Houston, TX 77098
　　Telephone: 337.372.3181

　　Pro Se

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO ALTER OR AMEND**

**JUDGMENT (DKT. 74)**

### I.　　INTRODUCTION

As supported by law Defendant Ashley Guillard (Guillard) respectfully requests the Court to amend the Order (Dkt. 74) and correct the manifest errors of law and fact. Additionally, Guillard establishes beyond dispute that the Court infringed upon her right to judicial impartiality and lacks subject matter jurisdiction. Ergo, rendering the entire litigation void.

### II.　　FACTUAL BACKGROUND

November 13, 2022, four University of Idaho (UIdaho) students (Kaylee Goncalves, Ethan Chapin, Xana Kernodle, and Madison Mogen collectively referred to as the "four students") were tragically murdered in Moscow Idaho. The case garnered nationwide attention on social media and

the news media. Social media users expressed eagerness for the case to be solved. At the time, Guillard used her Tik-Tok social media platform to conduct tarot and oracle card readings on unsolved or mysterious cases; to find and promulgate the truth. At the request of a Tik-Tok user, on November 27, 2022, Guillard, began using spiritual means: intuition, claircognizant abilities, tarot cards, and oracle cards to investigate the cause of the murder of the four students and the future outcome (also referred to as a spiritual investigation or psychic investigation).

During her spiritual investigation she discovered that the students were the victims of a murder plotted by a history teacher who co-planned, hired and executed the murders with a male student. Guillard then conducted tarot card and oracle card readings on the staff listed on the UIdaho's history webpage. The tarot card and oracle card readings on Rebecca Scofield, who was listed as the Chair and Associate Professor of the UIdaho History Department, revealed that she planned the murders and chose between two men to execute the murders. It also revealed that Scofield had a secret affair with one of the victims, Kaylee Goncalves; and her motive to have the students killed was to silence them to keep her secret affair from being exposed. Guillard published the spiritual investigation on her Tik-Tok page and reported the information to the FBI tip-line tipline@ci.moscow.id.us (see Dkt. 66 Exhibit A).

On December 12, 2022, Guillard received two demand letters dated November 8, 2022, and December 8, 2022, by email from the Plaintiff's attorney Wendy Olson. The letters demanded that Guillard "cease and desist false and defamatory statements regarding Professor Rebecca Scofield."  Guillard refused to comply with the demand letter because she contends that the information, she published regarding Rebecca Scofield's role in the murder of the four students, is substantially true. On December 21, 2022, the Plaintiff filed this Complaint for two defamation claims against Defendant Ashley Guillard: one is premised upon alleged false statements regarding

Plaintiff's involvement with the murders themselves, the other is premised upon the alleged false statements regarding Plaintiff's romantic relationship with Kaylee Goncalves (see Dkt. 1).

Defendant, pro-se, did not immediately respond to Plaintiff's Complaint by the January 17, 2023, deadline. As a result, Plaintiff moved for an entry of default against Defendant on January 19, 2023 (Dkt. 4). A Clerk's Entry of Default was entered and mailed to Defendant on January 27, 2023 (Dkt. 5). On February 16, 2023, Defendant filed an answer to the complaint (Dkt. 6) and moved to set aside the entry of default (Dkt. 7). Plaintiff opposed Defendant's motion to set aside the entry of default and filed a Motion for a Default Judgment of $1,863,304 (Dkts. 9 & 10). On April 24, 2023, the parties consented to proceed before a magistrate judge (Dkt. 17). Thereafter, on April 26, 2023, the Court granted Defendant's Motion to Set Aside Entry of Default, denied Plaintiff's Motion for Default Judgment as moot, and ordered Defendant to respond to Plaintiff's Complaint within 21 days (Dkt. 18). On May 16, 2023, Defendant filed her Answer, Affirmative Defenses, and Counterclaims to Complaint. (Dkt. 20).

