UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

CENTRAL DIVISION


REBECCA SCOFIELD                 )    Case No. 3:22-CV-00521-REP
                                 )
        Plaintiff,               )
                                 )    Zoom
        vs.                      )    April 16, 2024
                                 )    10:05 a.m. to 11:10 a.m.
ASHLEY GUILLARD,                 )
                                 )
        Defendant.               )
                                 )
. . . . . . . . . . . . . . . )

                    VOLUME I OF I
  MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR LEAVE TO
         AMEND COMPLAINT TO ADD PUNITIVE DAMAGES
        BEFORE THE HONORABLE RAYMOND E. PATRICCO
            UNITED STATES MAGISTRATE JUDGE



APPEARANCES:
For the Plaintiff:              MS. WENDY OLSON
                               Stoel Rives, LLP
                               101 S. Capitol Blvd.  Ste. 1900
                               Boise, Idaho 83702


For the Defendant:             MS. ASHLEY GUILLARD
(Pro Se)                       3262 Westheimer Road
                               942
                               Houston, Texas 77098



COURT RECORDER:                TRANSCRIPTION BY:

JACKIE HILDEBRAND              TAMARA A. WEBER, CSR
U.S. District Court           P.O. Box 387
                              Caldwell, Idaho  83606



Proceedings recorded by electronic recording.  Transcript
produced by transcription service.

I N D E X

| | PAGE | LINE |
|---|---|---|
| PLAINTIFF'S ARGUMENT | 5 | 19 |
| | 42 | 18 |
| DEFENDANT'S ARGUMENT | 19 | 22 |
| | 44 | 15 |

```
1                         (Proceedings begin.)

2           CLERK:  The United States District Court for the

3   District of Idaho is now in session.  The Honorable Raymond E.

4   Patricco presiding.

5           Before the Court is plaintiff's motion for partial

6   summary judgment and the motion for leave to amend Complaint.

7   Beginning with counsel for plaintiff, will you please state your

8   appearance?

9           MS. OLSON:  Wendy Olson, Stoel, Rives, on behalf of

10  plaintiff Rebecca Scofield.

11          CLERK:  And defendant, will you please state your

12  appearance?

13          MS. GUILLARD:  Ashley Guillard, pro se.

14          COURT:  All right.  Good morning, Ms. Olson.  Good

15  morning, Ms. Scofield.  Good morning, Ms. Guillard.  I'm sorry

16  for the hiccup on the Zoom call but I think we're good to go

17  now.

18          As Ms. Hildebrand just said, this is the (inaudible)

19  hearing on plaintiff's motion for partial summary judgment --

20  amended motion for partial summary judgment, Docket 63, and

21  plaintiff's motion for leave to amend the Complaint to add

22  punitive damages, Docket 64.

23          I see that there are other persons participating

24  remotely in this proceeding, members of the public, by

25  telephone.  All the members of the public that are participating
```

1    remotely are admonished that there is no audio recording or

2    video recording of this proceeding.  That is against the

3    (inaudible) rules and court rules.  So no one is to record the

4    proceeding in any way.

5         All right.  I think Ms. Olson, Ms. Guillard, my law

6    clerk, Daniel Gordon, who is also on this Zoom call sent out an

7    e-mail with some guidelines about timing for today's argument.

8    It will be about approximately 20 minutes per side.  I'm not

9    going to cut you off if you go over 20, but try to use that as a

10   general time frame for the argument.

11        I'll hear argument on both motions at once per side so,

12   Ms. Olson, it's your initial burden.  I'll hear argument on both

13   motions.  You can break them up as you wish and you can reserve

14   a few minutes if you wish for rebuttal.  And then, Ms. Guillard,

15   you'll go next and again address both motions, please.

16        So with that, Ms. Olson, it's your initial burden and

17   your initial argument.

18        MS. OLSON:  Thank you, Your Honor.  I'd like to reserve

19   four minutes for rebuttal.

20        COURT:  Okay.  Again, I'm not going to hold you too

21   closely to the time limit so four minutes seems like a very

22   timely four minutes for rebuttal.  It might be close to that.

23        Let me just before we start, Ms. Olson, I want to just

24   frame the argument as I would want to hear from you.  There has

25   been in the briefing a bit of disagreement about the elements

1  of, you know, the defamation claims and who -- whose burden it

2  is to establish either falsity or truth of the information

3  that's posted.  You cite the case of <u>Clark vs. Spokesman</u>, the

4  elements of defamation, and those are the three elements that

5  the defendant communicate information concerning the plaintiff

6  to others, that the information was defamatory and that the

7  plaintiff was damaged because of the communication.

8          There is however -- and Ms. Guillard disagrees with

9  that and says that it is plaintiff's burden to establish falsity

10  as well.  There is some support for that in the Idaho Jury

11  Instruction 4.82 as well as some Idaho cases that cite to that

12  jury instruction and that jury instruction adds two additional

13  elements for the plaintiff to establish.  That being that the

14  information was false and that the defendant knew or reasonably

15  should have known that the information was false.

16          So I'll ask you to address that during your argument as

17  you wish but I just wanted to frame that because there is some

18  disagreement between the parties.

19          MS. OLSON:  Thank you, Your Honor.  As the Court just

20  indicated, Professor Scofield had asked this Court to grant

21  partial summary judgment under Federal Rule of Civil Procedure

22  56(a) as to liability on both claims and to reserve damages for

23  trial.  I would say, Your Honor, that the standard for summary

24  judgment is well known to the Court and the portion I would like

25  to focus on here is the parties' relative burdens in what the

1   Court can consider here.

2        So <u>Celotex Corp. versus Catrett</u>, 477 U.S. 317 at 323

3   and 324 and <u>Anderson versus Liberty Lobby, Inc.</u>, at 477 U.S. 242

4   at 248 and -- excuse me, and 252 really set that out most

5   clearly, Your Honor.

6        The party moving for summary judgment has the initial

7   burden of showing the issue of any absence of any genuine issues

8   of material fact.  The burden then shifts to the non-moving

9   party to identify specific facts showing there is a genuine

10  issue of material fact.  And in doing that, the non-moving party

11  must go beyond the pleadings and designate by affidavits,

12  depositions, answers to interrogatories or admissions on file

13  specific facts showing there is a genuine issue for trial.

14       The mere suggestion that facts are in controversy is

15  not sufficient to defeat summary judgment.  Neither conclusory

16  nor speculative testimony and affidavits and moving papers is

17  sufficient.  Instead, the non-moving party has to come forward

18  with admissible evidence to satisfy the burden.

19       And here, Your Honor, I would submit that Professor

20  Scofield has put forth admissible facts showing the absence of

21  any genuine issues of material fact.  Ms. Guillard has utterly

22  failed to identify any specific facts that would put any issue

23  with respect to liability in dispute.

24       With respect to the elements, Your Honor, what we have

25  here is a case of defamation per se.  And rather than the -- I

1  think the jury instruction that you cite to, Your Honor, I would

2  refer the Court to Idaho Pattern Jury Instruction 4.84 which is

3  libel or slander per se which indicates that in a libel per se

4  case, the plaintiff is deemed to have been injured by the

5  defendant's actions.  And the elements of a defamation per se

6  case or a defamation case are that information was communicated

7  concerning the plaintiff to others and that the information was

8  defamatory.

9          And Your Honor, with respect to who has to prove truth

10  or falsity of the statements in this case, those elements I

11  think all come in, Your Honor, when the defendant is a newspaper

12  organization or when the plaintiff is a public figure or

13  speaking about a matter of public concern and neither of those

14  is the case here, Your Honor.  Professor Scofield is not a

15  public figure.  She's a professor of history at the University

16  of Idaho and Ms. Guillard cannot create a matter of public

17  concern by dragging Ms. Scofield into something she was never

18  involved in before.

19          And I would cite the Court to -- and it's not in our

20  briefing but the Hutchinson versus Proxmire.  The Court may

21  remember, you know, Senator Proxmire from Wisconsin and he used

22  to have these Golden Fleece Awards where he would, you know,

23  give them out to entities that he said there was frivolous

24  government spending.  And Professor Hutchinson brought a lawsuit

25  against him alleging defamation and one of the topics was

1  whether or not Professor Hutchinson was this -- was a public

2  figure.  And the Supreme Court said, no, you can't make someone

3  a public figure by dragging them into something that you are

4  making -- you can't make him a matter of public concern if you

5  are dragging them in.  And <u>Hutchinson versus Proxmire</u> is 443

6  U.S. 111 at 135 to 36.

7       And Your Honor, so I understand that Ms. Scofield --

8  excuse me, that Ms. Guillard believes that we have the burden to

9  prove truth and that we have -- excuse me, falsity and that we

10  have the burden to prove that she knowingly made a false

11  statement, but I don't think that's the case here because

12  Professor Scofield is not a public figure and this was not about

13  a matter of public concern.  So I think that --

14       COURT:  Your argument is that Idaho Jury Instruction

15  4.82 and the cases that cite to it that impose those two

16  additional elements of defamation, that being proving the

17  information was false and that the defendant knew or reasonably

18  should have known, those only apply to public figure of a

19  concern cases?

20       MS. OLSON:  Yes, Your Honor.

21       COURT:  All right.

22       MS. OLSON:  Otherwise, I think we cite a case, Your

23  Honor, showing -- for the proposition -- I think it's also in

24  <u>Wiemer vs. Rankin</u>, for the proposition that truth as a defense

25  is something that the defendant has to prove.

1      COURT:  Okay.  And before you continue, there is

2  somebody who's on the line on telephone who is not muted.  If

3  you'll please, everyone who is participating remotely from the

4  public by telephone, mute your microphone, please.  Go ahead,

5  Ms. Olson.

6      MS. OLSON:  Thank you, Your Honor.  So with respect to

7  whether this is a defamation per se case, I don't think that's

8  really been contested by Ms. Guillard.  The statements that Ms.

9  Guillard made showed that -- were that miss -- Professor

10  Scofield committed four murders and a claim of defamation per se

11  is met when the statements impute criminal conduct to an

12  individual.  That's certainly the case here.

13      Statements are also defamatory per se if they ascribe

14  to another conduct, characteristics or a condition that would

15  adversely affect fitness for the proper conduct of lawful

16  business and Ms. Guillard's statements that Professor Scofield

17  was engaged in an affair or relationship with a student would

18  certainly do that.  They're in violation of policies set out by

19  the University of Idaho and certainly relationships between

20  students and professors would adversely affect -- they would

21  show that they would adversely affect Professor Scofield's

22  fitness for the proper conduct of her lawful profession.

23      Your Honor, it's our position that the Court need only

24  look at three categories of evidence here to find that Professor

25  Scofield has met her initial burden of showing there's no

1   genuine issue of material fact.  The first are the TikToks

2   submitted as Exhibits 6 to 16 with my declaration in support of

3   the amended motion for summary judgment.  The second category of

4   evidence is Ms. Guillard's responses to requests for admissions

5   1, 2, 9, 10, 15 through 20, 22, 23, 26 through 30.  And finally,

6   Your Honor, Professor Scofield's declaration which, given the

7   Court's questions, may turn out to be the most significant piece

8   of evidence here, Your Honor.

9           Your Honor, the TikToks were admissible as admissions

10  against interest by a party, Ms. Guillard.  You can look at the

11  exhibits and see that they are -- the videos and see they're

12  her.  There's no objection from her.  And I would refer you

13  specifically to Statement of Fact 13, Exhibit E, a TikTok posted

14  on November 26 where Ms. Guillard stated there were two people

15  who partnered to kill the four University of Idaho students,

16  Rebecca Scofield and a person whose initials are J.D.

17          Statement of Fact 14, Exhibit F, the TikTok posted

18  November 28, Ms. Guillard stated, "I don't care what you all

19  say.  J.D. and Rebecca Scofield killed the four students.

20  Rebecca was the one to initiate the plan and hired J.D.

21          Statement of Fact 16, Exhibit H, the TikTok posted

22  December 1, 2022, Ms. Guillard stated that she was not worried

23  about Rebecca Scofield suing her.  She ordered the execution and

24  the murder of the four students.

25          Statement of Fact 17, Exhibit J, the TikTok posted on

1    December 5 of 2022, Ms. Guillard stated that Rebecca Scofield

2    was being a sugar mama to K.G.; that the pair were on a break

3    and that during that break, Professor Scofield was worried about

4    being caught and that's when she started planning her murder.

5          The RFA responses, Ms. Guillard unequivocally admits

6    that she publicly stated that Rebecca Scofield had an affair

7    with K.G. and that Professor Scofield was involved in the

8    murders of K.G., X.K., M.M. and E.C.

9          In response to RFA-1, she says, "I admit that I stated

10   publicly the results of a tarot card reading.  The tarot card

11   reading revealed that Rebecca Scofield had an affair," and then

12   she says with -- and uses the name K.G.

13         RFA-2.  "I admit that I stated publicly the results of

14   a tarot card reading.  The tarot card reading revealed that

15   Rebecca Scofield was involved with the murders of," and then

16   lists the four students.

17         RFA-27, a response was admitted to the question, "Admit

18   that after you received and read that cease and desist letter

19   dated December 8, 2022, you continued to state publicly that

20   Rebecca Scofield had an affair with K.G."

21         RFA-28, response was admitted to.  "Admit that after

22   you received and read that cease and desist letter dated

23   December 8, 2022, you continued to state publicly that Rebecca

24   Scofield was involved with the murders of," and then listed the

25   four students.  I think there's no doubt, Your Honor, that Ms.

```
1    Guillard made statements that were defamatory in nature.

2            COURT:  Ms. Olson, I have -- just so you know, I have

3    reviewed all of the TikTok exhibits as well as the RFA's.  So

4    I'm happy to get more argument on them but I have reviewed them

5    all.

6            MS. OLSON:  Thank you, Your Honor.  And there are --

7    many of the RFA responses, Your Honor, Ms. Guillard talks about

8    discovery being ongoing or that Professor Scofield has not

9    proven that she did not have an affair with or did not kill the

10   students.  But that I think misunderstands her burden at this

11   point.

12           The time for her to obtain any such evidence has long

13   passed.  The discovery deadline in this case was December the

14   15th and she will obtain no such discovery because the deadline

15   has passed and there is none that exists -- that exists that

16   supports her statement.  The time to put forward that evidence

17   was in her response to Professor Scofield's motion and she did

18   not.

19           And then, Your Honor, with respect to -- those two

20   categories are enough, Your Honor, to show that defamatory

21   statements were made.  They were defamatory statements per se

22   and that covers easily the first two elements and that means

23   damages are presumed and we think that's enough for this Court

24   to grant summary judgment as to liability.

25           If the Court does believe that it is Ms. Scofield's --
```

1  Professor Scofield's burden to prove falsity, then her

2  declaration is sufficient to do that.  It says in her

3  declaration paragraphs 4 to 12, Professor Scofield states Ms.

4  Guillard's statements are false.  "I have never been in a

5  romantic relationship with any student at the University of

6  Idaho.  I have never been in a romantic relationship with K.G.

7  I was not involved in any way with the murders of the four

8  students.  I did not plan the murders.  I never met them.  I

9  never taught them.  I did not personally know them.  I was not

10  in Idaho when the murders occurred.  Rather I was in Portland,

11  Oregon visiting friends with my husband."

12         "We checked out from our hotel in Portland on the

13  morning of November 13, 2022, after the murders had already been

14  committed and we did not arrive back in Idaho until well after

15  they had been discovered and reported to law enforcement."

16         Not a single shred of evidence disputes those

17  statements by Professor Scofield in her declaration.  Ms.

18  Guillard knows that she doesn't have a single shred of evidence

19  that disproves that.  She didn't get any in discovery.  She

20  didn't get -- nothing has come out in the criminal trial as she

21  said would be -- in the criminal proceedings as she said in

22  her -- some of her responses and that also is enough, Your

23  Honor, to show that she absolutely knew her statements were

24  false.  Statements are false if there is no evidence to support

25  them and she knows that.

1           So, Your Honor, if it is Professor Scofield's burden to
2    prove falsity here and that Ms. Guillard made her statements
3    knowing they were false or in reckless disregard of truth or
4    falsity, that evidence is enough, Your Honor, Professor
5    Scofield's declaration and the absence of a single piece of
6    admissible evidence from Ms. Guillard that would any way, shape
7    or form indicate that Professor Scofield had anything to do with
8    these murders or that she ever knew or had an affair with one of
9    the students.
10          And on top of that, Your Honor, it just makes sense,
11   right?  Bryan Kohberger was charged at the end of December of
12   2022.  There have been ongoing proceedings now for a year and
13   almost a half in that case.  There are hearings all the time.
14   There's news reports about it all the time.  Ms. Guillard
15   submitted the probable cause statement from Mr. Kohberger's
16   arrest and there is not a single suggestion or shred of evidence
17   -- and they have a lot of phone evidence.  You can see that from
18   her -- the probable cause affidavit she submitted.  There is
19   nothing to suggest that there was any communication between
20   Bryan Kohberger and anybody else on that night let alone
21   Professor Scofield.
22          So if it is Rebecca Scofield's burden to show falsity,
23   that's done with her declaration.  Nothing controverted that.
24   And if it is her burden to show that there was knowledge of
25   falsity or reckless disregard of the truth or falsity which is

1  the other part of that, Your Honor, under any case law, then we

2  put that forward as well because Ms. Guillard -- there are no

3  facts she's put forward.  She keeps saying I'm going to have

4  some in discovery.  She didn't.  We submitted both of the

5  subpoena requests to the University of Idaho, the one that

6  plaintiff's made and the one that she made, and those show that

7  there is no evidence anyone has in any way suggesting or

8  supporting Ms. Guillard's fantastical theory.

9       And so, Your Honor, we would submit that she has not

10  met her burden of coming forward with any evidence that would

11  put in dispute any issue or triable fact.  No rational fact

12  finder on the facts of this case regardless of who has to prove

13  truth or falsity would find for Ms. Guillard.  So we would ask

14  the Court to enter partial summary judgment as to liability,

15  Your Honor.

16       With respect to Professor Scofield's motion to amend to

17  add punitive damages, Your Honor, from the outset, it has been

18  Professor Scofield's goal, objective just to get Ms. Guillard to

19  stop making the false public statements that Professor Scofield

20  had anything to do with these murders or that she had an affair

21  with a student at the University of Idaho.

22       It appears that the only thing that may work is the

23  opportunity to seek punitive damages.  In late November and on

24  December 8, Professor Scofield sent cease and desist letters to

25  Ms. Guillard saying please stop.  You're defaming Professor

 1   Scofield.  Please stop.  This is a cause of action under Idaho.
 2   If you don't stop, we're going to sue you.  She didn't stop.
 3        There was a public statement by the Moscow Police
 4   Department saying, at this time, we have no evidence or we don't
 5   believe that Professor Scofield had anything to do with it.
 6   They didn't name her by name.  They said the associate history
 7   professor and they referred to Ms. Guillard as the TikTok
 8   artist.
 9        There was the indictment of Bryan Kohberger.  There's
10   this lawsuit.  There are orders from this Court.  There's Ms.
11   Guillard's failure to obtain any evidence or information or fact
12   or anything close to that that would support her theory in this
13   case but she continues to make those false statements.  And in
14   our moving papers on the motion for leave to amend, we cited to
15   four other instances where since the filing of the lawsuit,
16   she's gone on internet sites where -- YouTube interview type
17   things and repeated her fantastical allegations.
18        And we understand the litigation privilege and we're
19   not suggesting that the things that she says in her moving
20   papers can be the basis for a defamation claim.  But when you
21   look at what it will take for her to stop, Your Honor, in the
22   moving papers in front of this Court, she says even more
23   fantastical things and adds more salacious detail where there's
24   absolutely no facts to back them up.
25        Your Honor, miss --

1          COURT:  You mentioned four times since the cease and

2     desist, the Moscow Police Department press release and the

3     indictment of Mr. Kohberger, four times she's made more public

4     allegedly defamatory statements.  I'm sure this is in your

5     briefing but if you have them handy, that would be helpful.

6          MS. OLSON:  Sure, Your Honor.  There's a video posted

7     February 8 of 2023.  That's on page 3 of our brief.  I'd read

8     out the URL but that could take a while.

9          COURT:  That's not -- just identify it for me, please.

10         MS. OLSON:  There's one on June 9 of 2023 and there's

11    one on October 14 of 2023.  And those were all identified on

12    page 3 and then on to page 4 in our motion for leave to amend.

13    And then in our reply brief, we cited one where she went on --

14    it looks like another YouTube video on February 8 of this year.

15    So those are the four times, Your Honor, in addition to the

16    number -- the TikToks were up for a very long time.  I don't

17    think they're up now anymore.  But those -- that's what she's

18    got on the internet and done since this lawsuit was filed and

19    since Mr. Kohberger was arrested.

20         And Your Honor, the purpose of an award of punitive

21    damages is to deter similar conduct from occurring again.  And

22    here, that's exactly I think what Professor Scofield needs to be

23    able to do is to seek this award of punitive damages.  Under

24    Idaho law, Idaho Code 6-1604(2), punitive damages are --

25    amending the Complaint to seek punitive damages are appropriate

1    if there is a reasonable likelihood of proving facts at trial

2    sufficient to support an award of punitive damages.

3          COURT:  That's the standard for the amendment of the

4    Complaint, correct?

5          MS. OLSON:  Correct, correct, Your Honor.  So it's

6    clear and convincing evidence at trial.  But to seek it -- and

7    they're also supposed to at this stage look at the evidence in

8    the light most favorable to the plaintiff so we don't assess the

9    credibility of what the plaintiff is putting forward.

10          But, Your Honor, really the evidence the plaintiff is

11    putting forward is no different than what is before this Court

12    on summary judgment with the absence of those four additional

13    videos that came after.  It's the TikToks themselves.  It's the

14    evidence that there's no facts supporting these fantastical

15    allegations and I think, Your Honor, there was even -- as I look

16    at this, I look at the Court in its order dismissing Ms.

17    Guillard's counterclaims on August 8 of last year said based

18    solely on her claimed ability to psychically define the truth,

19    defendant makes extraordinary allegations about how plaintiff

20    orchestrated the murder of four people to cover up a secret

21    romantic relationship with one of the victims.  These claims are

22    not only conclusory and unverifiable but arguably so outrageous

23    as to be clearly baseless and thus implausible.

24          And I think, Your Honor, it's that conclusion that the

25    Court drew then that is precisely the basis -- would provide the

1    basis for allowing miss -- for Professor Scofield to seek

2    punitive damages here -- leave to amend the Complaint to receive

3    punitive damages.

4         Again, Your Honor, Professor Scofield's goal in this

5    case is to get Ms. Guillard to stop.  There are no facts

6    whatsoever that support Ms. Guillard's fantastical claims.

7         Your Honor, now for -- I'm terrible at math but I think

8    we're at about 18 months since this all started with the first

9    time Ms. Guillard posted a TikTok.  Professor Scofield has been

10   trying for 18 months to get this conduct to stop and it hasn't.

11        At this point, we think that an opportunity to seek

12   punitive damages may be the only thing that will get her to

13   stop.  We ask that the Court grant the motion for leave to

14   amend.  These false statements damage Professor Scofield's

15   career, they damage her personally and they damage her family.

16   They need to stop.  Thank you, Your Honor.

17        COURT:  All right.  Thank you, Ms. Olson.  Ms.

18   Guillard, I will hear your argument.  You have approximately 20

19   minutes.  It's 10:30 now.

20        MS. GUILLARD:  Good morning.

21        COURT:  Good morning.

22        MS. GUILLARD:  First, I'd like to start with the

23   beginning.  So at the onset of this litigation, the plaintiff

24   and her attorneys have perjuriously manipulated the Court and

25   the public to believe a false narrative about me, my intentions

1   and the events that brought us here today.  For that reason, I

2   want to set the record straight first.

3         Since the onset of this case, I've had to argue for the

4   respect and plausibility of my spiritual practices and beliefs

5   so let me explain what they are.  Many theologians and spiritual

6   (inaudible) that God is omnipotent, omniscient, omnipresent, the

7   alpha and omega.  And the Bible, Proverbs 15:3, states that the

8   eyes of the Lord are everywhere, keeping watch on the wicked and

9   the good.  Roman 8 teaches us that the spirit of God lives

10  within human flesh.

11        Practically, in my practice, I convey that to be God is

12  a part of every living organism in the world through our spirits

13  in the past, in the present, in the future and that we are all

14  connected as one through this inner spirit of God.

15        The spiritual journey that I was on intentionally for

16  the past seven years was a journey to align my flesh -- my left

17  brain with my right brain or my flesh with my spirit.  During

18  this journey, I've learned to communicate with my inner spirit.

19  Communicate, I use intuition and tools to communicate with my

20  inner spirit.  I use numerology, Ganesha, tarot cards, oracle

21  card.  I get messages and dreams and so much more.

22        It allows me to give messages in spite of where I am --

23  despite of where I am even if I'm in Houston and Scofield's in

24  Idaho or someone is in New York.  I can get a message in regards

25  to what is happening and occurring in their life in the past,

1  present and future because I'm connected to my inner spirit of

2  God which is omnipotent, omnipresent and omniscient.

3          The messages that I've received have proven time and

4  time again to be accurate.  For years, prior to this case even

5  existing, as exemplified by Docket 57, Exhibit A, which is an

6  intuitive message I received using oracle and tarot cards that

7  predicted the upcoming untimely death of a soldier.  His name

8  was Kenny White.  This form of communication is commonly

9  referred to as clairvoyance, psychic abilities, claircognizance

10  or spiritual downloads.  Many different words people use.

11  Medium is another word that's used.

12          I use my clairvoyant abilities on social media offering

13  my gift to the public.  I built an audience of nearly 100,000

14  followers on social media and they would ask me questions

15  typically about their relationship but I like to use my gift for

16  something better than a relationship reading.

17          January 2021, I began a series called Solving

18  Mysterious Deaths on social media and literature.  I use my

19  psychic abilities to get answers for victims who died under

20  suspicious circumstances and whom I perceived did not get

21  justice.

22          Around November 27, 2022, a random social media user

23  asked me to use my physic abilities to get answers on the murder

24  of the four University of Idaho students who were found dead on

25  November 13, 2022.  I agreed.

1    I conducted an intuitive tarot card and aura card

2    reading on who, what, when, where, why and how the students were

3    murdered.  The initial intuitive message stated that a history

4    teacher was involved with the murders and that she enlisted the

5    help -- sorry.  She enlisted the help of two males also only

6    choosing one to commit the crime.

7    I looked up the history teachers at the University of

8    Idaho and conducted a physic reading on each of them asking what

9    their roles were in the murder of the four students.  Many of

10   the readings of the other professors and associate professors

11   revealed their responses to the murders and their response to

12   this case.  It revealed some disbelief and it also revealed that

13   some of them were hiding fear.

14   However, the plaintiff, Rebecca Scofield's reading

15   revealed her to be a co-conspirator in the murders.  It also

16   revealed that she had an affair with one of the victims, K.G.,

17   Kaylee Goncalves.

18   I then conducted another psychic reading to see if the

19   co-conspirators would be caught.  I did this reading because I

20   wouldn't have to do anything if I felt that law enforcement were

21   going to do what was supposed to be done anyway.  So I didn't

22   have to put myself on the line if I thought that the law

23   enforcement would catch the killers anyway.

24   When I conducted that reading, it revealed that the

25   co-conspirators would not be caught if it was not for me.  I was

1  bewildered because it has nothing to do with me but I decided

2  that I would use my platform to advocate on behalf of the

3  students, use social media to spread the word of who murdered

4  them and that I would send my findings to the FBI tip line.  See

5  Docket 66, Exhibit A, my e-mail to the FBI tip line.

6           COURT:  And Ms. Guillard --

7           MS. GUILLARD:  My goal was to help --

8           COURT:  Ms. Guillard, let me interrupt you there.  I

9  appreciate that background and that gives me some good

10  information and that I think takes us to the TikToks that you

11  sent in this case, is that right, on the chronology?

12           MS. GUILLARD:  Yes, that's right.  A lot more -- there

13  were several TikToks sent, yes.

14           COURT:  So I appreciate the fact -- I understand where

15  we are.  You don't need to go forward from that point unless

16  there's something that I don't know from that point forward.  I

17  think I understand everything from that point forward.

18           MS. GUILLARD:  Okay.

19           COURT:  So the first thing I want to ask you is the

20  plaintiff has said that the comments that you've made in your

21  TikToks from that point forward are defamatory per se meaning

22  you've alleged that Ms. Scofield committed a criminal offense

23  punishable by imprisonment, that being murder or conspiracy to

24  commit murder, and that those allegations are defamatory per se

25  as well as the allegation that she had an affair with a student

```
 1    active at the University of Idaho, K.G., and that it's
 2    defamatory per se because it is sexual misconduct in violation
 3    of University of Idaho policies.
 4           Would you agree that if your statements were untrue --
 5    we're going to get into that in a little bit, but if your
 6    statements were untrue, they are defamatory per se under the
 7    standard that the plaintiff cites?
 8           MS. GUILLARD:  I disagree.
 9           COURT:  Why?
10           MS. GUILLARD:  I disagree because the intent.
11    Defamation is not just about a mere mistake.  Defamation implies
12    that the person did something knowing that it was false and with
13    the intent to cause harm.
14           COURT:  And I'm not getting -- and I understand that,
15    Ms. Guillard.  I'm not getting at that element of the --
16           MS. GUILLARD:  Without that element -- sorry.
17           COURT:  I'm not getting at that element of the
18    plaintiff's claim.  There is just this principle of defamatory
19    per se that if you make any allegations that someone committed a
20    criminal offense that's punishable by imprisonment or any
21    allegation that someone committed sexual misconduct, that those,
22    if untrue, they are defamatory per se because of the type of
23    allegation that is made.  That's all I'm asking you.  Do you
24    agree that those statements are defamatory per se if untrue?
25           MS. GUILLARD:  I disagree for the reason of intent.  I
```

1    believe that the intent has to be there to cause harm.

2          COURT:  Okay.  Then let's get into the questions about

3    truthful and falsity.  And put aside for the moment whose burden

4    it is, whether it's your burden to establish the affirmative

5    defense of truth or whether it's the plaintiff's burden to

6    establish the element of falsity and that you knew or should

7    have known -- reasonably should have known what you were saying

8    was false.

9          Is it fair to say that your evidence that underlies

10   your TikTok comments that Professor Scofield was involved in the

11   murders and was having a romantic relationship with K.G., that

12   is based solely on your tarot card reading and your psychic

13   intuition?

14         MS. GUILLARD:  Aligned with left brain things like I

15   looked on the website.  I didn't -- an investigation into -- I

16   didn't read the affidavits for Kohberger or anything for like --

17   primarily it initially stemmed from a tarot card reading, my

18   spiritual downloads but I also used my investigative techniques

19   as well.

20         COURT:  And those investigative techniques, did they

21   produce any documentary or testimonial evidence?

22         MS. GUILLARD:  This was done outside as a civilian so,

23   no, I did not have physical or the power to get physical

24   evidence --

25         COURT:  All right.

1          MS. GUILLARD:  -- to prove what I was saying.

2          COURT:  So since this case began and through the

3    discovery process, have you pointed to any documents,

4    affidavits, deposition testimony, answers to interrogatories or

5    admissions of the plaintiff that would support your TikTok

6    comments about her?

7          MS. GUILLARD:  She has not admitted to it.  No.

8          COURT:  All right.  Did you make a request for

9    admission to her, a formal request --

10          MS. GUILLARD:  No.  I didn't think it would be

11    productive.

12          COURT:  Okay.  And you understand that discovery in the

13    case has closed?

14          MS. GUILLARD:  Yes.

15          COURT:  That was on December 15.  So a number of your

16    answers to requests for admissions reference the fact that

17    ongoing discovery would answer those questions.  Do you

18    understand that there is no more discovery in the case?

19          MS. GUILLARD:  I do understand.  I made that statement

20    in December of 2023 when they were filing all of these motions

21    that I had to respond to in (inaudible) compliance so instead of

22    focusing on discovery and focusing on responding to their

23    motions, yes.  (Inaudible.)

24          COURT:  I'm not being critical of you.  I understand

25    you're not a lawyer and a lot was going on in this case.  I'm

1    just trying to get the lay of the land here though to make sure

2    that you understand that the discovery has closed so there are

3    no more opportunities to get admissions or documents or subpoena

4    parties for information.  Do you understand that?

5          MS. GUILLARD:  Not without the Court's leave.  I do

6    understand that.

7          COURT:  All right.  So then going back then to the

8    tarot card readings and your life research and your clairvoyance

9    which I believe I understand is the basis for your TikTok

10   statements about Professor Scofield, in order for you -- if the

11   burden shifts back to you to establish a genuine dispute of

12   material fact -- and I'm not saying it has or it hasn't but if

13   it does, that has to be supported by specific evidence and that

14   specific evidence must be admissible in a trial -- in a court

15   proceeding.

16         And so as I look at your tarot card readings and your

17   spiritual intuition and your research, the only box that I can

18   put that into that it could possibly be admissible at trial is

19   what is called lay witness opinion testimony.  That's where a

20   lay witness, not an expert witness, but a common person can

21   testify as to their opinion and maybe your opinion would be that

22   Professor Scofield was involved in the murders.  Professor

23   Scofield was involved in a romantic relationship with K.G.

24         But the legal requirement for that testimony under

25   Federal Rule of Evidence 701 is that it must be rationally based

1  on the witness' perception and helpful to the jury in

2  determining a fact and issue.  And I know this is legalese to

3  you and you're not a lawyer but as the courts have looked at

4  what it means to be rationally based on the witness' perception,

5  it must be based on firsthand knowledge or observation and be

6  objectively verifiable.

7          Again, I know you're in a difficult position because

8  you're not a lawyer and certainly you haven't probably thought

9  of this rule of evidence but --

10          MS. GUILLARD:  Can I say something?

11          COURT:  Go ahead.

12          MS. GUILLARD:  You're saying that Rule 701 says it has

13  to be rational based on my perception.  So based on my

14  perception, if I've used these same techniques to get answers

15  that were otherwise proven to be true, it would be rational for

16  me to believe that this is also true because I'm using the same

17  perception, clairvoyance and techniques.  Additionally, you said

18  that it has to be objectionable meaning I could bring in

19  evidence in the future to prove the same --

20          COURT:  No.  It means -- I said it had to be

21  objectively verifiable.

22          MS. GUILLARD:  Objectively verifiable.  Does it have to

23  be objectively verified or verifiable meaning that it could

24  happen in the future?

25          COURT:  It has to be objectively verifiable by some

1    means.

2         MS. GUILLARD:  Okay.  So if Rebecca Scofield is

3    investigated based on my layman testimony or statements, that's

4    objectively verifiable.

5         COURT:  Here's what I'm getting at, Ms. Guillard.  I

6    know of no case, no court that holds that tarot card readings

7    and spiritual intuition are rationally based on a witness'

8    perception and are admissible under Federal Rule of Evidence

9    701.

10        MS. GUILLARD:  Right.  But like I've said before in

11   Docket I want to say 65, law enforcement officers use

12   clairvoyance or psychics to get information.  That information

13   has not been used to put somebody in jail.  I've never said use

14   this information to put her in jail.

15        COURT:  That's different.

16        MS. GUILLARD:  That information is investigated.  I

17   don't have the power for them to investigate anybody.  They can

18   choose to investigate or not investigate anyone.  The psychic's

19   role is to provide information.

20        COURT:  Ms. Guillard, let me interrupt you, please.

21   There may be valid uses to a spiritual intuition and tarot card

22   readings.  What your burden here though is in defending this

23   motion is that you have to establish that there is a genuine

24   dispute of material fact with specific evidence that could be

25   admissible at a trial.  That is your standard here today, right?

1  And what I'm telling you is that I know of no case where someone

2  is permitted to testify as a lay witness and give their opinion

3  that is based on tarot card readings, spiritual intuition,

4  anything of that nature, and you've not provided me with any

5  case law to the contrary nor do I think it exists.  So

6  whereas --

7          MS. GUILLARD:  That wasn't even my argument.  You

8  didn't even allow me to finish.

9          COURT:  Okay.  I'll let you finish in a second.  I just

10  want you to answer my question though.

11          MS. GUILLARD:  Okay.

12          COURT:  My question is at this stage, to defend against

13  a motion for summary judgment, you have to come forth with

14  specific evidence that raises a genuine dispute of material

15  fact.  That evidence has to be admissible at trial meaning

16  something that comes into evidence in court and I have found no

17  such ability under Federal Rule of Evidence 701 which is from my

18  perception the only way it would remotely come into evidence in

19  a court proceeding, that tarot card readings and spiritual

20  intuition could be the basis for such opinion testimony.  So

21  without --

22          MS. GUILLARD:  I never said that.

23          COURT:  All right.  Then tell me what it is you think

24  are the specific facts, the specific evidence you can point to

25  that's admissible in court that would bear your burden today.

1          MS. GUILLARD:  That's the problem.  Everybody -- the

2    plaintiff and her attorneys are trying to shift the evidence

3    requirements on me.  That's their requirement.  The Supreme

4    Court, Gertz vs. Welch, 1974, says that the (inaudible) of the

5    defense of truth (inaudible) put the burden of proving it on the

6    defendant does not mean that (inaudible) will be deterred.  The

7    First Amendment requires that we protect (inaudible) protect

8    speech that matters.  Therefore, the legal presumption as

9    required by the First Amendment is that my ideas are not false.

10   So my argument is that --

11         COURT:  Ms. Guillard.

12         MS. GUILLARD:  -- that the legal presumption is that

13   what I'm saying is true and it's their job to present evidence

14   that my ideas are false.  The only thing they presented is a

15   declaration.

16         COURT:  Ms. Guillard.

17         MS. GUILLARD:  Uh-huh.

18         COURT:  I'm asking you, I'm saying if.  If I decide

19   that the plaintiff bore her initial burden of demonstrating that

20   there is no genuine dispute as to any material fact based upon

21   what she has put forward, her declaration, her affidavit, the

22   answers to requests for admissions, all of the other exhibits

23   that she's put forward, if I say that she has bore her initial

24   burden of demonstrating that there is no genuine dispute as to

25   any material fact, then the burden shifts to you as the non-

1    moving party to establish that there is a genuine issue of

2    disputed fact and that has to be based on specific facts and on

3    evidence that is admissible at trial.  That's what I'm asking

4    you to identify for me and --

5            MS. GUILLARD:  It's not required of me.  You're asking

6    me to identify evidence that is not required of me.  I don't

7    have evidence that's not required of me.

8            COURT:  All right.  Ms. Guillard, I'm saying that you

9    have to identify evidence -- specific evidence that raises a

10   genuine issue, genuine dispute of material fact if the burden is

11   shifted back to you.  And I'm saying if that's the case --

12           MS. GUILLARD:  Also, I have to -- we're talking about

13   my false statements, whether or not they're true or false in

14   order to be defamatory.  And a material fact is that -- the

15   dispute is that I'm telling the truth and they're saying that

16   I'm not telling the truth.  But the (inaudible) that I had noble

17   intent.  They're saying I had ill intent.  Are those not

18   material facts or issues of material fact that have to be

19   proven?  I feel like I provided evidence that supports my

20   intent.  I've also provided evidence --

21           COURT:  What is your evidence -- what is your evidence,

22   focusing on the word "evidence" --

23           MS. GUILLARD:  My evidence that my intent --

24           COURT:  Please, Ms. Guillard, let me finish my

25   question.  What is your evidence, focusing on the word

1  "evidence," that Professor Scofield was in any way involved in

2  these murders or in any way was in a romantic relationship with

3  K.G.?  What is the evidence?

4          MS. GUILLARD:  If you're asking me for evidence of a

5  crime, that makes -- that just makes no sense to me at this

6  point.  I'm not the FBI.  I'm not the police.  They have chosen

7  not to investigate her.  I don't have evidence of that.  I don't

8  even have the legal authority to get evidence which is why

9  (inaudible) refused to provide it to me.  So you're asking me

10  for evidence that I don't have legal authority to get.

11          COURT:  What is the evidence that supports your TikTok

12  public statements about Ms. Scofield?

13          MS. GUILLARD:  I don't need evidence to support my

14  statements.  The law supports my statements.  The law allows me

15  to say what I believe to be true.  The law allows my ideas to be

16  taken as true until proven false.  They have to prove my ideas

17  to be false.  They need the evidence.  They have the burden of

18  proof as the plaintiff.  I don't have the burden of proof to

19  prove that my statements aren't true.  That's not what the

20  Supreme Court said.

21          COURT:  Where we're at today, Ms. Guillard, and then

22  I'll let you continue your argument, is we're at a motion for

23  summary judgment stage.

24          MS. GUILLARD:  Even if at the motion for summary

25  judgment stage --

```
 1            COURT:  Please let me finish.

 2            MS. GUILLARD:  Sorry.  Okay.

 3            COURT:  At the motion for summary judgment stage, Ms.

 4    Scofield has moved for summary judgment after discovery in this

 5    case has been completed and in her moving papers, exhibits and

 6    all, she has claimed that that establishes that there is no

 7    genuine dispute as to material fact as it relates to her two

 8    defamation claims and that she's entitled to a judgment in this

 9    case as a matter of law.

10            MS. GUILLARD:  And I disagree.

11            COURT:  I understand you may disagree but you have

12    to --

13            MS. GUILLARD:  She's not entitled to judgment as a

14    matter of law.  What if I --

15            COURT:  Ms. Guillard, please, please, let me finish and

16    then I will give you your chance to talk.

17            MS. GUILLARD:  Okay.

18            COURT:  That is what she has set forth in her motion,

19    right?  If I decide that she has met her initial burden of

20    demonstrating by that motion and the exhibits no genuine dispute

21    as to any material fact for her two claims, a legal burden then

22    shifts to you as the non-moving party to identify facts to show

23    a genuine issue for trial to defeat that motion.  I can't just

24    accept your word.  I need facts and facts that are admissible as

25    evidence in a subsequent court proceeding.
```

1     You have not yet provided me with facts.  You have

2  provided me with a tarot card reading and spiritual intuition

3  that you claim support your statements.  But these are not

4  admissible facts at trial under Federal Rule of Evidence 701.

5     So I am asking you and you can make whatever statement

6  you wish at this point but I'm asking you for -- to identify

7  specific facts and evidence that would bear your burden if it

8  shifts to you.  Now you may respond.

9     MS. GUILLARD:  Okay.  You say that my tarot card

10  readings are not sufficient enough to be consider a material

11  fact because it's considered -- it's more related to an opinion

12  of a non-expert.  That further proves that plaintiff has not met

13  her burden not only for a bare minimum defamation case, but also

14  for both of these which states that she has to be entitled to a

15  judgment as a matter of law.  As a matter of law, for anything

16  to be -- for a statement to be defamatory has to be a statement

17  of fact.  Not -- opinions cannot be defamatory.

18     Additionally, in order for her to be entitled to a

19  judgment as a matter of law, it requires her to meet the bare

20  minimum elements of the claim and also she has to be able to

21  prove with a preponderance of evidence which is the law that

22  what I've said is false.  She has not provided any evidence that

23  what I said is false other than her declaration which is at this

24  point he said/she said or hearsay.

25     COURT:  No, it's undisputed right now because you have

1  not provided a contrary affidavit and you have not provided

2  responses to interrogatories and you have not provided documents

3  and you have not provided any evidence to rebut what it is she

4  said in her sworn affidavit.

5          MS. GUILLARD:  I disagree.

6          COURT:  Okay.

7          MS. GUILLARD:  What I'm saying is the initial or -- the

8  law requires that what I said is true.  If what I'm saying is

9  true, that she ordered the murder of the four students and she

10  had an affair with K.G., a declaration from a person accused of

11  murder is not sufficient enough for this to be -- for her to

12  prove that the statements that I made were false.  So from what

13  you're saying is if a person commits a crime and they are sued

14  for it -- a crime of murder, all they have to do is write a

15  declaration and say I didn't do it and that would recuse them of

16  responsibility.  I disagree that that's what the law says.

17          COURT:  That's not what I said the law says, Ms.

18  Guillard.

19          MS. GUILLARD:  What the law says --

20          COURT:  I'm saying that --

21          MS. GUILLARD:  The law says that my statements and my

22  ideas are true and that they have to be proven with a

23  preponderance of evidence.  A declaration, in my opinion, is not

24  a preponderance of evidence.  Maybe in your opinion it's a

25  preponderance but in my opinion and probably the Supreme Court's

opinion, a declaration is not preponderance of evidence proving
that the statements that I made about Scofield are false.  But
this definition of defamation requires that I make a false
statement knowing that they are false.  She has not proven that
my intent was to make false statements knowing they are false.

COURT:  Let's talk about for a second, Ms. Guillard --

MS. GUILLARD:  I'm trying to relate this to judgment as
a matter of law.  From what I'm reading, a judgment as a matter
of law means that she's met the bare minimum requirements for
defamation and bare minimum requirements of the law and the law
requires the bare minimum for her to trump what I'm saying as a
preponderance of evidence and to prove that what I said was
false and to prove that I said it with ill intent.  She has not
proven any of that.

In fact, I provided that evidence my intent was noble
and that my intent was to help get justice for the four
students.  So she has not met the bare minimum requirements and
in fact, this case shouldn't have even gone as far in the first
place especially considering you're saying that my tarot
readings is not even a statement of fact, that my tarot readings
is a mere opinion.  Mere opinions are not sued for defamation.
Statements of facts are.

COURT:  Ms. Guillard, you're misunderstanding what I'm
saying.  I'm not saying I'm trying to demean your tarot card
readings in any way.  I'm just trying to say that the only

1  vehicle for them to be admitted in evidence in a trial is likely

2  as lay opinion testimony.  Otherwise they are hearsay.  They

3  don't come into evidence in trial which is --

4          MS. GUILLARD:  I never said that.

5          COURT:  Okay.

6          MS. GUILLARD:  I agree.  It's an opinion and, like I

7  said before, I've never -- I never said put this person in jail

8  for my opinion.  I only said the tip on the tip line and I only

9  wanted her to be investigated like any tip that I sent to the

10  FBI or the police department.  They investigate them.  It is

11  not -- I'm -- I feel like this whole case continued because they

12  chose not to investigate the tips.  That's their responsibility

13  and that's their choice.  Why am I --

14          COURT:  Ms. Guillard -- Ms. Guillard, do you understand

15  that if you made an anonymous tip to the FBI and didn't post it

16  on your TikTok, there would be no basis for a defamation suit?

17          MS. GUILLARD:  But I have the right to do so.  I have

18  the right --

19          COURT:  But the --

20          MS. GUILLARD:  -- to post my tip (inaudible.)  I have

21  the right to tell everybody what I believe to be true and if I

22  believe it's going to bring justice for the four students,

23  that's what I'm going to do.  I have the right to do so.

24          COURT:  Ms. Guillard, the plaintiff has the right to

25  sue you for defamation if --

1          MS. GUILLARD:  But it's not defamation.  It's an

2  opinion.

3          COURT:  -- you say things about her that aren't true.

4          MS. GUILLARD:  But she has not proven it to not be

5  true.

6          COURT:  All right.  Let me have you address her motion

7  for leave to amend the Complaint to add punitive damages.  What

8  she is saying -- and I'll have you address this after I tee it

9  up for you -- is that you received her December 8, 2022, cease

10  and desist letter.  On December 27 of 2022, the Moscow Police

11  issued a press release referencing you and Ms. Scofield, not by

12  name but by status, and stated that the professor was not

13  involved in the case.

14          Prior to that, there was a probable cause statement in

15  the indictment of Mr. Kohberger.  After that, you received that

16  letter or became aware of the Moscow Police Department press

17  release and the indictment of Mr. Kohberger.  You continued to

18  state publically at least four times that Ms. Scofield had an

19  affair with K.G. and was involved in the murders.  Can you

20  please address why that is not outrageous conduct that would be

21  a basis for adding punitive damages to this Complaint?

22          MS. GUILLARD:  Okay.  So I was getting to that before I

23  was -- before you had your questions.  When I received the

24  demand letters from the plaintiff's attorney to cease and

25  desist, I did not comply because I believe that my findings that

1    Scofield was responsible for the murders and the affair, I

2    believe it to be true and I believe that was well within my

3    First Amendment rights to continue posting what I believed to be

4    true.

5          I also believe that the students do not get justice if

6    I do not advocate on their behalf.  So that's where I continue

7    to post in order to get the attention of investigators, in order

8    to get somebody's attention to have her investigated for the

9    crime.  Had she been investigated for the crime and they found

10   nothing, I would have apologized.  I would have stopped doing

11   tarot readings but that didn't happen.  Nobody investigated her.

12   The only thing I got was her saying to stop.  I've had no

13   inclination to stop.

14         COURT:  Didn't you get the Moscow Police to respond and

15   didn't they respond that she was not involved in this case

16   meaning they did some investigation and made that conclusion?

17         MS. GUILLARD:  No.  They never said they investigated

18   her.  They didn't even mention her by name.  They said they did

19   not believe.  They used the word "believe."  They didn't say she

20   was cleared.  They used the word "believe."  I did not -- they

21   did not believe she was to be responsible for the murders.

22         So to me, I just took that as they didn't believe me or

23   they didn't believe tarot readings.  I didn't take that as she

24   was investigated because she wasn't.  Nobody has provided

25   evidence that she was investigated by any law enforcement agency

1    nor has she been investigated by the University of Idaho.

2         Despite -- so when I received the cease and desist

3    letters, from my perspective, I'm just receiving a letter from

4    somebody who I believe to be a murderer to stop telling people

5    that she's a murderer so that she does not get caught.  I didn't

6    have to listen to that and I chose not to.

7         I continued to post those other videos that Ms. Olson

8    referred to because, again, I was still trying to get justice

9    from what I believe was justice for the students and I

10   (inaudible) on my YouTube because I believe these are the

11   incidents that led to the murder (inaudible) that somebody will

12   see one day and do some type of investigation.

13        So it was not ill intent.  It wasn't malice as required

14   by this Idaho statute, Idaho 1604.  I didn't do it for malicious

15   intent.  Maybe she's not happy with me doing it because I'm

16   accusing her and maybe she did it and she doesn't want to be

17   caught.  It wasn't malice.  It wasn't oppressive.  It wasn't

18   outrageous conduct unless you believe that somebody's trying to

19   get justice for four students is outrageous conduct.  I don't

20   believe that to be outrageous conduct.  I believe it was done to

21   help.  So I continued to post videos and I ignored a cease and

22   desist.  This entire case --

23             COURT:  (Inaudible.)

24             MS. GUILLARD:  I think what the motion for -- the

25   plaintiff's motion for leave to amend to add punitive damages is

1    more so aligned with the false narrative that they painted that

2    I intentionally made up false stories, that I published false

3    statements knowing they were false, that I did that for

4    pecuniary gain and the way that portrayed -- that they portrayed

5    me in a court and on social media is more in line with that

6    narrative but the narrative is false.

7          The truth is I tried to get justice and that's just

8    not -- for the sake of justice which is required by Rule 15 that

9    the Court should give leave when (inaudible) requires.  Justice

10   is not adding punitive damages to this Complaint because I tried

11   very hard to get justice for what I believe for the students.

12   But whether or not it's true or not, I still believe it to be

13   true.  It has not been proven to be false but whether it's true

14   or not, it doesn't matter (inaudible) this motion because the

15   intent wasn't ill.  It wasn't ill intent.

16         COURT:  All right.  Thank you, Ms. Guillard.  Ms.

17   Olson, your rebuttal briefly?

18         MS. OLSON:  Thank you, Your Honor.  Really just three

19   things.

20         First, Your Honor, with respect to who bears the burden

21   on the issue of whether truth is a defense or we have to prove

22   falsity, I refer the Court to I think it's Wiemer, W-i-e-m-e-r,

23   versus Rankin, 117 Idaho 566 at 570.  It quotes the other case

24   we cited, Baker versus Burlington Northern, Inc., and it does

25   stand for that proposition that, ordinarily, the truth of the

1    defamatory statement is a defense that must be proved by the

2    defendant but then it addresses where the plaintiff is a public

3    figure or has addressed a matter of public concern.  And we

4    would submit that Professor Scofield is not a public figure and

5    that based on <u>Hutchinson versus Proxmire</u>, you can't make someone

6    part of a public -- a matter of public concern by dragging them

7    into it when they were weren't there to begin with and that's

8    certainly the case with Professor Scofield.

9         With respect to Ms. Guillard's statements that, you

10    know, she doesn't have any ability to put anyone in jail and she

11    didn't want to put anyone in jail, I would refer the Court to

12    what is Exhibit I to my declaration in support of our motion.

13    It's at Statement of Fact No. 17.  In a TikTok posted December

14    2, 2022, Ms. Guillard state, "Rebecca Scofield is going to

15    prison whether you like it or not for killing the four

16    students."

17         So that was Ms. Guillard's position.  That I think

18    underscores why -- these are certainly not just opinions.  These

19    are false statements of fact that are made in a manner that is

20    outrageous and does not -- they are bad acts and a bad state of

21    mind.

22         And third, Your Honor, with respect to the motion for

23    leave to amend to add punitive damages, it's not just the cease

24    and desist letters and the statement by the Moscow Police

25    Department.  It's the indictment of Mr. Kohberger with no

1  indication whatsoever, including from a probable cause

2  affidavit, that there was anybody else involved.  There's a

3  lawsuit in this case and the orders from this Court all of which

4  make clear to Ms. Guillard that there is no fact or substance to

5  the statements that she's making that are damaging Professor

6  Scofield's reputation, damaging Professor Scofield and damaging

7  her family and that's why we would ask this Court to grant our

8  motion for partial summary judgment and grant our motion for

9  leave to amend the Complaint to add punitive damages.  Thank

10 you, Your Honor.

11         COURT:  All right.  Thank you, Ms. Olson.

12         MS. GUILLARD:  Can I respond to that where it's

13 necessary?

14         COURT:  Go ahead.

15         MS. GUILLARD:  She mentioned a tarot reading -- or she

16 mentioned a video that I said she was going to prison whether

17 you like it.  That was a tarot reading prediction.  She wasn't

18 arrested at the time nor was she even investigated.  That was

19 the result of a tarot reading that said that in the future, and

20 they said they would take their time doing so, that she would be

21 arrested.  So that wasn't me just saying anything.  That was a

22 prediction.

23         Also, she had not provided any evidence -- Scofield nor

24 her attorneys have provided any evidence that she has any type

25 of damages to her reputation, any damages to her career or her

1  family.  Those are false statements.  Her reputation has

2  increased.  She has increased the (inaudible).  That's why she

3  was able to make so much money and also --

4        COURT:  Ms. Guillard, we're not talking about damages

5  at this point.

6        MS. GUILLARD:  She mentioned damages so I responded.

7        COURT:  I understand.  That's not for my consideration

8  because she's not here for summary judgment on damages.

9        MS. GUILLARD:  Okay.  Yes, sir.

10        COURT:  All right.  Anything else, Ms. Guillard?

11        MS. GUILLARD:  No, sir.

12        COURT:  Okay.  All right.  Well, thank you both, Ms.

13  Olson and Ms. Guillard, for your arguments today.  They were

14  helpful and I appreciate everyone being prepared to argue.

15  We'll try to get it an order out in the near future and, again,

16  I appreciate everyone participating today.  With that --

17        MS. GUILLARD:  Thank you.

18        COURT:  Thank you.

19        MS. OLSON:  Thank you, Your Honor.

20                    (Proceedings concluded.)

21

22

23

24

25

I, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


   /s/ Tamara A. Weber                     6/28/24

Signature of Approved Transcriber          Date


   Tamara A. Weber

Typed or Printed Name