UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>    Plaintiff,<br><br>vs.<br><br>ASHLEY GUILLARD,<br><br>    Defendant. | Case No.: 3:22-cv-00521-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT**<br><br>**(Dkt. 77)** |

Pending before the Court is Defendant's Motion to Alter or Amend Judgment (Dkt. 77). Because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion will be decided on the record and without oral argument. As discussed more fully below, the Motion is denied.

## I. BACKGROUND

This case arises out of the tragic murder of four University of Idaho students in November 2022. Plaintiff Rebecca Scofield is a professor at the University of Idaho. She alleges that, despite never meeting any of these students or being involved with their murders in any way, Defendant Ashley Guillard posted numerous TikTok (and later YouTube) videos falsely claiming that Plaintiff (i) had an extramarital, same-sex, romantic affair with one of the victims; and then (ii) ordered the four murders to prevent the affair from coming to light. Plaintiff sent cease-and-desist letters to Defendant in the following days and weeks. When Defendant did not stop, Plaintiff initiated this action. (Dkt. 1). Plaintiff asserts two defamation claims against Defendant: one is premised upon the false statements regarding Plaintiff's involvement with the murders themselves, the other is premised upon the false statements regarding Plaintiff's romantic relationship with one of the murdered students. *Id*.

MEMORANDUM DECISION AND ORDER - 1

On June 6, 2024, the Court granted Plaintiff's Amended Motion for Partial Summary Judgment (the "MDO"). *See* 6/6/24 MDO at 8-20 (Dkt. 74). On the issue of liability for Plaintiff's two defamation claims against Defendant, the Court concluded that "the totality of the evidence reveals that there is no genuine dispute as to any material fact that Defendant defamed Plaintiff." *Id*. at 20. Also on June 6, 2024, the Court granted Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages. *Id*. at 20-22. In permitting a claim for punitive damages, the Court concluded that Plaintiff "established a reasonable likelihood of proving, by clear and convincing evidence, that Defendant's conduct in accusing Plaintiff of an affair with a student before ordering that student's and three other students' murders was oppressive, fraudulent, malicious, and/or outrageous." *Id*. at 21. The extent of Plaintiff's damages, if any, remains an issue for trial.

Now, via the pending Motion, Defendant moves for "reconsideration, alteration, or amendment" of the Court's June 6, 2024 MDO pursuant to Rule 59(e). *See generally* Mot. to Alter or Am. J. (Dkt. 77). Specifically, Defendant argues that it (i) "was based upon a manifest error of law or fact"; (ii) "should be amended to prevent manifest injustice and an impediment to justice due to the lack of judicial impartiality"; and (iii) "erroneously allows for excessive damages." *Id*. at 2. According to Defendant, these reasons warrant the wholesale dismissal of the case under Rule 12(h)(3). *Id*. at 1-2. Plaintiff opposes the Motion in its entirety, while also preliminarily arguing that it is procedurally improper. *See generally* Opp. to Mot. to Alter or Am. J. (Dkt. 82). These arguments are considered below.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure allow parties to move for reconsideration of court orders. Where a judgment has been issued, a motion for reconsideration may be brought pursuant to Rule 59(e). *See* Fed. R. Civ. P. 59(e) (setting a deadline for motions to alter or

**MEMORANDUM DECISION AND ORDER - 2**

amend a judgment). In all other situations, the court has discretion to reconsider its decisions under Rule 54(b), which permits the revision of interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In addition, district courts possess the inherent common-law authority to rescind or modify any interlocutory order so long as the court retains jurisdiction over the matter. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888-889 (9th Cir. 2001); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011) ("[A] district court has the inherent power to revisit its non-final orders, and that power is not lost when the case is assigned mid-stream to a second judge.").

Motions for reconsideration, however, are appropriate only in rare circumstances. *See Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (calling reconsideration an "extraordinary remedy" that should be "used sparingly"). "The major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)).

A motion for reconsideration is not an opportunity to rehash issues already addressed or advance arguments that could have been raised earlier. *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997); *see also Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) ("Motions for reconsideration . . . are not intended to give an unhappy litigant one additional chance to sway the judge."); *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069-1070 (E.D. Cal. 2009) (a party seeking reconsideration must show "more than a disagreement with the [c]ourt's decision"). In other words, a motion for reconsideration should do more than simply restate the position that was

**MEMORANDUM DECISION AND ORDER - 3**

unsuccessfully advanced by the party relating to the initial motion. "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

### III. DISCUSSION

Defendant's Motion does not raise an intervening change of controlling law that would affect the Court's MDO. Nor does it raise new material facts or evidence that happened after the Court's MDO. Therefore, the Court finds that Defendant's Motion rests upon an assertion of either clear error or manifest injustice. To that apparent end, Defendant raises the following specific arguments: (i) the MDO violated the First Amendment; (ii) the Court does not have jurisdiction relating to the murder of the four University of Idaho students; (iii) Plaintiff does not have a valid defamation claim; (iv) Plaintiff is not entitled to judgment as a matter of law; (v) the Court lacks subject matter jurisdiction; (vi) the MDO contains false statements of fact; (vii) the Court was not impartial; (viii) granting punitive damages violates Idaho law; (ix) Plaintiff's Complaint is barred by absolute and qualified privileges; and (x) tarot card and oracle card reading messages are not false statements of fact. Mem. ISO Mot. to Alter or Am. J. at 6-19 (Dkt. 77-1).[1]

As explained below, the Court is satisfied that its MDO was not the result of clear error and did not result in manifest injustice, and the Court considered the material facts presented by the parties in reaching its decision. Instead, Defendant's Motion ultimately asks the Court "'to rethink what the [it] had already thought through, rightly or wrongly.'" *Altshuler v. Chubb Nat'l Ins. Co.*, 2024 WL 1406297, at *1 (D. Ariz. 2024) (quoting *Above the Belt Inc. v. Mel Bohannon*

---

[1] Because certain of these arguments overlap, the Court organizes and rearranges them into six overarching categories below. *See infra*.

**MEMORANDUM DECISION AND ORDER - 4**

*Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).  That is not the proper purpose of a motion for reconsideration. Defendant's Motion is therefore denied.

A.     **Defendant's Motion is Not Precluded as Procedurally Improper**

The Court first confronts Plaintiff's argument that Defendant's Motion is procedurally improper under Rule 59(e) because the Court has not yet entered a final judgment.  *See* Opp. to Mot. to Alter or Am. J. at 3-4 (Dkt. 82) (citing Fed. R. Civ. P. 59(e) (allowing parties to file a motion to alter or amend a judgment "no later than 28 days after the entry of the judgment")). There is an initial appeal to this argument given that Rule 59(e) applies to final judgments and the Court's MDO is not a final judgment.  *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1989) ("Rule 59(e) clearly contemplates entry of judgment as a predicate to any motion."); *see also Jones v. McDaniel*, 717 F.3d 1062, 1068 (9th Cir. 2013) ("Orders granting partial summary judgment are not final appealable orders.").  Even so, this will not outright preclude Defendant's Motion.

To begin, this Court has applied Rule 59(e) to a motion for reconsideration that did not involve a final judgment.  *See, e.g.*, *Venti v. Xerox Corp.*, 2023 WL 7135149 (D. Idaho 2023). Regardless, whether under Rule 54(b), which allows courts to revise orders that adjudicate fewer than all the claims at any time before final judgment, or the Court's inherent authority to correct its own mistakes in the interest of justice, the Court concludes that it may entertain Plaintiff's Motion – based as it is on a claim of clear error and manifest injustice.  *See City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("The general rule regarding the power of a district court to rescind an interlocutory order is as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (internal quotation marks omitted) (citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (stating

**MEMORANDUM DECISION AND ORDER - 5**

that when a district court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59(e)).

If the Court erred in its MDO, it is in the interest of justice that it be corrected. *See Gila River Ranch, Inc. v. United States*, 368 F.3d 354, 357 (9th Cir. 1966) ("[W]hy should not the trial court have the power to correct its own judicial error . . . within a reasonable time . . . and thus avoid the inconvenience and expense of an appeal by the party which the trial court is now convinced should prevail?"); *cf. Massachusetts v. United States*, 333 U.S. 611, 639-40 (1948) (Jackson, J., dissenting) ("I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday."). Defendant's Motion will therefore be considered.

B.    The MDO Did Not Violate the First Amendment

Defendant claims that the First Amendment protects actions derived from spiritual beliefs. *See* Mem. ISO Mot. to Alter or Am. J. at 8 (Dkt. 77-1) ("Guillard cannot be punished for believing in a spiritual practice, its messages, nor can she be punished for acting on that belief."). She, in turn, argues that when the Court concluded in its MDO that she defamed Plaintiff, the Court "singled out" her spiritual practice, "[took] a stance on the truth or falsity of [her] spiritual belief and practice" in violation of the Establishment Clause, and "prevent[ed] [her] from freely exercising her spiritual practice in the future." *Id*. at 7-8. Defendant misunderstands the MDO.

To be clear, the Court takes no position on Defendant's spiritual beliefs. But where those beliefs manifest in unlawful action, the Court is not relegated to bystander status simply because the unlawful action might have a spiritual beginning. Such is the case here. Independent of Defendant's spiritual beliefs, the Court concluded that Defendant defamed Plaintiff when she publicly accused her of having an inappropriate same-sex romantic affair with a student, and then engineering that student's murder, along with three other students, to cover up the

**MEMORANDUM DECISION AND ORDER - 6**

relationship because those accusations had no basis in fact. 6/6/24 MDO at 8-20 (Dkt. 74). Addressing the shifting burdens at play on summary judgment, the Court relatedly concluded that Defendant's spiritual beliefs, without more, were incapable of creating an issue of fact relative to these statements' falsity. *Id*. at 18-20. These conclusions neither singled out Defendant's spiritual beliefs nor served as a critical commentary on Defendants' spiritual beliefs. They were instead the product of the Court's application of the law to the facts, consistent with the Federal Rules of Civil Procedure.

Moreover, the Court already addressed a similar argument when resolving Defendant's Motion to Set Aside the Court's August 8, 2023 Memorandum Decision and Order that dismissed Defendant's counterclaims against Plaintiff. There, Defendant argued that, because the Court "does not have subject matter jurisdiction over the plausibility of spiritual practices," its order dismissing her counterclaims is void. Mem. ISO MTD at 12-13 (Dkt. 50-1) ("The Court intentionally erred in denouncing tarot readings and [Defendant's] spiritual connection as a spiritual practice for the purpose of overstepping the separation of the Church and State as required by Federal laws and the First Amendment of the United States Constitution."). The Court disagreed, reasoning:

> Here, Defendant's counterclaims were supported only by her spiritual intuition. But intuition – even if summoned by one's spirituality – does not make a legal claim plausible. Otherwise, there would be no standard against which such claims can be tested under Rule 12(b)(6) and asserted First Amendment protections would automatically insulate affirmative claims from dismissal (while conversely protecting actionable conduct as well). This is not the standard, nor can it be. *See, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (First Amendment permits restrictions on false statements of fact harming another's reputation: "False and defamatory statements of fact, we have held, have no constitutional value.") (internal quotation marks and citation omitted). At bottom, claims must be based in fact, not conclusory and unverifiable beliefs. With this standard in mind, the Court simply held that, absent objectively-verifiable factual allegations, Defendant's counterclaims were implausible – nothing more, nothing less.

11/13/23 MDO at 21 (Dkt. 59). This same rationale applies now. The Court's MDO did not turn

**MEMORANDUM DECISION AND ORDER - 7**

on Plaintiff's spiritual beliefs, just the absence of factual support. Thus, there is no First Amendment violation.

B.   **The Court Does Not Lack Subject Matter Jurisdiction**

Defendant claims that the Court lacks subject matter jurisdiction for two reasons: (i) the Court "cannot use the civil tribunal process to decide [if Plaintiff] is innocent or guilty of murder," and correspondingly does not have the "authority to rule Mr. Kohberger guilty of murder"; and (ii) Plaintiff does not have damages over $75,000.00 to confer diversity jurisdiction. Mem. ISO Mot. to Alter or Am. J. at 8-9, 11-13 (Dkt. 77-1). Defendant is mistaken.

First, this is a civil – not a criminal – action. The Court properly considered the elements of Plaintiff's civil defamation claims against Defendant and, in doing so, resolved those issues in Plaintiff's favor on summary judgment pursuant to Rule 56. 6/6/24 MDO at 8-20 (Dkt. 74). Though the Court's consideration of those issues may have touched upon a matter of criminal concern in a parallel criminal proceeding in state court, the Court never endeavored to apply the elements of the crime of murder and adjudge Plaintiff "innocent" and Mr. Kohberger "guilty." Accordingly, the Court did not exceed its subject matter jurisdiction.

Second, Defendant's subjective belief that Plaintiff does not have damages over $75,000.00 is not enough to divest the Court of diversity jurisdiction. The Court already said as much in response to an identical argument raised in Defendant's earlier Motion to Dismiss:

> "In a diversity case originally filed in federal court, the sum claimed in the complaint controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021) (emphasis in original) (cleaned up). The "legal certainty" test permits a district court to dismiss the case for lack of jurisdiction only if it is obvious on the face of the complaint that the suit cannot involve the necessary amount. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). This standard "makes it very difficult to

**MEMORANDUM DECISION AND ORDER - 8**

> secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (cleaned up). To be sure, just three situations meet the legal certainty standard: (i) "when the terms of a contract limit the plaintiff's possible recovery"; (ii) "when a specific rule of law or measure of damages limits the amount of damages recoverable"; and (iii) "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id*. (cleaned up).
>
> Defendant's arguments most closely align with the third scenario. Importantly, however, those arguments only represent challenges to what Plaintiff may ultimately recover. They do not involve any objective, upfront criticism of Plaintiff's claim to damages or, for that matter, the amount of those damages. As a result, Defendant's arguments represent an attempt to do what the Ninth Circuit has prohibited: "smuggle in merits-based arguments into the jurisdictional inquiry[.]" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) ("[T]he strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation. Arias's argument conflates the amount in controversy with the amount of damages ultimately recoverable") (emphasis in original, cleaned up); *Geographic Expeditions*, 599 F.3d at 1108 (the existence of a valid defense to a claim "does not eliminate federal jurisdiction[.]"). As the Ninth Circuit has cautioned, "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108.
>
> Here, Defendant's TikTok videos accuse Plaintiff of not only having an improper relationship with a student, but then masterminding the murder of four students to keep that relationship a secret. Plaintiff alleges that these videos are defamatory and that she suffered actual injuries to her life, career, and mental health as a result. *See* Opp. to MTD at 3-4 (Dkt. 51). Without weighing in on the merits of these claims, it is not unreasonable for Plaintiff to seek damages that compensate her for these alleged injuries. Nor is it inconceivable that such damages exceed $75,000 depending on the nature and extent of those alleged injuries. That the parties dispute the facts informing these aspects of Plaintiff's case are not resolved here, but instead must be determined by the trier-of-fact based upon the evidence. As such, the Court cannot find to a "legal certainty" that Plaintiff's claims against Defendant are really for less than $75,000 and simply a procedural maneuver to falsely obtain federal jurisdiction. Defendant's Motion is denied in this respect.

11/13/23 MDO at 10-12 (Dkt. 59) (emphasis in original). This same rationale applies now. That said, the issue of whether Plaintiff has been damaged and, if so, the amount of those damages, still must be resolved. In the meantime, the Court properly has jurisdiction over this case.

**MEMORANDUM DECISION AND ORDER - 9**

## C. The Court Properly Resolved Plaintiff's Defamation Claims

Defendant variously complains that Plaintiff does not have a defamation claim; that Plaintiff is not entitled to a judgment as a matter of law; that the MDO has false statements of fact; and that tarot card and oracle card readings are not false statements of fact. Mem. ISO Mot. to Alter or Am. J. at 9-13, 18-19 (Dkt. 77-1). Distilled down, Defendant essentially contends that the Court committed clear error or manifest injustice by finding her liable for defamation because Plaintiff has not satisfied her burden of proving the defamation claims. Defendant fundamentally misunderstands the MDO.

At the outset, Defendant's arguments in these respects reflect a disagreement with the MDO: she believes she did not defame Plaintiff because the statements about her are true. But disagreement, no matter how vehement or impassioned, does not warrant reconsideration. *Supra* (discussing applicable legal standards); *see also Fletcher v. Idaho Dep't of Corr.*, 2021 WL 650278, at *1 (D. Idaho 2021) ("Plaintiff's Motion is simply a disagreement with the Court's conclusion that Defendants were entitled to summary judgment under Rule 56. Such a disagreement is a matter for appeal, not reconsideration."); *Venti*, 2023 WL 7135149, at *2 ("A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (internal quotation marks omitted). While Defendant's Motion can be denied for this reason alone, her particular arguments do not show clear error or manifest injustice in any event.

Regarding Plaintiff's defamation claims, the Court adopted the parties' recitation of the elements under Idaho law. *See* 6/6/24 MDO at 8 (Dkt. 74) ("The parties mostly agree that this is the standard appliable to Plaintiff's defamation claims against Defendant.") (citing *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007)). The Court only consulted Idaho Jury

**MEMORANDUM DECISION AND ORDER - 10**

Instruction ("IDJI") 4.82 (not cited by either party) to inform the issue of who – Plaintiff or Defendant – has the burden of proving the falsity/truth element of Plaintiff's defamation claims (what Defendant now complains about). *Id*. at 13-17. Without resolving the burden issue once and for all, the Court concluded that, *even if it was Plaintiff's burden to prove falsity*, she satisfied that burden by demonstrating that she had nothing to do with any of the students or their murders. *Id*. at 17-18 (after citing evidence, stating: "This is powerful evidence at the summary judgment stage. It not only substantiates Plaintiff's arguments that Defendant's statements about her are false, it also highlights the complete lack of any corroborating support for Defendant's statements. In this way, Plaintiff has sufficiently demonstrated the absence of any genuine issue of material fact relating to the falsity of Defendant's statements about her."). Under Rule 56, this shifted the burden to Defendant to dispute that claim by setting forth facts showing that there is a genuine issue for trial relating to whether her statements about Plaintiff are true. In relying only on her spiritual investigation into the murders, the Court concluded that Defendant did not satisfy her burden. *Id*. at 18-20. The Court articulated the undisputed legal standards applicable to defamation claims and properly applied the law to the record as was necessary to decide Plaintiff's Motion for Partial Summary Judgment.[2]

---

[2] Defendant looks to IDJI 4.82 as a basis to raise two additional elements-related arguments in favor of reconsideration: (i) that Plaintiff did not prove that Defendant knew or should have known that her statements about Plaintiff were false; and (ii) that Plaintiff did not prove actual injury due to Defendant's statements. Mem. ISO Mot. to Alter or Am. J. at 10-11 (Dkt. 77-1). These arguments are also not persuasive. To start, the extent of IDJI 4.82's application is not clear in light of somewhat-ambiguous caselaw, cautioning against reconsideration to begin with. *See* 6/6/24 MDO at 8-17 (Dkt. 74); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.") (internal citation omitted). As stated above, the Court only looked to IDJI 4.82 on the burden issue, and the parties never relied on IDJI 4.82 in their summary judgment briefing. *Supra*. At any rate, the argument ignores the Court's assessment of Defendant's "extremely harmful state of mind" relative to Plaintiff's efforts to amend her Complaint to add a claim for punitive damages. 6/6/24 MDO at 20-22 (Dkt. 74). Separately, as to injury, the Court concluded

**MEMORANDUM DECISION AND ORDER - 11**

Defendant's related argument that the MDO contains false statements of fact is similarly unpersuasive. For instance, she disputes the Court's contention that she posted "over 100 sensational TikTok [videos]." Mem. ISO Mot. to Alter or Am. J. at 13 (Dkt. 77-1) (citing 6/6/24 MDO at 1 (Dkt. 74)). But in her Counterclaim, Defendant stated that she "posted over one hundred TikTok videos of her findings" and "[Plaintiff] was informed about [Defendant's] social media account." Ans. and Countercl. at 13, ¶ 38 (Dkt. 20). Defendant likewise challenges the Court's claim that "Defendant does not dispute that she communicated statements about Plaintiff to others or that these statements, if false, are defamatory." Mem. ISO Mot. to Alter or Am. J. at 13 (Dkt. 77-1) (citing 6/6/24 MDO at 13 (Dkt. 74)). But in her briefing in support of the Motion, Defendant acknowledges that her statements about Plaintiff either impugned Plaintiff's honesty, integrity, virtue, or reputation, or exposed Plaintiff to public hatred, contempt or ridicule. *See* Mem. ISO Mot. to Alter or Am. J. at 9 (Dkt. 77-1) (implying that Plaintiff proved this element of her defamation claims). That is the definition of defamation and these statements in fact anchor Plaintiff's defamation claims. *See* IDJI 4.80.

Nevertheless, if the Court were to excise these statements from its consideration, that would still not change the outcome of the Court's ruling. The MDO did not depend on *these* points but, rather, on Defendant's repeated and undisputed statements about how Plaintiff ordered the killing of four individuals to cover up a relationship Plaintiff was having with one of the murdered students.

Finally, there is no merit to Defendant's claim that her statements about Plaintiff were based on her spiritual beliefs and thus incapable of representing false statements of fact. Mem. ISO Mot. to Alter or Am. J. at 18-19 (Dkt. 77-1). Defendant holds herself out as someone who

---

that Defendant's statements about Plaintiff are defamatory per se, meaning they are actionable without proof of special damages. *See id*. at 12-13.

**MEMORANDUM DECISION AND ORDER - 12**

solves high-profile unsolved murders. *Compare* Compl. at ¶ 11 (Dkt. 1), *with* Ans. and Countercl. at 3, ¶ 11 & at 13, ¶ 32 (Dkt. 20). Hand-in-hand with that claim, she has publicly stated shocking things about Plaintiff, repeatedly insisting that those statements are absolutely true. To her followers – more than 100,000, according to Plaintiff (*see* Compl. at ¶ 41 (Dkt. 1)) – these are statements of fact, not just spiritual beliefs or opinions. Defendant's representations in pleadings throughout the course of litigation prove this point. *See, e.g.*, Ans. and Countercl. at 6, ¶ 4 (Dkt. 20) (Defendant pleading via an affirmative defense: "[Plaintiff] planned, ordered, and executed the murder of the four University of Idaho students. Since the accusations in [Defendant's] TikTok videos are substantially true, there is no actionable claim for defamation.").

In short, Defendant supplies no basis to conclude that the Court committed clear error or manifest injustice by finding her liable for defamation.

**D.      The Court Has Not Violated Defendant's Right to a Fair Tribunal**

Defendant asserts that, "[f]rom the onset of the Complaint, the Court . . . robbed [her] of her right to an impartial tribunal." Mem. ISO Mot. to Alter or Am. J. at 14 (Dkt. 77-1). As proof of the undersigned's "lack of impartiality and inherent bias regarding [her] spiritual practices," Defendant points to instances in the record where the Court ruled against her. *Id*. at 14-15 (citing 8/8/23 MDO (Dkt. 49) and 6/6/24 MDO (Dkt. 74)).[3] The Court has already addressed an identical argument following the dismissal of Defendant's counterclaims, stating:

> Moreover, the Court's analysis, and Defendant's disagreement relating thereto, do not support a finding of bias or partiality. *Mogan v. Sacks, Ricketts & Case, LLP*, 2023 WL 2983577, at *3, n.6 (9th Cir. 2023) ("Any alleged claim of bias 'must

---

[3] Though, as Plaintiff underscores, Defendant does not reference the multiple occasions leading up to this point where the Court ruled against Plaintiff and for Defendant. *See* Opp. to Mot. to Alter or Am. J. at 7-8 (Dkt. 82) ("[Defendant's] myopic focus on the Court's most recent ruling ignores that the broader record shows the Court has been more than fair to [Defendant]," then referencing those instances).

**MEMORANDUM DECISION AND ORDER - 13**

> stem from an extrajudicial source,' and almost all of Mogan's arguments as to any potential bias arise from his disagreement with the Judge's decisions.") (quoting *Liteky v. United States*, 510 U.S. 540, 554-56 (1994)).
>
> In sum, Defendant's disagreement with the Court's adverse rulings may represent a basis for appeal. They do not, however, justify voiding those rulings or establish any bias whatsoever. Defendant's Motion [to Set Aside] is denied in this respect.

11/13/23 MDO at 19 (Dkt. 59). This same rationale applies now. United States District Judge Amanda K. Brailsford recently agreed when addressing Defendant's similar claims of the undersigned's bias in a Motion for Reassignment to a District Judge (Dkt. 75). *See* 11/13/24 MDO at 7-8 (Dkt. 88) ("The record does not show the Magistrate Judge was biased in any manner towards [Defendant]. Instead, the timing of [Defendant's] motion to withdraw her consent and her Rule 59(e) motion . . . indicates [Defendant's] real motivation is to avoid the Magistrate Judge's ruling. [Defendant's] only recourse to challenge those rulings, however, is an appeal following a final judgment."). Thus, Defendant has not been denied an impartial tribunal.

**E.     Allowing a Claim for Punitive Damages is Not Against Idaho Law**

The Court's MDO allowed Plaintiff to amend her Complaint to add a claim for punitive damages. 6/6/24 MDO at 20-22 (Dkt. 74). Defendant complains this was erroneous given her First Amendment Rights, coupled with the Court's lack of impartiality and disregard for her spiritual beliefs. Mem. ISO Mot. to Alter or Am. J. at 16 (Dkt. 77-1). These points have already been addressed and will not be repeated. *Supra*.

Defendant separately argues that her spiritual beliefs cannot equate to the sort of oppressive, fraudulent, malicious, or outrageous conduct that is required before punitive damages can be awarded. *See* Mem ISO Mot. to Alter or Am. J. at 16-17 (Dkt. 77-1). Defendant either misunderstands the MDO on this point or simply disagrees with it. Either way, there is no clear error or manifest injustice.

**MEMORANDUM DECISION AND ORDER - 14**

Addressing the requirement that a punitive damages award requires both a "bad act" and a "bad state of mind," the Court concluded that (i) Defendant's defamatory statements about Plaintiff represent the foundational set of bad acts; and (ii) the absence of any objective basis for those statements, even when confronted with contrary evidence, represents the foundational bad state of mind. *See* 6/6/24 MDO at 20-22 (Dkt. 74) ("These circumstances combine to demonstrate that Defendant's social media postings were primarily self-serving, motivated by online viral attention and made with an extremely harmful state of mind given the nature of the statements about Plaintiff."). These conclusions, while indirectly touching on Defendant's spiritual beliefs, were not a repudiation of those beliefs as Defendant appears to be arguing. Simply put, Defendant knew, or should have known, that the statements she made about Plaintiff had no basis in fact, and thus, were false. That she continued making those statements in crass and provocative ways, despite objective evidence to the contrary, supports a claim for punitive damages under Idaho law.

**F.      Defendant's Defamatory Statements Are Not Privileged**

Defendant argues that Plaintiff's Complaint should be barred because her statements are privileged. *See* Mem. ISO Mot. to Alter or Am. J. at 17-18 (Dkt. 77-1). The Court already rejected this argument when it denied Defendant's Motion to Dismiss:

> Defendant's TikTok videos were never made in any proceeding that can be understood as judicial in nature [and therefore not absolutely privileged]. And while statements made to law enforcement may be subject to a *qualified* privilege, Defendant's TikTok videos existed independent of any criminal investigation into the murder of the four University of Idaho students. That is, the allegedly-defamatory statements embedded within Defendant's TikTok videos were not relayed just to law enforcement as part of a discrete criminal investigation into the murders. Instead, they were effectively disseminated world-wide. That statements may have *also* been communicated to law enforcement does not then immunize them, particularly when no charges have ever been brought against Plaintiff.

**MEMORANDUM DECISION AND ORDER - 15**

11/13/23 MDO at 23 (Dkt. 59) (internal citation omitted, emphasis in original). This same rationale applies now. Defendant's defamatory statements are not privileged.

## IV. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion to Alter or Amend Judgment (Dkt. 77) is DENIED.

DATED: February 4, 2025

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge