Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Rd, 942
Houston, TX 77098
337.372.3181

Pro-Se Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD, | Case No. 3:22-cv-00521-REP |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 60(b)(2) MOTION FOR RECONSIDERATION (DKT. 92)** |
| ASHLEY GUILLARD, | |
| Defendant. | |

Defendant Ashley Guillard (Guillard) respectfully disagrees with Plaintiff Rebecca Scofield's (Scofield) opposition to Defendant's Rule 60(b)(2) Motion for Reconsideration (DKT. 92). Based on the newly received evidence Guillard moves the Court to relieve her of Docket 74: the Order Granting the Plaintiff's Motion for Partial Summary Judgment (DKT. 63), and the Order Granting Leave for the Plaintiff to Amend the Complaint to Add Punitive Damages (DKT. 64).

## I.  INTRODUCTION

Since the inception of the Plaintiff's Compliant (DKT. 1) the Plaintiff has ridiculed Guillard's claircognizant abilities as implausible and fantastical as a strategic tactic to prevent Guillard's messages about Scofield from being taken seriously. The Plaintiff went as far as ridiculing Guillard in the news media and social media making several false statements defaming Guillard as mentally ill and a clout chaser that *"used the death of the students as a means to gain*

*money and clout."* The Plaintiff has also completely disregarded Guillard's belief in the accuracy of the messages she discerned by way of tarot cards, oracle cards and claircognizance; falsely stating that *"Guillard made false statements, knowing they are false to profit from the death of the students."*

Now that Guillard has provided evidence that many of the messages she discerned regarding the murder of the four University of Idaho students, using claircognizance, tarot cards and oracle cards are facts and backed by the State of Idaho's evidence in the criminal case of the State of Idaho v. Bryan C. Kohberger, Ada County Case No. CR-01-24-31665 (the State's criminal case), the Plaintiff is still intentionally misleading the Court by attempting to minimize the significance and accuracy of Guillard's claircognizant abilities. Additionally, the Plaintiff erroneously seeks for the Court to ignore the evidence that substantiates Guillard's claircognizant abilities; in an attempt to win a judgment for defamation against Guillard without merit, and without providing any evidence that Guillard's statements are false.

The newly received evidence that Guillard provides enlightens the Court of facts that have been ignored by the Court and disregarded by the Plaintiff this entire case: 1) That claircognizance is plausible. 2) Tarot card and oracle card readings done properly can provide accurate a priori knowledge. 3) Guillard's belief in claircognizance and use of it is not negligent, nor fantastical, nor implausible because it is evidenced to be real. 4) Evidence controlled by the State of Idaho provides factual support and evidence that Guillard's statements regarding the murder of the four University of Idaho Students, and Rebecca Scofield's alledged role in the murders are true.

## II.  BACKGROUND

On November 13, 2022, four University of Idaho (UIdaho) students: Kaylee Goncalves (K.G.), Ethan Chapin (E.C.), Xana Kernodle (X.K.), and Madison Mogen (M.M.) (collectively

referred to as the "four students"), were tragically murdered in Moscow Idaho. November 27, 2022, at the request of a TikTok user, Guillard used her claircognizant abilities, with the assistance of tarot cards and oracle cards, to get answers, and to help law enforcement solve the murders of the four students. During what she coined a "spiritual investigation" Guillard discerned that the students were murdered due to a targeted hit, ordered by a history teacher, Rebecca Scofield, and executed by the ex-boyfriend of victim K.G. The motive was to murder K.G. before she left Idaho to prevent the exposure of an affair between the Plaintiff, a University of Idaho Professor, and victim K.G., a University of Idaho student. Guillard also discerned intricate details of the events that occurred the night of the murders. Guillard published the findings on her TikTok channel – about 100 minutes of content amongst approximately 100 sixty second videos within a month. Of those videos were about 7 minutes of videos regarding Rebecca Scofield. Guillard also sent several tips to the FBI tip line on December 10, 2022, December 14, 2022, and December 16, 2022.

On December 12, 2022, Guillard received an email from Wendy J. Olson with Stoel Rives LLP that was sent on December 8, 2022. Two demand letters dated November 28, 2022, and dated December 8, 2022, were attached to the email. Guillard did not respond to the demands in the letters because she believed that her statements regarding the four murders and Scofield's involvement were substantially true. On December 21, 2022, Scofield filed a Complaint for defamation against Guillard (DKT. 1). On January 12, 2024, Scofield filed a Motion for Partial Summary Judgment (DKT. 63) and a Motion for Leave to Amend the Complaint to add Punitive Damages (DKT. 64). The Court granted both motions (DKT. 74). On March 15, 2025, Guillard filed a Motion for Reconsideration of docket 74 based on newly received evidence pursuant to FRCP Rule 60(b)(2).

## III.  LEGAL STANDARD

Pursuant to the Plaintiff, to prevail on a motion for reconsideration "because of newly discovered evidence, the movant must show the evidence (1) existed at the time of the trial or proceeding at which the ruling now protested was entered; (2) could not have been discovered through due diligence; and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." Crandall v. Seagate Tech., Case No. 1:10-cv-128-MHW, 2011 WL 2604732, at *2 (D. Idaho June 30, 2011). Guillard exceeds the legal standard quoted in the Plaintiff's response.

## IV.  ARGUMENT

The Court should grant Guillard's motion for reconsideration and reverse its decision because (1) the evidence existed at the time of the trial or proceeding at which the ruling now protested was entered; (2) the evidence could not have been discovered through due diligence because the evidence is controlled by the State of Idaho, is sealed and hidden from the public; and (3) the evidence is profound enough that production of it earlier would have likely changed the disposition of the case.

**A.    The Evidence Existed at the time of the Summary Judgment Litigation and Order**

The Plaintiff has not refuted that the evidence existed during the time of the litigation and order of the Partial Summary Judgment. The evidence that substantiates Guillard's statements existed during the ligation of the Partial Summary Judgment. However, it is under seal and in the control of Latah County.

**B.    The Evidence Could Not Have Been Discovered Through Due Diligence**

Guillard meets the burden of the Plaintiffs cited case law: *"Evidence is only newly discover[ed] if it was in fact previously unavailable—i.e., the party asserting the evidence, acting*

*with reasonable diligence, could not have previously discovered the evidence.").[1]* Additionally, *the parties should make sure the record is fully developed before the Court spends "significant time investigating and resolving" the issues in the case.*[2] First, the evidence that proves the validity of Guillard's claircognizance and videos are not readily available to Guillard due to the non-dissemination order in the States criminal case. For example, the text message exchange between the surviving roommates (DM and BF) the night of the murders, States Exhibit S-1, is sealed. However, the States filings on February 24, 2025, provides proof of the existence of evidence that corroborates Guillard's account of the events that occurred before, during and after the murders. The evidence that substantiates Guillard videos regarding the location of the victims' bodies are also under seal. However, Moscow Police Department (MPD) sworn statement provides evidence that there is evidence in the States control that substantiates Guillard's assertions. Guillard's spiritual investigation also revealed that K.G. was the target. The coroner's report is under seal but is also evidence to substantiate Guillard's statement, because it proves that K.G. was attacked more violently than the other victims. There is proof that evidence exists that supports Guillard's affirmative defense of truth. However, it is under seal and under Latah County's control. Guillard could not have gained access to the evidence because the State Court has denied access to parties outside of the criminal case.

Guillard stated that Rebecca Scofield had access to a white Elantra the evening of the homicides, that it connects her to the murders, is in someone else's name and is abandoned. Scofield claims to have been in Oregon the night of the murders. The State of Idaho has unreleased

---

[1] See *Vasquez v. City of Idaho Falls*, No. 4:16-cv-184-DCN, 2018 WL 1123865, at *3 (D. Idaho March 1, 2018).
[2] *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 1:17-CV-00519-DCN, 2020 WL 2841517, at *14 (D. Idaho June 1, 2020).

evidence of an abandoned white Elantra found in Oregon. The alleged owner of the vehicle has not been made public by M.P.D. Guillard has not been granted access to the States evidence to establish a connection between Scofield and the owner of the vehicle. Additionally, Scofield has not refuted that she had access to a white Hyundai Elantra the night of the murders. Guillard attempted to subpoena Meta Platforms, Inc. (also known as Facebook) to establish a connection between Scofield, the victims, and the alleged co-conspirators. The Court ordered Meta Platforms not to comply with the request (DKT. 55). However, the State has successfully gained access to the social media of the victims. Again, it is under seal and has not been released to the public nor to Guillard.

In Guillard response to the Plaintiff's Motion for Partial Summary Judgment Guillard informed the Court that there was evidence under seal and under the control of the State that corroborated her video statements regarding the murders (see DKT. 65). She also informed the Court that she did not have access to the evidence due to the non-dissemination order. Guillard also requested the Court to deny the Plaintiff's request for a summary judgment because *the record was not fully developed* due to the sealing of the evidence. The Plaintiff has not provided any source that grants Guillard access to the States criminal evidence files pre-trial. Guillard attempted to gather her own evidence from Meta Platforms and it was denied by the Court. Guillard did not request discovery directly from Scofield because Scofield has made false statements every filing since the onset of the Complaint. It is logical to believe that Scofield would not be honest during discovery about her connection to the murder of the four students and the alleged affair. Additionally, the Fifth Amendment protects Scofield from being compelled to incriminate herself. Guillard did her due diligence. The evidence could not have been discovered by her.

**C.      The Evidence Changes the Disposition of the Case**

There are several reasons why the newly received evidence and the evidence of the existence of corroborating evidence changes the disposition of the case. First, evidence proving that several of Guillard's statements regarding the homicides and events surrounding the homicides are true refutes the narrative that Guillard made false statements knowing they are false or reasonably should have known it was false. Since Guillard can prove that several statements she made are true, there is no reason for Guillard to believe that any of her statements regarding Rebecca Scofield are false. Second, the evidence proves that Guillard's account of the events the night of the homicides was accurate even when the information shared by M.P.D. was not accurate (i.e., the roommates activities the night of the murders). Therefore, it is reasonable for Guillard to believe herself even when the beliefs shared by M.P.D. contrasts with what Guillard discerns. Third, no irrefutable evidence has been presented by Latah County prosecutors, nor has the Plaintiff provided any irrefutable evidence that Guillard made any false statements regarding the homicides and about Rebecca Scofield. Guillard never claimed that Scofield taught the students. Therefore, no evidence exist that Guillard made any false statements. Additionally, DNA evidence exists that corroborates Guillard contention of another suspect; blood DNA, not touch DNA.

Guillard has largely been mocked and unbelieved due to the ignorance of claircognizance and her ability to gain a priori knowledge that is accurate, resourceful, and backed by evidence. Having proof of the accuracy of her statements changes the narrative to Guillard being a person with the ability to provide the invaluable resource of claircognizance to help solve a quadruple homicide. Additionally, the Plaintiff did not provide any evidence that Guillard gained financially from her Tik-Tok videos. The entire case has been a lie from the beginning. Guillard did not make false statements. Guillard did not make false statements knowing they are false. Guillard did not

make money or "clout" from the TikTok videos. Guillard already had a following and used her knowledge, skills, and abilities to help solve the quadruple homicide. Thus far, the eagerness to help strangers caused Guillard more harm than good.

The State's evidence in the criminal case of the State of Idaho v. Bryan C. Kohberger, Ada County Case No. CR-01-24-31665 is admissible in the civil case of Scofield v. Guillard. Federal case law permits the Court to take judicial notice of matters of public record.[3] In this case it is essential for justice and due process. Therefore, the Supremacy Clause allows for federal law to take precedence over any conflicting state law mentioned by the Plaintiff. The Plaintiff is not entitled to a defamation judgment as a matter of law. The proof of the existence of evidence that corroborates Guillard's statements creates issues of material facts. A genuine issue of material fact precludes summary judgment. Additionally, the Plaintiff is not entitled to a judgment as a matter of law because she does not meet all the elements of a defamation claim against Guillard.

**D.    The Court Should NOT Proceed with Scheduling a Trial on Damages**

A trial on damages is not appropriate because the Plaintiff's partial summary judgment was made in error. Additionally, the Plaintiff has not provided irrefutable evidence that Guillard defamed her. The Court should reconsider the decision to grant the Plaintiff a partial summary judgment and reverse the decision and order. Guillard did not intend to use this motion as a joint motion to delay trial.

## V.    CONCLUSION

The Court should GRANT Guillard's Motion for Reconsideration (DKT. 92), and subsequently DENY the Plaintiff's Motion for Partial Summary Judgment (DKT. 63), and DENY

---

[3] See In Re Ford Motor Co. Bronco II Prods. Liab. Litig., 909 F.Supp. 400, 403 (E.D.La. 1995). See Chadwick v. Layrisson, 1999 WL 717628, at *2 (E.D.La. Sept. 13, 1999). See also Wright v. U.S. Postal Services, No. CIV.A. 04-460-B-M1, 12 n.40 (M.D. La. 2004).

the Motion Granting Leave for the Plaintiff to Amend the Complaint to Add Punitive Damages (DKT. 64).

DATED: April 21, 2025

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I served a copy of the foregoing via CM/ECF on

the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: April 21, 2025.


/s/ Ashley J. Guillard
Ashley J. Guillard

Pro-Se Litigant