Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
Cory M. Carone, ISB No. 11422
cory.carone@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>  Plaintiff,<br><br>v.<br><br>ASHLEY GUILLARD,<br><br>  Defendant. | Case No. 3:22-cv-00521-REP<br><br>**PLAINTIFF'S TRIAL BRIEF** |

Pursuant to the Court's Order Setting Trial (Dkt. 100), Plaintiff Rebecca Scofield respectfully submits her trial brief.

### I.  FACTUAL BACKGROUND

In November 2022, four students were brutally murdered at the University of Idaho. While law enforcement conducted its investigation, there was hysteria across the country—often fed by the internet—as people spread theories about who committed the murders and why every time any "evidence" (real or imagined) was discovered. Defendant Ashley Guillard, a resident of Texas who has never even been to Idaho, took the tragedy in Moscow and the hysteria surrounding it as an opportunity to garner attention for herself online.

PLAINTIFF'S TRIAL BRIEF - 1

Relying on tarot cards, as well as her "spiritual practice" and "psychic abilities," Ms. Guillard posted over 100 TikTok videos about her "findings" related to the murders. Much of her content focused on her conclusion that Rebecca Scofield—a Professor at the University of Idaho—had an ongoing affair with a student and then orchestrated the four murders to cover up the affair. Ms. Guillard's posts went viral. She had over 100,000 followers on TikTok, and some of her videos had 2.5 million "likes."

Ms. Guillard's statements about Professor Scofield were false. Professor Scofield had never even met any of the victims, let alone had an affair with one or participate in the murders. And after Professor Scofield filed her complaint, Bryan C. Kohberger was arrested and then convicted for the murders. But Ms. Guillard's statements on the internet—particularly before the public knew and accepted that Mr. Kohberger was the murderer—had consequences in the real world. At a time when the smallest "clue" could rile up the public who were upset by but knew very little about the murders, Professor Scofield feared for the physical safety of herself and her family if somebody tried to seek vigilante justice. That fear led to economic losses as Professor Scofield needed to purchase a security system, but her fear also had an emotional toll, ultimately causing her to suffer PTSD and incur additional financial damages for treatment. Professor Scofield also suffered damage to her professional brand as a teacher and academic. When students, publishers, potential collaborators on research, potential attendees of a talk or conference, etc. search Professor Scofield's name online, they see content about her alleged affair or role in the murders that distract from her many accomplishments as a teacher and academic.

Professor Scofield did not want to litigate this case: she sent Ms. Guillard two cease-and-desist letters, which Ms. Guillard then used as a prop pretending they were toilet paper in one of her TikTok videos. Left with no other way to get Ms. Guillard to stop making her false statements,

Professor Scofield filed this lawsuit. Yet even that has not been enough, as Ms. Guillard has continued to post false statements about Professor Scofield even while this litigation has been pending.

## II.  PROCEDURAL BACKGROUND

In December 2022, Professor Scofield filed a two-claim complaint. The first claim was for defamation related to Ms. Guillard's false statements that Professor Scofield participated in or orchestrated the murders. The second claim was for defamation related to Mr. Guillard's false statements that Professor Scofield had an ongoing affair with a student. Both claims advanced defamation per se as a theory.

In June 2024, the Court granted Professor Scofield's motion for partial judgment and motion for leave to add a request for punitive damages. In its decision, the Court held that Ms. Guillard published her statements about Professor Scofield, Ms. Guillard's statements about Professor Scofield were false, and Ms. Guillard's statements about Professor Scofield were defamatory per se. The only question left for trial was the amount of damages, compensatory and punitive, that Professor Scofield can recover.

## III.  APPLICABLE LAW

The Court is exercising its diversity jurisdiction, so Idaho law governs Professor Scofield's claims for both compensatory and punitive damages. *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1134 (D. Idaho 2013) (applying Idaho law to assess damages in a defamation case); *Roost Project, LLC v. Andersen Constr. Co.*, 437 F. Supp. 3d 808, 828 (D. Idaho 2020) ("Claims for punitive damages are substantive and Idaho law is therefore controlling in diversity cases.").

Compensatory damages are an element of a defamation claim. *Verity v. USA Today*, 164 Idaho 832, 436 P.3d 653 (2019). Accordingly, Professor Scofield carries the burden of showing her compensatory damages by a preponderance of the evidence. *Paolini v. Albertson's, Inc.*, No.

CV-02-41-S-BLW, 2003 WL 27386675, at *10 (D. Idaho Aug. 7, 2003) (holding that a plaintiff must establish damages in a defamation case by a preponderance of the evidence), *aff'd sub nom. Paolini v. Albertson's Inc., Plan Adm'r*, 482 F.3d 1149 (9th Cir. 2007). A preponderance of the evidence means proving a fact is more likely true than not. *United States v. Highsmith*, 268 F.3d 1141, 1142 (9th Cir. 2001). Since Ms. Guillard's statements are defamatory per se, Professor Scofield can "receive an award of general damages" as compensation instead of needing to prove special damages. *Sadid*, 943 F. Supp. 2d at 1134 ("Idaho follows the common law rule allowing plaintiffs to receive an award of general damages without proof of special damages in defamation per se cases.").

Punitive damages in Idaho are governed by Idaho Code § 6-1604. To recover punitive damages, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6-1604(1). "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *In Int. of Doe I*, 163 Idaho 274, 277, 411 P.3d 1175, 1178 (2018) (citation omitted). Idaho courts have interpreted Idaho Code § 6-1604(1) to mean a claimant must show both a "'bad act'" and a "'bad state of mind.'" *Hall v. Farmers All. Mut. Ins. Co.*, 145 Idaho 313, 319, 179 P.3d 276, 282 (2008) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)). A "bad act" is established by showing that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Seiniger L. Off., P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 250, 178 P.3d 606, 615 (2008) (internal quotation marks and citation omitted). The "bad state of mind" requirement is met by proof of "an extremely harmful state of mind" which can be

PLAINTIFF'S TRIAL BRIEF - 4

characterized as "malice, oppression, fraud or gross negligence." *Id.* (internal quotation marks and citation omitted).

## IV. ISSUES AT TRIAL

### A. Damages

Given the Court's summary judgment decision, the only issue for trial is the amount of compensatory and punitive damages Professor Scofield should be awarded. For her claim for compensatory damages, Professor Scofield intends to introduce evidence related to the expenses she incurred for a security system and medical treatment, her emotional harm, and the harm to her professional reputation as a teacher and academic. For her claim of punitive damages, Professor Scofield intends to introduce evidence related to the complete lack of due diligence Ms. Guillard conducted before making her false statements about Professor Scofield, Ms. Guillard's refusal to stop making false statements about Professor Scofield even after receiving cease-and-desist letters and learning about Mr. Kohberger's arrest and conviction, and the extravagant lifestyle Ms. Guillard portrays on TikTok, including international travel, luxury shopping, and her use of expensive cars.

### B. Evidence Subject to Protective Order

Professor Scofield intends to introduce some exhibits with personal information about her healthcare treatment (which includes information about her children), her home address, and other personal identifying information. Professor Scofield has asked the Court to enter a protective order protecting that information, and she anticipates asking the Court to redact from the public record the portions of those exhibits that include her personal information.

### C. Other Issues

Professor Scofield has or will separately submit a motion in limine addressing anticipated evidentiary issues as well as proposed jury instructions.

PLAINTIFF'S TRIAL BRIEF - 5

DATED: October 13, 2025.

        STOEL RIVES LLP

        <u>/s/ *Wendy J. Olson*</u>
        Wendy J. Olson
        Cory M. Carone

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, I served a copy of the foregoing via CM/ECF on the Registered Participant as follows:

Ashley Guillard
msashleyjt@gmail.com

/s/ *Wendy J. Olson*
Wendy J. Olson

PLAINTIFF'S TRIAL BRIEF - 7