UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>　　Plaintiff,<br><br>vs.<br><br>ASHLEY GUILLARD,<br><br>　　Defendant. | Case No.: 3:22-cv-00521-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE OF REBECCA BOHN, MA AND REBECCA TALLENT (Dkt. 102)**<br><br>**PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER (Dkt. 110)**<br><br>**PLAINTIFF'S MOTION IN LIMINE (Dkt. 111)** |

Before the Court are (i) Defendant's Motion to Exclude Expert Testimony and Evidence of Rebecca Bohn, MA and Rebecca Tallent ("Motion to Exclude") (Dkt. 102); (ii) Plaintiff's Motion for Entry of Protective Order ("Motion for Protective Order") (Dkt. 110); and (iii) Plaintiff's Motion in Limine (Dkt. 111). Because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record and without oral argument. As discussed more fully below, Defendant's Motion to Exclude is granted in part and denied in part, and Plaintiff's Motion for Protective Order and Motion in Limine are granted.

## I. BACKGROUND

This case arises out of the tragic murder of four University of Idaho students in November 2022. Plaintiff Rebecca Scofield is a professor at the University of Idaho. She alleges that, despite never meeting any of these students or being involved with their murders in any way, Defendant Ashley Guillard posted numerous TikTok (and later YouTube) videos

**MEMORANDUM DECISION AND ORDER - 1**

falsely claiming that Plaintiff (i) had an extramarital, same-sex, romantic affair with one of the victims; and then (ii) ordered the four murders to prevent the affair from coming to light. Plaintiff sent cease-and-desist letters to Defendant in the following days and weeks. When Defendant did not stop, Plaintiff initiated this action. Plaintiff asserts two defamation claims against Defendant: one is premised upon the false statements regarding Plaintiff's involvement with the murders themselves, the other is premised upon the false statement regarding Plaintiff's romantic relationship with one of the murdered students.

On June 6, 2024, the Court granted Plaintiff's Amended Motion for Partial Summary Judgment. *See* 6/6/24 MDO at 8-20 (Dkt. 74). On the issue of liability regarding Plaintiff's two defamation claims against Defendant, the Court concluded that "the totality of the evidence reveals that there is no genuine dispute as to any material fact that Defendant defamed Plaintiff." *Id*. at 20. Also on June 6, 2024, the Court granted Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages. *Id*. at 20-22. In permitting a claim for punitive damages, the Court concluded that Plaintiff "established a reasonable likelihood of proving, by clear and convincing evidence, that Defendant's conduct in accusing Plaintiff of an affair with a student before ordering that student's and three other students' murders was oppressive, fraudulent, malicious, and/or outrageous." *Id*. at 21. The extent of Plaintiff's damages, if any, remains an outstanding issue.

A four-day jury trial is set to begin on February 24, 2026 in Boise, Idaho. *See* Order Setting Tr. (Dkt. 100). With liability already established, the sole issue for trial is whether Plaintiff is entitled to damages and, if so, the amount of those damages. To support her damages theory, Plaintiff has identified two experts who may testify at trial: Rebecca Tallent and Rebecca Bohn. *See* Ex. A to Olson Decl. (Dkt. 103-2). In advance of trial, Defendant moves to exclude these experts' testimony pursuant to Federal Rule of Evidence 702. *See generally* Def.'s Mem.

**MEMORANDUM DECISION AND ORDER - 2**

ISO Mot. to Exclude (Dkt. 102-1).  Also before trial, Plaintiff seeks to secure a protective order relating to certain trial exhibits speaking to Plaintiff's medical and financial records.  *See generally* Pl.'s Mot. for PO (Dkt. 110).  Plaintiff additionally moves in limine to preclude Defendant from presenting evidence or argument relating to the "truth" of whether Plaintiff had an affair with a victim or orchestrated the four murders.  *See generally* Pl.'s MIL (Dkt. 111).  Each motion is addressed below.

## II.  ANALYSIS

A.  **Defendant's Motion to Exclude (Dkt. 102)**

Within her Motion to Exclude, Defendant argues that neither Rebecca Tallent nor Rebecca Bohn is qualified to offer expert testimony and that their opinions regarding reputational harm and psychological injury are unreliable, speculative, and unsupported by sufficient facts or data.  Plaintiff opposes the motion, contending that both witnesses are qualified by education and experience, that their opinions are based on reliable principles and methods, and that their testimony will assist the jury in determining the extent of damages.  The Court addresses each witness in turn under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1.  Legal Standard

Rule 702 of the Federal Rules of Evidence governs and limits the admissibility of expert testimony in two ways.  First, Rule 702 only permits witnesses with special "knowledge, skill, experience, training, or education" to testify as experts.  Fed. R. Evid. 702.  Second, Rule 702 limits a qualified expert's testimony to that which (i) "will help the trier of fact to understand the evidence or to determine a fact in issue"; (ii) "is based on sufficient facts or data"; (iii) "is the product of reliable principles and methods"; and (iv) is reliably applied to the facts of the case. Fed. R. Evid. 702(a)-(d).

**MEMORANDUM DECISION AND ORDER - 3**

In other words, to be admissible, an expert's testimony must "rest on a reliable foundation and [be] relevant to the task at hand." *Hyer v. City and Cnty of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)). Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)); *see also Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."). In comparison, the reliability inquiry is fact-specific and depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

To guide this reliability analysis, the Supreme Court has outlined several factors to use in determining whether expert testimony is reliable. *Daubert*, 509 U.S. at 592-94. These factors include "(i) whether a theory or technique can be tested; (ii) whether it has been subjected to peer review and publication; (iii) the known or potential error rate of the theory of technique; and (iv) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000); *see also Primiano*, 598 F.3d at 565 ("[Expert opinion testimony] is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."). Ultimately, the Rule 702 inquiry is a "flexible" one, and district courts have broad discretion. *Daubert*, 509 U.S. at 594; *Kumho*, 526 U.S. at 142.

2. Rebecca Tallent

Dr. Tallent is a retired associate professor emerita with more than five decades of experience in journalism, public relations, and academia. *See* Resp. to Mot. to Exclude at 2, 4-5 (Dkt. 103) (citing Ex. A to Olson Decl. (Dkt. 103-2)). She holds a bachelor's degree in

**MEMORANDUM DECISION AND ORDER - 4**

journalism, a master's degree in education with a journalism emphasis, and a doctorate in education focused on higher education, classroom teaching, and mass communications. *See id*. During her career, Dr.. Tallent taught public relations and journalism at the University of Idaho and other institutions, published scholarly and professional works on media and ethics, and worked professionally in journalism and public relations. *See id*. Based on this background, Dr. Tallent offers opinions concerning how defamatory statements made via social medial can affect an individual's professional reputation in an academic setting. *See id*. at 2-3 (citing Ex. A to Olson Decl. (Dkt. 103-2). She specifically opines that Defendant's statements have damaged Plaintiff's reputation to a significant degree and that it could take decades, or even a generation, for Plaintiff to restore her reputation, if ever. *See id*.

Defendant argues that Dr. Tallent is not qualified to offer these opinions and that her testimony is unreliable because it is speculative, exaggerated, and unsupported by facts or data tied to Plaintiff's actual circumstances. *See* Mem. ISO Mot. to Exclude at 7-8 (Dkt. 102-1). According to Defendant, Dr. Tallent's conclusions regarding the existence and extent of reputational harm are untethered from evidence and amount to biased advocacy from a colleague rather than expert analysis. *See id*.

The Court first addresses qualification. Rule 702 sets a low bar for expertise, and Dr. Tallent's education, training, and extensive professional experience in journalism, public relations, and academia qualify her to testify as an expert regarding general principles of reputation, branding, and the ways in which negative publicity – particularly online – can impact professionals in academic environments. Defendant's objections do not directly confront Dr. Tallent's credentials or expertise; rather, they challenge the strength and foundation of the conclusions she draws from that experience. Accordingly, the Court finds that Dr. Tallent is qualified as an expert within the meaning of Rule 702.

**MEMORANDUM DECISION AND ORDER - 5**

Dr. Tallent's testimony is also relevant. The jury will be asked to assess damages, including whether and how Plaintiff's professional reputation may have been affected by Defendant's defamatory statements. Testimony explaining how reputational harm can occur, how internet-based dissemination differs from traditional media, and how academics may be uniquely vulnerable to reputational injury may assist the trier of fact in understanding issues beyond the knowledge of a lay juror. In that respect, Dr. Tallent's testimony satisfies Rule 702's relevance requirement.

The more difficult question concerns reliability and scope. While experience-based expert testimony may be admissible, the expert still must explain how that experience reliably leads to the conclusions offered. Here, Dr. Tallent may testify about general mechanisms of reputational harm, including how defamatory statements and the manner of their dissemination can negatively affective an academic's reputation. However, her opinions go further. She repeatedly states:

> "Ms. Guillard's statements have damaged Professor Scofield's reputation to an extent that it may take up to a full generation, or forty years, to restore her reputation."
>
> "Ms. Guillard's false statements have damaged Professor Scofield's brand as a researcher and a teacher."
>
> "The defamatory statements also will damage Professor Scofield's reputation among students, who may spread the statements, even if they are false, resulting in fewer students taking her classes …."
>
> "Ms. Guillard's use of social media and the internet to publish her false statements significantly increases the impact on Professor Scofield's reputation."
>
> "It could take a generation for Rebecca Scofield to restore her reputation, if at all."
>
> "Ms. Scofield has damaged Professor Scofield's reputation to a significant degree."

**MEMORANDUM DECISION AND ORDER - 6**

*See* Tallent Rpt., attached as Ex. A to Olson Decl. (Dkt. 103-2). These conclusions are not accompanied by any discernible methodology, analytical framework, or explanation of how Dr. Tallent moved from general principles of public relations to specific findings about Plaintiff's actual reputational harm.

Indeed, despite the above-referenced concrete opinions, much of Dr. Tallent's report is framed in conditional or probabilistic terms, such as statements that Defendant's conduct "ha[s] the capacity" to affect Plaintiff's reputation or "may cause" harm. *See id*. Such phrasing underscores the speculative nature of her conclusions and highlights the absence of a reliable basis for opining that reputational harm has in fact occurred, or will occur, to any particular degree. Given the significant weight juries may place on expert testimony, Rule 702 requires more than unsupported statements grounded solely in the expert's authority. Without a reliable foundation demonstrating how Dr. Tallent reached her conclusions about the existence, severity, or duration of Plaintiff's reputational harm, those opinions risk misleading the jury.

Accordingly, Dr. Tallent is not precluded from testifying, but the scope of her testimony will be narrowed. She may testify regarding her qualifications, general principles of reputation and public relations, and how defamatory statements made over social media can impact an individual's professional reputation in academia. She may also describe potential ways in which such harm could manifest. She may not, however, testify that Plaintiff was *in fact* damaged, that Plaintiff suffered reputational harm to a *particular degree*, or that Plaintiff *will suffer* future reputational harm as a result of Defendant's actions. Those ultimate conclusions lack a sufficiently reliable foundation and therefore would not be helpful to the trial of fact under Rule 702. Plaintiff remains free to argue reputational harm based on admissible evidence at trial, and Defendant may attempt to undercut that claim by pointing out how Plaintiff's "career and reputation remain unscathed." *See e.g.*, Mem. ISO Mot. to Exclude at 8 (Dkt. 102-1). But Dr.

**MEMORANDUM DECISION AND ORDER - 7**

Tallent herself may not offer speculative conclusions on that issue under the imprimatur of expert testimony. Defendant's Motion to Exclude is therefore granted in part and denied in part, in this respect.

3.  Rebecca Bohn[1]

Ms. Bohn is a licensed mental health counselor with a Master of Arts degree in counseling psychology and more than three decades of experience providing psychotherapy and behavioral health treatment. *See* Resp. to Mot. to Exclude at 3, 7-8 (Dkt. 103) (citing Ex. A to Olson Decl. (Dkt. 103-2)). She began treating Plaintiff in May 2023 and has met with her regularly since that time. *See id*. Based on her training, clinical experience, and longitudinal treatment of Plaintiff, Ms. Bohn diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") and opines that Plaintiff will require ongoing mental health treatment into the future. *See id*.

Defendant argues that Ms. Bohn is not qualified to diagnose PTSD, that her opinions are unreliable because they allegedly depart from the DSM-5 diagnostic criteria, and that defamation cannot, as a matter of law or medicine, constitute a qualifying traumatic event. *See* Mem. ISO Mot. to Exclude at 4-6 (Dkt. 102-1). Defendant further contends that Ms. Bohn's opinions

---

[1] In response to Defendant's efforts to exclude Ms. Bohn's testimony at trial, Plaintiff argues at the outset that she may testify as a percipient fact witness because she is Plaintiff's treating mental health provider. *See* Resp. to Mot. to Exclude at 6-7 (Dkt. 103). Though technically true, that argument misses the point. While treating providers are not required to submit a full expert report under Rule 26 when testifying as to opinions formed during the course of treatment, they are not exempt from the requirements of Rule 702. *See* Fed. R. Civ. P. 26 Advisory Comm. Notes (2010) ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness *and also provide expert testimony under Evidence Rule 702, 703, or 705*. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).") (emphasis added). The cases Plaintiff cites stand for that same proposition, but they importantly do not hold that a treating provider's testimony is non-expert in nature or immune from relevance and reliability scrutiny. To be sure, Plaintiff designated Ms. Bohn as an expert in her disclosures, and the Court must therefore evaluate her testimony under Rule 702 regardless of whether it is also factual in part. *See* Ex. A to Olson Decl. (Dkt. 103-2)

**MEMORANDUM DECISION AND ORDER - 8**

improperly attribute Plaintiff's psychological condition to Defendant's conduct and therefore should be excluded. *See id.* at 6. The Court disagrees and concludes that Ms. Bohn is qualified to testify and that Defendant's challenges go to the weight of her testimony, not its admissibility.

Ms. Bohn's testimony is also relevant. The jury will be tasked with determining the extent of Plaintiff's damages, including emotional and psychological harm allegedly caused by Defendant's defamatory statements. Testimony regarding Plaintiff's mental health diagnosis, symptoms, treatment history, and prognosis may assist the jury in understanding the nature and scope of the claimed injury and in determining damages, if any. Accordingly, Ms. Bohn's testimony satisfies Rule 702's relevance requirement.

The Court additionally finds Ms. Bohn's testimony sufficiently reliable. As a psychotherapist, licensed mental health counselor, and behavior health educator, she is uniquely qualified to diagnose patients with mental impairments, including PTSD. *See, e.g.*, I.C. § 54-3401(10) (practice of professional counseling includes "the application of mental health, psychological, and human development principles in order to … prevent, assess, and treat mental, emotional or behavioral disorders and associated distresses which interfere with mental health[.]"). Unlike an expert retained solely for litigation, Ms. Bohn's opinions are premised upon a course of treatment, repeated clinical evaluations, and an ongoing relationship with Plaintiff. Courts recognize that such medical care provides a reliable basis for diagnostic opinions. *See, e.g.*, *Hardy v. Kish*, 2025 WL 2051775, at *3 (D. Idaho 2025) ("'An expert's specialized knowledge and experience can serve as the requisite facts or data on which they render an opinion.'") (quoting *Elosu*, 26 F.4th at 1024). The Court is satisfied at this time that Ms. Bohn is qualified by education, licensure, and experience to diagnose PTSD and to opine regarding Plaintiff's need for continued treatment. In short, it appears that, professionally speaking, this is exactly what she does. Plaintiff is expected to confirm as much at trial.

**MEMORANDUM DECISION AND ORDER - 9**

Defendant's unsupported argument that defamation cannot constitute a traumatic triggering event sufficient to support a PTSD diagnosis is ultimately a dispute over diagnostic criteria and causation. Whether Plaintiff's experience satisfies the clinical requirements for PTSD are matters on which mental health professions may (or may not) disagree. Such disagreements are appropriately explored through cross-examination and, if Defendant chooses, competing expert testimony. They do not, however, render Ms. Bohn's opinions unreliable for purposes of Rule 702. This is because courts routinely allow expert testimony linking psychological conditions to tortious conduct, including defamation. *See, e.g.*, *Stevens v. Lee*, 2024 WL 729960, at *8 (D. Idaho 2024) ("[W]ith respect to his defamation claim, Stevens may be able to establish – through an expert witness or treatment provider – that the purported diminishment in his congregation caused him to suffer compensable emotional distress."). At bottom, *Daubert* does not require unanimity within a field; nor does it permit the Court to resolve medical disputes that are properly left to the jury.[2]

Accordingly, the Court finds that Ms. Bohn is qualified to testify and that her opinions are based on a sufficiently reliable foundation. Defendant's challenges to her conclusions and to the causal link between Defendant's conduct and Plaintiff's PTSD may be fully addressed through cross-examination and argument at trial, but they do not warrant exclusion of her testimony now. Defendant's Motion to Exclude is therefore denied in this respect.

---

[2] Separately, courts often limit treating providers from opining on causation where such opinions were not formed during the course of treatment. *See Sepe v. Gordon Trucking, Inc.*, 755 Fed. Appx. 668, 670 (9th Cir. 2019) ("Causation testimony by a treating physician is expert opinion, subject to the disclosure and written report requirement detailed in Rule 26(a)(2) if the physician's opinion on causation was formed outside the course of treatment."). But PTSD is an event-linked diagnosis. Thus, in diagnosing PTSD during the course of treatment, a clinician necessarily forms an opinion that a particular stressor produced the condition. Where, as here, the treating provider concludes that defamatory conduct constituted the stressor giving rise to the diagnosis, testimony linking the PTSD to that conduct arises directly from the diagnosis itself and does not exceed the permissible scope of treating physician testimony.

**MEMORANDUM DECISION AND ORDER - 10**

B. **Plaintiff's Motion for Protective Order (Dkt. 110)**

  Plaintiff's Motion for Protective Order seeks to govern the exchange and use of certain confidential and personally sensitive information ahead of the upcoming trial. *See generally* Mot. for PO (Dkt. 110). Plaintiff requests entry of a protective order, substantially similar to the District of Idaho's model protective order, to limit public dissemination of confidential and personally sensitive information, including medical and financial records, that will be disclosed as trial exhibits leading up to trial. *See id*. at 2-4.

  Under Rule 26(c), "any person from whom discovery is sought may move for a protective order," and the Court may, for good cause shown, issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden rests with the moving party to demonstrate good cause for the requested protection. *See In re Roman Cath. Archbishop of Portland in Oregon*, 661 f.3d 417, 424 (9th Cir. 2011). In assessing whether good cause exists, the Court must identify a particularized harm that would result from disclosure and, if such harm is shown, balance the public and private interests at stake. *See id*.

  Plaintiff has met this burden. The materials at issue include medical and financial records that contain sensitive personal information. Public disclosure of these materials would likely result in embarrassment and irreparable harm to Plaintiff, particularly in light of the public attention surrounding the facts of this case and Defendant's prior dissemination of case-related materials on social media.

  The balance of interests further supports entry of a protective order. Any restriction on public access is limited and temporary, applying only to trial and remaining subject to individualized judicial review should the materials later be offered in connection with trial proceedings. By contrast, the harm resulting from premature public disclosure of sensitive

**MEMORANDUM DECISION AND ORDER - 11**

personal information could be immediate and permanent. The proposed protective order closely tracks the District of Idaho's model protective order and includes procedures allowing challenges to confidentiality designations, ensuring that the scope of protection is narrowly tailored.

The Court also notes that, despite not agreeing to a protective order, Defendant has not formally opposed Plaintiff's Motion for Protective Order. Under Local Civil Rule 7.1(f)(1), failure to file a response "may be deemed to constitute a consent to the … granting of [the motion]." Dist. of Idaho Loc. Civ. R. 7.1(f)(1). This fact further supports the Court's above "balance of interests" analysis favoring Plaintiff.

Accordingly, the Court finds that Plaintiff has demonstrated good cause under Rule 26(c) for entry of a protective order. Plaintiff's Motion for Protective Order is therefore granted. Plaintiff's proposed protective order will be separately entered.

C.    **Plaintiff's Motion in Limine (Dkt. 111).**

Plaintiff's Motion in Limine seeks an order prohibiting Defendant from presenting evidence or argument concerning the purported "truth" of defendant's prior statements alleging that Plaintiff had an affair with a student and orchestrated the murders of four University of Idaho students. *See generally* Mot. in Limine (Dkt. 111). Plaintiff contends that, because the Court has already determined liability, such evidence is irrelevant to the sole remaining issue for trial – damages – and would risk confusing and prejudicing the jury. *See id*.

Motions in limine are a procedural mechanism used to limit testimony or evidence in advance of trial in order to streamline proceedings and avoid the introduction of inadmissible or prejudicial material. *See United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). They are "useful tools to resolve issues which would otherwise clutter up the trial," *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017), but are not intended to resolve factual disputes or weigh competing evidence. *C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316,

323 (D.D.C. 2008).  Rulings on motions in limine are inherently provisional and remain subject to revision as the trial unfolds.  *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).  As a result, a ruling on a motion in limine reflects a preliminary evidentiary determination that falls squarely within the Court's discretion.  *See City of Pomona*, 866 F.3d at 1070; *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Applying these principles here, Plaintiff's Motion in Limine is well-taken.  The Court has already determined, as a matter of law, that Defendant's statements accusing Plaintiff of an affair and involvement in the murders were false and defamatory.  *See* 6/6/24 MDO (Dkt. 74).  Liability is no longer in dispute.  The upcoming trial is limited to determining the amount of damages to which Plaintiff is entitled.  Thus, any evidence or argument offered to suggest that Defendant's statements were true – or that there was some factual basis for them – has no bearing on any issue the jury must decide.  Such evidence is therefore not relevant under Federal Rules of Evidence 401 and 402.

Even assuming that such evidence could be framed as marginally relevant, it would nonetheless be excluded under Federal Rule of Evidence 403.  Allowing Defendant to advance well-after-the-fact arguments or evidence concerning the "truth" of the defamatory statements would present a substantial risk of confusing the issues and misleading the jury as to the scope of the trial.  The danger of unfair prejudice is particularly present given the inflammatory nature of the allegations and the likelihood that such evidence would distract from the proper focus of the damages inquiry.  Any minimal probative value is substantially outweighed by these risks, as well as by the prospect of undue delay and a waste of time.

The Court again notes that Defendant has not formally opposed Plaintiff's Motion in Limine.  Under Local Civil Rule 7.1(f)(1), failure to file a response "may be deemed to constitute a consent to the … granting of [the motion]."  Dist. of Idaho Loc. Civ. R. 7.1(f)(1).

**MEMORANDUM DECISION AND ORDER - 13**

Accordingly, in the exercise of its discretion and mindful that its ruling remains subject to revision should circumstances at trial warrant, Plaintiff's arguments are ultimately persuasive. Unless otherwise permitted, Defendant shall not present evidence or argument at trial concerning the purported truth of the defamatory statements involved in this case. Plaintiff's Motion in Limine is therefore granted.

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Exclude Expert Testimony and Evidence of Rebecca Bohn, MA and Rebecca Tallent (Dkt. 102) is GRANTED in part and DENIED in part as follows:

   a. Dr. Tallent may not testify that Plaintiff was in fact damaged, that Plaintiff suffered reputational harm to a particular degree, or that Plaintiff will suffer future reputational harm as result of Defendant's actions. In these respects, Defendant's Motion to Exclude is GRANTED.

   b. Dr. Tallent may testify regarding her qualifications, general principles of reputation and public relations, and how defamatory statements made over social media can impact an individual's professional reputation in academia. She may also describe potential ways in which such harm may manifest. In these respects, Defendant's Motoin to Exclude is DENIED.

   c. Ms. Bohn may testify about her treatment of Plaintiff. In this respect, Defendant's Motoin to Exclude is DENIED.

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 14**

2. Plaintiff's Motion for Entry of Protective Order (Dkt. 110) is GRANTED.

3. Plaintiff's Motion in Limine (Dkt. 111) is GRANTED.



DATED: January 23, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**