Ashley Guillard
msashleyjt@gmail.com
3262 Westheimer Rd, 942
Houston, TX 77098
337.372.3181

Pro-Se Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>                Plaintiff,<br><br>v.<br><br>ASHLEY GUILLARD,<br><br>                Defendant. | Case No. 3:22-cv-00521-REP<br><br>**DEFENDANT ASHLEY GUILLARD'S MEMORANDUM IN SUPPORT OF RULE 12(b)(1) MOTION TO DISMISS FOR WANT OF SUBJECT-MATTER JURISDICTION** |

## I. INTRODUCTION

Defendant Ashley Guillard (Guillard) respectfully moves the Court to dismiss Plaintiff Rebecca Scofield's Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. It is legally certain that the plaintiff cannot recover more than $75,000. First, the Plaintiff has not suffered reputational harm, has not suffered loss of work, and has not suffered admissible mental harm that is caused by the Defendant. Additionally, Plaintiff Rebecca Scofield along with Rebecca Bohn, MA, and Dr. Rebecca J. Tallent, fabricated witness testimony, medical records, and evidence to falsely claim damages in the amount of $1,863,304. The nearly 2 million dollars, or more, (in DKT. 10 the Plaintiff asked the Court to award her more than she requested) is not made in good faith. Lastly, the Plaintiff does not have sufficient, clear, and convincing evidence to prove an award for punitive damages. The Plaintiff

lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The Court must DISMISS the Plaintiff's complaint for want of jurisdiction.

## II.     BACKGROUND

On December 21, 2022, Scofield filed a Complaint for defamation against Guillard (DKT. 1). After not receiving a response to the complaint within 21 days, Scofield filed a Motion for Entry of Default on January 19, 2023 (DKT. 4). Defendant Ashley Guillard filed an Answer to the Complaint on February 16, 2023 (DKT. 7). On February 17, 2023, Scofield filed a Motion for a Default Judgment (DKT. 10). The motion for a default judgment sought "at least $1,863,304" alleging Guillard's "false statements" caused Scofield's promotions, leadership capabilities, and salary increases at the University of Idaho to be jeopardized. Scofield also alleged that Guillard: 1) Jeopardized her publication of book manuscripts, book chapters and articles that were pending review. 2) Jeopardized Scofield's ability to collaborate with co-authors. 3) Limited Scofield's ability to perform new studies and new work regarding LGBTQ populations. 4) Caused Scofield severe mental distress due to receiving *"hate mail"* from *"anti-education groups"* who oppose her work on the LGBTQ community at the University of Idaho. On April 26, 2023, the Court denied Scofield's Motion for a Default Judgment of $1,863,304 or more (DKT. 18). On May 8, 2023, Scofield began receiving therapy from Rebecca Bohn, MA (DKT 102 Exhibit A) receiving a diagnosis of "severe lifelong PTSD requiring life-long treatment". On January 12, 2024, Scofield filed a Motion for Partial Summary Judgment (DKT. 63) and a Motion for Leave to Amend the Complaint to add Punitive Damages (DKT. 64). The Court granted both motions (DKT. 74). On March 15, 2025, Guillard filed a Motion for Reconsideration of Docket 74 based on newly received evidence pursuant to FRCP Rule 60(b)(2). The Court denied the motion for reconsideration and ordered to proceed to trial solely on damages (DKT. 96). The Court set a deadline for Rule 702

Motions for September 2, 2025 (DKT. 100). On September 2, 2025, Defendant Ashley Guillard filed a Motion to Exclude Expert Testimony of Rebecca Bohn, MA, and Dr. Rebecca J. Tallent (DKT 102). Plaintiff Rebecca Scofield filed a Response to the Motion opposing it on September 16, 2025. Guillard replied to the response on September 23, 2025; also challenging the amount in controversy and jurisdiction. On January 23, 2026, The Court granted in part and denied in part the Defendant's Motion to Exclude the Expert Testimony and Evidence of Rebecca Bohn, MA, and Rebecca J. Tallent (DKT. 113). Now before the Court is Defendant's 12(b)(1) Motion to Dismiss For Want Of Subject Matter Jurisdiction.

### III. LEGAL STANDARD

The Plaintiff claimed the Court had subject matter jurisdiction of the Complaint under 28 U.S.C. § 1332 due to the diversity citizenship of the Plaintiff, Rebecca Scofield, and the Defendant, Ashley Guillard; also claiming that the amount in controversy was over $75,000 exclusive of interest and court costs. See DKT. 1. Guillard challenges the amount in controversy using facts to prove the amount in controversy was less than $75,000 at the time of the filing. Guillard also argues that the Court lacks legal authority to hear the Complaint, and that the sum claimed by the Plaintiff was made in bad faith. Under the Federal Rules of Civil Procedure, a motion to dismiss for lack of subject matter jurisdiction is considered a favored defense and may be raised at any point in the litigation process, even if the parties had previously argued that subject-matter jurisdiction existed. See Fed. R. Civ. Proc. 12(b)(1). *The sum claimed by the plaintiff controls if the claim is apparently made in good faith. The court looks at the circumstances "at the time the complaint is filed".* See Stewart v. Tupperware Corp., (1st Cir. 2004). See also St. Paul Mercury Indemnity Co. v. Red Cab Co (1938). *If, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is*

*satisfied to a like certainty that the plaintiff never was entitled to recover that amount, ... the suit will be dismissed.* Id. Additionally, it appears to a legal certainty that the claim is really for less than $75,000; justifying dismissal of the Complaint.

## IV.     ARGUMENT

On December 21, 2022, Scofield claimed that the amount of damages she sustained due to alleged defamation of character was over $75,000. More specifically, in DKT. 10, she claimed the amount of damages she sustained and seek to recover is "at least $1,863,304". Scofield alleged that Guillard's "false statements": 1) Caused Scofield promotions, leadership capabilities, and salary increases at the University of Idaho to be jeopardized. 2) Jeopardized her publication of book manuscripts, book chapters and articles that were pending review. 3) Jeopardized Scofield's ability to collaborate with co-authors. 4) Limited Scofield's ability to perform new studies and new work regarding LGBTQ populations. Of the $1,863,304, Scofield requested *$863,304* for damages to her personal and professional reputation (the equivalent of 10 years of her current compensation at the University of Idaho (UI)). See DKT. 10. The alleged damages were a complete fabrication and blatant lie. Scofield had not suffered any damages. Guillard's alleged defamation did not negatively impact Scofield's personal nor professional reputation.

**A. The Amount In Controversy was made in Bad Faith: Scofield Did Not Suffer Damages to her Professional Career.**

Scofield claimed damages in the amount of $863,304, 10 years of salary at UI, for damages to her professional career. The amount requested for damages was completed fabricated. Scofield did not suffer any damages to her career. There was no indication of threats to the Plaintiff's career. The University of Idaho did not investigate the allegations Guillard made about Scofield. Scofield's promotions, leadership capabilities, and salary increases at the University of Idaho were

not in jeopardy. In fact, Scofield was completely supported by her colleagues, teachers' unions, and the UI. Dr. Rebecca Tallent, Scofield's colleague at the UI, wrote a statement on her behalf, putting her own career and freedom on the line by fabricating damages, under oath, to help Scofield, obtain damages. See Exhibit A. Next, the University of Idaho's chapter of the American Federation of Teachers, the Idaho Federation of Teachers, and the National Legal Aid Committee with the American Federation of Teachers made financial contributions to Scofield's legal fees, providing a significant amount of financial support. See Exhibit B. Additionally, students wrote supporting comments to Scofield and donated to her Go Fund Me fundraising campaign. Id. There is absolutely no indication or evidence that the Plaintiff's career was in jeopardy at the University of Idaho at the time of the Complaint nor afterwards. The $863,304 claim for damages in the amount of 10 years of salary at UI was completely unreasonable, fabricated and intentionally dishonest. There is no other explanation other than the fact that Scofield's request for damages to her career was made in bad faith.

**B. The Amount In Controversy was made in Bad Faith: Scofield Did Not Suffer Any Damages To Her Personal Nor Professional Reputation.**

Scofield did not suffer any damages to her personal nor professional reputation. In addition to being supported the University of Idaho, staff, students, and the Teachers Union she was also supported by Moscow Police Department (MPD), strangers online, social media influencers, and her family. MPD did not believe Guillard's allegations about Scofield's role in the homicides. She was not investigated by the police. See Exhibit C. YouTubers fundraised for Scofield. Students at the University of Idaho and the public also gave Scofield $22,741 in financial donations to support her. See Exhibit B. There was never any threat to Scofield's reputation or finances at all due to Guillard's videos. At the time of the Complaint and forward, there is no indication of any threat to

Scofield's reputation. The public and academia did not believe in tarot readings, oracles card readings, claircognizance, and Guillard's ability to discern information using those tools. Scofield's request for damages to her career and reputation was made in bad faith because she knowingly had not suffered any damages.

**C. The Amount In Controversy was made in Bad Faith: Scofield's Initial $1,000,000 Mental Health Claim Is Fabricated With No Connection to Guillard.**

At the filing of the Complaint, Scofield claimed *"severe mental distress" due to receiving "hate mail" from "anti-education groups" who oppose her work on the LGBTQ community at the University of Idaho*. She motioned the Court to award her at least $1,000,000 for pain and suffering. See DKT. 10. First, Guillard is not affiliated with any "anti-education" hate groups. Guillard is master's degree educated and a member of a sorority that promotes education. See Exhibit D. Guillard is not responsible for any hate mail Scofield allegedly received. Not to mention, Scofield has not provided any evidence of the alleged hate mail. Nevertheless, even if she had received hate mail from anti-education hate groups. A Complaint should have been filed against the "anti-education hate groups" who allegedly sent her the hate mail; not Guillard. The claim against Guillard for $1,000,000 in mental health damages is deceptive. Scofield understands the *"anti-education groups"* have no affiliation with Guillard. She admits the alleged *"anti-education groups"* targeted her due to her work on the LGBTQ community at the University of Idaho. See DKT. 10. Scofield's work with the LGBTQ community at the UI occurred before Guillard's allegations against Scofield. See Exhibit E. Ergo, the alleged hate mail that allegedly caused Scofield to "cry often" and emotional distress was pre-existing to Guillard's allegations against Scofield. The claim against Guillard for $1,000,000 in mental health damages is

unsupported, lacks evidence and is illogical. There is no reasonable explanation other than the fact that Scofield's request for $1,000,000 damages to her mental health was made in bad faith.

**D. Scofield's Mental Health Diagnosis of Post-Traumatic Stress Disorder Was Made in Bad Faith.**

Under Idaho Code Section 72-451, which covers psychological accidents and injuries, "Post-traumatic stress injury" for first responders, the legal definition is tied directly to medical standards. More specifically, according to ID Code § 72-451 (2025):

> (6) As used in subsection (4) of this section: (a) "Post-traumatic stress injury" means a disorder that meets the diagnostic criteria for post-traumatic stress disorder or post-traumatic stress injury specified by the American psychiatric association's diagnostic and statistical manual of mental disorders, fifth edition revised, or any successor manual promulgated by the American psychiatric association.

Pursuant to the American Psychiatric Association Post-Traumatic Stress Disorder (PTSD) is legally recognized as a mental health condition or disability arising from exposure to actual or threatened death, serious injury, or sexual violence, causing significant impairment to daily functioning for at least one month. It is often classified as an anxiety disorder that can be triggered by traumatic events, such as accidents, abuse, or disasters. See Exhibit F. According to the American Psychiatric Association[1] to be diagnosed with PTSD the mental patient must meet the following criteria:

  A. Exposure to actual or threatened death, serious injury, or sexual violence in one (or more) of the following ways: 1) Directly experiencing the traumatic event(s). 2) Witnessing, in person, the event(s) as it occurred to others. 3) Learning that the traumatic event(s) occurred

---

[1] Source: APA, 2013a, pp. 271–272; Exhibit F

DEFENDANT'S MEMO IN SUPPORT OF RULE 12(b)(1) MOTION TO DISMISS         7

to a close family member or close friend. In cases of actual or threatened death of a family member or friend, the event(s) must have been violent or accidental. 4) Experiencing repeated or extreme exposure to aversive details of the traumatic event(s) (e.g., first responders collecting human remains; police officers repeatedly exposed to details of child abuse). Note: Criterion A4 does not apply to exposure through electronic media, television, movies, or pictures, unless this exposure is work related.

It is medically and legally impossible for Scofield to get post-traumatic stress disorder from defamatory statements. First defamation is not a traumatic event. It does not meet the diagnostic criteria of exposure to actual or threatened death, serious injury, or sexual violence pursuant to the Diagnostic And Statistical Manual Of Mental Disorders (DSM-5). Additionally, pursuant to the American Psychiatric Association, Scofield cannot get PTSD from electronic media or Tik-Tok videos. Additionally, Scofield would also have to have presence of one (or more) intrusion symptoms associated with the traumatic event(s), beginning after the traumatic event(s) occurred. For example, intrusive distressing memories of the traumatic event(s), distressing dreams, flashbacks and more. See PTSD Diagnostic Criterion B, C, D, and E Id. The duration of the disturbance (Criteria B, C, D and E) must be more than 1 month to be diagnosed with PTSD. Scofield filed the Complaint for defamation against Guillard on December 21, 2022; less than 30 days after Guillard's first TikTok video alleging Scofield's involvement in the King Road Homicides. It is not possible for her to have a medical diagnosis for PTSD at that time because the alleged defamatory videos did not meet the criteria of a traumatic event, any alleged disturbances she experienced did not last more than 1 month at that time, and the allegations were made by electronic media. Pursuant to ID Code § 72-451 (2025), Scofield's PTSD diagnosis is not a proper medical diagnosis and does not meet the criteria for compensation. At the filing of the Complaint,

and onwards, there is only one explanation for the Plaintiff to claim $1,000,000 in severe mental health damages due to Guillard's alleged defamatory statements; Rebecca Scofield and Rebecca Bohn, MA lied. The claim was made in bad faith.

**E. It is Legally Certain that the Amount in Controversy is Less Than $75,000.**

The amount in controversy of $1,000,000 for "lifelong mental health damages" cannot be recovered. It is legally impossible pursuant to ID Code § 72-451 (2025):

> (e) Any permanent impairment or permanent disability for psychological injury recognizable under the Idaho worker's compensation law must be based on a condition sufficient to constitute a diagnosis using the terminology and criteria of the American psychiatric association's diagnostic and statistical manual of mental disorders, third edition revised, or any successor manual promulgated by the American psychiatric association, and must be made by a psychologist or psychiatrist duly licensed to practice in the jurisdiction in which treatment is rendered;... and (2) Nothing in subsection (1) of this section shall be construed as allowing compensation for psychological injuries from psychological causes without accompanying physical injury.

First, the Plaintiff's mental health damages for Post-Traumatic Stress Disorder cannot be recovered from Guillard because it is not a proper diagnosis. Defamation is not a traumatic event that can cause PTSD according to the DSM-5. Second, the PTSD diagnosis was not made by a psychologist or psychiatrist duly licensed to practice in the jurisdiction in which treatment is rendered required by ID Code § 72-451 (2025). Rebecca Bohn, MA, Scofield's friend, and mental health counselor, is licensed as a mental health counselor in the state of Washington. See Exhibit G. She is not a psychologist or psychiatrist duly licensed to practice in Idaho. Scofield has no evidence allowed

by Idaho law to claim $1,000,000 in mental health damages. It is legally certain that Scofield cannot claim the alleged mental health damages.

**F. It is Legally Certain that Scofield Cannot Be Granted Punitive Damages: Scofield Fails to Meet All Elements of a Defamation Claim in Idaho & Lacks Clear and Convincing Evidence to Support A Claim for Punitive Damages**

Governed by Idaho Code § 6-1604, punitive damages are awarded only in rare cases of extremely reckless, malicious, or fraudulent conduct, requiring proof by "clear and convincing" evidence. In Davis v. Blast Properties, Inc. (2024), The Supreme Court of the State of Idaho held that Idaho Code section 6-1604(2) requires that the evidence submitted for punitive damages is: (1) admissible at trial; and (2) "sufficient" to support an award of punitive damages. The word "sufficient" means that the claim giving rise to the request for punitive damages must be legally cognizable and the evidence presented must be substantial. The court clarified that the jury must follow the clear and convincing evidentiary standard. The Plaintiff's claims for defamation are not supported by clear and convincing evidence and fail to meet all elements of a defamation claim. First, pursuant to Idaho Jury Instructions, IDJI 4.82, in order to prove a claim of defamation, the plaintiff has the burden of proving each of the following elements; 1) The defendant communicated information concerning the plaintiff to others; and 2) The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and 3) The information was false; and 4) The defendant knew it was false, or reasonably should have known that it was false; and 5) The plaintiff suffered actual injury because of the defamation; and 6) The amount of damages suffered by the plaintiff. See also Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Adair v. Freeman, 92 Idaho 773, 451 P.2d 519.

Scofield defamation claims fails to meet element 2 of a defamation claim. Guillard's allegations against Scofield did not cause her honesty, integrity, virtue, or reputation to be questioned. The public, the UI, MPD did not believe Guillard; likely due to Guillard's accusations against Scofield being based on tarot and oracle card readings. This is evidenced by MPD's statement that they did not believe Scofield was involved with the death of the four students; without any investigation into the allegations (Exhibit C). This is also evidenced by the plethora of support Scofield received on social media from strangers who do not know her yet who referred to her as that "innocent professor" or that "poor professor", automatically believing that Guillard's allegations regarding Scofield are false. This is also evidenced by the University of Idaho failure to even consider investigating Scofield; and the Teachers unions choosing to pay Scofield's legal fees. Scofield has not provided any evidence at all that her reputation suffered any harm. Nor has she provided any evidence of public hatred and ridicule. For punitive damages to be awarded. Scofield must meet all elements of a defamation claim with clear and convincing evidence. At element 2, Scofield fails this test.

Scofield fails to meet element 3 of a defamation claim, that the statement made against her is false. Scofield has not provided clear and convincing evidence that the statements Guillard made are false. Instead, at the summary judgment phase, the Court allowed Scofield to meet a lesser standard by requiring Guillard to prove that the statements made against Scofield are true. However, to prove punitive damages, it is the Plaintiff's burden to prove with clear and convincing evidence that the statements made against her are false. See Idaho Code section 6-1604(2). Scofield lacks clear and convincing evidence altogether. Ergo failing this element of a defamation claim.

Scofield fails to meet element 4 of a defamation claim that Defendant Ashley Guillard knew the statements she made about Scofield were false, or reasonably should have known that they

were false. Scofield has not provided any evidence that Guillard made an intentional false statement. Instead, Guillard has evidence that she believes her statements to be true and has acted to find evidence to prove the truth of those statements. First, Guillard sent tips to the FBI tip line giving law enforcement information that she believed to be helpful to the homicide case. See Exhibit H. Second, Guillard sent a subpoena to Meta Platforms seeking evidence that she believed would prove Scofield's connection to the victims and co-conspirators to the murders. See Exhibit I. The Court ordered Meta Platforms, Inc to not comply with the subpoena (DKT. 55). Third, Guillard sought access to the public records from the State of Idaho on three different occasions. See Exhibit J. All three occasions the City of Moscow and the State of Idaho denied Guillard access to the requested documents. See Exhibit K. Fourth, Guillard put in a Freedom of Information Act request to the University of Idaho specifically requesting the names of the academic advisors for the four homicide victims. The University of Idaho denied that request. See Exhibit L. Fifth Guillard found evidence in the public records that substantiated many of the statements she made in her TikTok videos regarding the King Road Homicides. See DKT. 92. Additionally, Guillard provided evidence giving more information on the origination and purpose of using esoteric means to solve mysterious deaths. See Exhibit M. On the contrary Scofield has no evidence that Guillard made intentional false statements. Scofield fails to meet the fourth element of a defamation claim.

Scofield fails to meet the fifth and sixth element of a defamation claim in Idaho which requires 5) The Plaintiff to suffer an actual injury because of the defamation; and 6) The amount of damages suffered by the plaintiff. Scofield has not provided any admissible clear and convincing evidence of actual damages. Scofield has not suffered any reputational injury to her professional career. Scofield has not suffered any loss of wages. Additionally, Scofield's claim of a mental health

injury of PTSD is fabricated, unsupported by the APA, unsupported by the DSM-5, is not properly diagnosed by a licensed psychiatrist nor psychologist and does not meet the requirements of ID Code § 72-451. Scofield's entire claim for damages is fabricated and perjurious. She fails to meet element 5 and 6 of a defamation claim.

### G. It is Legally Impossible for Scofield to Be Granted Punitive Damages: Scofield Lacks Clear and Convincing Evidence to Prove Malice

A defendant can overcome the presumption by demonstrating they acted in good faith, with an honest belief that their statement was true, and with justifiable motives. Guillard provided evidence of good faith that she believed her statements regarding Scofield's involvement with the homicide victims to be true. Again, Guillard submitted tips to the FBI Tip-line, sought more information from the public records, and sought information from the University of Idaho. Guillard also provided proof that several of her Tik-Tok tarot/oracle card reading videos regarding the Idaho Four Homicides were substantially true. At the time of the Complaint and of the alleged defamatory videos, no one was arrested for the crimes, and MPD sought more information from the public. See Exhibit C. With an honest belief that Scofield was involved with the quadruple homicide, it is a reasonable act to inform the public; considering murder is a matter of public safety and interest. Guillard provided evidence that she acted with good intent and logical reasoning. Scofield has not provided any evidence that Guillard acted with malicious intent or reckless disregard.

## V.    CONCLUSION

On December 21, 2022, the Plaintiff, Rebecca Scofield, filed a Complaint with 2 claims of defamation against the Defendant, Ashley Guillard. She filed the Complaint without actual damages, without suffering any reputational harm, and without suffering any losses. She then

fabricated a narrative that portrayed her as a victim. Later recruiting her colleagues and friends Rebecca Bohn, MA, and Dr. Rebecca Tallent of the University of Idaho, to lie under oath to substantiate Scofield's victim narrative with fabricated damages. Except the federal and Idaho laws protect citizens against fabricated mental health claims (ID Code § 72-451). It is a legal certainty that Scofield does not have $75,000 in damages caused by Guillard. It is also certain that Scofield submitted claims totaling in nearly 2 million dollars in damages in bad faith. The Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Court must DISMISS the Plaintiff's complaint for want of jurisdiction with prejudice pursuant to Rule 12(b)(1).

DATED: February 5, 2026

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I served a copy of the foregoing via CM/ECF on the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: February 5, 2026.

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant
