UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>         Plaintiff,<br><br>v.<br><br>ASHLEY GUILLARD,<br><br>         Defendant. | Case No. 3:22-cv-00521-REP<br><br>**DEFENDANT ASHLEY GUILLARD'S TRIAL BRIEF** |

Defendant Ashley Guillard respectfully submits her trial brief as directed by the Court's order (DKT. 100).

## I.   INTRODUCTION

In trial, Guillard anticipates the opportunity to present facts to the factfinders that prove that 1) Guillard's Tik-Tok and YouTube Videos were her attempt to help get justice for the four students who were killed near The University of Idaho campus. 2) Guillard has reasonable and rational experiences that causes her to believe that her esoteric knowledge and messages are accurate. 3) Guillard has reason to believe that Rebecca Scofield is deceptive. 4) Guillard did everything she could to get evidence to prove that the statements she made are true but could also prove that her statements are false; yet her access to the evidence was denied. 5) Scofield was not damaged temporarily nor permanently by Guillard's Tik-Tok videos. 6) Rebecca Scofield partnered with her friends and witnesses, Rebecca Bohn, MA and Dr. Rebecca Tallent to file false evidence to support Scofield's claim for damages. 7) Guillard acted on behalf of the deceased to advocate on their behalf. 8) Scofield is playing victim, using University of Idaho Teachers Unions funds, and abusing the judicial system, in an attempt to steal $2,000,000 in fabricated damages from Ashley Guillard.

DEFENDANT ASHLEY GUILLARD'S TRIAL BRIEF                                                        1

## II.     BACKGROUND

On November 13, 2022, four students were brutally murdered at the University of Idaho. The homicides garnered the attention of the public who desperately wanted the case to be solved. At the request of a Tik-Tok user Guillard began conducting a psychic investigation using the publicly available information on the case, tarot cards, oracle cards and her gift of claircognizance to get answers. After her investigation Guillard believed that Rebecca Scofield ordered the murder of the four students; partnering with 2 male students to execute the murders. On December 21, 2022, Scofield filed a Complaint for defamation against Guillard (DKT. 1). After not receiving a response to the complaint within 21 days, Scofield filed a Motion for Entry of Default on January 19, 2023 (DKT. 4). Defendant Ashley Guillard filed an Answer to the Complaint on February 16, 2023 (DKT. 7). On February 17, 2023, Scofield filed a Motion for a Default Judgment (DKT. 10). The motion for a default judgment sought "at least $1,863,304" alleging Guillard's "false statements" caused Scofield's promotions, leadership capabilities, and salary increases at the University of Idaho to be jeopardized. Scofield also alleged that Guillard:  1) Jeopardized her publication of book manuscripts, book chapters and articles that were pending review. 2) Jeopardized Scofield's ability to collaborate with co-authors. 3) Limited Scofield's ability to perform new studies and new work regarding LGBTQ populations. 4) Caused Scofield severe mental distress due to receiving *"hate mail"* from *"anti-education groups"* who oppose her work on the LGBTQ community at the University of Idaho. On April 26, 2023, the Court denied Scofield's Motion for a Default Judgment of $1,863,304 or more (DKT. 18). On May 8, 2023, Scofield began receiving therapy from Rebecca Bohn, MA (DKT 102 Exhibit A) receiving a diagnosis of  "severe lifelong PTSD requiring life-long treatment". On January 12, 2024, Scofield filed a Motion for Partial Summary Judgment (DKT. 63) and a Motion for Leave to Amend the

Complaint to add Punitive Damages (DKT. 64). The Court granted both motions (DKT. 74). On March 15, 2025, Guillard filed a Motion for Reconsideration of Docket 74 based on newly received evidence pursuant to FRCP Rule 60(b)(2). The Court denied the motion for reconsideration and ordered to proceed to trial solely on damages (DKT. 96). The Court set a deadline for Rule 702 Motions for September 2, 2025 (DKT. 100). On September 2, 2025, Defendant Ashley Guillard filed a Motion to Exclude Expert Testimony of Rebecca Bohn, MA, and Dr. Rebecca J. Tallent (DKT 102). Plaintiff Rebecca Scofield filed a Response to the Motion opposing it on September 16, 2025. Guillard replied to the response on September 23, 2025; also challenging the amount in controversy and jurisdiction. On January 23, 2026, The Court granted in part and denied in part the Defendant's Motion to Exclude the Expert Testimony and Evidence of Rebecca Bohn, MA, and Rebecca J. Tallent (DKT. 113). February 5, 2026, the Defendant filed a Rule 12(b)(1) Motion to Dismiss For Want Of Subject Matter Jurisdiction (DKT. 117). On February 5, 2026, a pre-trial hearing was held (DKT. 116). The Court ordered expedited responses and replies to the Defendants Motion to Dismiss and anticipated Motion for a Continuance; all by February 13, 2026 (DKT. 118). On February 6, 2026, Guillard filed the Motion for a Continuance (DKT. 120). The Plaintiff responded on February 9, 2026 (DKT. 121 and DKT. 122). The Defendant replied to the response on February 11, 2026 (DKT. 123). The Court denied the Motion for a Continuance and the Defendant's Motion to Dismiss (DKT. 124) on February 15, 2026. Pre-trial conference is scheduled on February 23, 2026, in Boise. Jury Trial is set for 2/24/2026 09:00 AM in Boise.

### III.    LEGAL STANDARD

**Regarding Scofield's Mental Health Damage Claims:** Scofield cannot recover damages for alleged Post Traumatic Stress Disorder. Under Idaho Code Section 72-451, which covers psychological accidents and injuries, "Post-traumatic stress injury" for first responders, the legal

definition is tied directly to medical standards. More specifically, according to ID Code § 72-451 (2025):

> (6) As used in subsection (4) of this section: (a) "Post-traumatic stress injury" means a disorder that meets the diagnostic criteria for post-traumatic stress disorder or post-traumatic stress injury specified by the American psychiatric association's diagnostic and statistical manual of mental disorders, fifth edition revised, or any successor manual promulgated by the American psychiatric association.

Pursuant to the American Psychiatric Association Post-Traumatic Stress Disorder (PTSD) is legally recognized as a mental health condition or disability arising from exposure to actual or threatened death, serious injury, or sexual violence, causing significant impairment to daily functioning for at least one month. It is often classified as an anxiety disorder that can be triggered by traumatic events, such as accidents, abuse, or disasters. See Exhibit F. According to the American Psychiatric Association[1] to be diagnosed with PTSD the mental patient must meet the following criteria:

A. Exposure to actual or threatened death, serious injury, or sexual violence in one (or more) of the following ways: 1) Directly experiencing the traumatic event(s). 2) Witnessing, in person, the event(s) as it occurred to others. 3) Learning that the traumatic event(s) occurred to a close family member or close friend. In cases of actual or threatened death of a family member or friend, the event(s) must have been violent or accidental. 4) Experiencing repeated or extreme exposure to aversive details of the traumatic event(s) (e.g., first responders collecting human remains; police officers repeatedly exposed to details of child

---

[1] Source: APA, 2013a, pp. 271–272; Exhibit F

DEFENDANT ASHLEY GUILLARD'S TRIAL BRIEF                                                                 4

abuse). Note: Criterion A4 does not apply to exposure through electronic media, television, movies, or pictures, unless this exposure is work related.

Pursuant to ID Code § 72-451 (2025):

(e) Any permanent impairment or permanent disability for psychological injury recognizable under the Idaho worker's compensation law must be based on a condition sufficient to constitute a diagnosis using the terminology and criteria of the American psychiatric association's diagnostic and statistical manual of mental disorders, third edition revised, or any successor manual promulgated by the American psychiatric association, and must be made by a psychologist or psychiatrist duly licensed to practice in the jurisdiction in which treatment is rendered;... and (2) Nothing in subsection (1) of this section shall be construed as allowing compensation for psychological injuries from psychological causes without accompanying physical injury.

**Regarding Scofield's Actual Damage Claims:** Scofield did not suffer actual damages. Compensatory damages in Idaho must be proven by proof of actual financial losses and evidence of the cause.

**Regarding Scofield's Punitive Damage Claims:** Scofield cannot recover punitive damages. Governed by Idaho Code § 6-1604, punitive damages are awarded only in rare cases of extremely reckless, malicious, or fraudulent conduct, requiring proof by "clear and convincing" evidence. In Davis v. Blast Properties, Inc. (2024), The Supreme Court of the State of Idaho held that Idaho Code section 6-1604(2) requires that the evidence submitted for punitive damages is: (1) admissible at trial; and (2) "sufficient" to support an award of punitive damages. The word "sufficient" means that the claim giving rise to the request for punitive damages must be legally cognizable and the evidence presented must be substantial. The court clarified that the jury must

follow the clear and convincing evidentiary standard. Scofield fails to provide clear and convincing evidence that Guillard acted maliciously. Scofield fails to provide evidence that Guillard made an intentional false statement.

## IV.    ISSUES AT TRIAL

The trial is solely on damages. However, Scofield lacks clear and convincing evidence that Guillard acted maliciously to obtain an award for punitive damages. Guillard will submit clear and convincing evidence that proves she believed her statements to be true, acted to ensure public safety and for justice for the four students. Scofield lacks actual damages and fails to connect alleged non-economic damages to Guillard's Tik-Tok videos. Additionally, Scofield does not meet the criteria for compensation for a mental injury pursuant to ID Code § 72-451 (2025). Lastly, Scofield's attempt to obtain, by court order, $2,000,000 in falsified damages impeaches her credibility. Rebecca Bohn, MA's attempt to help Scofield by providing intentionally misleading testimony, and fabricated medical documents falsely claiming Scofield is permanently mentally impaired with PTSD due to alleged defamatory Tik-Tok videos impeaches her credibility. Dr. Rebecca Tallent's attempt to help Scofield by providing intentionally misleading testimony also impeaches her credibility.

DATED: February 22, 2026

/s/ Ashley J. Guillard  
Ashley J. Guillard  
Pro-Se Litigant

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2026, I served a copy of the foregoing via CM/ECF on the Registered Participants as follows:

Cory M. Carone: cory.carone@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com;

Wendy J. Olson: wendy.olson@stoel.com, docketclerk@stoel.com, tracy.horan@stoel.com.

DATED: February 22, 2026.

/s/ Ashley J. Guillard
Ashley J. Guillard
Pro-Se Litigant
