Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
Cory M. Carone, ISB No. 11422
*cory.carone@stoel.com*
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA SCOFIELD,<br><br>          Plaintiff,<br><br>    v.<br><br>ASHLEY GUILLARD,<br><br>          Defendant. | Case No. 3:22-cv-00521-REP<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES** |

## I.    INTRODUCTION

Having prevailed on summary judgment on her defamation claims and having been awarded $10 million in compensatory and punitive damages at trial, Plaintiff Rebecca Scofield now seeks her reasonable attorney fees in the amount OF$163,719.10 under Federal Rule of Civil Procedure 54(d), Idaho Rule of Civil Procedure 54(e), and Idaho Code § 12-121. Plaintiff's request is based on the records and files in this matter and on the Affidavit of Wendy J. Olson in Support of Plaintiff's' Motion for Attorney Fees ("Olson Fees Aff.") filed contemporaneously herewith.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2)(B) provides that a motion for attorney's fees must be filed no later than 14 days after the entry of judgment and must specify the judgment and the statute, rule, or other grounds entitling the movant to the award. Fed. R. Civ. P. 54(d)(2)(B)(i),(ii). In diversity jurisdiction cases, substantive state law on attorney's fees applies. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975); *MRO Communications, Inc. v. American Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) ("In an action involving state law claims, we apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.")

Under Idaho law, a court may award attorney fees to a prevailing party if provided for by any statute or contract. Idaho R. Civ. P. 54(e)(1). A trial court's determination of the prevailing party is within the court's discretion and will be reviewed for an abuse of discretion. *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 830, 367 P.3d 208, 225 (2016)(*Syringa II*)(quoting *Hobson Fabricating Corp. v. SE/Z Constr., LLC*, 154 Idaho 45, 49, 294 P.3d 171, 175 (2012)). A district court also exercises its discretion in awarding attorney fees, and that award is subject to review for an abuse of discretion. *Bryan Trucking, Inc. v. Gier*, 160 Idaho 422, 425, 374 P.3d 585, 588 (2016)(quoting *Idaho Transp. Dep't v. Ascorp., Inc.*, 159 Idaho 138, 140, 357 P.3d 863, 865 (2015)).

Idaho Code § 12-121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued, or defended frivolously, unreasonably or without foundation." Under this standard, the Court looks at "whether the losing party's position is so plainly fallacious as to be deemed frivolous, unreasonable, or without foundation." *Doble v. Interstate Amusements, Inc.*, 160 Idaho 307, 308-09, 372 P.3d 362, 363-64 (2016)(citations omitted)(internal quotation marks omitted).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES - 2

Whether an action was brought, pursued, or defended frivolously, unreasonably or without foundation is a matter within the broad discretion of the trial court. *Etcheverry Sheep Co. v. J.R. Simplot Co.*, 113 Idaho 15, 19, 740 P.2d 57, 61 (1987). The Court can take a holistic view of the litigation to determine whether the standard under Idaho Code § 12-121 has been met, *Fitzpatrick v. Kent*, 166 Idaho 365, 373, 458 P.3d 943, 951 (2020), including whether a party took actions that increased litigation costs. *Millard v. Talburt*, 544 P.3d 748, 763 (2024).

## III.    ARGUMENT

This Court should award Professor Scofield her attorney's fees and costs. Professor Scofield is the prevailing party. Defendant Ashely Guillard defended this case frivolously, unreasonably, and without foundation.  Ms. Guillard's actions repeatedly increased the costs of litigation. She brought frivolous counterclaims, repeatedly challenged the court's jurisdiction, failed to meet deadlines, and brought a last-minute motion to continue. She repeatedly testified and admitted that her false statements lacked any basis in fact. Accordingly, an award of fees and costs is appropriate.

### A.    Professor Scofield is the Prevailing Party.

In determining which party to an action is a prevailing party, a trial court "shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." See *Syringa II*, 159 Idaho at 831 (citing Idaho Rule of Civil Procedure 54(d)(1)(B)). Here, Professor Scofield is plainly the prevailing party. This Court entered summary judgment on both of her claims as to liability on June 6, 2024, ECF No. 74, and a jury awarded her damages of $10 million in a verdict entered on February 27, 2026.  This Court entered final judgment on that verdict on March 5, 2026. ECF No. 149. Professor Scofield obtained all of the relief she was seeking and a significant damages award.

**B.      An Award of Fees is Warranted Under Idaho Code § 12-121.**

The Court can take a holistic view of the litigation to determine whether the standard under Idaho Code § 12-121 has been met, *Fitzpatrick v. Kent*, 166 Idaho 365, 373, 458 P.3d 943, 951 (2020), including whether a party took actions that increased litigation costs. *Millard v. Talburt*, 173 Idaho 533, 548, 544 P.3d 748, 763 (2024); *see also Turner v. Willis*, 116 Idaho 682, 685, 778 P.2d 804, 807 (1989)(in awarding fees under section 12-121, "[t]he frivolity and unreasonableness of a defense is not to be examined only in the context of trial proceedings. The entire course of the litigation will be taken into account.")

Ms. Guillard routinely took actions that increased litigation costs. As an initial matter, Professor Scofield filed this action only because Ms. Guillard refused to stop making and posting TikTok videos with false statements about her in response to two cease and desist letters sent through counsel. *See* Plaintiff's Trial Exhibits 19, 20; ECF 1, ¶¶ 25, 30. Ms. Guillard acknowledged receiving these letters, even making disparaging TikToks about them.  See Plaintiff's Trial Exhibits 9, 43.

The docket is likewise replete with Ms. Guillard's actions that delayed the litigation and increased costs.  For example, Ms. Guillard initially failed to answer within the time limit established by rule, and the Clerk entered default. ECF No. 5. Only then did Ms. Guillard file her answer, counterclaims, and request relief from default judgment.  ECF Nos. 6, 7. Although the Court allowed Ms. Guillard's late-filed answer ECF No. 18, the Court also ultimately also granted Professor Scofield's motion to dismiss Ms. Guillard's counterclaims – including patently frivolous counterclaims against Professor Scofield's counsel. ECF No. 49. Although Ms. Guillard consented to have this case heard by this Court, ECF No. 17-1, once this Court ruled against her, she repeatedly challenged those decisions, sought reconsideration, filed objections, or sought to have

a different judge, including an Article III district court judge, be assigned to the matter. See, e.g., ECF Nos.50, 75, 77, 81, 92, 97. Each of these motions not only required Professor Scofield to incur additional attorney's fees and costs to oppose these motions (see ECF Nos. 51, 80, 82, 83, 93), but also significantly delayed the ultimate resolution of this case. Indeed, it took five months for the District Court to resolve and deny Ms. Guillard's motion for reassignment to a district court judge. ECF No. 88.

Ms. Guillard also routinely declined to participate in a joint settlement conference, facilitate scheduling, or take any other steps toward resolution of the case short of trial.  ECF No. 91 at 2; ECF No. 98. She failed to meet pretrial filing deadlines in October of 2025 while she was in Thailand and other locations outside of the United States.  She engaged in a last-ditch effort to delay or deny to Professor Scofield her long-awaited trial on damages by filing a third motion to dismiss for lack of diversity jurisdiction (ECF No. 117; see also ECF Nos. 59, 89) and a last-minute motion to continue. (ECF No. 120).  Professor Scofield was required to expend additional attorney's fees to respond and on a shortened time period in light of the trial date just over two weeks away. (ECF Nos. 121, 122).

Ms. Guillard's litigation positions throughout the proceedings were frivolous. As the Court noted in its memorandum decision and order granting Professor Scofield's motion for summary judgment as to liability, Ms. Guillard had no evidence to show her statements were true (ECF No. 74 at 17) and the evidence put forward by Professor Scofield highlighted "the complete lack of any corroborating support for Defendant's statements." *Id.* at 18. At trial, Ms. Guillard doubled down on the lack of corroboration for her false statements. She asserted that no facts were necessary – just her intuition. Moreover, she used the litigation to repeat her false and defamatory statements about Professor Scofield in her pleadings. *See, e.g.*, ECF No. 35 at 2 ("Rebecca Scofield

planned, initiated, ordered, and executed the murder of four University of Idaho Students who were killed in Moscow Idaho on November 13, 2022."); ECF No. 77-1 at 10 ("Scofield has not proven by a preponderance of evidence that she did not order the murder of the four students; nor has she produced any evidence that she did not have an affair with victim [K.G.]."); ECF No. 92- at 3 ("The tarot card and oracle card readings on Plaintiff Rebecca Scofield, who was listed as the Chair and Associate Professor of the UIdaho History Department, revealed that she planned the murders and made a choice between two male students to execute the murders. It also revealed that Scofield had a secret affair with one of the victims; and her motive to have the students killed was to silence them to keep her secret affair from being exposed."); ECF No. 94 at 3 ("During what she coined a "spiritual investigation" Guillard discerned that the students were murdered due to a targeted hit, ordered by a history teacher, Rebecca Scofield, and executed by the ex-boyfriend of victim K.G. The motive was to murder K.G. before she left Idaho to prevent the exposure of an affair between the Plaintiff, a University of Idaho Professor, and victim K.G., a University of Idaho student."); ECF No. 102-1 at 2 ("During what she coined a "spiritual investigation" Guillard discerned that the students were murdered due to a targeted hit, ordered by a history teacher, Rebecca Scofield, and executed by the ex-boyfriend of victim K.G. The motive was to murder K.G. before she left Idaho to prevent the exposure of an affair between the Plaintiff, a University of Idaho Professor, and victim K.G., a University of Idaho student. Guillard also discerned intricate details of the events that occurred the night of the murders. Guillard published the findings on her TikTok channel.").

She also used the litigation to falsely accuse Professor Scofield of harassing her, fabricating testimony and damages.  See, e.g., ECF No. 35 at 2 ("To stop Ashley Guillard's information from being taken seriously and to silence her Rebecca Scofield and her attorneys Wendy J. Olson, Elijah

M. Watkins, and Cory M. Carone filed a lawsuit against Ashley Guillard with two frivolous claims for defamation. Rebecca Scofield initiated the lawsuit with full knowledge that she was responsible for the death of the four students and with the intent to harass, embarrass, humiliate, and discredit Ashley Guillard . . ."); ECF No. 50-1 at 1-2 ("Plaintiff Rebecca Scofield and her attorneys Wendy J. Olson, Cory Carone, and Elijah Watkins fraudulently filed a frivolous complaint, Scofield v. Guillard (Dkt. 1), in the improper venue, Federal District Court for the District of Idaho, for the purpose of impeding upon due process for Ashley Guillard and for the purpose of harassment; in violation of Rule 11."); ECF No. 52 at 2 ("Plaintiff Rebecca Scofield through her legal counsel Attorney Wendy Olson, Attorney Elijah Watkins, and Attorney Cory Carone, worked concertedly to silence the Defendant. They sent demand letters, filed frivolous Civil Action 3:22-cv-00521 in Federal District Court, defamed the Defendant in the news media and used their community connections to harass the Defendant on social media."); ECF No. 102-1 at 1 ("it is reasonable to determine that the Plaintiff and alleged experts intentionally fabricated their testimonies to manipulate the Court and the jury to help Scofield fraudulently obtain jurisdiction . . ."); ECF No. 117-1 at 1 ("Additionally, Plaintiff Rebecca Scofield, along with Rebecca Bohn, MA, and Dr. Rebecca J. Tallent, fabricated witness testimony, medical records, and evidence . . .").

In short, through her pleadings, Ms. Guillard used the litigation to further harass and defame Professor Scofield. That Ms. Guillard is a pro se litigant is no excuse. Pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants. *See, e.g., Munoz v. United States*, 29 F.4th 973, 978 (9th Cir. 2022); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1365 n. 5 (9th Cir. 1986)(quotation omitted). Ms. Guillard's litigation record shows that she defended the case frivolously, unreasonably, and in a manner that increased Professor Scofield's cost of litigation.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES - 7

C.      **Professor Scofield's Fees Are Reasonable.**

Idaho Rule of Civil Procedure 54(e)(3) provides that the Court must consider twelve factors in determining the amount of an award of reasonable attorney fees.[1] Analysis of these factors here shows that Defendants' attorney fees are reasonable.

1.  **Time and Labor Required.**

Stoel Rives partner Wendy Olson spent 118.70 hours of labor on this case, Stoel Rives associate Cory Carone spent 194.60 hours of labor on this case, and Stoel Rives paralegal Hillary Bibb spent 112.70 hours of labor on this case.[2] They contemporaneously kept time sheets in six-minute increments reflecting the work done. A chart containing those time sheet entries is attached as Exhibit B to the Declaration of Wendy J. Olson in Support of Defendants' Motion for Attorney Fees.

This work was reasonably incurred because of the voluminous motions practice by Ms. Guillard, the need to review and analyze significant video evidence, the need to identify and prepare experts and reports, and the need to prepare for and conduct trial.

2.  **The Novelty and Difficulty of the Questions.**

Defamation cases are not common, and, as the Court noted in its Memorandum Decision and Order granting partial summary judgment, Idaho law is not clear on which party bears the burden of proving falsity.  ECF No. 74 at 13-17. Ultimately, the Court did not make a final determination on this either, finding that Professor Scofield had met her burden of putting forth

---

[1] Counsel also is submitting an affidavit in compliance with Local Civil Rule 54.2 setting forth the dates of service, services rendered, hourly rate, hours expended, statement of attorney fee contract with the client, and information as to other factors that might assist the Court in determining the dollar amount of fee to be awarded.

[2] Although other Stoel Rives timekeepers billed time on this case, Professor Scofield is not seeking reimbursement for their fees and they are not included in Exhibit B.

evidence at the summary judgment stage showing that the statements were false, that Ms. Guillard did not rebut them, and that summary judgment as to liability was appropriate. *Id.* at 17-20. Identifying and assessing evidence on social media platforms is relatively novel, and required significant effort to adequately preserve for use at trial.

3.      **The Skill Required to Perform the Legal Service Properly and the Experience and Ability of the Attorney in the Particular Field of Law.**

As set forth in the accompanying declaration of counsel, Wendy Olson has extensive litigation experience and significant experience litigating defamation cases in Idaho. Olson Fees Aff., ¶¶ 11-16. In the last seven years, she has successfully defended defamation claims, obtained a favorable jury verdict representing a plaintiff in a defamation case, and obtained partial summary judgment as to liability and the significant damages award in this case. *Id.*, ¶ 14.

4.      **The Prevailing Charges for Like Work.**

Wendy Olson billed her work at $400 per hour, well below her regular rates. *Id.*, ¶¶ 3, 4, 24. Cory Carone also billed his work at $400 per hour, also an amount that did not increase over the three plus years of the litigation. Mr. Carone is a senior associate and experienced litigator. He is a graduate of the University of Michigan, clerked for federal judges at the district court and court of appeals level and worked at the Office of the Attorney General for the State of Idaho before joining Stoel Rives. *Id.*, ¶ 18. Ms. Bibb billed her time at between $300 and $315 an hour. Ms. Bibb has significant expertise in reviewing, analyzing and capturing social media posts for later use in trial, including through use of Stoel Rives' vendor Page Vault. *Id.*, ¶ 19. The fees Stoel Rives charged for its work were imminently reasonable.

5.      **Whether the Fee is Fixed or Contingent.**

In the engagement of Ms. Olson's services, Professor Scofield agreed to a fixed fee of $400 an hour, which she knew was below Ms. Olson's  and Stoel Rives' regular rates for litigation work.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES - 9
152369118.1 0079747-00001

**6.      The Time Limits Imposed by the Client or the Circumstances of the Case.**

With respect to the time spent litigating the case, time constraints did not impact the amount of time spent. Rather, it was Ms. Guillard's ongoing frivolous and repetitive motion practice that caused expenditure of attorney fees, including on issues the Court previously had decided.

**7.      The Amount Involved and the Results Obtained.**

The amount involved was substantial.  The jury awarded Professor Scofield $10 million. Professor Scofield's counsel obtained full relief and significant damages.

**8.      The Undesirability of the Case.**

Prosecuting defamation cases is not undesirable per se. But actively litigating defamation claims may be too expensive for most individuals. Indeed, as Ms. Guillard pointed out at trial, Professor Scofield engaged in fundraising in an effort to pay her legal fees. In addition, this defamation case was undesirable in part because of the excessive media attention surrounding the underlying murders, the intense social media focus on all individuals with any peripheral connection to the murders, and Ms. Guillard's demonstrated propensity to make false statements and to ignore the law. Indeed following the jury's verdict, Ms. Guillard posted on social media a 24-part series critical of the Court, Professor Scofield's counsel, and the jury.  Olson Fees Aff. at ¶ 27.

**9.      The Nature and Length of the Professional Relationship with the Client.**

Counsel did not have a professional relationship with the client prior to this engagement. Counsel and Professor Scofield have now had an attorney-client relationship for nearly three and a half years.

**10.     Awards in Similar Cases.**

Counsel was not able to identify awards in other successful defamation cases.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES - 10

**11.    The Reasonable Cost of Automated Legal Research.**

This factor is not applicable in this case.

**12.    The Court May Consider any Other Factor Which the Court Deems Appropriate in the Particular Case.**

For the same reasons that this Court should award attorney's fees under Idaho Code § 12-121, this Court should find that Professor Scofield's counsel's fees are reasonable.  Much of the work that Professor Scofield's attorneys were required to do was to respond to Ms. Guillard's repeated efforts to dismiss the case (although she had no new bases for those motions), Ms. Guillard's baseless efforts to bring counterclaims, and Ms. Guillard's repeated efforts to change judges or seek reconsideration after the Court ruled against her.

In addition, Professor Scofield's counsel handled the case in as efficient of a manner as possible. They conducted only necessary discovery and filed only necessary motions.

On consideration of all of these factors, Stoel Rives time and fees were reasonable. The successful results were obtained in the most efficient manner possible, and services were provided at an already discounted fee.

### IV.    CONCLUSION

For the reasons set forth above and in the accompanying Affidavit of Wendy J. Olson in Support of  Plaintiff's' Motion for Attorney Fees, this Court should award Professor Scofield her attorney fees in the amount of $163,719.10.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES - 11
152369118.1 0079747-00001

DATED:  March 19, 2026.

STOEL RIVES LLP


/s/ *Wendy J. Olson*
Wendy J. Olson
Cory M. Carone

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, I served a copy of the foregoing via CM/ECF on

the Registered Participant as follows:

Ashley Guillard
msashleyjt@gmail.com

/s/ Wendy J. Olson
Wendy J. Olson