**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| REBECCA SCOFIELD, | Case No.: 3:22-cv-00521-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **PLAINTIFF'S MOTION FOR ATTORNEY FEES (Dkt. 151)** |
| ASHLEY GUILLARD, | |
| Defendant. | **DEFENDANT'S RULE 60(b)(3) MOTION FOR RELIEF OF JUDGMENT DUE TO FRAUD (Dkt. 153)** |

Pending before the Court are (i) Plaintiff Rebecca Scofield's Motion for Attorney Fees (Dkt. 151); and (ii) Defendant Ashley Guillard's Rule 60(b)(3) Motion for Relief of Judgment Due to Fraud (Dkt. 153). Because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record and without oral argument. As discussed more fully below, Plaintiff's Motion for Attorney Fees is granted in part, and denied in part; and Defendant's Rule 60(b)(3) Motion is denied.

## I. GENERAL FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the tragic murders of four University of Idaho students in November 2022. Plaintiff Rebecca Scofield is a professor at the University of Idaho. She alleges that, despite never meeting any of these students or being involved with their murders, Defendant Ashley Guillard posted numerous TikTok (and later YouTube) videos falsely claiming that Plaintiff (i) had an extramarital, same-sex, romantic affair with one of the victims; and then (ii) ordered the four murders to conceal that relationship. Plaintiff sent cease and desist letters to Defendant in the days and weeks that followed. When Defendant refused to stop,

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff initiated this action on December 21, 2022.  (Dkt. 1).  Plaintiff asserted two defamation claims against Defendant: one based on Defendant's statements that Plaintiff orchestrated the murders, and the other based on Defendant's statements that Plaintiff had a romantic relationship with one of the murdered students.  *Id*.

## A.     Entry of Default and Initial Pleadings

Defendant, proceeding *pro se*, did not timely respond to the Complaint by the January 17, 2023 deadline.  As a result, Plaintiff moved for entry of default pursuant to Rule 55(a) on January 19, 2023.  (Dkt. 4).  A Clerk's Entry of Default was then entered and mailed to Defendant on January 27, 2023.  (Dkt. 5).

On February 16, 2023, Defendant moved to set aside the entry of default.  (Dkt. 7). Plaintiff responded the next day, opposing Defendant's motion and separately moving for default judgment under Rule 55(b)(2).  (Dkts. 9 & 10).  On April 24, 2023, the parties consented to the undersigned's jurisdiction.  (Dkt. 17).  Two days later, the Court granted Defendant's Motion to Set Aside Entry of Default, denied Plaintiff's Motion for Default Judgment as moot, and ordered Defendant to respond to Plaintiff's Complaint within 21 days.  (Dkt. 18).

On May 16, 2023, Defendant filed her Answer, Affirmative Defenses, and Counterclaims to Complaint.  (Dkt. 20).  Defendant denied defaming Plaintiff because, according to Defendant, the accusations in her videos were "substantially true."  *Id*. at 6, ¶ 4 ("Rebecca Scofield planned, ordered, and executed the murder of the four University of Idaho Students.  Since the accusations in Ashley Guillard's TikTok videos are substantially true there is no actionable claim for defamation.").  Defendant further alleged that she "used her spiritual brain, intuition, spiritual practice, and investigative skills to uncover the truth regarding the murder of the four University of Idaho students; and published her findings on her TikTok social media platform."  *Id*. at 7, ¶ 6. Defendant also asserted 11 counterclaims against Plaintiff and Plaintiff's counsel.  *Id*. at 7-59,

**MEMORANDUM DECISION AND ORDER - 2**

¶¶ 1-279.  Those counterclaims rested on the same core allegations repeated throughout Defendant's participation in this litigation: that Plaintiff orchestrated the murders to conceal an affair with one of the victims and then conspired with her counsel to file a "frivolous" Complaint containing "falsified factual allegations" to deprive Defendant of her constitutional rights.  *Id*.

**B.**    **Dismissal of Defendant's Counterclaims and Defendant's Jurisdictional Challenges**

On June 6, 2023, Plaintiff moved to dismiss Defendant's counterclaims.  (Dkt. 22).  A week later, Plaintiff moved to quash the summonses issued to her counsel, arguing that counsel were not proper parties under Rules 13 or 14.  (Dkt. 25).  Defendant opposed both motions.  (Dkts. 35 & 36).  On August 8, 2023, the Court granted both motions, dismissing Defendant's counterclaims and quashing the summonses directed to Plaintiff's counsel.  (Dkt. 49).

On August 21, 2023, Defendant moved under Rules 60(b)(4) and (6) to set aside the Court's August 8, 2023 decision.  (Dkt. 50).  Defendant argued that: (i) the Court lacked subject matter jurisdiction; (ii) the Court lacked personal jurisdiction; (iii) venue in Idaho was improper; (iv) the Court lacked impartiality; and (v) the Court lacked subject matter jurisdiction over the "plausibility of spiritual practices."  *Id*.  Defendant further argued that these same theories warranted dismissal under Rules 12(b)(1), (2), and (6).  *Id*.  The Court denied the motion in its entirety on November 13, 2023.  (Dkt. 59).

**C.**    **Summary Judgment Proceedings and Plaintiff's Claim for Punitive Damages**

Meanwhile, Plaintiff moved for partial summary judgment on liability for both defamation claims.  (Dkt. 56).  Plaintiff's motion relied in large part on Defendant's failure to timely respond to Plaintiff's requests for admission.  *Id*.  However, on December 7, 2023, the Court granted Defendant additional time to respond to Plaintiff's requests for admission and, relatedly, extended Plaintiff's dispositive motion deadline to address Defendant's anticipated responses thereto.  (Dkts. 61 & 62).

**MEMORANDUM DECISION AND ORDER - 3**

After Defendant eventually responded to the requests for admission, Plaintiff filed an Amended Motion for Partial Summary Judgment on January 12, 2024. (Dkt. 63). Again, Plaintiff moved the Court for partial summary judgment only as to liability regarding each of her defamation claims against Defendant. *Id*.; *see also* (Dkt. 70) (denying Plaintiff's original Motion for Partial Summary Judgment in light of her amended filing). Plaintiff argued that Defendant's admissions, the TikTok videos that Defendant posted online, and Plaintiff's declaration combined to establish beyond dispute of material fact that Defendant defamed her. *Id*. at 1, 6-20. That same day, Plaintiff also moved for leave to amend her Complaint to add a claim for punitive damages. (Dkt. 64). Plaintiff argued that Defendant's repeated and ongoing defamatory statements about her – made without any factual support whatsoever – were extreme, outrageous, and warranted punitive damages. *Id*. at 1, 4-8.

Defendant opposed both motions, again asserting that her statements were true or had not been proven false by Plaintiff. (Dkts. 65 & 66).

On June 6, 2024, the Court granted Plaintiff's Amended Motion for Partial Summary Judgment. (Dkt. 74). The Court concluded that "there is no genuine dispute as to any material fact that Defendant defamed Plaintiff." *Id*. at 20. The Court also granted Plaintiff leave to pursue punitive damages, finding a reasonable likelihood that Plaintiff could satisfy the applicable standard for asserting a claim against Defendant for punitive damages. *Id*. at 20-22. Following that ruling, liability was resolved; only damages, if any, remained for trial.

**D.      Defendant's Repeated Reconsideration and Reassignment Efforts**

Defendant thereafter filed a series of motions challenging already-settled aspects of the case, as well as rulings that the Court had already made.

On June 13, 2024, Defendant moved to reassign the case to a U.S. District Judge. (Dkt. 75). Eleven days later, Defendant moved under Rule 59(e) for reconsideration, alteration, or

**MEMORANDUM DECISION AND ORDER - 4**

amendment of the Court's June 6, 2024 decision. (Dkt. 77). Defendant argued that the Court's ruling: (i) was based on manifest legal and factual error; (ii) created manifest injustice due to alleged lack of judicial impartiality; and (iii) improperly permitted excessive damages. *Id*. at 2. Defendant again argued that the case should be dismissed under Rule 12(h)(3). *Id*. at 1-2.

The reassignment request was referred to U.S. District Judge Amanda K. Brailsford pursuant to Rule 73(b)(3) and 28 U.S.C. § 636(c)(4). (Dkt. 87). On November 13, 2024, Judge Brailsford denied Defendant's request, highlighting Defendant's prior consent to magistrate judge jurisdiction and, separately, her failure to demonstrate extraordinary circumstances warranting reassignment. (Dkt. 88).

On February 4, 2025, the Court denied Defendant's Rule 59(e) reconsideration motion. (Dkt. 89). The Court concluded that its June 6, 2024 decision did not violate the First Amendment; that the Court properly exercised subject matter jurisdiction; that Defendant's statements were not privileged; that Idaho law permits punitive damages; and that Defendant's right to a fair tribunal had not been violated. *Id*.

Defendant again sought reconsideration on March 15, 2025, this time under Rule 60(b). (Dkt. 92). Defendant argued that purportedly newly discovered evidence from related state criminal proceedings proved that her statements were true or otherwise created disputed issues of fact precluding summary judgment. *Id*. at 1-2. On May 30, 2025, the Court denied the motion. (Dkt. 96). The Court explained that, even assuming the evidence was newly discovered and admissible, Defendant's motion suffered from a "fatal flaw": "the evidence does not change the disposition of the case . . . because there continues to be no corroborating support for Defendant's statements about Plaintiff." *Id*. at 5.

Defendant nonetheless continued to relitigate the same issues. On June 12, 2025, Defendant objected to the Court's May 30, 2025 decision and requested that a district judge

**MEMORANDUM DECISION AND ORDER - 5**

reverse the Court's prior rulings, deny summary judgment, and deny leave to seek punitive damages. (Dkt. 97). On June 17, 2025, the Court rejected those objections as procedurally improper in light of the parties' previous consent to magistrate judge jurisdiction. (Dkt. 99). The Court explained that there was no opportunity to "object" to the Court's decision short of an appeal to the Ninth Circuit. *Id.*

## E.      Pretrial Proceedings and Trial

On August 12, 2025, the Court set a four-day jury trial to begin on February 4, 2026. (Dkt. 100).

Before trial, Defendant moved under Rule 702 to exclude Plaintiff's experts. (Dkt. 102). On January 23, 2026, the Court granted the motion in part and denied it in part. (Dkt. 113). The Court permitted Plaintiff's treating mental health provider, Rebecca Bohn, to testify regarding her treatment and diagnosis of Plaintiff, and allowed limited testimony from Plaintiff's reputational expert, Rebecca Tallent. *Id.*

Despite the trial date having been set for nearly six months – and after years of litigation and repeated reconsideration motions – Defendant filed another Motion to Dismiss on February 5, 2026, less than three weeks before trial and immediately before the final pretrial conference. (Dkt. 117). Defendant again argued that Plaintiff could not establish damages exceeding $75,000 and therefore that diversity jurisdiction under 28 U.S.C. § 1332 was lacking. Defendant also argued that: (i) Plaintiff could not, as a matter of law, suffer Post Traumatic Stress Disorder (PTSD) from defamatory statements; and (ii) punitive damages were unavailable. *Id.*

The following day, Defendant moved to continue trial. (Dkt. 120). Defendant argued that she needed additional time to prepare, intended to pursue an interlocutory appeal if her motion to dismiss were denied, and had not anticipated the procedural posture of the case while representing herself *pro se. Id.*

**MEMORANDUM DECISION AND ORDER - 6**

On February 15, 2026, the Court denied both motions. (Dkt. 124). In doing so, the Court referenced its prior decisions rejecting Defendant's repeated subject matter jurisdiction arguments and its earlier rulings concerning the scope of Plaintiff's expert testimony. *Id*.

Trial began on February 24, 2026. On February 27, 2026, the jury returned a verdict awarding Plaintiff $10 million in damages: $2.5 million in compensatory damages and $7.5 million in punitive damages. (Dkt. 146). Judgment was entered on March 5, 2025. (Dkt. 149).

## F.    The Pending Post-Judgment Motions

On March 19, 2026, Plaintiff moved to recover attorney fees in the amount of $163,719.10. (Dkt. 151). On April 6, 2026, Defendant moved to set aside the judgment under Rule 60(b)(3). (Dkt. 153). Defendant alleged that Plaintiff lied about her damages, presented false evidence and fabricated medical records at trial, and presented witnesses who lied under oath. *Id*. Those motions are addressed below.

## II.  LEGAL STANDARDS[1]

### A.    Rule 60

A district court may "relieve a party . . . from final judgment" where there is "fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). Relief under Rule 60(b)(3) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of

---

[1] Though Plaintiff's Motion for Attorney Fees preceded Defendant's Rule 60(b)(3) Motion, the Court will first consider Defendant's Rule 60(b)(3) Motion because it may impact whether, or to what extent, the Court must subsequently address Plaintiff's Motion for Attorney Fees.

**MEMORANDUM DECISION AND ORDER - 7**

judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted); *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2857 (4th ed. Apr. 2023 update) (a district court considering a motion brought under rule 60(b) must seek to accomplish justice while maintaining "a scrupulous regard for the aims of finality").  As a result, the merits of a case are not before the Court on a Rule 60(b)(3) motion.  Rather, Rule 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Maudlin v. M/V Peacock (In re M/V Peacock)*, 809 F.2d 1403, 1405 (9th Cir. 1987).

Rule 60 similarly recognizes that district courts maintain the authority to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).  "A court's power to grant relief from judgment for fraud on the court stems from 'a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry.'" *United States v. Sierra Pacific Indus., Inc.*, 862 F.3d 1157, 1167 (9th Cir. 2017) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).  "[R]elief from judgment for fraud on the court is 'available only to prevent a grave miscarriage of justice.'" *Id*. at 1167 (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)).

## B.    Rule 54(d)

Under the Federal Rules of Civil Procedure, a party may move for attorney fees if the motion: (i) is filed no later than 14 days of entry of judgment; (ii) specifies the judgment and statute, rule, or other grounds entitling the party to the attorney fees award; (iii) states the amount sought or provides a fair estimate of it; and (iv) discloses, if so ordered by the court, the terms of the agreement for fees and services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv).

**MEMORANDUM DECISION AND ORDER - 8**

Federal courts sitting in diversity apply state law to state claims when determining whether a party is entitled to a fee award. *Safeco Ins. Co. of Ill. v. LSP Products Grp., Inc.*, 659 F. Supp. 3d 1131, 1135 (D. Idaho 2023). Plaintiff submits that the state law applicable to her Motion for Attorney Fees is Idaho Code § 12-121. *See* Pl.'s Mem. ISO Mot. for Fees at 1-3 (Dkt. 151-1).

Idaho Code § 12-121 permits a court to award reasonable attorney fees to the prevailing party if the court finds that "the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." An award of attorney fees is not a matter of right; rather, it "is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Evans v. Wright*, 554 P.3d 591, 602 (Idaho 2024) (cleaned up). "The standard for determining whether such an award should be made is not whether the position urged by the nonprevailing party is ultimately found to be wrong, but whether it is so plainly fallacious as to be frivolous." *Herbst v. Bothof Dairies, Inc.*, 719 P.2d 1231, 1235 (Idaho Ct. App. 1986).

Although state attorney fee statutes are generally treated as substantive, and therefore apply in federal diversity actions, the Ninth Circuit has held that Idaho Code § 12-121 is procedural rather than substantive. *See Horsley v. Wardwell*, 2023 WL 3250618 at *2 (D. Idaho 2023) (citing *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991); *Safeco Ins. Co. of Ill. v. LSP Products Group, Inc.*, 659 F. Supp. 3d 1131, 1138 (D. Idaho 2023)); *but see LaKamp v. Runft*, 2025 WL 2675946 at *2 (D. Idaho 2025). As a result, attorney fee requests in diversity cases are analyzed under analogous federal law, "that is, under the Court's inherent power to assess fees against parties acting in bad faith." *Safeco*, 659 F. Supp. 3d at 1138-39 (citing *Matter of Comstock*, 16 B.R. 206, 209-10 (Bankr. D. Idaho 1981) (explaining that court's inherent right to control vexatious practices is "similar in thrust and effect to Idaho Code 12-121")). "Bad faith

**MEMORANDUM DECISION AND ORDER - 9**

exists when 'the legal and factual basis for the action [is] totally frivolous' or when the claim is colorable but brought with an improper purpose." *Id.* at 1139 (quoting *BKB v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002)). "Courts should exercise their discretion to award attorney fees 'only in exceptional cases and for dominating reasons of justice.'" *Id.* (quoting *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 756 (9th Cir. 1986)).

## III.  ANALYSIS

### A.      Defendant's Rule 60(b)(3) Motion (Dkt. 153)

Defendant moves under Rule 60(b)(3) to set aside the judgment entered following the jury's verdict in Plaintiff's favor because, according to her, the verdict was procured through fraud, misrepresentation, and other misconduct. (Dkt. 153). Specifically, Defendant argues that: (i) Plaintiff falsely claimed damages throughout the litigation; (ii) Plaintiff submitted medical records and billing records that mispresented the nature and cause of her alleged injuries; (iii) Plaintiff's treating mental health provider, Ms. Bohn, offered false testimony concerning Plaintiff's diagnosis and alleged emotional injuries; and (iv) Plaintiff's counsel improperly encouraged the jury during closing argument to punish Defendant based upon her spiritual beliefs and status as a psychic. *See* Mem. ISO 60(b)(3) Mot. at 4-6 (Dkt. 153-1).

Plaintiff opposes the motion in two respects. First, Plaintiff argues that the motion is untimely and the Court separately lacks jurisdiction to even consider it in light of Defendant's appeal. *See* Opp. to 60(b)(3) Mot. at 3-4 (Dkt. 160). Second, Plaintiff argues that Defendant's allegations are unsupported by clear and convincing evidence and amount to little more than disagreement with the jury's evaluation of the evidence presented at trial. *Id.* at 5-7. Mentioned throughout, Plaintiff further argues that many of the issues raised in the motion either were litigated during trial or repeat arguments Defendant advanced throughout this case and that the Court has already rejected. *Id.*

**MEMORANDUM DECISION AND ORDER - 10**

Having reviewed the parties' briefing, the trial record, and the applicable law, the Court concludes that Defendant has not established entitlement to relief under Rule 60(b)(3).

1.    <u>Plaintiff's Timeliness and Jurisdictional Objections Do Not Preclude Consideration of Defendant's Rule 60(b)(3) Motion</u>

As a threshold matter, Plaintiff argues that Defendant's Rule 60(b)(3) Motion is untimely and that the Court lacks jurisdiction to consider it. *Id*. at 3-4. According to Plaintiff, since Defendant filed her Rule 60(b)(3) Motion and Notice of Appeal on the same day, "the timeliness of [the motion] is determined by Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) and Federal Rule of Civil Procedure 59." *Id*. at 3. From that premise, Plaintiff reasons that, owing to FRAP 4(a)(4)(A)(vi)'s incorporation of the filing deadline applicable to Rule 59 motions, Defendant was required to file her Rule 60(b)(3) Motion within 28 days of the entry of judgment. *Id*. at 3-4. Because Defendant filed the motion 31 days after judgment was entered, Plaintiff contends that the motion is untimely. *Id*. Plaintiff further argues that Defendant's Notice of Appeal independently operates to divest the Court of jurisdiction to even consider the motion. *Id*. at 4. The Court disagrees.

First, Defendant's Rule 60(b)(3) Motion is timely. Rule 60(c)(1) requires that a motion brought under Rule 60(b)(3) be filed "no more than a year after the entry of judgment or order." Here, judgment was entered on March 5, 2026 (Dkt. 149) and Defendant filed her Rule 60(b)(3) Motion on April 6, 2026 (Dkt. 153). The motion therefore falls well within Rule 60's one-year limitations period and is timely.

Second, Plaintiff conflates the timeliness requirement governing Rule 60 motions with the separate appellate-time provisions contained in FRAP 4. Critically, FRAP 4(a)(4)(A)(vi) does not establish when a Rule 60(b) motion must be filed to be timely. It instead addresses the effect certain post-judgment motions have on the timing and effectiveness of a notice of appeal.

**MEMORANDUM DECISION AND ORDER - 11**

After all, that section of FRAP 4 is titled: "Effect of a Motion on a Notice of Appeal."  *See* Fed. R. App. P. 4(a)(4).  And FRAP 4(a)(4)(A)(vi) specifically provides that a Rule 60 motion tolls the time to appeal only if it is filed within the time permitted for a Rule 59 motion.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).  Thus, while Defendant's Rule 60(b)(3) Motion was not filed within Rule 59's 28-day period, that circumstance affects only whether the motion has any tolling effect on the appeal.  It does not render the motion untimely under Rule 60.

Nor does the Court agree that it lacks authority to consider Defendant's Rule 60(b)(3) Motion.  To be sure, because Defendant filed her Rule 60(b)(3) Motion more than 28 days after entry of judgment, FRAP 4(a)(4)9A)(vi) does not operate to suspend or reset the time for appeal. Consequently, FRAP 4(a)(4)(B)(i) – which addresses the effectiveness of a notice of appeal when one of the motions identified in FRAP 4(a)(4)(A) remains pending – does not apply.  But it does not follow that, from this, the Court is then stripped of all authority to act on Defendant's 60(b)(3) Motion.

Indeed, Plaintiff's briefing recognizes just the opposite.  *See* Opp. to 60(b)(3) Mot. at 4 (Dkt. 160).  Rule 62.1 expressly addresses motions that a district court cannot grant because an appeal is pending.  Under that Rule, the district court may: (i) defer consideration of the motion; (ii) deny the motion; or (iii) issue an indicative ruling stating either that it would grant the motion or that the motion raises a substantial issue.  Fed. R. Civ. P. 62.1(a).  Thus, even assuming Defendant's pending appeal limits the Court's ability to grant Rule 60 relief absent further action by the Court of Appeals, Rule 62.1 expressly contemplates that the district court may consider and deny such a motion while the appeal remains pending.

Accordingly, the Court rejects Plaintiff's threshold argument that Defendant's Rule 60(b)(3) Motion is untimely or beyond the Court's authority to consider.  Whether Defendant is entitled to relief, however, is another matter.

**MEMORANDUM DECISION AND ORDER - 12**

2.       Defendant Has Not Established Entitlement to Relief Under Rule 60(b)(3)

Defendant's Rule 60(b)(3) Motion advances four principal arguments: (i) Plaintiff lied under oath about her damages; (ii) Plaintiff fraudulently submitted medical records to misrepresent the nature and cause of her injuries; (iii) Plaintiff's treating mental health provider, Rebecca Bohn, testified falsely; and (iv) Plaintiff's counsel improperly encouraged the jury to discriminate against Defendant during closing argument.  *See* Mem. ISO 60(b)(3) Mot. at 4-6 (Dkt. 153-1).  As explained below, none of these arguments establishes by clear and convincing evidence that Plaintiff procured the judgment through fraud or misconduct.  Nor do they demonstrate that Defendant was prevented from fully and fairly presenting her defense.

First, Defendant argues that Plaintiff lied under oath regarding her damages.  *Id*. at 4. Defendant specifically contends that Plaintiff falsely claimed professional and reputational damages throughout the litigation and repeatedly characterizes Plaintiff's assertion that she suffered compensable harm as a "foundational lie" and "foundational false claims of damages." *Id*. at 3-4.  According to Defendant, testimony from University of Idaho witnesses concerning Plaintiff's continued employment, promotions, and compensation demonstrates that Plaintiff never sustained any recoverable damages.  *Id*. at 4.

This argument is not new.  At bottom, Defendant's position is that Plaintiff was never damaged by Defendant's defamatory statements and therefore should not have been permitted to recover any damages at trial.  Defendant has advanced materially similar arguments before, including in connection with her challenges to subject matter jurisdiction, her motions for reconsideration, and her dismissal efforts less than three weeks before trial  *See supra* (citing Dkts. 59, 89, & 124).  The court rejected those arguments each time.  *Id*.

At trial, Plaintiff was entitled to present evidence that Defendant's statements caused her professional, reputational, and emotional harm.  Defendant was equally entitled to challenge that

**MEMORANDUM DECISION AND ORDER - 13**

evidence and argue that Plaintiff suffered no damages.  The jury heard both sides' evidence and ultimately rendered a verdict in Plaintiff's favor.  Defendant's continued disagreement with that verdict does not establish fraud, misrepresentation, or misconduct under Rule 60(b)(3).  Rather, it reflects disagreement with the jury's assessment of the evidence and the damages it awarded.  That is not a basis for relief from judgment.  *See, e.g.*, *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004); *In re M/V Peacock)*, 809 F.2d at 1405 (Rule 60(b)(3) not aimed at judgments which may be factually incorrect).[2]

Second, Defendant argues that Plaintiff fraudulently submitted medical records and billing records to misrepresent the cause and extent of her injuries.  *See* Mem. ISO Mot. at 4-5 (Dkt. 153-1).  Defendant principally contends that Plaintiff improperly attributed certain physical symptoms (nerve damage in her legs) to Defendant's defamatory statements while failing to disclose other possible medical explanations (diabetes) for those symptoms.  *Id*.

This argument fares no better.  Defendant possessed the same medical records during discovery and before trial that she now cites in support of her motion.  Yet, Defendant never argued at trial that Plaintiff had fraudulently submitted those records or that they were fabricated.  Nor was Defendant prevented from cross-examining Plaintiff regarding those records or

---

[2] Defendant relatedly argues that Plaintiff attempted to fabricate professional damages through the testimony of reputational expert Rebecca Tallent.  *See* Mem. ISO 60(b)(3) Mot. at 4 (Dkt. 153-1).  That argument is unpersuasive.  Before trial, the Court carefully considered Defendant's Rule 702 challenge to Plaintiff's experts and substantially limited the scope of Ms. Tallent's testimony at trial.  *See* 1/23/26 MDO at 7 (Dkt. 113) ("[Ms. Tallent] may not, however, testify that Plaintiff was *in fact* damaged, that Plaintiff suffered reputational harm to a *particular degree*, or that Plaintiff *will suffer* future reputational harm as a result of Defendant's actions.  Those ultimate conclusions lack a sufficiently reliable foundation and therefore would not be helpful to the trier of fact under Rule 702.  Plaintiff remains free to argue reputational harm based on admissible evidence at trial, and Defendant may attempt to undercut that claim by pointing out how Plaintiff's career and reputation remain unscathed.") (emphasis in original, internal quotation marks omitted).  To the extent Defendant disagrees with either the Court's evidentiary rulings or the jury's consideration of Ms. Tallent's testimony, such disagreement does not amount to fraud within the meaning of Rule 60(b)(3).

**MEMORANDUM DECISION AND ORDER - 14**

advancing alternative explanations for Plaintiff's symptoms.  Instead, the jury heard the medical

evidence, heard testimony concerning Plaintiff's injuries, and weighed that evidence alongside

Defendant's challenges to Plaintiff's damages claims.  Rule 60(b)(3) is directed toward

judgments obtained through fraud or misconduct; it is not for revisiting factual disputes that were

presented to and resolved by the jury.  Defendant's disagreement with the jury's evaluation of

the medical evidence does not establish entitlement to relief under Rule 60(b)(3).

Third, Defendant argues that Plaintiff's treating mental health provider, Rebecca Bohn,

testified falsely concerning Plaintiff's PTSD diagnosis and the relationship between that

diagnosis and Defendant's defamatory statements.  *Id*. at 5-6.  Defendant maintains that Ms.

Bohn's opinions were inconsistent with the DSM-5 and that portions of her testimony were

inaccurate or misleading.  *Id*.

Again, the record demonstrates that Defendant had a full and fair opportunity to litigate

these issues at trial.  Defendant spent a substantial amount of time cross-examining Ms. Bohn

and attempting to undermine both her diagnosis and her conclusions regarding causation.  The

jury therefore heard not only Ms. Bohn's testimony but also Defendant's extensive efforts to

challenge it.  After considering both, the jury concluded that Defendant's conduct damaged

Plaintiff and awarded corresponding compensatory damages.  Rule 60(b)(3) does not authorize

relief simply because a party remains dissatisfied with the jury's credibility determinations or

acceptance of expert testimony.  Defendant's arguments concerning Ms. Bohn are essentially

renewed attacks on evidence that was fully presented to and considered by the jury.[3]

---

[3] To this end, Defendant previously sought to exclude Ms. Bohn's testimony under Rule 702 for the same reasons offered now.  The Court disagreed.  *See* 1/23/26 MDO at 10 (Dkt. 113) ("Defendant's unsupported argument that defamation cannot constitute a traumatic triggering event sufficient to support a PTSD diagnosis is ultimately a dispute over diagnostic criteria and causation.  Whether Plaintiff's experience satisfies the clinical requirements for PTSD are matters on which mental health professionals may (or may not) disagree.  Such disagreements

**MEMORANDUM DECISION AND ORDER - 15**

Fourth, Defendant argues that Plaintiff's counsel improperly encouraged the jury to discriminate against Defendant based upon her spiritual beliefs and status as a psychic. *Id*. at 6. Defendant points in particular to counsel's closing argument and contends that the punitive damages award reflects bias against Defendant's beliefs rather than an application of the law. *Id*.

The record does not support Defendant's characterization of counsel's remarks. During closing argument, counsel stated:

> And how much in punitive damages will it take to get Ashley Guillard to stop or deter her from ever again posting online under the guise of solving mysterious deaths that Professor Scofield was responsible for orchestrating the murders and was having an affair with one of the murdered female students?
>
> And to be certain, these punitive damages are an important component of the damages award. If you accept Ms. Guillard's proposition that clairvoyants or psychics don't need facts, if you accept that proposition, then a person in her position could say whatever they want about Professor Scofield or anyone else no matter how heinous or how awful or how untrue, and they would never have to pay punitive damages. They could just say, "I believed it. I didn't need any facts. I know what facts are, but I don't need those facts when I make my false accusations." If there's not a significant punitive damages award, then she can keep doing that and other people can keep doing that.
>
> And if that were true, why would she stop, and why would anyone else hesitate to do the exact same thing? This is precisely the case and the facts that punitive damages are made for, and Professor Scofield will leave it to you to decide what that amount is. Thank you.

Tr. at 708:1-23, referenced at 2/27/26 Tr. at 114 (Dkt. 168). These arguments were focused on Defendant's repeated publication of serious accusations without factual support and Defendant's own admission regarding the basis for those accusations. *See id*. at 660:4-15. Counsel argued that Defendant repeatedly acknowledged that she did not need facts to make the statements she

---

are appropriately explored through cross-examination and, if Defendant chooses, competing expert testimony. They do not, however, render Ms. Bohn's opinions unreliable . . . .").

**MEMORANDUM DECISION AND ORDER - 16**

made about Plaintiff and that she continued to publish those statements despite having none. *Id*.

Those arguments tracked issues that had already been addressed at the liability stage of the

litigation, where the Court concluded that Defendant's statements were defamatory on summary

judgment. *See Casey*, 362 F.3d at 1261 ("However, this is a clear attempt to relitigate the issue

central to the merits of this case and the district court's summary judgment motion. As the

merits of a case are not before the court on a Rule 60(b) motion, this claim fails as well."). They

likewise related directly to the jury's consideration of damages, including punitive damages,

under Idaho law. Nothing in counsel's argument urged the jury to punish Defendant *because of*

her spiritual beliefs. Counsel was urging the jury to evaluate Defendant's conduct in light of the

evidence presented at trial. The jury did that.

In sum, Defendant has not demonstrated by clear and convincing evidence that Plaintiff

obtained the judgment through fraud, misrepresentation, or other misconduct. Instead,

Defendant's Rule 60(b)(3) Motion largely repackages arguments she has raised repeatedly

throughout this litigation or challenges the jury's assessment of the evidence presented at trial.

Rule 60(b)(3) provides relief form judgments that were unfairly obtained; it does not provide a

mechanism for relitigating issues already decided by the Court and the jury thus far. Because

Defendant has not established entitlement to relief under Rule 60(b)(3), her Rule 60(b)(3)

Motion must be denied.

**B.      Plaintiff's Motion for Attorney Fees (Dkt. 151)**

Plaintiff moves for an award of attorney fees in the amount of $163,719.10 pursuant to

Idaho Code § 12-121, arguing that she is the prevailing party and that Defendant defended this

action frivolously, unreasonably, and without foundation. (Dkt. 151). Plaintiff emphasizes not

only the ultimate result – a summary judgment determination on liability following by a jury

verdict awarding substantial compensatory and punitive damages – but also Defendant's conduct

**MEMORANDUM DECISION AND ORDER - 17**

throughout the litigation, including repeated jurisdictional challenges, unsuccessful motions seeking reconsideration or reassignment, frivolous counterclaims, missed deadlines, and other filings that allegedly increased the cost and duration of the proceedings. *See* Mem. ISO Mot. for Att'y Fees at 4-7 (Dkt. 151-1). In Plaintiff's view, the litigation as a whole demonstrates that Defendant's defense lacked any reasonable factual or legal foundation, thereby warranting an award of fees under § 12-121. *Id.*

Defendant opposes the motion, but her opposition largely reprises arguments the Court has already considered and rejected. As with her Rule 60(b)(3) Motion, Defendant again characterizes Plaintiff's claim to damages as a "foundational lie," insisting that Plaintiff suffered no compensable injury and that the litigation was predicated on fabricated damages. *See* Opp. to Mot. for Att'y Fees at 2-3 (Dkt. 155). Defendant likewise renews allegations that Plaintiff, Plaintiff's witnesses, and Plaintiff's counsel engaged in misconduct during the litigation and at trial. *Id.* at 2-4. Defendant further argues that the jury's verdict was unreasonable, that the requested fees are excessive, and that an award of fees would be inequitable under the circumstances. *Id.* at 3-5.

Having considered the parties' submissions and the record, the Court concludes that an award of attorney fees is warranted, but not in the full amount that Plaintiff requests.

As discussed above, there is some tension within this District regarding whether Idaho Code § 12-121 applies in federal diversity actions given the Ninth Circuit's characterization of the statute as procedural rather than substantive. *See supra.* But that distinction ultimately makes little difference here. Even if § 12-121 does not independently authorize a fee award, the Court's inherent authority to assess attorney fees against parties who act in bad faith reaches substantially the same conduct. *Id.* (citing *Matter of Comstock*, 16 B.R. at 209-10 (a court's inherent power to award fees where a party acts in bad faith or vexatiously is "similar in thrust

**MEMORANDUM DECISION AND ORDER - 18**

and effect to the power granted Idaho courts under Idaho Code § 12-121")).  Thus, whether

viewed through the lens of § 12-121 or the Court's inherent authority to sanction bad-faith

litigation conduct, the operative inquiry is largely the same: whether the action was brought,

pursued, or defended in a manner that was frivolous, unreasonable, without foundation, or

otherwise indicative of bad faith.  The record here is the exceptional case that satisfies that

standard; but only up to a point, as explained below.

Under either standard, the record supports an award of attorney fees.  The consistent

through-line in Defendant's defense has been her insistence that her statements about Plaintiff

were true, despite the absence of any admissible evidence supporting them.  In granting summary

judgment on liability, the Court explained that Plaintiff's evidence in support of Defendant's

liability for defamation "not only substantiates Plaintiff's argument that Defendant's statements

about her are false, it also highlights the complete lack of any corroborating support for

Defendant's statements."  6/6/24 MDO at 18 (Dkt. 74).  The Court further observed that

Defendant's only support for her accusations was her claimed "spiritual investigation" and

"intuitive tarot readings," which were insufficient to create a genuine dispute of material fact.  *Id*.

at 18-20.  Defendant nevertheless litigated this case on the same unsupported premise.  *See* Tr. at

660:4-15, referenced at 2/27/26 Tr. at 66 (Dkt. 168).

That unsupported premise did not exist in isolation.  It was accompanied by repeated

challenges to the Court's subject matter jurisdiction, challenges to the undersigned's authority to

preside over the case despite Defendant's consent to magistrate judge jurisdiction, motions

seeking reconsideration of issues already decided, missed or extended deadlines, and last-minute

motions to dismiss and continue trial.  These filings required Plaintiff to respond, delayed

resolution of the case, and increased the cost of litigation.  Viewed as a whole, Defendant's

litigation conduct was not only unsuccessful, but also frivolous, unreasonable, without

**MEMORANDUM DECISION AND ORDER - 19**

foundation, and indicative of bad faith.  Now, as the prevailing party, Plaintiff is permitted to recover attorney fees under these circumstances.

Even so, the Court does not conclude that all of Plaintiff's requested attorney fees are recoverable.  Even where a fee award is warranted, the Court retains discretion to determine what fees are reasonable and appropriately attributable to the conduct justifying the award.

First, the Court will not award fees for matters where Plaintiff previously sought attorney fees as a sanction and the Court expressly declined to grant such relief.  *See* 8/8/23 MDO at 19-20 (Dkt. 49); 10/6/23 MDO at 2-3 (Dkt. 55); 11/13/23 MDO at 24, n.6 (Dkt. 59); *see also* 11/13/24 MDO at 7 (Dkt. 88) (Judge Brailsford acknowledging Plaintiff's arguments that the undersigned previously denied Plaintiff's request for attorney fees and denied a motion to sanction Defendant).  In each of those instances, Plaintiff requested attorney fees in connection with specific motions or litigation conduct, and the Court exercised its discretion not to award them.  Those decisions were made at the time the underlying conduct occurred and were based upon the circumstances then before the Court.  The Court will not revisit or effectively overturn those earlier rulings by awarding the same fees now based upon a broader fee application that subsumes them.

Second, the Court is not persuaded that attorney fees associated with the jury trial itself should be shifted to Defendant.  By the time trial commenced, liability had already been established.  The remaining issue for the jury was damages.  Although Defendant ultimately did not prevail, she was entitled to contest the nature and extent of Plaintiff's alleged injuries and damages.  To be sure, damages remained a disputed issue throughout the case, and Defendant was permitted to argue that Plaintiff suffered little or no compensable harm.  For the most part, at trial, the evidence she presented and cross-examination she conducted were appropriate to oppose Plaintiff's damages evidence.  The fact that the jury disagreed with Defendant does not

**MEMORANDUM DECISION AND ORDER - 20**

render her damages-related defenses frivolous, unreasonable, or wholly without foundation.  Nor does it establish bad faith for purposes of a fee award.

So, in determining the amount of recoverable attorney fees, the Court will endeavor to exclude from those fees attributable to (i) matters for which the Court previously declined to award sanctions-based fees, and (ii) trial preparation and trial proceedings directed to the issue of damages.  The Court therefore attempts to understand the scope of Plaintiff's requested attorney fees with those limitations in mind.

Determining the precise amount of recoverable fees is not a straightforward task.  Many of the time entries in Plaintiff's billing records relate to multiple issues, some recoverable and some not.  *See* Ex. B to Olson Aff. (Dkt. 151-4).  The Court has consequently undertaken its review with an understanding that any allocation necessarily involves a measure of judgment and discretion.  With those principles in mind, the Court has attempted, to the best of its ability, to exclude fees for matters more particularly described above.[4]  Having done so, the Court concludes that Plaintiff incurred recoverable attorney fees in the amount of $27,699.00.  That amount is comprised of:

| TIMEKEEPERS | HOURS | RATE | TOTAL |
|---|---|---|---|
| | | | |
| Wendy J. Olson | 33.2 | $400.00/hr. | $13,280.00 |
| Cory J. Carone | 34.0 | $400.00/hr. | $13,600.00 |
| Hillary Bibb | 2.6 | $315.00/hr. | $819.00 |
| | | | |
| | | | **$27,699.00** |

The Court additionally concludes that this amount is reasonable.  In doing so, the Court has considered the factors identified in Idaho Rule of Civil Procedure 54(e)(3), including: (i) the

---

[4]  The Court has also excluded the time entries referenced in Exhibit B for David Bryant and John Katuska.  *See* Mem. ISO Mot. for Att'y Fees at 8, n.2 (Dkt. 151-1) ("Although other Stoel Rives timekeepers billed time on this case, Professor Scofield is not seeking reimbursement for their fees and they are not included in Exhibit B.").

**MEMORANDUM DECISION AND ORDER - 21**

time and labor required; (ii) the novelty and difficulty of the questions presented; (iii) the skill required and the experience and ability of counsel; (iv) the prevailing charges for similar work; (v) whether the fee is fixed or contingent; (vi) time limitations imposed by the client or circumstances of the case; (vii) the amount involved and the results obtained; (viii) the undesireability of the case; (ix) the nature and length of the professional relationship with the client; (x) awards in similar cases; (xi) the reasonable cost of automated legal research; and (xii) any other factor the Court deems appropriate. *See* I.R.C.P. 54(e)(3).

Several of these factors strongly support the calculated attorney fees. This litigation required substantial time and labor over the course of more than three years and involved numerous motions, repeated challenges to jurisdiction, multiple requests for reconsideration, extensive motion practice, expert witness issues, pre-trial proceedings, and a four-day jury trial. The case also presented novel and difficult issues arising from Defendant's use of social media platforms to publish extraordinary accusations against Plaintiff, requiring counsel to navigate complex questions relating to defamation, damages, expert testimony, and punitive damages. The skill required to litigate the matter was considerable, and the Court is satisfied that counsel performed their work competently and effectively. The hourly rates charged by Ms. Olson, Mr. Carone, and Ms. Bibb are consistent with – if not lower than – prevailing market rates for attorneys of comparable experience and skill litigating complex civil matters in this District. The Court likewise notes that counsel's representation was undertaken on a fixed-fee basis and that the results obtained were exceptional. Plaintiff prevailed at summary judgment, successfully defended that ruling, and ultimately obtained a jury verdict awarding $10 million in compensatory and punitive damages.

Having considered the Rule 54(e)(3) factors, the Court finds that the reduced fee request of $27,699.00 is not only reasonable but modest in relation to the work performed, the issues

**MEMORANDUM DECISION AND ORDER - 22**

presented, and the result achieved.  Plaintiff's Motion for Attorney Fees is therefore granted, insofar as Plaintiff is awarded $26,219.00 in attorney fees.

## IV.  **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiff Rebecca Scofield's Motion for Attorney Fees (Dkt. 151) is GRANTED in part, and DENIED in part as follows: (i) Plaintiff is awarded $27,699.00 in attorney fees.  The Motion is GRANTED in this respect; (ii) the Motion is DENIED in all other respects.

2.    Defendant Ashley Guillard's Rule 60(b)(3) Motion for Relief of Judgment Due to Fraud (Dkt. 153) is DENIED.



DATED:  June 10, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**