Defendant affirmatively asserted 11 counterclaims against both Plaintiff and her legal counsel. The defamation counterclaims were premised on the fact that Attorney Wendy Olson and Plaintiff Rebecca Scofield slandered Guillard by issuing a press release and by making several false statements about her to the news media (see Dkt. 20). The defamatory statements falsely stated that Ashley Guillard *is a Tik-Tok user who falsely accused Professor Scofield of the murder of the four University of Idaho students to use the tragedy and the community's pain to gain a following, that Ashley Guillard is a liar who selfishly made false statements about horrific tragedies knowing they are false for a profit, and that Guillard made false statements knowing they are false. Id.*  The defamatory statements about Ashley Guillard were published to over one hundred news media outlets, printed on online newspapers, broadcasted across multiple news

media channels, broadcasted on television networks, and streamed in documentaries: to multi-millions of viewers. *Id.* The remaining counterclaims were for civil rights violations, malicious prosecution and intentional infliction of emotional distress stemming from the filing of this frivolous Complaint. The Defendant contended that the Complaint was filed to silence her, ruin her reputation, prevent anyone from taking her statements about Scofield seriously and ultimately prevent Scofield from being suspected of murder.

On June 6, 2023, Plaintiff moved to dismiss Defendants' counterclaims against her (Dkt. 22). A week later, Plaintiff moved to quash the summonses for her counsel, arguing that their issuance was procedurally improper (Dkt. 25) (arguing counsel were not proper parties under either Rule 13 or 14). Defendant opposed each of these motions (Dkts. 35 & 36). In an August 8, 2023, Memorandum Decision and Order, the Court granted Plaintiff's Motion to Dismiss the Defendant's counterclaims against Plaintiff) and granted Plaintiff's Motion to Quash (Dkt. 49).

On July 13, 2023, Defendant Ashley Guillard issued a subpoena to Meta Platforms, Inc. to produce documents and information regarding the Plaintiff's social media activity with UIdaho students, connection to the four students and alleged co-conspirators (see Dkt. 52 Exhibit A). On July 21, 2023, Meta Platforms, Inc. initially rejected the subpoena (see Exhibit A). On July 27, 2023, Plaintiff filed a Motion to Quash or Modify the subpoena to Meta Platforms, Inc. (Dkt. 48); claiming *it would invade Professor Scofield's privacy by revealing personal information such as pictures of her children and private communications with friends. Id.* On September 13, 2023, Meta Platforms, Inc. informed the Defendant that they were waiting on the adjudication of the Motion to Quash the Subpoena before taking further action (see Exhibit B). Defendant opposed to the Motion to Quash the Subpoena to Meta Platforms, Inc. (Dkt. 52) on September 15, 2023. Instead, she sought a Court Order to order Meta Platforms, Inc. to compel the discovery request.

During the status conference on October 5, 2023 (Dkt. 54) Guillard informed the Court that Meta Platforms, Inc. did not produce the discovery and were waiting for the Courts decision regarding the Motion to Quash the Subpoena (Dkt. 48). On October 6, 2023, the Court granted the Motion to Quash the Summons to Meta Platforms, Inc. (Dkt. 55) and informed Meta Platforms, Inc. not to comply with the subpoena.

On August 21, 2023, Defendant requested that the Court's August 8, 2023 Memorandum Decision and Order be set aside under Rules 60(b)(4) & (6) because (i) this Court does not have subject matter jurisdiction over the action; (ii) this Court does not have personal jurisdiction over her; (iii) venue is improper in Idaho; (iv) the Court lacks judicial impartiality; and (v) the Court does not have subject matter jurisdiction over the *"plausibility of spiritual practices"* (Dkt. 50). According to Defendant, these same reasons similarly warranted the dismissal of Plaintiff's Complaint under Rules 12(b)(1), (2), & (6). Id. The Court denied Defendant's Motion in its entirety on November 13, 2023 (Dkt. 59).

On October 10, 2023, the Plaintiff moved for partial summary judgment (Dkt. 56) based on *Defendant's complete failure to respond to Plaintiff's earlier-served requests for admission. Id.* Defendant responded to the Motion for Partial Summary Judgment stating *she never received the request for admissions* (Dkt. 57). During the status conference on December 7, 2023, the Court gave Defendant Guillard 7 days to respond to the Plaintiffs request for admissions. The Court then allowed for an Amended Motion for Partial Summary Judgment instead (Dkt. 62). Discovery ended December 15, 2023. On January 12, 2024, Plaintiff filed an Amended Motion for Partial Summary Judgment (Dkt. 63) as well as a Motion for Leave to Amend the Complaint to Add Punitive Damages (Dkt. 64). Defendant opposed to both motions (Dkt. 65 and Dkt. 66). A motion hearing was held on April 16, 2024 (Dkt. 73). On June 6, 2024, the Court granted the Plaintiff's

Amended Motion for Partial Summary Judgment (Dkt. 63) and the Plaintiff's a Motion for Leave to Amend the Complaint to Add Punitive Damages (Dkt. 64) (see Dkt. 74).

On June 13, 2024, the Defendant rescinded the consent to proceed before a magistrate judge (Dkt. 75) motioning for the case to be reassigned to a District Judge. The Plaintiff filed an Amended Complaint (Dkt. 76). Now before the Court is a motion for reconsideration of the Memorandum Decision and Order (Dkt. 74) pursuant to Rule 59(e).

### III.   LEGAL STANDARD

Rule 59(e) provides that *a party may move the Court to alter or amend a judgment within 28 days after entry of the judgment.* This rule allows the Court to correct its own errors and spare the parties and appellate courts the burden of unnecessary appeal as it permits *"reconsideration of matters properly encompassed in a decision on the merits."* See also *Kaufmann V. Kijakazi, (9th Cir. 2022)*. Next, the Court lacks subject matter jurisdiction, lacks in judicial impartiality, and the judgment is void. "*But if it act without authority, its judgments and orders are nullities; they are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them; they constitute no justification, and all persons concerned in executing such judgments, or sentences, are considered in law as trespassers."* See *Williamson v. Berry, 49 U.S. 541-544 (1850)*. See also *Klugh v. United States, 620 F. Supp. 892 (D.S.C. 1985)*. Additionally, *Pursuant to Rule 12(h)(3) "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."*

### IV.   ARGUMENT

**A.   The Summary Judgment is in Violation of the First Amendment**

First, the statements Guillard were based on her spiritual beliefs and practices. In *Cantwell v. Connecticut (1940)*, the Court explained that the Religion Clauses of the First Amendment

embrace two concepts, *the freedom to believe and freedom to act*. By ruling that the messages Guillard received and promulgated by way of tarot and oracle card readings are not true the Court takes a stance on the truth or falsity of Guillard's spiritual belief and practice. This is barred by the Establishment Clause which prohibits the government from making *laws "respecting* (or disrespecting) *an establishment of religion or prohibiting the free exercise thereof."* By deeming Guillard liable for defamation due to acting on her spiritual beliefs and practices, the Court regulates punishment on Guillard for acting on her spiritual beliefs. By allowing the Complaint to be amended to add punitive damages, the Court allows for egregious punishment of Guillard for acting on her spiritual beliefs and practices and to prevent its free exercise. The Court specifically stated that *punitive damages are used to deter similar conduct in the future* (see Dkt. 74 pg. 7). The Court rules against the First Amendment by issuing an order allowing for punitive damages to prevent Guillard from freely exercising her spiritual practice in the future.

      Second, the Court stated the statements Guillard made were *"bad acts"* because *"...those statements were based only on Defendant's spiritual intuition about the murders; there was never any objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did (Dkt. 74)."* In other words, the Court determined Guillard's acts based on her spiritual beliefs and practices as *"bad acts"* because she did not have physical evidence to prove that the information gained from her spiritual practice was true. By requiring that the messages from Guillard's spiritual practice be *"objectively proven"* it singles the spiritual practice out from other spiritual or religious practices and causes burdensome treatment. "*The Free Exercise Clause commits government itself to religious tolerance, and upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of it practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures (Church of*

*the Lukumi-Babalu Aye, Inc. v. City of Hialeah 508 U.S. 520 (1993))." Accordingly, "legislators may not devise mechanisms, overt or disguised to persecute or oppress a religion or its practice." Under the constitution, a law that is not neutral, but targets a specific action, and that does not apply generally to all people, but targets a specific group, must be justified by a compelling governmental interest, and narrowly tailored to advance that interest. Id.* The Court requiring that Guillard's spiritual practice in the form of a tarot and oracle reading be *"objectively proven"* or to be punishable by defamation laws and punitive damages, singles out the spiritual practice from all other spiritual practices or lack thereof, that do not require "objective proof" or evidence to be freely exercised. Additionally, the Court made no inference to any *compelling governmental interest* to justify oppression of the spiritual practice and subsequent acts.

The United States Constitution provides specific protections for the exercise of religious freedoms and due process rights regarding fair and impartial legal proceedings. Collectively, the Free Exercise Clause and the Establishment Clause have historically served to ensure that the government is prohibited from unduly restricting the religious practices of those individuals who desire to adhere to and practice one of their own volitions. Guillard cannot be punished for believing in a spiritual practice, its messages, nor can she be punished for acting on that belief.

**B.     The Court Lacks Jurisdiction of the Case of the Murder of the Four Students**

Civil laws are in place to resolve disputes between individual parties, while criminal law deals with offenses that have occurred against the government or state. Federal District Court has limited jurisdiction with legal authority restricted to specific subjects, cases, or persons and can only hear cases that fall both within the scope defined by the Constitution in Article III Section 2 and Congressional statutes (see 28 U.S.C. §1251, §1253, §1331, §1332). A civil case could prompt a criminal investigation if the evidence gathered indicates that a law has been broken and a crime

committed. However, a civil case doesn't turn criminal because they are two separate proceedings. *"Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." Williamson v. Berry, 49 U.S. 495 (1850).* In Dkt. 74 the Court ruled that Scofield proved that she did not order the murder of the four students. However, determination of the innocence or guilt of an alleged murderer in Idaho is within the jurisdiction of the State criminal courts, not Federal District Civil Court. Although at the time of the filing of the Complaint Scofield had not been tried nor investigated for the murder of the four students, the Court cannot use the civil tribunal process to decide Scofield's innocent or guilty of murder. Nor is it in this Courts authority to rule Mr. Kohberger guilty of murder. It is beyond the constituted authority of the Court.

**C.     The Plaintiff Does Not Have a Valid Defamation Claim**

Pursuant to Idaho Jury Instruction 4.82, in order to prove a claim of defamation in Idaho, the plaintiff has the burden of proving each of the following elements: *1. The defendant communicated information concerning the plaintiff to others; and 2. The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and 3. The information was false; and 4. The defendant knew it was false, or reasonably should have known that it was false; and 5. The plaintiff suffered actual injury because of the defamation; and 6. The amount of damages suffered by the plaintiff.* See also *See New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and Time Inc. v. Hill, 385 U.S. 411 (1967).* Plaintiff Scofield fails to prove elements 3, 4, 5, and 6 of the defamation claims.

First, to succeed in a defamation claim, the Plaintiff must prove that the alleged defamatory statements are false by a preponderance of the evidence. *See Gertz v. Robert Welch, Inc., 418 U.S.*

*323 (1974).* Scofield has not proven by a preponderance of evidence that she did not order the murder of the four students; nor has she produced any evidence that she did not have an affair with victim Kaylee Goncalves. Instead, Scofield's evidence supports that she was not investigated by UIdaho; nor was she investigated by the Moscow Police Department as of December 27, 2022. Erroneously going beyond its constituted authority, the Court also considered the arrest and charge of Mr. Kohberger in determining Scofield's innocence of murder (Dkt. 74 pg. 18). However, as of the date of the filing of the Complaint (Dkt. 1), December 21, 2022, there were no arrests for the murder of the four students. Additionally, as of the date of the Order (Dkt. 74), June 6, 2024, Mr. Kohberger is legally presumed innocent, the criminal trial is pending, a gag order is in place, and most of the evidence regarding his criminal case has been sealed. The charge of an initial suspect does not prove guilt, nor does it prove there were no co-conspirators. Additionally, another suspect or co-conspirators may be revealed by evidence during Latah County criminal proceedings which are still ongoing. Scofield has not proven that she did not cause the murder of the four students. The Plaintiff fails to meet this element of a defamation claim.

Second, a valid defamation claim in Idaho requires that *the defendant knew the statements were false, or reasonably should have known that the statements were false. Id.* The Plaintiff has not proven and has no evidence that the Defendant made knowingly false statements. The Defendant maintains that she believes in her claircognizant abilities as well as spiritual practices, such as oracle card readings and tarot readings. Guillard provided evidence that other tarot readings she conducted went on to be objectively true (see Dkt. 65 pgs. 2-3). Guillard also provided evidence that she believes in the accuracy of her tarot and oracle card readings (see Dkt. 65 pg. 13). The Plaintiff fails to meet this element of a defamation claim.

Third, the plaintiff has not proven that she suffered actual injury because of the Defendants statements. Instead, she motioned for punitive damages to overcompensate for the fact that she did not suffer any actual damages from Guillard's statements. The Supreme Court held in *Birdsall v. Coolidge, 93 U.S. 64 (1876)* that the phrases *"compensatory damages" and "actual damages" are identical. The amount awarded is based on the proven harm, loss, or injury suffered by the plaintiff.* The Plaintiff did not lose her job, family, friends, or support. Instead, she gained support and popularity (see Dkt. 50 pg. 6). Even if the statements were false, the Plaintiff does not have a valid defamation claim because she did not suffer any losses. Lastly, damages in any amount suffered by the plaintiff have not been proven by evidence. The Defendant mentioned the Plaintiff's lack of damages during the motion hearing (Dkt. 73). The Court erroneously disregarded the topic as a matter for the jury. However, it is also a fact in determining a valid defamation claim. The plaintiff has no damages and therefore do not meet the criteria established by Idaho defamation laws.

**D.      The Plaintiff is Not Entitled to Judgment as A Matter of Law**

Under Rule 56, to succeed in a motion for summary judgment, a movant must show 1) that there is no genuine dispute as to any material fact, and 2) that the movant is entitled to judgment as a matter of law. First, the Plaintiff is not entitled to judgment as a matter of law because she does not meet the core elements of a defamation claim. Second, the focus of the Court in proving there is no genuine dispute as to any material fact was largely based on the false precept that the Defendant must prove Scofield ordered the murder of the four students and had an affair with one of the victims. This is not a criminal complaint to prove that Scofield is a murderer. Instead, the Plaintiff must prove that Guillard committed defamation against her by a preponderance of evidence. The Plaintiff has also not met the initial burden of proof of the absence of a genuine

dispute required for Summary Judgment. *See Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001); Celotex, 477 U.S. at 323*.

As previously stated, the Plaintiff failed to meet the core elements of a defamation claim. The material facts, affidavits, and evidence do not support that Guillard made false statements about Scofield, that Guillard knew the statements were false and that Scofield suffered damages, and the amount. Guillard provided evidence that she believes in tarot and oracle card readings and that they have proven to be true (see Dkt. 65 pg. 13). Guillard also provided character evidence that she was motivated by purpose (see Dkt. 65 Exhibit A). She also provided evidence that she attempted to help solve the murder by sending a tip to the FBI tip-line (see Dkt. 66 Exhibit A). Additionally, she also provided evidence that Scofield did not suffer reputational harm (see Dkt. 50 Exhibit A). The Court erred in determining that Guillard lacked evidence to defend herself against defamation, because the Court erroneously, unfairly, and unlawfully required the Defendant to prove that Scofield is a murderer with objective evidence. Guillard does not have the prosecutorial authority of the State to investigate, gather evidence and prove murder. Hence, the initial rejection of the subpoena to Meta Platforms, Inc. (Exhibit A). Nor does this Court have jurisdiction to prove Scofield innocent of murder of the four students. The Court made critical errors in the application of the law, and the due process of the Defendant. Thus, the Amended Motion for Partial Summary Judgment and the Motion for Leave to Amend the Complaint to Add Punitive Damages was granted in error. The Plaintiff does not meet any of the elements required under Rule 56. The Order (Dkt. 74) must be reversed entirely.

E.     **The Court Lacks Jurisdiction**

The Court Lacks Jurisdiction because the Plaintiff does not have damages over $75,000. Pursuant to 28 U.S. Code § 1332 "*(a) The district courts shall have original jurisdiction of all civil*

*actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States."* Scofield has not experienced any actual damages that exceeds the sum or value of $75,000. The initial Complaint was made in bad faith seeking damages for ten years of lost wages (see Dkt. 10 pg. 9). The Plaintiff had not lost any wages. She also sought $1,000,000 for pain and suffering. However, at the onset of the Complaint the Plaintiff had not suffered any harm that caused pain and suffering. Nor has she submitted any evidence to prove any harm to her mental health. The recovery of damages the Plaintiff sought were in bad faith because they did not exist. Therefore, jurisdiction was improper from the onset of the Complaint and has not been cured. The Complaint must be dismissed because subject matter jurisdiction is required; it cannot be forfeited or waived. *"If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).*

     **F.**     **The Order Granting Summary Judgment Has False "Statements of Fact"**

First, the order begins by stating that Guillard posted over 100 sensational Tik-Tok (and later You-Tube) videos falsely claiming that Scofield had an affair with one of the victims and ordered the murder of the four students to hide the affair. Guillard did not post 100 Tik-Toks about Scofield. Instead, she posted about nine Tik-Tok videos about Rebecca Scofield with a duration of one-minute or less. Second, the Court made a blatant false statement: *Critically, in response, Defendant does not dispute that she communicated statements about Plaintiff to others or that these statements, if false, are defamatory (See Dkt. 74 pg. 13)*. During the motion hearing on April 16, 2024 (Dkt. 73), the Defendant specifically stated she did not agree that the statements she made about Scofield are defamatory even if the Court found them to be false. This can be proven by reviewing the transcript of the hearing. Judge Raymond E. Patricco either made this critical error on the Court order by mistake or blatantly lied due to his inability to be impartial.

**G.     The Court Violated the Defendant's Right to Tribunal Impartiality**

The Supreme Court has found that the Due Process Clause of the Fifth Amendment imposes on the federal government restrictions that are almost identical to those imposed on the States by the Equal Protection Clause of the Fourteenth Amendment. From the onset of the Complaint, the Court, represented by Chief Magistrate Judge Raymond E. Patricco (Patricco), robbed the Defendant of her right to an impartial tribunal. One of Guillard's affirmative defenses against the defamation alleged in this Complaint is that she was telling the substantial truth. In civil pleadings the standard is the Defendant is presumed not liable until proven liable for damages by a preponderance of evidence. Therefore, the initial presumption is that Guillard was telling the substantial truth until otherwise proven.

Due to his personal lack of belief in Guillard's spiritual practices i.e., claircognizance, intuition, tarot card and oracle card readings, Judge Patricco acted in a way that impeded upon Guillard's right to an impartial tribunal. For example, Judge Patricco stated that Guillard's spiritual practices and beliefs are *"arguably so outrageous as to be clearly baseless and, thus, implausible"* (see Dkt. 49 pg. 9). In Dkt. 74 Patricco deemed Guillard's tarot readings as *"improbable inferences" (see Dkt. 74 pg. 20)*. In Dkt. 74 Patricco deemed Guillard's tarot readings as *"irrational" (Dkt. 74 pgs. 19-20)*. During the hearing (Dkt. 73) Patricco vehemently stated Scofield *"can file a lawsuit for defamation"* again illegally presuming that the statements Guillard made are false. If the Court was indifferent regarding the plausibility of tarot and oracle card readings the Court would not deem Guillard's conduct "wrong" on its face nor would it make negative statements regarding the plausibility of the practice. If the statements were legally presumed to be true, the Defendant's conduct was not in bad faith. Instead, it is morally sound to seek justice on behalf of murder victims. However, due to Patricco's personal bias, the Court

inherently viewed Guillard's acts as wrongful conduct. On Dkt. 74 the Court ruled that Guillard *acted with a bad state of mind* because she did not believe other people's beliefs over her own spiritual practice and beliefs (see Dkt. 74 pgs. 21-22). The Court stated without evidence and with the Defendants evidence proving the contrary that *"These circumstances combine to demonstrate that Defendant's social media postings were primarily self-serving, motivated by online viral attention, and made with an extremely harmful state of mind given the nature of the statements about Plaintiff."* Judge Patricco made that false allegation against Guillard, without evidence, due to his inherent personal bias towards her and her spiritual beliefs.

Patricco's lack of impartiality and inherent bias regarding Guillard's spiritual practices and its plausibility impeded upon his ability to judge the case without bias. Instead, he sympathized with the Plaintiff bending the law to allow her Complaint. For example, he denied the Defendant's motion to dismiss the defamation claims due to qualified immunity and absolute immunity. Yet granted Scofield's dismissal of the Defendant's defamation counterclaims due to qualified immunity, and absolute immunity (see Dkt. 49 pgs. 10-11 Dkt. comparatively to Dkt. 59 pgs. 22-23). Additionally, he dismissed the Defendant's counterclaims due to the same bias.

The United States Constitution provides specific protections for the exercise of religious freedoms and due process rights regarding fair and impartial legal proceedings. The First Amendment protects religious freedom, and the Fifth Amendment Due Process Clause constrains the authority of the federal government. However, there are also occasions when simultaneous application or contextual circumstances create conflict, juxtaposing the two freedoms. In this case, Guillard's Constitutional rights as intended by the First and Fifth Amendment were violated due to Judge Patricco's personal bias. Therefore, the judgments within the Complaint are void. *Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject*

*matter, or of the parties, or acted in a manner inconsistent with due process Williamson v. Berry, 49 U.S. 541-544 (1850) see also Klugh v. United States, 620 F. Supp. 892 (D.S.C. 1985). A void judgment is a nullity from the beginning and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring).*

**H.      The Order Granting Punitive Damages Is Against Idaho Law**

The Court, again lacking in judicial impartiality, erroneously granted the Motion for Leave to Amend the Complaint to Add Punitive Damages (Dkt. 74) ruling that Guillard acted with a bad state of mind because she did not believe other people's beliefs over her own spiritual practice. Stating *"those statements were based only on Defendant's spiritual intuition about the murders; there was never any objective basis to believe that Plaintiff did the things that Defendant publicly and repeatedly claims she did."* Religious and spiritual practices and beliefs are not required to be "objectively based". The Court cannot punish Guillard for believing spiritual messages because it is not based on evidence. Additionally, Idaho Code § 6-1604 requires that *the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious, or outrageous conduct by the party against whom the claim for punitive damages is asserted.* Guillard's, belief in spiritual messages, intuition, claircognizance, tarot card readings and oracle card readings does not equate to oppressive, fraudulent, malicious, or outrageous conduct.

Guillard believes her spiritual practice conveys accurate messages. She genuinely believes that the information she gathers could help solve murders. Under the First Amendment*, there is no such thing as a false idea. However pernicious an opinion may seem… Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). Malice requires that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false. See New York Times Co. v.*

*Sullivan, 376 U.S. 254 (1964).* The Plaintiff has failed to provide clear and convincing evidence that Guillard's conduct was malicious, outrageous, or ill intended. Instead, Guillard proved that she was motivated by purpose (see Dkt. 65 Exhibit A), and that she was trying to help get justice for the four students (see Dkt. 66 Exhibit A). Therefore, the Court cannot rule that the Defendant was malicious, outrageous, or ill intended because she her ideas stem from spiritual means.  The Motion for Leave to Amend the Complaint to add punitive damages must fail.

I.      **The Complaint is Barred by Absolute Privilege and Qualified Privilege**

Law enforcement encourages the reporting of a violent crime. In Texas, failing to report a violent crime or homicide is a misdemeanor. In some states, there are laws against concealing knowledge of a felony crime committed by someone else. Failure to report a serious crime like murder, rape, or arson could potentially lead to criminal charges for obstructing justice or being an accessory after the fact. Citizens may feel a moral obligation to speak up about violent offenses and ensure that justice is served; plagued by guilt or a sense of responsibility for the victim. In those cases, the law encourages the public to speak up. Thousands of social media users gathered to get and share information that would potentially help solve the murder of the four students (see https://www.tiktok.com/search/user?q=Idaho%20four&t=1719119715110)  law enforcement specifically asked the public to speak up stating: *"Investigators believe someone has information that adds context to what occurred on the night of the murders and continue requesting additional pictures, video, and social media content."* Also stating *"Whether you believe it is significant or not, your information might be one of the puzzle pieces that help solve these murders."* (See Exhibit C para. 3). The police requested the public's help with sharing information on social media. *Id.*

Therein, Guillard's statements and acts easily meet the standard of absolute privilege, and the Plaintiff fails to state a defamation claim. *"Idaho has long recognized that defamatory*

*statements made in the course of a judicial proceeding are absolutely privileged, even if made with malicious intent or knowledge of their falsity." Berian v. Berberian, 168 Idaho 394, 483 P.3d 937, 946 (2020). "The term judicial proceeding is not restricted to trials but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi- judicial power." Id. (quoting Richeson v. Kessler, 73 Idaho 548, 551-52, 255 P.2d 707, 709 (1953)).* Additionally, pursuant to *Berian v. Berberian* (2020) *"Accordingly, . . . defamatory statements made by private individuals to law enforcement officials prior to the institution of criminal charges are entitled to a qualified privilege, not an absolute privilege, and this qualified privilege will not apply when the defamatory statements are made with malice." Id., 438 P.3d at 948.* Attempting to help solve the murder of the four students in the interest of justice does not amount to malice.

Pursuant to Idaho law Guillard's statements regarding the murder of the four students are protected by Qualified Privilege for the statements made prior to criminal proceedings that began December 30, 2022. All Guillard's statements regarding the murder of the four students made after December 30, 2022, are protected by Absolute Privilege. Even if the statements Guillard published were false she is still protected by Qualified Privilege because the statements were not made with malice. The Court erred in granting the Amended Motion for Partial Summary Judgment. The entire Complaint thus fails and must be promptly dismissed.

**J.      Tarot Card and Oracle Card Reading Messages Are Not False Statements of Fact**

*A false or fictitious statement or representation is an assertion that is untrue when made or when used, and that is known by the person making it to be untrue. See United States v. Worthington (1987).* Guillard made statements are based on her spiritual beliefs. Therefore, her beliefs are not false statements. The Court deems Guillard's statements derived from intuition, tarot cards and oracle card readings as *"lay witness testimony"* (see Dkt. 75, pg. 19). A lay witness

is someone who provides testimony in court based on their direct perceptions or personal experiences concerning the case. Lay witnesses can be individuals who possess knowledge that could shed light on the case's facts. Lay witness testimony based on perception is an opinion, not a statement of fact. Religious beliefs and acts are based on belief and perception, not false statements of fact. Therefore, beliefs cannot be defamatory.

## V.     CONCLUSION & PRAYER FOR RELIEF

For the reasons stated herein the Order is void, unconstitutional and will not by supported by the Ninth Circuit Court of Appeals. It is in the best interest of the Court, Defendant, Plaintiff, and justice for the Court to correct its mistakes internally pursuant to rule 59(e). Guillard respectfully moves the Court to Grant the 59(e) Motion to Amend the Order (Dkt. 74), reverse the decisions, render the entire litigation and all orders void pursuant to *Williamson v. Berry, 49 U.S. 495 (1850)*, dismiss the case pursuant to *Fed. R. Civ. P. 12(h)(3),* or if necessary, Grant a new trial pursuant to 59(d).

DATED: June 24, 2024.

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2024, I served a copy of the foregoing via CM/ECF on the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: June 24, 2024.

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant